UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC. )<br>)<br>Defendant )<br>) | Civil Action 04-30126-RFH<br>MAP<br>RECEIPT # 305664<br>AMOUNT $ 150.00<br>SUMMONS ISS. ✓<br>LOCAL RULE 4.1 ✓<br>WAIVER OF SERV. _____<br>MCF ISSUED _____<br>AO 120 OR 121 ✓<br>DEPUTY CLK _____<br>DATE 7/2/04 |

## COMPLAINT

### Parties

1.) The plaintiff, Donald C. Hutchins ("Hutchins") is an individual residing at 1047 Longmeadow Street, Longmeadow, Hamden County, Massachusetts and a citizen of the United States.

2.) The defendant, Cardiac Science, Inc. ("Cardiac Science") is incorporated in the State of Delaware with a principal place of business at 1900 Main Street, Suite 700, Irvine, California 92614.

### Jurisdiction

3.) The court has jurisdiction over this matter pursuant to Section 271 U.S.C.

4.) Hutchins lives in Longmeadow, Massachusetts and is a citizen of the United States.

5.) Cardiac is a corporation with its headquarters in Irvine, California. Cardiac markets products through the Channing Bete Company/ Distributor of American Heart

Association Products. The Channing Bete Company is a Massachusetts company headquartered at One Community Place, South Deerfield, MA 01373.

**Background**

6.) On April 22, 1986 Hutchins was issued U.S. Patent Number 4,583,524-titled "CARDIOPULMONARY RESUSCITATION PROMPTING" attached herein as part of Exhibit A.

7.) On November 29, 1994 Hutchins was issued U.S. Reissued Patent Number Re.34,800-titled "CARDIOPULMONARY RESUSCITATION PROMPTING" attached herein as part of Exhibit B. The Patent ABSTRACT states in part, "A portable, self powered electronic cardiopulmonary resuscitation prompting system. . . ." This Reissue Patent Number Re.34,800 is a reissue of Hutchins' original Patent Number 4,583,524. Patent Numbers 4,583,524 and Re.34,800 can be found on over 300,000 CPR Prompting devises that have been marketed since 1984 and continue today as the standard of the industry.

8.) On June 22, 1999 Hutchins was issued U.S. Patent Number 5,913,685-titled "CPR Computer Aiding" attached herein as part of Exhibit C. The Patent ABSTRACT states in part, "a processing unit responsive to the information signals and for providing output signals representative of proper steps to be taken in resuscitating the victim . . ."

9.) Donald C. Hutchins registered CPR prompting software in the form of written instructions, program printouts and computer disk to the U.S. Copyright Office at the Library of Congress in 1986. The copyrighted software included logic, graphics and

2

voice commands found in Hutchins' U.S. Patent Number 4,583,524 and Reissue Patent Number Re.34,800 "reduced to practice".

10.) On June 24, 1986 the United States Patent and Trademark Office registered the trademark "CPR PROMPT" in the name of Donald C. Hutchins attached herein as Exhibit D.

11.) In May of 2004 Hutchins realized that he had received no royalty payments or reports from The Complient Corporation ("Complient") since late summer in 2003. When he telephoned the Complient headquarters he learned that Complient had closed its operation.

12.) Hutchins was advised by the law office of Fish & Richardson that Complient had also failed to pay the most recent patent fees to Fish & Richardson as they had done on a regular basis since 1995. The accounts receivable department of Fish & Richardson determined that Complient was no longer in business and suggested that Hutchins pay the fees so the patents would not lapse. It was evident that Complient had abandoned the intellectual properties they had licensed from Hutchins as successor to County Line Limited and that the properties could be reclaimed by Hutchins.

13.) After learning that Complient was no longer in business, Hutchins made several efforts to contact Complient to reclaim his intellectual properties, marketing materials and tooling under terms of the June 1, 1994 License Agreement. There is no longer a listing for Complient in the Cleveland area and all notices from Hutchins to Complient management were left unanswered. At this point Hutchins had no recourse but to declare his intellectual properties abandoned by the Jon Lindseth group, reclaim them as specified in the Agreement and discuss licensing these properties to the Zoll Corporation.

