# AGREEMENT OF LIMITED PARTNERSHIP

THIS AGREEMENT OF LIMITED PARTNERSHIP (this "Agreement") is entered into as of the 1? day of Sept., 1994, by and between COUNTY LINE LIMITED PARTNERSHIP, a Delaware limited partnership, as General Partner (the "General Partner") and CATALOG PRODUCTS, INC., an Ohio Corporation, as Limited Partner (the "Limited Partner"). Reference herein to "Partners" without designation as to "General" or "Limited" includes both the General Partner and the Limited Partner, and singular and plural forms are not restrictive as to numbers.

## ARTICLE 1

### Organization

Section 1.1 Names and Addresses. The firm name and style shall be CPR LIMITED PARTNERSHIP (the "Partnership"). The Partnership shall be a limited partnership organized under the laws of the State of Ohio.

Section 1.2 Place of Business. The principal place of business of the Partnership shall be 4543 Taylor Lane, Warrensville Heights, Ohio 44128 or such other address as shall be designated by the General Partner. The names and addresses of each member of the Partnership are set forth on Schedule A hereto. The name and address of the agent for service of process shall be Steven W. Lindseth, 4543 Taylor Lane, Warrensville Heights, Ohio 44128.

Section 1.3 Purposes. The purposes of the Partnership shall be the following:

(A) to acquire the rights and obligations of that certain license (the "License") pursuant to the terms of that certain License Ageement (the "License Agreement") dated as of June 1, 1994, by and between County Line Limited Partnership, CPR-Prompt Corporation, a Massachusetts Corporation ("CPR-Prompt") and Donald C. Hutchins;

(B) to make, have made, use, sell, lease, sublicense and have sold and leased the "Licensed Products" pursuant to the terms of the License Agreement; and

(C) to carry on any and all other business allowed under the laws of the State of Ohio.

Section 1.4 Filing of Certificates. The General Partner shall sign, acknowledge and cause to be filed on behalf of the Partnership such partnership or assumed or fictious name certificate(s) as may from time to time be required by applicable law in any jurisdiction in which the Partnership is engaged in business, and shall take such other actions as may be necessary or

EXHIBIT 2

appropriate to maintain the status of the Partnership as a limited partnership under the laws of any such jurisdiction.

Section 1.5  Duration of Partnership. The term of the Partnership shall commence upon the filing of a Certificate of Limited Partnership for record with the Secretary of State of the State of Ohio, and shall continue until December 31, 2050, unless sooner terminated by operation of law or pursuant to the provisions hereof. The General Partner shall have the right to extend the term of the Partnership for an additional time period necessary to permit the achievement of the Partnership's purposes as set forth in Section 1.3 herein, upon prior written notice to the Limited Partners.

ARTICLE 2

Capital Contributions

Section 2.1  Capital Contributions; Percentage Interests. Each Partner's capital contribution to the Partnership ("Capital Contribution") shall consist of the total amount of cash contributions and the fair market value of property contributed by such Partner as set forth on Schedule A. Each Partner, by executing this Agreement, agrees that: (A) the value assigned to each non-cash item on Schedule A, if any, is the agreed fair market value thereof; and (B) each Partner shall have the percentage interest in the Partnership ("Percentage Interest") set forth opposite such Partner's name on Schedule A. No interest shall be paid on any Capital Contribution.

Section 2.2  Additional Capital Contributions. (A) Each Partner has made the Capital Contribution(s) reflected on Schedule A. In the event the General Partner at any time(s), acting in accordance with the provisions of Article 4 hereof, determines that capital in excess of such Capital Contributions is needed to operate and conduct the business of the Partnership, each General Partner shall be obligated to make one or more additional Capital Contributions ("Additional Capital Contributions"). Any Additional Capital Contributions shall be made by all General Partners in proportion to their respective Percentage Interests.

Section 2.3  Adjustment of Percentage Interests. The Partners' Percentage Interests, as set forth on Schedule A, shall be adjusted from time to time, as deemed necessary or appropriate by the General Partner, to reflect any disproportionate contributions or withdrawals of capital to or from the Partnership.

Section 2.4 Limited Partner Liability. Anything in this Agreement or elsewhere to the contrary notwithstanding, the personal liability of each of the Limited Partners arising out of or in any manner relating to the Partnership shall be limited to

and shall not exceed the amount of the Capital Contribution made by such Limited Partner. Notwithstanding any provision to the contrary contained herein, no Limited Partner shall incur any liability, or be deemed to be participating in the control or management of the Partnership, by virtue of such Limited Partner, or any representative of such Limited Partner, (a) possessing or exercising any rights afforded the Limited Partners under the terms of this Agreement or (b) serving as an officer or director of, or otherwise participating in the activities of, the General Partner.

