UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action: 04-30126-MAP |
| v. ) | |
| ) | **PLAINTIFF'S MOTION** |
| ) | **TO STRIKE AND** |
| ) | **MEMORANDUM** |
| ) | **IN OPPOSITION TO** |
| ) | **DEFENDANT'S** |
| ) | **AMENDED MOTION** |
| ) | **TO DISMISS UNDER** |
| ) | **R 12(b)(1) and 12(b)(6)** |
| ) | **OF CIVIL PROCEDURE** |
| CARDIAC SCIENCE, INC. ) | |
| ) | |
| Defendant ) | |

Defendants' Amended Motion to Dismiss under Rules 12(b)(1) and rule 12(b)(6) filed August 23, 2004 should be stricken. The Complaint filed by Plaintiff, Donald C. Hutchins ("Hutchins"), was properly filed in pursuant to Rule 8(a) and includes: (1) a short statement upon which the Court's jurisdiction depends, (2) a short and plain statement of the claim, and (3) a demand for judgment for relief. Hutchins' Memorandum in support of this Motion to Strike will show that the Defendant's original Motion to Dismiss contained factual errors. The Amended Motion is based on an illegitimate Exhibit and the Defendant's incorrect belief that the Complient Corporation had a legal right to license Hutchins' intellectual property to Cardiac Science, Inc.

*The Plaintiff, DONALD C. HUTCHINS, Pro Se*

Dated: August 31, 2004

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 734-2625
(413) 739-4060 (facsimile)

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>)<br>v. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CARDIAC SCIENCE, INC. )<br>)<br>Defendant )<br>) | Civil Action: 04-30126-MAP<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS UNDER R 12(b)(1) AND 12(b)(6) <u>OF CIVIL PROCEDURE</u>** |

## ARGUMENT

I. <u>**THE COMPLIENT CORPORATION HAD NO LICENSE FOR, OR THE LEGAL RIGHT TO TRANSFER THE LICENSE FOR HUTCHINS' PATENT TO CARDIAC SCIENCE**</u>

A Court Order attached herein as Exhibit #1 and docketed February 12, 2001, in the Court of Common Pleas, Cuyahoga, Ohio clearly states the Complient Corporation is not a party to the License Agreement of June 1, 1994 and has no rights to Hutchins' intellectual properties that were licensed to County Line Limited.

The signed Affidavit of Steven Lindseth, the President and CEO of Complient, attached herein as Exhibit #2 testifies that Lindseth considers CPR Limited Partnership and not Complient to own rights to Hutchins' intellectual properties contained in the

2

markets products that carry Hutchins' Patent numbers through the Channing Bete Company of One Community Place, South Deerfield, MA 01373. The damages claimed overwhelmingly exceed the $75,000 standard for federal action..

On July 21, 2004 Cardiac Science announced that it had completed a private placement of common stock and warrants raising approximately $12.4 million in gross proceeds. The Security and Exchange Commission Form 8-K accompanied the private placement. The cover and signature pages are herein attached as Exhibit #4 and the full 8-K is available from the SEC web site. The Form 8-K describes the Complient transfer of Hutchins' intellectual properties to Cardiac Science. Page 6 of the 8-K states, "To the Company's knowledge .. there are no third parties who have any ownership rights to any intellectual property ... there is no sales of any products that would constitute an infringement ... there is no pending legal suite challenging the validity or scope of any intellectual property owned, licensed or optioned to the Company. .. which would have a Material Adverse Effect."

The major purchaser of this the $12.4 million private offering is Massachusetts Mutual Life Insurance Company located at 1500 Main Street, Suite 2800, Springfield, Massachusetts. 1500 Main Street is across Bridge Street, next door to this courthouse. It is certain that the officials of Massachusetts Mutual would expect that jurisdiction over the issues involved in this Action would find no better place for resolution than this Court. It is well documented that the federal court system and the Security and Exchange Commission have jurisdiction over Cardiac Science as a publicly traded company.

## CONCLUSION

The Defendant has answered Hutchins' Complaint with only this confused Amended Motion to Dismiss. The Defendant amended the original Motion to Dismiss, "in order to amend certain factual reference errors." Regrettably, this amended version bears the same impediments plus an illegitimate document titled Exhibit #2

After years of losing money, Complient Corporation elected to sell its assets to Cardiac Science for $46.2 million, distribute the proceeds to their stockholders and dissolve the Corporation. Exhibit #5 discloses that $42.5 million of the purchase price was independently appraised as goodwill. This goodwill consisted mostly of intellectual property owned by Hutchins.

