UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC. )<br>)<br>    Defendant ) | Civil Action: **04-30126-MAP** |

**PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**
**UNDER FED.R.CIV.P9(b) and 12(b)(6)**

**COMES NOW Plaintiff** Donald C. Hutchins ("Hutchins") and hereby moves the Court to dismiss Defendant's Counterclaims under Rule 9(b). The Defendant's Counterclaims of counts I, II, III, IV, V, are based on lack of knowledge and mistake while counts VI, VII, VII, VIII, IX, and X are drawn with malice to punish Plaintiff for bringing the action. Under Rule 12(b)(6), Defendant failed to state a claim upon which relief can be granted for counts I through X. The Motion is further based on the attached Memorandum of Law in Support and an affidavit from Donald C. Hutchins.

Respectfully submitted,

Dated: October 5, 2004    By: _____

Donald C. Hutchins, Pro Se
1047 Longmeadow Street
Longmeadow, MA 01106
Phone: (413) 567-0606

## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by registered mail to:

Randall T. Skaar, Esq., Patterson, Thuente, Skaar & Christensen, P.A., 4800 IDS Center, 80 South Eighth St., Minneapolis, MN 55402.

Paul T. Rothschild, Esq., Bacon & Wilson P.C., 33 State Street, Springfield, MA 01103

Dated: 10/5/04

Richard J. Moriarty

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD C. HUTCHINS ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> CARDIAC SCIENCE, INC. ) <br> ) <br> Defendant ) | Civil Action: **04-30126-MAP** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS UNDER FED.R.CIV.P9(b) and 12(b)(6)

### INTRODUCTION

Plaintiff Donald C. Hutchins ("Hutchins") seeks dismissal of the claims in Defendant's Counterclaims under Rule 9(b). The Defendant's Counterclaims of counts I, II, III, IV, V, are based on Cardiac Science's lack of knowledge and mistaken conclusions concerning the June 1, 1994 Licensing Agreement between Plaintiff and County Line Limited. These erroneous conclusions are the result of misrepresentations introduced by the Complient Corporation. Counts VI, VII, VII, VIII, IX, and X are drawn with malice to punish Plaintiff for bringing the action.

Under Rule 12(b)(6), Defendant failed to state a claim upon which relief can be granted for counts I through X. Further, the Defendant has not pled sufficient material facts to sustain any claim for relief under the identified legal theories.

## FACTUAL BACKGROUND

On April 29, 2004 Hutchins received a phone call from Attorney Randall T. Skaar who stated that he was a patent attorney representing Cardiac Science, Inc. Attorney Skaar said that Mr. William Parker had filed a patent infringement against Cardiac Science that involved patents that Hutchins had licensed to County Line LLC. There followed a dialog with a series of E-mails being passed back and forth over the next few months.

When it became evident that Cardiac Science was infringing on Hutchins' patents, it seemed prudent for Hutchins to ask Attorney Skaar to discuss this infringement with Attorney Gary Martinelli who represents Hutchins and helped draw the License Agreement with County Line dated June 1, 1994. Hutchins request to Attorney Skaar was included in a letter dated June 5, 2004 and herein attached as Exhibit A.

Attorney Skaar did not contact Attorney Martinelli. The only answer came in the form of a letter from Attorney Kevin W. Kirsch to Attorney Martinelli that is attached herein as Exhibit B. Rather than attempt to discuss the infringement issues with Attorney Martinelli, Attorney Kirsch stated that he represented Cardiac Science. He further stated that, "Cardiac Science is already reviewing the publication of the current threat for possible action against Mr. Hutchins." This letter ended any possibility of reasoned negotiations and forced Hutchins to file a Complaint in this Court to protect his intellectual properties from confiscation.

Counts VI through X are drawn with malice to punish Plaintiff for bringing the action. In filing these Counterclaims, Cardiac Science is following through on Attorney Kirsch's threat as contained in his letter of June 29, 2004. These Counterclaims are

frivolous and ill conceived. They are designed to torment and cause further financial harm to Hutchins and impede his right to protect his property.

## ARGUMENT

### I. DEFENDANT'S COUNTERCLAIMS SHOULD BE DISMISSED UNDER FED. R. 9(b) BECAUSE THE COUNTERCLAIMS ARE BASED ON DEFENDANT'S LACK OF KNOWLEDGE AND MISTAKEN CONCLUSIONS REGARDING THE JUNE 1, 1994 LICENSE AGREEMENT.

