# STRADLING YOCCA CARLSON & RAUTH

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
TELEPHONE (949) 725-4000
FACSIMILE (949) 725-4100

KEVIN W. KIRSCH
DIRECT DIAL: (949) 725-4142
KKIRSCH@SYCR.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 4200
SAN FRANCISCO CALIFORNIA 94104
TELEPHONE (415) 283-2240
FACSIMILE (415) 283-2255

SANTA BARBARA OFFICE
302 OLIVE STREET
SANTA BARBARA, CALIFORNIA 93101
TELEPHONE (805) 564-0085
FACSIMILE (805) 564-1044

June 29, 2004

***VIA FEDERAL EXPRESS***

Gary Martinelli, Esq.
P.O. Box 15407
Suite 912, Tower Square
1500 Main Street
Springfield, Massachusetts 01115

Re: Donald C. Hutchins

Dear Mr. Martinelli:

We are in receipt of Mr. Hutchins' June 5, 2004 correspondence to Randall T. Skaar. STRADLING YOCCA CARLSON & RAUTH has been retained to represent Cardiac Science, Inc. ("Cardiac Science") in this matter. Please direct all future communications to our office.

Mr. Hutchins has raised three issues: (1) he claims that the acquisition of Complient by Cardiac Science triggers an alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994"; (2) he claims that the scope of the June 1, 1994 Agreement (the "1994 License Agreement") is limited to United States Patent Nos. 4,583,524; and (3) he claims that County Line Limited Partnership and its subsequent assignees have abandoned their rights under the 1994 License Agreement. In addition, Mr. Hutchins has threatened Cardiac Science with SEC action in the event that an agreement is not reached.

Prior to addressing the first three points, we would like to take the opportunity to advise Mr. Hutchins that threats of SEC action are not well received by Cardiac Science. Cardiac Science maintains the highest level of integrity in its business dealings and takes such frivolous and ill conceived threats extremely seriously. Cardiac Science is already reviewing the publication of the current threat for possible action against Mr. Hutchins. Should Mr. Hutchins elect to publish such allegations again in a less discrete manner, Cardiac Science will vigorously protect its reputation and business.

As to Mr. Hutchins' first substantive point, the alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994" does not touch or concern Cardiac Science. Cardiac Science was not a party to any such alleged oral agreement. Further, the legal instrument giving rise to Cardiac Science's current ownership of the rights under the 1994 License Agreement was in the form

Gary Martinelli
June 29, 2004
Page Two

of an asset purchase. Any issue over any such alleged breach of any alleged oral agreement is between Mr. Hutchins and the Lindseths, Complient, et al.

With respect to Mr. Hutchins' second point, Cardiac Science does not agree with his extremely narrow reading of sections 1.8, 1.9 and 4.6, *inter alia*, of the 1994 License Agreement. Cardiac Science purchased and will exercise all of the rights contained and outlined in the 1994 License Agreement.

With respect to Mr. Hutchins' third point, the alleged abandonment position appears to be based on two arguments: (1) Mr. Hutchins' assertion that Complient is no longer an ongoing concern and (2) Complient's alleged failure to maintain the Licensed Patents. Issue number one is irrelevant. Cardiac Science is the assignee under the 1994 License Agreement and is performing under the 1994 License Agreement. Issue No. 2 appears to reflect a misunderstanding on Mr. Hutchins' part of the duties and obligations owed under the 1994 License Agreement. Pursuant to Section 4.4 of the 1994 License Agreement, it is the responsibility of Mr. Hutchins and CPR-Prompts to maintain, sustain, reexamine, reissue or extend the Licensed Patents. The Licensee merely has an obligation to pay or reimburse reasonable expenses associated therewith. Cardiac Science is not aware of any claim by Mr. Hutchins that any licensee under the 1994 License Agreement has failed to reimburse the licensor for any such expense. In addition, Cardiac Science has paid in full all royalty amounts due and owing under the 1994 License Agreement to Mr. Hutchins' through the quarter ended March 31, 2004. Further, there is no forfeiture provision in the 1994 License Agreement. Finally, the licensor has not provided formal notice of any material breach pursuant to sections 8.2 and 9.1 triggering the 90 day opportunity to cure.