14.) On April 29, 2004 Hutchins received a phone call from Attorney Randall T. Skaar who stated that he was a patent attorney representing Cardiac Science, Inc. Attorney Skaar said that Mr. William Parker had filed a patent infringement against Cardiac Science that involved patents that Hutchins had licensed to Complient Corporation. He followed the telephone conversation with a letter he sent the next day herein attached as Exhibit E.

15.) Hutchins had received no notification from Complient about the acquisition by Cardiac Science and was told by his patent attorneys that Complient had abandoned his patents, trademarks, and copyrights. Hutchins learned that since November of 2003 Cardiac Science has been and continues to manufacture and sell products covered by Hutchins' patents and is using the CPR Prompt® trademark on goods that it markets. As a result Cardiac Science is infringing on these patents and trademark.

16.) Hutchins telephoned the Channing Bete Company/ Distributor of American Heart Association Products. The Channing Bete Company is a Massachusetts company headquartered at One Community Place, South Deerfield, MA 01373. Channing Bete confirmed that since November of 2003 the CPR Prompt® product line had been manufactured and marketed by the Cardiac Science company of Irvine, CA. as disclosed on a printout of their web site herein attached as Exhibit F.

17.) Attorney Skaar sent e-mail attachments to Hutchins herein attached as Exhibit G that showed that Cardiac Science expected to use Hutchins' Patent #5,913,685. Cardiac Science has no legal claim to this patent. Its use by Cardiac Science would also infringe on Hutchins' properties. At the same time Attorney Skaar said that he knew of no patent attorney that had done due diligence on the Complient/Cardiac Science acquisition.

18.) Searches on the Internet provided Hutchins with press releases, security analyst reports, and Security and Exchange Commission Forms 8-K and 10-K that conveyed terms of the acquisition. A report from Wedbush Securities contained herein as Exhibit H condenses terms of the acquisition with these words, "Last week (October 21, 2003) Cardiac Science announced the acquisition of privately-held Complient Corporation for $47 million using 10.25 million shares of common stock."

19.) Hutchins developed and contracted with Texas Instruments, Inc. to manufacture the CPR Prompt® in the early 1980s. Realizing that he lacked the financial resources to bring a consumer model of the CPR Prompt® devise to market, Hutchins negotiated with a venture capitalist, Jon Lindseth, to license and develop a consumer version of CPR Prompt®.

20.) While Jon Lindseth operates a privately owned Cleveland company named Kindt-Collins, he became better known through his success with two ventures that he founded, the *Interplak* toothbrush and *Thermoscan* thermometer. *Interplak*, under the corporate name, Dental Research, sold to Bausch & Lomb in 1988 for $133 million dollars and *Thermoscan* to *Gillette* for an estimated $178 million dollars around 1993.

21.) Jon Lindseth suggested that he would start a new company and raise $14 million, as the minimum investment needed to bring CPR Prompt® to the consumer market. Jon's son, Steve Lindseth would manage this new venture that the Lindseths predicted could exceed the success Jon had had with *Interplak* and *Thermoscan*.

22.) Negotiations with Steve Lindseth to license Hutchins' Patents for a consumer version of CPR Prompt® came to an impasse in February of 1994, because Steve wanted to pay a very low royalty percentage of 2%. A week after Hutchins ended negotiations,

Jon and Steve called to re-open negotiations. Jon explained that the Lindseth's success with products like *Interplak* and *Thermoscan* came upon exiting the projects. Their plan would be to build a company around CPR Prompt®, develop the market and divest with an IPO or sale in about three years.

23.) While Jon Lindseth wanted to retain the low 2% royalty, he sweetened the deal by offering Hutchins and Hutchins' CPR Prompt Corporation 7-1/2% of the receipts when the venture was sold or went public as an IPO. If the new company had the same success as *Thermoscan* and *Interplak*, the share for the CPR Prompt Corporation and Hutchins could equal over $10 million. Jon said that this was the first time they had ever offered a patent owner participation in their exit strategy. He was willing to do the 7-1/2% deal if the royalty payments were low and the Lindseths took total control of the US and foreign patents and the "CPR Prompt®" trademark.