## ARTICLE 3

### Profit, Loss and Distributions

Section 3.1  Allocation of Profits and Losses. The Profits and Losses of the Partnership (as defined in Section 3.3 hereof), and each item of gain, deduction, loss or credit included therein, shall be allocated among the Partners in proportion to their Percentage Interests.

Section 3.2  Tax Allocations. (A) Except as provided in paragraph (B) of this Section, Partnership income, gain, loss and deduction for tax purposes for any year or other fiscal period shall be divided among the Partners in the same proportions as they share Profits or Losses, as the case may be, for such year.

(B) Notwithstanding paragraph (A), in the event the book value of any Partnership asset at any time is different than the adjusted basis of such asset for federal income tax purposes, allocations of income, gain, loss and deduction for tax purposes with respect to such asset shall take into account the variation between the book value of such asset and the adjusted basis of such asset for federal income tax purposes as required under, or in the same manner as described in, Code Section 704(c) and Regulations thereunder.

Section 3.3  Accounting; Determination of Profits and Losses. Partnership books shall be kept on the cash or accrual basis as determined by the Partnership's accountants. The fiscal year of the Partnership shall be the calendar year ("Fiscal Year"). The terms "Profits" and "Losses" as used in this Agreement shall mean the Partnership's "book" profits or losses (as the case may be), as determined in accordance with the provisions and principles of the Regulations promulgated under Sections 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended. Profits and Losses of the Partnership shall be considered to have been earned ratably over the period of the Fiscal Year of the Partnership, except that Profits and Losses arising from the disposition of Partnership assets shall be taken into account as of the date thereof.

Section 3.4  Partners' Accounts. (A) A capital account ("Capital Account") shall be maintained for each Partner. As funded and adjusted in accordance with this Agreement, the Capital

Accounts of the Partners shall (as hereinafter described) reflect the underlying economic arrangement of the Partners. Each such Capital Account shall be credited with:

    (1) such Partner's Capital Contributions made to the Partnership; and

    (2) such Partner's allocations of Profits;

and shall be debited with:

    (3) any distributions of cash to such Partner, from whatever source;

    (4) any distributions of Partnership property to such Partner to the extent of the fair market value thereof on the date of distribution (net of any liabilities assumed by such Partner or to which such distributed property is subject); and

    (5) such Partner's allocations of Losses.

(B) In the event that, immediately prior to the dissolution and liquidation of the Partnership, any General Partner shall have a deficit in such General Partner's Capital Account as determined under Paragraph (A) above (or as otherwise defined in the Code or in any rule or regulation promulgated thereunder) then such General Partner shall contribute in cash to the capital of the Partnership an amount equal to such deficit.

Section 3.5 Distributions. (A) From time to time, the General Partner may make a determination of the amount of Surplus Cash, if any. "Surplus Cash" shall be deemed to mean the excess of the cash (or equivalents thereof) held by the Partnership over the amounts required to be retained pursuant to any agreement or contract to which the Partnership may be a party plus the amount necessary to meet the reasonably foreseeable working capital needs of the Partnership.

(B) The amount of Surplus Cash, as so determined, shall be distributed among the Partners, at such times as the General Partner, in its sole discretion may determine, in proportion to their respective Percentage Interests, after deducting any amount owed by any Partner to the Partnership.

(C) No Partner shall be entitled to make any withdrawal from such Partner's Capital Account except: (1) as hereinabove provided in this Section; (2) upon winding up of the Partnership; or (3) upon the discretion of the General Partner.

ARTICLE 4

Powers, Duties, Liabilities, and Compensation of Partners

Section 4.1  Powers of Partners.  (A)  The General Partner shall manage and control the Partnership, with full right, power and authority to make all decisions and take all actions affecting or related to the business or assets of the Partnership, subject only to the limitations on authority expressly set forth in Section 4.5 hereof.  The General Partner is hereby authorized to execute, acknowledge and deliver any and all instruments to effectuate the foregoing, and to take all such action in connection therewith, as the General Partner shall deem necessary or appropriate.

(B)  Except as where this Agreement specifically states otherwise, the powers of the General Partner and all Partnership decisions shall be accomplished upon the discretion of the General Partner.