Undisclosed to Cardiac Science as buyer was the fact that years earlier Complient had gone to court in Ohio to show that Complient was not a party to the June 1, 1994 License Agreement with Hutchins. As a consequence Complient could not legally transfer Hutchins' intellectual properties to Cardiac Science. For Complient to include Hutchins in the sale would have triggered substantial payments to Hutchins from the investors and principals of Complient.

Hutchins was not and has never been notified of the sale. Customary due-diligence as required under SEC Rules for public traded companies would have revealed Complient's deceit to Cardiac Science. As a consequence Cardiac Science has no right to practice Hutchins' patents and is infringing with every unit that is being and has been manufactured, distributed or sold since October of 2003.

CASE NO. 429394                 ASSIGNED JUDGE MATIA

Compliment                 VS   CPR

- [ ] 02 REASSIGNED
- [ ] 03 REINSTATED (C/A)
- [ ] 04 REINSTATED
- [ ] 20 MAGISTRATE
- [ ] 40 ADR
- [ ] 65 STAY
- [ ] 69 SUBMITTED

DISPOSITION

- [ ] 81 JURY TRIAL
- [ ] 82 ADR DECREE
- [ ] 83 COURT TRIAL
- [ ] 85 PRETRIAL
- [ ] 86 FOREIGN JUDGMENT
- [ ] 87 DIS. W/O PREJ
- [ ] 88 BANKRUPTCY/APPEAL STAY

- [ ] 89 DIS. W/PREJ.
- [ ] 91 COGNOVITS
- [ ] 92 DEFAULT
- [ ] 93 TRANS TO COURT
- [ ] 95 TRANS TO JUDGE
- [x] 96 OTHER MSJ

CIVIL CASE STATUS FORM

NO. JURORS ____
START DATE __/__/__
END DATE __/__/__

COURT REPORTER ____
START DATE __/__/__
END DATE __/__/__

- [ ] PARTIAL
- [x] FINAL
- [x] POST CARD

DATE 8/30/01  (NUNC PRO TUNC ENTRY AS OF & FOR __/__/__)

π's MSJ is granted.

VOL 2640 PG 0145

/s/ David Matia, JUDGE

CLERK OF COURTS

RECEIVED FOR FILING
SEP 0 5 2001
GERALD E. FUERST
By _____ Dep.

---

THE STATE OF OHIO } SS.
Cuyahoga County

I, GERALD E. FUERST, CLERK OF THE COURT OF COMMON PLEAS WITHIN AND FOR SAID COUNTY, HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL Vol 2640 pg 145 dated Sep 5, 2001 NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS 20 DAY OF Sep A.D. 20 03

GERALD E. FUERST, Clerk
By _____ Deputy

FILED

2001 FEB -2 P 3: 02

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CUYAHOGA COUNTY

429394

| | |
|---|---|
| COMPLIENT CORPORATION<br>27070 Miles Road<br>Solon, Ohio 44139, | ) CASE NO:<br>)<br>) JUDGE |
| Plaintiff, | ) |
| v. | ) |
| CPR PROMPT CORPORATION<br>c/o Gary Martinelli, Resident Agent<br>5 Laurel Street<br>Longmeadow, Massachusetts 01106, | ) |
| and | ) COMPLAINT FOR DECLARATORY<br>) JUDGMENT |
| DONALD C. HUTCHINS<br>60 Brookdale Drive<br>Springfield, Massachusetts 01104, | ) |
| Defendants. | ) |

Plaintiff Complient Corporation ("Complient"), for its Complaint for Declaratory Judgment ("Complaint") against Defendants CPR Prompt Corporation ("CPR Prompt") and Donald C. Hutchins ("Hutchins"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Complient is a Delaware corporation with its principal place of business located in Solon, Ohio.

2. CPR Prompt is a Massachusetts corporation with its principal place of business located in Springfield, Massachusetts.

DOCKETED
FEB 1 2 2001

{CM00749;2}

3. Donald C. Hutchins is an individual residing in Springfield, Massachusetts. Hutchins is the President of CPR Prompt. CPR Prompt and Hutchins are referred to collectively herein as "Hutchins".