The License Agreement dated June 1, 1994 between Hutchins and County Line has been breached. Cardiac Science was not aware of this breach when it purchased the assets from the Complient Corporation including the License Agreement. This breach makes this purchase of Complient's assets an illegal transaction as it relates to the License Agreement. As a result Cardiac Science is using Hutchins' intellectual properties without permission from Hutchins who is the patent, copyright and trademark owner. Such use is illegal under US Code, Title 35, Part III Chapter 28, paragraph 271(d) that states, "No Patent owner otherwise entitled to relief from infringement ...shall be denied relief by reason of his having done one or more of the following: (3) sought to enforce his patent rights against infringement."

A written copy of the License Agreement was not attached to or part of the October 21, 2004 asset purchase agreement between Cardiac Science the Complient Corp. The legal representatives of Cardiac Science were not exposed to this License Agreement between Hutchins and County Line until after Hutchins brought his Complaint. Defendant's Counterclaims should be dismissed because Defendant lacks knowledge of the License Agreement and because under federal Title 35, Hutchins has the legal right to enforce his patent rights against infringement.

II. **DEFENDANT'S COUNTERCLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV.P12(b)(6) BECAUSE DEFENDANT HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A counterclaim may be dismissed under Rule 12(b)(6) if Plaintiff fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal. Inc., 88 F.3d 780,783(9th Cir. 1996). Under Rule 12(b)(6), all allegations in the complaint are to be treated as true and all reasonable inferences therefrom drawn in favor of the plaintiff. Rumford Pharmacy, Inc. v. City of East Providence, 970F.2d 996,997 (1st Cir1992). "[A] plaintiff . . . is nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Id. at 998. "The pleading requirements, though 'minimal,' are not 'non-existent.'" Id.

## CONCLUSION

All of Defendant's counterclaims should be dismissed. The Defendant's Counterclaims of counts I, II, III, IV, V, are based on Cardiac Science's lack of knowledge and mistaken conclusions concerning the June 1, 1994 Licensing Agreement between Plaintiff and County Line Limited. These erroneous conclusions are the result of misrepresentations introduced by the Complient Corporation during the Complient/Cardiac Science asset sale negotiations.

Under Title 35 Hutchins has the right to enforce his patent rights against infringement. Counts VI through X should be dismissed because they were written with malice in an effort to punish Plaintiff for attempting to assert his legal rights against infringement under Title 35. The affidavit of Donald C. Hutchins in support of dismissal of all counts is attached herein as Exhibit C.

4

Under Rule 12(b)(6), Defendant failed to state a claim upon which relief can be granted for counts I through X. Further, the Defendant has not pled sufficient material facts to sustain any claim for relief under the identified legal theories.

Respectfully submitted,

Dated: October 5, 2004    By: _____

Donald C. Hutchins, Pro Se
1047 Longmeadow Street
Longmeadow, MA 01106
Phone: (413) 567-0606

## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by registered mail to:

Randall T. Skaar, Esq., Patterson, Thuente, Skaar & Christensen, P.A., 4800 IDS Center, 80 South Eighth St., Minneapolis, MN 55402.

Paul T. Rothschild, Esq., Bacon & Wilson P.C., 33 State Street, Springfield, MA 01103

Dated: 10/5/04    _____
Richard J. Moriarty

# EXHIBIT A

**Donald C. Hutchins**
**1047 Longmeadow Street**
**Longmeadow, MA 01106**

June 5, 2004

Randall T. Skaar, Esq.
Litigation Chair
Patterson, Thuente, Skaar & Christensen, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Dear Attorney Skaar,

    In answer to your E-mail question of June 3, 2004, I do have a copy of the Parker Cross-License and I did not include it in the packet that I sent to you. My initial hesitation was my concern that you would interpret my act of sending this document as my testimony that Cardio Science is not infringing on the Parker Patent. I want you to understand that I am not able to provide such testimony.

    Prior to your phone call to me on April 29th, I was in the dark about Cardio Science's acquisition of the Complient Corporation assets. I should have been aware that Complient had ceased operations because they had not sent quarterly reports, royalty payments or the $10,000 minimum royalty payment since late summer of 2003. Complient, as a successor to CPR Prompt LLC and County Line Limited, has had a history of irresponsibility. As a consequence, I have become frustrated with the Lindseth's and complacent toward their ventures in protecting my interests.