Any position taken in this correspondence is merely part of an effort to respond to the assertions raised by Mr. Hutchins in his June 5, 2004 correspondence. The positions are not meant to be an exhaustive list of the defenses which could be raised to each of the allegations asserted by Mr. Hutchins. Further, any citation to specific portions of the 1994 License Agreement is not meant to preclude the possibility that other portions of the 1994 License Agreement or other documents may be probative to the issues addressed by Mr. Hutchins.

Very truly yours,

STRADLING YOCCA CARLSON & RAUTH

Kevin W. Kirsch

KWK:cml

DOCSOC/1053211v1/16761-0000

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS )
)
)
Plaintiff )
)    **AFFIDAVIT OF**
)    **DONALD C. HUTCHINS**
v. )
)
CARDIAC SCIENCE, INC. )
)
Defendant )
)

NOW COMES DONALD C. HUTCHINS and upon being duly sworn,

states that:

1.     I am over 18 years of age and have personal knowledge of the matters attested to

herein.

2.     On April 29, 2004 I received a phone call from Attorney Randall T. Skaar who

stated that he was a patent attorney representing Cardiac Science, Inc. Attorney

Skaar said that Mr. William Parker had filed a patent infringement against

Cardiac Science that involved patents that I had licensed to County Line LLC.

There followed a dialog with a series of E-mails being passed back and forth

between Attorney Skaar and me.

3.     Having been alerted by Attorney Skaar to the purchase of the Complient

Corporation assets to Cardiac Science, I began an investigation into the sale

through the Internet.

4.     My investigation showed that Cardiac Science was infringing on my patents and

I asked Attorney Skaar to discuss this infringement with Attorney Gary Martinelli

who acted as my legal representative when the License Agreement with County Line was prepared in March and April of 1994.

5. Attorney Skaar did not contact Attorney Martinelli. The only answer came in the form of a letter from Attorney Kevin W. Kirsch to Attorney Martinelli. Rather than discuss the infringement issues with Attorney Martinelli, Attorney Kirsch sent a letter saying that, "Cardiac Science is already reviewing the publication of the current threat for possible action against Mr. Hutchins."

6. This letter ended any possibility of reasoned negotiations and forced me to file a Complaint in this Court to protect my intellectual properties from confiscation by Cardiac Science.

7. In filing these Counterclaims, Cardiac Science is following through on Attorney Kirsch's threat as contained in his letter of June 29, 2004. These Counterclaims are frivolous and designed to impede my right to protect my property.

8. To my knowledge and certainty, the License Agreement dated June 1, 1994 between me and County Line has been breached. Cardiac Science was not aware of this breach when it purchased the assets from the Complient Corporation including the License Agreement.

9. This breach makes this purchase of Complient's assets an illegal transaction as it relates to the License Agreement. As a result Cardiac Science is using my intellectual properties without a license, sub-license or authorization from me. Therefore the manufacture, distribution and sale of *CPR Prompt®* products by Cardiac Science are acts of infringment.

10. When discussing the Parker Patent, Attorney Skaar requested a copy of the cross license agreement between Parker and me. He said that he was not involved in the asset purchase and he had not seen the License Agreement with County Line.

11. Attorney Skaar told me that Cardiac Science had no exposure to the License Agreement during the asset purchase negotiations and Cardiac Science was unaware of its terms as they applied to my intellectual properties.

12. I have the legal right to enforce my patent rights against infringement without being encumbered with baseless Counterclaims that have no merit

13. These Counterclaims should be dismissed because they were written with malice in an effort to punish me for asserting my legal rights in this Court.

14. If I am not granted the relief that has been requested in the form of dismissal of these Counterclaims, I will suffer irreparable harm.

FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS

Sworn to before me and subscribed in my presence the 5th day of October, 2004

_____
NOTARY PUBLIC Karen M. Brisbois

My Commission Expires: May 5, 2011

3