24.) Hutchins agreed to the 7-1/2% deal and Jon Lindseth communicated the terms to his attorney, Mark Kaufman of Southland, Asbill and Brennan of Atlanta, Georgia. On May 17, 1994, Attorney Kaufman sent a first draft of the Agreement to Attorney Gary Martinelli and Hutchins. This draft, attached herein as Exhibit I, correctly stated the terms that Jon Lindseth and Hutchins had negotiated earlier. Paragraph 3:10 states:

> "**3:10 LICENSEE will cause each shareholder of LICENSEE who purchases common stock of LICENSEE directly from LICENSEE to agree to pay to LICENSOR seven and one-half percent (7-1/2) of the net proceeds of any sale of any or all of such common stock to any person or entity which is not an Affiliate of such selling stockholder. . ."**

25.) Section 3.10 was later changed in a subsequent draft to accommodate the fact that County Line Limited was a partnership that continued to include the bird feeder and Christmas tree product lines. It was understood that County Line would eventually divest

itself from the bird feeder and Christmas tree stand products as separate companies and build a new entity around CPR Prompt®. The 7-1/2% exit strategy would apply to that new CPR Prompt® entity or continue to apply to County Line Limited and it successors if CPR Prompt® were not divested and remained with County Line Limited or its successors and affiliates.

26.) Section 3.10 was changed in the final draft of the Agreement signed June 1, 1994 to accommodate the fact that County Line Limited was a partnership that continued to include the bird feeder and Christmas tree product lines. Pending divestiture of the bird feeder and Christmas tree stand lines; Hutchins agreed to allow the Patents to be held in a separate entity. When the divestiture occurred and CPR Prompt LLC succeeded County Line, the License Agreement would be held by and the 7-1/2% applied to the shareholders of CPR Prompt LLC. When the Complient Corporation succeeded CPR Prompt LLC the same terms and exit strategy would apply to the new shareholders because all these companies were affiliates.

27.) In 1995 Hutchins developed the consumer CPR 100 under contract to County Line Limited. This model was marketed by County Line and the instruction and warrantee book carried the CPR Prompt Trademark, copyrights and the U.S., Canadian and European patents owned by Hutchins as herein attached as Exhibit J.

28.) In September of 1994, Attorney Scott Wilson of Calfee, Halter and Griswold of Cleveland, Ohio sent a License Agreement to Attorney Martinelli requesting Hutchins' signature both as patent owner and as President of the CPR Prompt Corporation. Recognizing that this License Agreement was a fabrication that completely distorted the intention of section 3:10 and the 7-1/2% exit distribution formula, Attorney Martinelli

advised against Hutchins signing or recognizing this Agreement. Hutchins never signed or accepted the validity of the Agreement dated September 19, 1994.

29.) CPR Prompt LLC succeeded County Line Limited after County Line Limited divested itself of the Christmas tree and bird feeder product lines. At that point, all the products marketed by CPR Prompt Limited carried the CPR Prompt logo. CPR Prompt LLC submitted the quarterly reports to Hutchins and paid the quarterly royalty payments under terms of the License Agreement signed June 1, 1994. The original shareholders of County Line Limited continued to participate as shareholders of CPR Prompt LLC.

30.) CPR Prompt LLC was succeeded by the Complient Corporation. The Complient Corporation continued to assume the responsibilities for royalty payments and quarterly reports to Hutchins (dba CPR Prompt Corporation) as per Exhibit K.

31.) Using Hutchins' trademark, patents, copyrights and trade secrets as the primary asset, the Jon Lindseth group raised over $54 million in venture capital in various stages through the succession of County Line Limited, CPR Prompt LLC and Complient Corporation.

32.) Using Hutchins' trademark, patents, copyrights and trade secrets as the primary asset, the Jon Lindseth group in October 2003 was able to sell these assets to Cardiac Science for a reported $47 million.

33.) The $54 million in venture capital plus the $47 million from Cardiac Science produced over $100 million for the Jon Lindseth group. The trademark, patents, copyrights and trade secrets that he placed in the hands of the Jon Lindseth group, has returned nothing to Hutchins.

34.) On June 5, 2004 Hutchins sent a letter to Cardiac Science's representative, Attorney Randall Skaar, to inform Cardiac Science of the infringement, negligence and breach of contract violations. This effort by Hutchins to resolve these issues has received no response from Cardiac Science or Attorney Skaar.