Section 4.2  Compensation of Partners.  A Partner shall receive reasonable compensation from the funds of the Partnership for any services rendered or duties performed in connection with any particular undertaking or for the management of the operations of the Partnership.  The General Partner may employ from time to time persons, firms or corporations for the operation and management of any and all properties which may come under the ownership or control of the Partnership including, without limitation, accountants and attorneys on such terms and for such compensation as the General Partner shall determine.

Section 4.3  Reliance on Authority of General Partner.  In no event shall any person dealing with the General Partner with respect to any property of the Partnership be obligated to see that the terms of this Agreement have been complied with, or be obligated to inquire into the necessity or expediency of any act or omission to act of the General Partner, and every contract, agreement, deed, mortgage, lease, promissory note or other instrument or document executed by the General Partner with respect to any property of the Partnership shall be conclusive evidence in favor of any person relying thereon or claiming thereunder that (A) at the time of the execution or delivery thereof, the Partnership was in full force and effect, (B) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Partnership, and (C) the General Partner was duly authorized and empowered to execute and deliver any such instrument or document on behalf of the Partnership.

Section 4.4  Prohibitions on Actions and Limitation of Powers of Partners.  The Partners have no authority:

(A)  to do any act in contravention of this Agreement;

(B) to do any act which would make it impossible to carry on the ordinary business of the Partnership;

(C) to possess Partnership property or assign the rights of the Partnership in specific Partnership property for other than a Partnership purpose;

(D) except with the discretion of the General Partner, to require partition of Partnership property or compel any sales or appraisements of Partnership assets or sale of a deceased Partner's interest therein, notwithstanding any provision of law to the contrary.

Section 4.5  Liabilities of Partner. In carrying out his/her/its duties hereunder, a Partner shall not be liable to the Partnership or to any other Partner for any actions (including failure to act) taken by him/her/it in good faith and reasonably believed to be in the best interests of the Partnership, but shall only be liable for willful misconduct, fraud, gross negligence, or breach of his/her/its fiduciary duties to the Partnership or other Partners.

Section 4.6  Tax Elections. All elections required or permitted to be made by the Partnership under the Code shall be made by the General Partner. The General Partner shall act as "Tax Matters Partner" for the Partnership, as that term is defined in, and for all purposes of, Section 6231(a)(7) of the Code.

ARTICLE 5

Banking and Books

Section 5.1  Banking. All funds of the Partnership shall be deposited in such checking and savings accounts or time certificates as shall be designated from time to time by the General Partner. All Partnership checks written upon, and any withdrawals from, any such bank account or accounts shall be made by such persons as may be designated by the General Partner from time to time.

Section 5.2  Books. The Partnership shall maintain full and accurate books at its principal office or such office as shall be designated for such purpose by the General Partner, and all Partners shall have the right to inspect and examine such books at reasonable times. The books shall be closed and balanced at the end of each calendar year and annual statements shall be prepared showing (A) cash receipts and disbursements, and (B) Partnership Profits and Losses for the calendar year. Statements reflecting the foregoing and information returns or statements showing taxable income or loss for each Partner (and any tax credits arising from Partnership operations) shall be prepared by the accountants for the Partnership and distributed to all the Partners within a reasonable time after the close of each calendar year. Accounts

also shall be maintained showing the basis for federal income tax purposes of each Partner's interest in the Partnership, and the Partners shall be advised of such basis annually.

## ARTICLE 6

### Death, Withdrawal

Section 6.1  Death of a Limited Partner. In the event any Limited Partner shall die, his/her/its personal representative, heirs, successor in interest or assigns shall be substituted in the Partnership as a Limited Partner in his/her/its place upon compliance with the provisions of the Revised Uniform Limited Partnership Act of Ohio.

Section 6.2  Withdrawal of Partners. No Partner shall be entitled to withdraw from the Partnership unless such withdrawal is in connection with (A) a transfer or assignment of all of the interest in the Partnership of such Partner made in accordance with all of the terms and conditions of the Agreement, or (B) the dissolution and termination of the Partnership.

## ARTICLE 7

### Dissolution of Partnership

Section 7.1  Time of Dissolution. This Partnership shall dissolve and terminate: (A) upon the date set forth in Section 1.5 hereof; (B) upon the occurrence of an event of withdrawal with respect to the General Partner, as such is defined under the provisions of the Revised Uniform Limited Partnership Act of Ohio; or (C) at any time upon the discretion of the General Partner.