4. Defendants are subject to the long-arm jurisdiction of this Court pursuant to Rule 4.6 of the Ohio Rules of Civil Procedure by virtue of their activities associated with the License Agreement. Further, a substantial part of the events giving rise to this action occurred in this County.

## BACKGROUND

5. On or about June 1, 1994, Defendants entered into a License Agreement with County Line Limited Partnership ("County Line"), which agreement forms the basis of the subject action. A copy of the License Agreement is attached hereto and is incorporated herein as Exhibit A.

6. The parties to the License Agreement mutually agreed that County Line would assign its interest in the License Agreement to an Affiliate of County Line after the date of the Agreement.

7. On September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement, assigned the License Agreement to CPR Limited Partnership ("CPR"), an Affiliate of County Line as defined by Section 1.1 of the License Agreement. At all times since September 19, 1994, CPR has been the Affiliate contemplated by the License Agreement.

8. CPR is an Ohio limited partnership formed in September of 1994. Pursuant to the License Agreement, Defendants granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning

cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

9. Between September of 1994 and December of 1997, County Line or its successor served as the general partner of CPR, holding 99% of the interest therein. In December, 1997, County Line's successor transferred its 99% partnership interest in CPR to CPR Prompt L.L.C. On June 20, 2000, CPR Prompt L.L.C. converted to a Delaware corporation named Complient Corporation. As such, at present, Complient holds the 99% general partnership interest in CPR.

10. As consideration for the License, Hutchins was entitled to the following, among other things, under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the consumer version of the product; and (e) in the event a partner of the Affiliate sold all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

11. Since the execution of the License Agreement, Defendants have repeatedly and routinely probed for and have been provided with information regarding the status of the partnership interests in CPR. Defendants have been fully apprised of such partnership interests, and CPR and its partners have fully complied with Section 3.10 of the License Agreement.

12. On November 23, 1999, Defendants forwarded a "Notice of Termination" of the License Agreement to Complient, wherein Defendants stated their intent to terminate the License Agreement based on an alleged breach of Section 3.10 of the License Agreement. On November

28, 1999--less than a week after dispatching the initial termination notice--Defendants forwarded a "Final Notice of Termination" to Complient on the same alleged grounds.

13. Section 3.10 of the License Agreement states, in relevant part, as follows:

> After the date of this Agreement, LICENSEE will assign all of its rights and obligations under this Agreement to an Affiliate of LICENSEE. Such Affiliate will cause each partner of such Affiliate who purchases or otherwise acquires a partnership interest of such Affiliate directly from such Affiliate to agree to pay to CPR-PROMPT seven and one-half percent (7.5%) of the net proceeds of any sale of any or all of such partnership interest to any person or entity which is not an Affiliate of such partner.

14. On December 15, 1999, Complient, on behalf of County Line and CPR, responded to Defendants' termination notices, and explained that there had been no breach of Section 3.10 of the License Agreement. Specifically, Complient explained that County Line had properly caused an Affiliate of County Line--CPR--to be formed, and had assigned the License to such Affiliate; and that the partners of CPR had acknowledged the obligation to pay CPR-Prompt 7.5% of the net proceeds of any sale of any or all of the partnership interests in such Affiliate to an unrelated third party as required by Section 3.10. Complient advised that, if it did not receive a response from Hutchins to the foregoing explanation before December 31, 1999, Hutchins' termination notices would be considered null. No response was received from Hutchins.

15. Nonetheless, on or about January 15, 2001, Hutchins sent correspondence to Complient which, once again, attempted to rewrite the License Agreement in apparent hope of collecting additional monies from the partners of the Affiliate. Specifically, Hutchins sent correspondence claiming that Section 3.10 of the License Agreement entitles Hutchins to 7.5% of the net proceeds of the sale of any or all assets of either or both CPR and Complient.

16. Defendants' construction of Section 3.10 of the License Agreement is directly contrary to its terms. Specifically, the plain language of Section 3.10 renders clear that Hutchins is entitled to 7.5% of the net proceeds of the sale of the partnership interest in CPR by one of its partners to an unrelated third party. Section 3.10 is devoid of any mention of any entitlement by Hutchins to any proceeds of any sale of the assets of the partners of the Affiliate other than the partnership interest in the Affiliate, CPR to an unrelated third party.

17. Thus, Section 3.10 of the License Agreement is clear that, in the event that the partners of the Affiliate, CPR, were to sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins would be entitled to 7.5% of the net proceeds of such sale.