    Alerted by you of the sale to Cardio Science, I have investigated these matters and the results are appalling. This acquisition has placed both Cardio Science and me in great jeopardy. You were not involved with the acquisition or responsible for the due-diligence. This places you in a good position to understand the issues while protecting your client's interests in both the Complient acquisition and the Parker Action. I have enclosed a copy of the Parker-Cross License as a gesture of good faith, with the hope that you will attempt to understand my concerns and relay them to the management of Cardio Science. I can assure you that in doing so, you will be of great service to both parties.

    I invented, developed and contracted with Texas Instruments, Inc. to manufacture the CPR Prompt® in the early 1980s. The programs were copyrighted, the trademark

1

registered, a class II FDA approval was issued and Patent #4,583,524 was issued in 1986. With this came a limited test market of the commercial model that proved very successful. I realized at the time that I lacked the financial resources to bring a consumer model of the CPR Prompt® devise to market.

Jon Lindseth came from a well-to-do family and graduated from Cornell University. He is a member of the class of '56 at Cornell as is my brother, Bob Hutchins. While Jon Lindseth operates a privately owned Cleveland company named Kindt-Collins, he became better known at Cornell reunions through his success with two ventures that he founded, the *Interplak* toothbrush and *Thermoscan* thermometer. *Interplak*, under the corporate name, Dental Research, sold to Bausch & Lomb in 1988 for $133 million dollars and *Thermoscan* to *Gillette* for an estimated $178 million dollars around 1993. Jon Lindseth continues to be a great benefactor to Cornell.

While attending a Cornell reunion in 1993, Bob Hutchins showed a CPR Prompt® unit to some alumni including Jon Lindseth. Jon became interested to the point that he contacted me and offered his concept of doing with CPR Prompt® what he had done with *Interplak* and *Thermoscan*. To start he suggested that I visit Cleveland and meet with him and his son, Steve Lindseth, who was operating a startup company called County Line Limited. At that time County Line Limited had brought two venture products to market, a high quality patented bird feeder and a state of the art Christmas tree stand. Jon pointed to full-page ads in magazines and the *Wall Street Journal* as evidence that these items were receiving millions of dollars in market development. He suggested that he would start a new company and raise $14 million, as the minimum investment needed to bring CPR Prompt® to the consumer market. Steve Lindseth would manage this new venture that the Lindseths predicted could exceed the success Jon had had with *Interplak* and *Thermoscan*.

Negotiations with Steve to license my Patent for a consumer version of CPR Prompt® came to an impasse in February of 1994 because Steve wanted to pay a very low royalty percentage of 2%. A week after I ended negotiations, Jon and Steve called to re-open negotiations. Jon explained that the Lindseth's success with products like *Interplak* and *Thermoscan* came upon exiting the projects. Their plan would be to build a company around CPR Prompt®, develop the market and divest with an IPO or sale in about three years.

While Jon Lindseth wanted to retain the low 2% royalty, he sweetened the deal by offering the CPR Prompt Corporation 7-1/2% of the receipts when the venture was sold or went public as an IPO. If the new company had the same success as *Thermoscan* and *Interplak*, the share for the CPR Prompt Corporation and me as the largest stockholder could equal over $10 million. Jon said that this was the first time they had ever offered a patent owner participation in their exit strategy. He was willing to do the 7-1/2% deal if the royalty payments were low and the Lindseths took total control of the US and foreign patents and trademark.

2

I agreed to the 7-1/2% deal and Jon Lindseth communicated the terms to his attorney, Mark Kaufman of Southland, Asbill and Brennan of Atlanta, Georgia. On May 17, 1994, Attorney Kaufman sent a first draft of the Agreement to my attorney, Gary Martinelli and me. This draft correctly stated the terms that Jon and I had negotiated. Paragraph 3:10 said:

**3:10   LICENSEE will cause each shareholder of LICENSEE who purchases common stock of LICENSEE directly from LICENSEE to agree to pay to LICENSOR seven and one-half percent (7-1/2) of the net proceeds of any sale of any or all of such common stock to any person or entity which is not an Affiliate of such selling stockholder. . ."**

A series of drafts went back and forth between Attorneys Kaufman and Martinelli to iron out some minor differences. On May 20, 1994, Attorney Martinelli suggested that section 3:10 speaks of "shareholders" and "common stock" when the Licensee entity is a limited partnership. He also suggested that the possibility of dispute resolution by arbitration. These suggestions led to changes in section 3:10 and the addition of an AAA clause in the later drafts.