35.) These allegations are testified to and supported by an affidavit by Donald C. Hutchins included herein as Exhibit L.

## Count I

(Copyright Infringement)

36.) Hutchins adopts by reference the allegations of paragraphs 1 through 35.

37.) The software design of the CPR Prompt® currently being sold by the Cardiac Science, Inc. through Channing Bete and other distributors violates the Copyright Act of 1976 with the use of a series of images and voice commands originally created as algorithms used for CPR Prompting software copyrighted by Hutchins.

38.) Such terms as "Are you OK" and "Call for help" and graphic instructions depicting proper compressions, opening of airways, chin lifts and breathing are identical to the series of images created by Hutchins in his copyrighted material.

39.) Cardiac Science has used Hutchins' copyrighted expression in the CPR Prompt® units that they are currently distributing in violation of the Copyright Act of 1976. Cardiac Science engineers knew of Hutchins' speech and graphic CPR prompting software because this software has controlled over 300,000 *CPR Prompt®* units that have been sold in the past 18 years.

## Count II

(Patent Infringement by Means of Sales)

40.) Hutchins adopts by reference the allegations of paragraphs 1 through 39.

41.) Cardiac Science has not licensed or sub-licensed any intellectual properties from Hutchins.

42.) Hutchins has not agreed to any transfer of his intellectual properties to Cardiac Science by Complient or any other licensee of Hutchins' intellectual properties.

43.) Cardiac Science has infringed Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 of Patent RE 34,800 through the illegal sale of CPR Prompt® units not authorized by Hutchins as patent owner.

## Count III

(Patent Infringement by Means of Manufacture)

44.) Hutchins adopts by reference the allegations of paragraphs 1 through 43.

45.) Cardiac Science has infringed Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 of Patent RE 34,800 through the illegal manufacture of CPR Prompt® units not authorized by Hutchins as patent owner.

## Count IV

(Negligence)

46.) Hutchins adopts by reference the allegations of paragraphs 1 through 45.

47.) Cardiac Science as a publicly traded company under rules of the SEC owed a duty to its shareholders, the Complient Corporation and Hutchins to perform sufficient due diligence to know and understand the assets being acquired from the Complient Corporation.

48.)    Cardiac Science was negligent in not performing sufficient due diligence when evaluating the License Agreement dated June 1, 1994 between Hutchins and County Line Limited. Cardiac Science had a duty to Hutchins to understand that Complient should communicate terms of the acquisition to Hutchins and to demand of Complient that such action be accomplished before completing the asset acquisition.

49.)    Cardiac Science was negligent not performing sufficient due diligence in reading and understanding the License Agreement dated June 1, 1994 between Hutchins and County Line Limited to understand that Hutchins was due 7-1/2 % of the proceeds of the sale to Cardiac Science.

50.)    By completing the acquisition with no understanding of the terms of the License Agreement dated June 1, 1994, Cardiac Science has caused great financial damage to Hutchins. Hutchins can recover in part from these damages if Cardiac Science meets the terms of the License Agreement that they have acquired from Complient and for which they are now responsible.

51.)    When the payment of the $47,000,000 acquisition cost is paid Cardiac Science to Complient stockholders it will be impossible for Hutchins to chase down every one of these stockholders to recover his 7-1/2 % share from each of them. Therefore it is incumbent upon Cardiac Science to retain sufficient funds from the stock transfer trust account to pay Hutchins this 7-1/2%. If this trust account is depleted, the Cardiac Science management must search-out each Complient stockholder in the future to reclaim the funds owed to Hutchins.

## Count V

(Negligence)

52.) Hutchins adopts by reference the allegations of paragraphs 1 through 51.

53.) Cardiac Science was negligent not performing sufficient due diligence in reading and understanding a License Agreement dated September 19, 1994. It is self-evident that this September 19, 1994 License Agreement, as found in the SEC 8K Report, does not bear Hutchins' signature and is not valid as it relates to Hutchins' intellectual properties..