Section 7.2  Method of Distribution Upon Dissolution. In the event of the dissolution of the Partnership, the affairs of the Partnership shall be liquidated forthwith and the proceeds of such liquidation shall be applied and distributed in the following manner and order of priority:

  (A) to the payment of the debts and liabilities of the Partnership (other than any loans or advances that may have been made by the General or Limited Partner to the Partnership) and the expenses of liquidation;

  (B) to the setting up of any reserves which the General Partner may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership. Said reserves shall be paid over by the General Partner to any attorney at law of the State of Ohio, as escrow agent, to be held by him/her for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies, and, at the expiration of such period as the General Partner shall deem advisable, to distribute

the balance thereafter remaining in the manner provided in Paragraphs (C), (D) and (E) of this Section 7.2 in the order named;

(C) to the repayment of any loans or advances that may have been made by any of the Partners to the Partnership, but if the amount available for such repayment shall be insufficient, then prorata on account thereof;

(D) to the payment of the balance, if any, of the respective Capital Accounts of the Partners, but if the amount available for such payment shall be insufficient, then prorata among all Partners in such manner that each Partner shall receive the same proportion of the net proceeds then available for distribution as his/her Capital Account bears to the aggregate Capital Accounts of all Partners; and

(E) any balance remaining shall be distributed among all Partners, General and Limited, in proportion to their then Percentage Interests.

Section 7.3   Orderly Liquidation.  A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities to creditors so as to enable the General Partner to minimize the normal losses attendant upon a liquidation.

Section 7.4   Accounting in Connection with Liquidation. Each of the General and Limited Partner shall be furnished with a statement prepared by the Partnership's accountants, which shall set forth the assets and liabilities of the Partnership as of the date of completed liquidation.  Upon the General Partner's complying with the foregoing distribution plan, the Limited Partner shall cease to be such, and the General Partner, as the sole remaining Partner of the Partnership, shall execute, acknowledge and cause to be filed a Certificate of Cancellation of the Partnership.

## ARTICLE 8

### Transfer of Partnership Interest

Section 8.1   Right to Transfer.  No General or Limited Partner shall be entitled to mortgage, assign, pledge, alienate, sell, transfer or in any other manner encumber or dispose of all or any portion of his/her/its interest in the Partnership unless each of the applicable provisions of this Article 8 is complied with in full.

Section 8.2   Assignee of Limited Partner.  No Limited Partner shall sell or assign his/her/its economic interest in the Profits and Losses and Surplus Cash of the Partnership (the "Interest") without the written consent of the General Partner and a majority in interest of the Limited Partners.  No such transferee

-8-

or assignee shall, without the written consent of the General Partner and a majority in interest of the Limited Partners, other than the transferor Partner, acquire the status of a "limited partner" under the laws of the State of Ohio. Upon transfer of such Interest, the transferee Limited Partner shall execute and deliver an agreement, certificates, satisfactory in form and substance to the General Partner, to be subject to and bound by all of the terms and provisions of this Agreement. The transferee Limited Partner shall also pay all reascnable expenses ( as the General Partner may determine), including the Partnership's legal fees, connected with such admission or substitution.

Section 8.3 Absolute Restriction. Notwithstanding any provision of this Partnership to the contrary, the sale or exchange of an interest in the Partnership will not be permitted if the interest sought to be sold or exchanged, when added to the total of all other interests sold or exchanged within the period of twelve (12) consecutive months ending with the proposed date of the sale or exchange, results in the termination of the Partnership under Section 708 of the Code.

Section 8.4 Transfer of Capital Account. In the event any Partnership interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred Partnership Interest.

Section 8.5 Payment to CPR Prompt. (A) The General Partner and the Limited Partner shall pay to CPR Prompt seven and one-half (7.5%) of the "Net Proceeds" (as defined in Section 8.5(B) hereof) of any sale of any or all of such Partner's Interest to any person or entity which is not an Affiliate (as defined in Section 8.5(C) hereof) of such Partner. In the event such 7.5% payment is neither (1) deductible for federal or state income tax purposes by the selling partner nor (2) a proper adjustment in the tax basis of the selling partner, the "Net Proceeds" of such Partner shall be further reduced by the federal or state income taxes attributable to the gain on such sale. If the Net Proceeds from the sale are paid other than in cash, such Partner may elect in satisfaction of the obligations to CPR-Prompt pursuant to Section 8.5 hereof, to have CPR-Prompt receive its 7.5% payment either in (1) the same type of consideration that such Partner receives from the sale, or (2) a cash payment based upon the fair market value of such consideration on the date of the closing of the sale. After the sale of all such partnership interests to a single purchaser (which is not an Affiliate) in a single transaction, whether by direct sale, merger, consolidation or other transaction pursuant to which CPR-Prompt receives the 7.5% payment, the obligation to cause each Partner thereafter to agree to make such payments shall expire. If the General Partner or the Limited Partner conducts a public offering under the Securities Act of 1933, no person or entity purchasing an interest in such offering or from such Affiliate thereafter shall be required to agree to make such payments.