18. Section 3.10 of the License Agreement does not entitle Hutchins Prompt to 7.5% of the net proceeds of the sale of any or all assets of any entity other than the Affiliate as claimed by Hutchins.

### COUNT I

19. Complient repeats and reavers paragraphs 1 through 18 hereof as if fully rewritten herein.

20. As fully explained above, the plain language of Section 3.10 of the License Agreement provides that, in the event the partners of CPR sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

21. Hutchins disputes the effect of Section 3.10 of the License Agreement and contend that this provision entitles Hutchins to the payment of 7.5% of the net proceeds of the sale of any or all assets of entities other than CPR, including, but not limited to, Complient.

{CM00749;2}                                      5

22. In order to give effect to Section 3.10 of the License Agreement, this Court should find that, in the event the partners of CPR sell all or part of their respective partnership interest(s) in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

23. An actual and justiciable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement for which declaratory relief is necessary.

24. A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of Section 3.10 of the License Agreement.

WHEREFORE, Complient prays that a declaratory judgment be entered in its favor giving full force and effect to Section 3.10 of the License Agreement and declaring that Section 3.10 of the License Agreement entitles Hutchins solely to payment of 7.5% of the net proceeds of the sale of any or all of the partnership interests in the Affiliate, CPR, by its partners to an unrelated third party and, further, that Hutchins is not entitled to the proceeds of the sale of any other entity.

*Colleen Moran O'Neil*
WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Plaintiff,
Complient Corporation

THE STATE OF OHIO } I. GERALD E. FUERST, CLERK OF
Cuyahoga County } SS. THE COURT OF COMMON PLEAS
WITHIN AND FOR SAID COUNTY.
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY TAKEN AND COPIED FROM THE ORIGINAL _____ NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS ____ DAY OF _____ A.D. 20__
GERALD E. FUERST, Clerk
By_____Deputy

{CM00749;2}                                    6

**EXHIBIT "2"**

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| COMPLIENT CORPORATION | ) | CASE NO: 429394 |
| | ) | |
| Plaintiff, | ) | JUDGE MATIA |
| | ) | |
| v. | ) | |
| | ) | |
| CPR PROMPT CORPORATION, *et al.*, | ) | **AFFIDAVIT OF STEVEN LINDSETH** |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| STATE OF OHIO           ) | |
| ) | SS: |
| COUNTY OF CUYAHOGA ) | |

NOW COMES STEVEN LINDSETH and upon first being duly sworn, states that:

1. I am over 18 years of age and have personal knowledge of the matters attested to herein.

2. I am the Chief Executive Officer ("CEO") of Complient Corporation ("Complient"), the plaintiff in the subject action. As President and CEO of Complient, it is my responsibility to oversee the day to day operations of Complient.

3. On or about June 1, 1994, County Line Limited Partnership ("County Line"), an affiliate of Complient, entered into a License Agreement with Defendants Donald C. Hutchins ("Hutchins") and CPR Prompt Corporation ("CPR Prompt"). On September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement,

{CM00829;1}

assigned the License Agreement to CPR Limited Partnership ("CPR L.P."), an Affiliate of County Line as defined by Section 1.1 of the License Agreement.

4. Complient holds the 99% general partnership interest in CPR L.P.

5. On or about January 15, 2001, Defendant Donald C. Hutchins sent correspondence to Complient, ostensibly on his own behalf and on behalf of CPR Prompt, which claimed that Section 3.10 of the License Agreement entitles Hutchins and CPR Prompt to 7.5% of the net proceeds of the sale of any or all assets of Complient.

6. Section 3.10 of the License Agreement is clear that, in the event that the partners of CPR L.P., including, but not limited to, Complient, sell all or part of their respective partnership interests in CPR L.P. to an unrelated third party, CPR Prompt is entitled to 7.5% of the net proceeds of that sale. Section 3.10 of the License Agreement does not entitle CPR Prompt to 7.5% of the net proceeds of the sale of any or all assets of any entity other than CPR L.P.

FURTHER AFFIANT SAYETH NAUGHT.

_____
STEVEN LINDSETH

Sworn to before me and subscribed in my presence this 24th day of May, 2001.

_____
NOTARY PUBLIC

Roberta A. Pace
Notary Public, State of Ohio
My Commission Expires June 23, 2002
Recorded in Medina County

{CMO0829;1}