Section 3.10 was changed to accommodate the fact that County Line Limited was a partnership that continued to include the bird feeder and Christmas tree product lines. It was understood that County Line would eventually divest itself from the bird feeder and Christmas tree stand products as separate companies and build a new entity around CPR Prompt®. The 7-1/2% exit strategy would apply to that new CPR Prompt® entity. Pending divestiture of the bird feeder and Christmas tree stand lines; we agreed to allow the Patent to be held in a separate entity. When the divestiture occurred and CPR Prompt LLC succeeded County Line, the License Agreement would be held by and the 7-1/2% applied to the shareholders of CPR Prompt LLC. When the Complient Corporation succeeded CPR Prompt LLC the same terms and exit strategy would apply to the new shareholders because all these companies were affiliates. You will note that the original shareholders of County Line Limited continued to participate as shareholders of CPR Prompt LLC and Complient when new investors joined at various stages.

After the License Agreement was signed June 1, 1994, Jon Lindseth's son Steve took total control. I worked closely with Steve in 1994 and 1995 as County Line contracted with me to develop the speech, software and electronics for the new consumer model. I was successful with this development and created a consumer CPR Prompt® with good speech quality that met the target cost of $19.00 each.

In September of 1994, Attorney Scott Wilson of Calfee, Halter and Griswold of Cleveland, Ohio sent a License Agreement to Attorney Martinelli requesting my signature both as patent owner and as President of the CPR Prompt Corporation. Recognizing that this License Agreement was a fabrication that completely distorted the intention of section 3:10 and the 7-1/2% exit distribution formula, Attorney Martinelli advised against my signing or recognizing this Agreement. I never signed or accepted

3

the validity of the Agreement dated September 19, 1994. Both Complient and Cardio Science treat this Agreement as legitimate even though it does not carry my signature. This puts to question the amount of due diligence performed by counsel for both parties in preparation of the 8-K Form.

After 1994, County Line divested itself of the Christmas tree stand and bird feeder lines and concentrated on the CPR Prompting device and CPR related training and products. The Lindseths formed a new entity called the CPR Prompt LLC. Under this CPR Prompt umbrella, during the next six years the Lindseths raised over $50 million dollars in venture capital to promote the CPR Prompt ® trademarked educational and safety products.

The Lindseths also used this capital to purchase safety equipment dealers such as SOS Technologies. SOS is significant in that SOS had developed software for the automotive industry to aid companies with safety compliance. In later years, when Internet business models got hot, the Lindseths saw the opportunity to build on SOS's safety compliance software for e-business compliance programming. The Complient Corporation succeeded CPR Prompt LLC that had succeeded County Line Limited. In the year 2001, the Lindseths spun-off the compliance software division into a new company called Axentis LLC. Robert Thompson, who headed the services division (CPR Prompt) of Complient became President of Complient and Ted Frank became President of Axentis. Robert Thompson signed the acquisition papers as President of Complient Corporation and 99% General Partner of the bogus CPR LP. The Lindseths avoided signing or appearing in any acquisition documentation although Jon Lindseth's Kindt-Collins Company and the law firm of Calfee, Halter and Griswold appear as stockholders of the Complient Corporation.

Since 1994 all License Agreement royalty payments have been paid to the CPR Prompt Corporation with checks from the National City Bank of Ashland, Ohio through the succession of companies: County Line Limited/CPR Prompt LLC/Complient Corporation. There is no evidence such as letterheads, telephone numbers, receipts, reports, payment checks, etc. that CPR LLP ever functioned as a going concern. Attorney Martinelli and I have never recognized CPR LLC as anything but a paper entity established by Steve Lindseth to obstruct the intentions of section 3:10 of the License Agreement. The acquisition of Complient by Cardio Science is the event that triggers the 7-1/2% exit strategy negotiated by the Lindseths in 1994. For this acquisition and the transfer of the License Agreement to Cardio Science to be valid, the CPR Prompt Corporation is owed 7-1/2% of the stock being transferred from Cardio Science to the stockholders of the Complient Corporation as the successor to County Line Limited.