54.) Cardiac Science relied on this document when attempting to acquire Hutchins' intellectual properties from Complient. Cardiac Science was misled by Complient into believing the License Agreement dated September 19, 1994 and referenced in the SEC 8K filing is legitimate. However, the negligence of Cardiac Science in not practicing even a minimum standard of due diligence while inspecting this document has led to this debacle that is causing extensive financial damage to Hutchins.

## Count VI

(Breach of Contract)

55.) Hutchins adopts by reference the allegations of paragraphs 1 through 54.

56.) Should the Court accept the unfounded position, that Cardiac Science is the successor to Complient in terms of the License Agreement dated June 1, 1994; the Court should understand that Cardiac Science has not met and is not meeting the terms of that contract.

12

57.)   Cardiac Science has not met the terms of the License Agreement dated June 1, 1994 with regard to royalty payments, minimum yearly payments, and quarterly reports to Hutchins.

58.)   Cardiac Science has failed to pay patent fees to Fish & Richardson as Complient and its predecessors have done since 1995. Hutchins has been forced to accept this burden to prevent having the patents lapse.

59.)   As the successor to Complient, Cardiac Science is responsible for guaranteeing that the terms of the Agreement are being met. In the event of a sale of the License to a party not related to the Jon Lindseth group, the Agreement states that Hutchins will receive 7-1/2 % of proceeds from the sale from each individual stockholder. This obligation could easily be met by Cardiac Science by diverting 7-1/2% of the stock that they are transferring to the Complient Corporation, to Hutchins. It is the responsibility of Cardiac Science as the successor to County Line/CPR Prompt LLC and Complient to fulfill this obligation.

WHEREFORE, (Hutchins) prays that judgment be entered in his favor as follows:

(a)   On Count I, that a judgment be entered against the Defendant in the sum of $120,000 plus interest and costs as fixed by the Court and that the Defendant be ordered to cease any further infringement of Hutchins' Copyright.

(b)   On Count II, that a judgment be entered against the Defendant in the sum of $150,000 plus interest and costs as fixed by the Court and that the

Defendant be ordered to cease any further infringement of Hutchins' Patents RE 34,800 and 5,913,685.

(c) On Count III, that a judgment be entered against the Defendant in the sum of $150,000 plus interest and costs as fixed by the Court and that the Defendant be ordered to cease any further infringement of Hutchins Patents RE 34,800 and 5,913,685.

(d) On Count IV, that a judgment be entered against the Defendant for damages in the sum of $3,525,000 plus interest and costs as fixed by the Court. This figure represents 7-1/2% of the proceeds of the sale to Cardiac Science.

(e) On Count V, that a judgment be entered against the Defendant for damages in the sum of $3,525,000 plus interest and costs as fixed by the Court. This figure represents a 7-1/2% of the proceeds of the sale to Cardiac Science.

(f) On Count VI, that a judgment be entered against the Defendant recognizing that Cardiac Science has no right to Hutchins' intellectual properties that Hutchins has reclaimed from County Line Limited and its successors as parties to the Agreement with Hutchins dated June 1, 1994.

(g) On Count VI, should the Court accept the position that Cardiac Science is the successor to Complient in terms of the License Agreement dated June 1, 1994, that judgement be entered that Cardiac Science divert 7-1/2% of the stock that they are transferring as payment to the Complient Corporation, to Hutchins.

(h)   The infringements, negligence and breach of contract was willful on the part of the Defendant and continued after notification by Hutchins and without any belief by Cardiac Science that Hutchins' Patents #4,583,524, #Re34,800 and #5,913,685 were not valid. That Cardiac Science contemptuously infringed on Hutchins' intellectual properties with the mistaken belief that Hutchins, as "the little guy," could not afford the legal costs to protect these properties through the federal court system. On any and all Counts that a judgment be entered against the Defendant to increase damages up to three times the damages assessed in accordance Title 35 United States Code, Section 285.

60.)   Demand for Trial by Jury.

The Plaintiff, DONALD C. HUTCHINS, Pro Se

Dated: 7/2/04

*[signature]*
1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 734-2625
(413) 739-4060 (facsimile)

## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by registered mail to: Cardiac Science, Inc., 1900 Main Street, Suite 700, Irvine, CA 92614, Attn: Mr. Raymond W. Cohen, Chief Executive Officer.

Dated: 7/2/04     *[signature]*
                  Richard J. Moriarty