(B) "Affiliate" of any person or entity shall mean any person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with first mentioned person or entity; and for purposes hereof, the term "control" shall mean possession, directly or indirectly or as a trustee, executor or administrator, of the power to direct or cause direction of the management or policies of a person or entity, either through the ownership of stock or other securities, by contract or otherwise.

(C) "Net Proceeds" shall mean the proceeds received by such Partner for such sale after deduction of an amount equal to the sum of (1) the actual and documented legal, accounting, travel and all other expenses attributable to the sale, (2) the actual and documented broker's commissions, finders' fees and similar costs attributable to the sale, and (3) all other actual and documented costs and expenses attributable to the sale.

## ARTICLE 9

### Miscellaneous

Section 9.1  Federal Income Tax Elections. In the event of a transfer of all or part of the interest of any Partner in the Partnership, the Partnership may elect pursuant to Section 754 of the Code (or any similar provision enacted in lieu thereof) to adjust the basis of the assets of the Partnership upon written request of the transferee, unless such election would have a materially unfavorable effect upon a majority in interest of the Partners.

Section 9.2  Governing Law. The Partnership and this Agreement shall be governed by and construed in accordance with the laws of the State of Ohio applicable to contracts made and to be wholly performed in such state.

Section 9.3  Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement, and the signature of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.

Section 9.4  Entire Agreement. This Agreement contains the entire understanding among the parties and supersedes any prior understanding and agreements between them respecting the within subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties hereto relating to the subject matter of this Agreement which are not fully expressed herein.

Section 9.5  Severability. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the jurisdictions in which the Partnership does business. If any provision of this Agreement, or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby but rather shall be enforced to the greatest extent permitted by law.

Section 9.6  Waiver of Appraisement. An inventory and appraisement of the Partnership assets and sale of a deceased Partner's interest therein, as provided by law, or an account of the operations or any other rule of law in effect during the term of this Partnership relative to the death of a Partner is hereby waived and dispensed with, and the interest in the Partnership of a deceased Partner shall be subject to the provisions set forth herein.

Section 9.7  Notices. All notices pursuant to this Agreement shall be in writing, delivered as follows:

(A) If to the Partnership, to:

CPR Partners Limited Partnership
4543 Taylor Lane
Warrensville Heights, Ohio 44128
Attention: Mr. Steven W. Lindseth

(B) If to the Partners, at the address for such Partner listed on Schedule A of this Agreement or to such other address as may have been designated by such Partner in a prior notice.

Notices delivered by registered mail or a national overnight air courier service shall be deemed to have been given three business days and one business day, respectively, after the day of registration or documented acceptance by the national overnight air courier service, as the case may be, and otherwise notices shall be deemed to have been given when received.

Section 9.8  Amendment. This Agreement may be amended by written instrument without the unanimous approval of the Partners unless the adoption of such amendment is adverse to the interests of the Limited Partner.

Section 9.9  Pronouns and Plurals. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require.

IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement as of the date first above written.

COUNTY LINE LIMITED PARTNERSHIP

BY: CATALOG PRODUCTS, INC.

BY: _____, President

"GENERAL PARTNER"

CATALOG PRODUCTS, INC.

By: _____, President

"LIMITED PARTNER"

Acknowledged and Agreed to this ____ day of _____, 1994.

CPR-PROMPT CORPORATION

By:_____
   Donald C. Hutchins, President


_____
Donald C. Hutchins

L/22775AAC.999

-12-

## SCHEDULE A

| Name and Address | Capital Contribution | Percentage Interest as General Partner | Percentage Interest as Limited Partner |
|---|---|---|---|
| PARTNERS: | | | |
| County Line Limited Partnership<br>543 Taylor Lane<br>Warrensville Heights, Ohio 44128 | $100,000 | 99% | |
| Catalog Products, Inc.<br>543 Taylor Lane<br>Warrensville Heights, Ohio 44128 | $ 1,000 | | 1% |
| Total | $101,000 | | |

01/22775AAC.999