I am attempting to paint a clear picture of these events because since 1994 Steven Lindseth together with his attorneys at Calfee, Halter and Griswold have gone to great lengths to avoid obligations under Section 3:10. This effort has involved unsuccessful claims in arbitration and inconclusive action in state and federal courts. As a result, I can make many documents available that authenticate our position. It is clear to me that

4

Steve Lindseth's subterfuge regarding Section 3:10 has complicated the Cardio Science acquisition of Complient assets and placed the License Agreement in jeopardy.

After your telephone call on April 29th regarding the Parker Agreement, I researched the acquisition of Complient assets by Cadio Science. You were able to provide the INTELLECTUAL PROPERTY ASSIGNMENT and Schedule 5.1(p) that included a reference to "Hutchins license agreement dated June 1, 1994. The European patents and the re-issue patent were not acknowledged. There is a reference to my Patent #5,913,685 that was issued June 22, 1999 and the statement, "Complient is of the opinion that this patent is already included in the license."

Searches on the Internet provided me with press releases, security analyst reports, and Forms 8-K and 10-K that fleshed-out terms of the acquisition. I also consulted with my patent attorneys and Attorney Martinelli who worked with Attorney Kaufman on the language of the License Agreement with County Line. My attempts to communicate with Complient have failed because they have abandoned their Cleveland facility. Complient has paid no royalties, furnished no reports, paid no patent fees to maintain the foreign patents nor met any of the obligations of the License Agreement for the transfer of the intellectual properties. My patent attorneys profess that the Lindseths and the various entities they control have abandoned the Patents and CPR Prompt® Trademark. Under the terms of the License Agreement and trademark registration transfer, when abandoned these intellectual properties revert back to my control. As a consequence, Cardio Science is infringing on these intellectual properties.

Of greatest concern to my patent attorneys is the statement contained in Schedule 5.1(p) that included a reference to my Patent #5,913,685 that was issued June 22, 1999 and the statement, "Complient is of the opinion that this patent is already included in the license." The Arbitration proved Complient's claims to my Patent #5,913,685 to be fraudulent.

I am torn between a number of courses of action that are open to me. The patent attorneys believe that they can show the Court that the complete transfer of all the Cardio Science to the control of Complient stockholders will irreparably harm me. They advise an immediate Restraining Order to prevent further erosion. They also point out that because Complient is no longer a going concern and has not and can not fulfill obligations under the License Agreement, the Patents and Trademark revert to my control. As a result Cardio Science is infringing on these intellectual properties with each sale and use of the mark. They also believe that without the protection of Hutchins' Patent, Cardio Science may be infringing on Parker.

Attorney Martinelli is experienced in SEC matters and takes a business persons rather than litigators approach to disputes. He sees problems in this acquisition that relate to SEC regulations and due diligence on the part of both Complient and Cardio Science. We are mystified that you were not involved in the acquisition as a patent attorney. Whatever the circumstances, Attorney Martinelli feels that these issues can be resolved amicably to everyone's best interest. We believe that the CPR Prompt Corporation's 7-

5

1/2% exit interest can be apportioned from the stock that has not already been released to Complient. This stock was placed in trust to resolve such contingencies. The Lindseths and the venture investors in Complient will accept a 7-1/2% dilution to avoid SEC scrutiny that could void the acquisition. We believe that the License Agreement of June I, 1994 can be correctly transferred to Cardio Science and the royalty payments to the CPR Prompt Corporation restored. We believe that Cardio Science can recognize the $10,000 minimum payment. We believe Cardio Science can understand that they have no rights to my Patent #5,913,685 unless they sign a separate license with me at a future date.

With each month that passes more Cardio Science stock is transferred to Complient stockholders. It is imperative that I have resolution soon to prevent seeking resolution through the courts and SEC. Therefore, I encourage you to contact Attorney Martinelli and to begin discussions of these issues. Please contact:

> Attorney Gary Martinelli
> P.O. Box 15407
> Suite 912, Tower Square
> 1500 Main Street
> Springfield, MA 01115
> Tel: 413-746-4677

I appreciate your participation in these matters.

Sincerely,

Donald C. Hutchins

Enclosure:   Parker Cross-License Agreement

cc:          Gary Martinelli, Esq.

6

# EXHIBIT B