FILED

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

2004 AUG 27  A 10: 41

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

| | | |
|---|---|---|
| COMPLIENT CORPORATION | ) | CASE NO: |
| 4670 Richmond Road | ) | |
| Warrensville Heights, Ohio  44128, | ) | JUDGE |
| | ) | Judge: EILEEN A GALLAGHER |
| Plaintiff, | | |
| | | CV 04 540066 |
| v. | | |
| DONALD C. HUTCHINS | ) | |
| 1047 Longmeadow Street | ) | |
| Longmeadow, Massachusetts  01106, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CPR PROMPT CORPORATION | ) | **COMPLAINT** |
| 1047 Longmeadow Street | ) | |
| Longmeadow, Massachusetts  01106 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Complient Corporation ("Complient), for its Complaint against Defendants,

Donald C. Hutchins ("Hutchins") and CPR Prompt Corporation ("CPR Prompt") (collectively

"Defendants"), states as follows:

1.     On or about June 1, 1994, Defendants entered into a License Agreement with

County Line Limited Partnership ("County Line").  County Line, in keeping with the terms of

the License Agreement, subsequently transferred its interests in the License Agreement to an

Affiliate of County Line, CPR L.P.  As explained below, in time, Complient became the general

partner of CPR L.P.  A copy of the License Agreement is attached hereto as Exhibit A.

2.      Section 3.10 of the License Agreement, among other things, entitles Defendants to 7.5% of the net proceeds of the sale of the partnership interests in CPR L.P. to a third party if and when such a sale occurs.  To date, no such sale has occurred.  Nonetheless, Defendants have repeatedly and incorrectly claimed that such a sale has occurred, have repeatedly and wrongfully attempted to terminate the License Agreement and, significantly, have repeatedly instituted frivolous and vexatious litigation in an effort to extort the payment contemplated by Section 3.10 of the License Agreement from Complient.  The correct interpretation of Section 3.10 of the License Agreement was previously litigated before this Court wherein Defendants' untenable interpretation of this provision was rejected and judgment was entered against them.

3.      In June of 2004, Hutchins, once again, instituted a frivolous and unfounded litigation in the United States District Court for the District of Massachusetts (the "Massachusetts District Court") wherein Hutchins claims entitlement to the 7.5% payment contemplated by Section 3.10 of the License Agreement, despite the fact that he is admittedly aware no such payment is due and despite the prior judgment against him.  The subject Complaint is occasioned by this abusive and tortious conduct by Hutchins for which Complient is entitled to relief.

4.      Complient stands to incur extensive economic damage as a result of Defendants' wrongful conduct.  Specifically, as a result of Hutchins' baseless claims, Complient may be prevented from redeeming certain shares of common stock of Cardiac Science to which, as explained below, Complient is entitled by contract.  A delay in Complient's ability to redeem this stock may result in significant economic damages due to the possibility of a decline in the stock's value.

## PARTIES, JURISDICTION AND VENUE

5.      Complient is a Delaware corporation with its principal place of business located in Warrensville Heights, Ohio.

6.      Donald C. Hutchins is an individual residing in Longmeadow, Massachusetts.

7.      CPR Prompt Corporation is a Massachusetts corporation with its principal place of business in Longmeadow, Massachusetts. Hutchins is the President and Treasurer of CPR Prompt.

8.      Defendants are subject to the long-arm jurisdiction of this Court pursuant to Rule 4.6 of the Ohio Rules of Civil Procedure by virtue of their activities associated with the License Agreement. Further, a substantial part of the events giving rise to this action occurred in this County.

## BACKGROUND

### The License Agreement

9.      Pursuant to the License Agreement, Defendants granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

10.     As consideration for the License, Defendants were entitled to, among other things, the following under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the

consumer version of the product; and (e) in the event a partner of the Affiliate, *i.e.* CPR L.P., sells all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

11.    The parties to the License Agreement mutually agreed that, after the date of the Agreement, County Line would assign its interest in the License Agreement to an Affiliate of County Line. Thus, on September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement, assigned the License Agreement to CPR L.P., an Affiliate of County Line as defined by Section 1.1 of the License Agreement. At all times since September 19, 1994, CPR L.P. has been the Affiliate contemplated by the License Agreement. CPR L.P. is an Ohio limited partnership formed in September of 1994.

12.    Between September of 1994 and December of 1997, County Line or its successor served as the general partner of CPR L.P. holding 99% of the partnership interest therein. In December, 1997, County Line's successor transferred its 99% partnership interest in CPR L.P. to CPR Prompt L.L.C. On June 20, 2000, CPR Prompt L.L.C. converted to a Delaware corporation named Complient Corporation. As such, thereafter, Complient held the 99% general partnership interest in CPR L.P.

## Defendants Attempt to Rewrite the License Agreement

13.    In November of 1999, Defendants attempted improperly to terminate the License Agreement by issuing a "Notice of Termination" and a "Final Notice of Termination" (the "Notices"). In the Notices, Defendants erroneously claimed that Section 3.10 of the License Agreement had been breached. Complient, on behalf of CPR L.P. and County Line, responded to the Notices, advised that no breach of Section 3.10 of the License Agreement had, in fact,

occurred, and advised that CPR L.P., County Line and Complient deemed the License Agreement to be in full force and effect.

14.    Then, in January of 2001, Defendants sent correspondence to Complient setting forth an interpretation of Section 3.10 of the License Agreement that was directly contrary to its express terms and the intent of the parties. As a result, on February 2, 2001, Complient filed a Complaint for Declaratory Judgment in the Cuyahoga County Court of Common Pleas against Hutchins and CPR Prompt to protect the interests of CPR L.P. and those of its associated entities under the License Agreement, which was designated as Case Number 429394 and is hereinafter referred to as "Complient v. CPR Prompt."

## Defendants' Efforts to Extract Payments Under the License Agreement They Are Not Entitled To Are Rejected by the Courts

15.    On May 30, 2001, the Court, in Complient v. CPR Prompt, after extensive briefing and oral argument, entered a default judgment against CPR Prompt and in Complient's favor that Section 3.10 of the License Agreement entitles Defendants to 7.5% of the net proceeds of the sale to an unrelated third party of the partnership interests in CPR L.P. -- not to 7.5% of the net proceeds of the sale of Complient (as Defendants have repeatedly claimed). Summary judgment was entered against Hutchins by the Complient v. CPR Prompt Court on the same basis on September 5, 2001.

16.    On June 27, 2001, less than a month after the default was entered against CPR Prompt, Hutchins, clearly dissatisfied with the outcome of Complient v. CPR Prompt, filed a Complaint in the Massachusetts District Court, alleging RICO violations against certain shareholders of Complient, which case was captioned Hutchins v. Lindseth, Case No. 3:01-CV-30120. The Complient shareholders moved to dismiss Hutchins' RICO claims on the grounds of, among others, failure to state a RICO claim, lack of personal jurisdiction and res judicata.

17.    On December 17, 2001, after extensive briefing and oral argument, the Massachusetts District Court dismissed Hutchins' RICO action for lack of personal jurisdiction. The dismissal of Hutchins' RICO action was affirmed, without oral argument, by the First Circuit on August 12, 2002.

18.    Concomitant with the filing of Complient v. CPR Prompt, CPR L.P. filed a parallel action before the American Arbitration Association ("AAA") on February 5, 2001, pursuant to the terms of the License Agreement. On August 14, 2002, given the resolution of Complient v. CPR Prompt, and Hutchins' steadfast and improper refusal to compensate the AAA arbitrators for their fees and/or appear in the AAA proceeding, CPR L.P. determined not to advance Hutchins' share of the fees associated with the AAA arbitration, and the AAA dismissed the action without prejudice.

19.    Then, Hutchins, on July 18, 2003, sued the AAA in the Massachusetts District Court for allegedly interfering with his patent rights by presiding over the action filed by CPR L.P. and for seeking payment of his share of the arbitration costs incurred by the AAA. The Massachusetts District Court dismissed Hutchins' Complaint against the AAA, which dismissal Hutchins appealed to the United States Court of Appeals for the First Circuit. That appeal is pending.

**The Asset Purchase Agreement**

20.    On October 21, 2003, certain assets of Complient were purchased by Cardiac Science, Inc., a Delaware corporation, pursuant to an Asset Purchase Agreement ("APA") executed by and among Complient, Cardiac Science, and CPR L.P. A copy of the APA, exclusive of its schedules, is attached hereto as Exhibit B.

21.     Pursuant to the terms of the APA, Cardiac Science purchased all of the assets of Complient and CPR L.P., except for those specifically retained by Complient and CPR L.P. The assets retained by Complient and CPR L.P. are specified in Section 1.2 of the APA and are specifically referred to as the "Retained Assets."

22.     The partnership interests in CPR L.P. are one of the Retained Assets specified in the APA. As a result, the partnership interests in CPR L.P. have not, to date, been sold to an unrelated third party.

23.     Further, pursuant to Section 1.2(i) of the APA, Complient retained the obligation to satisfy any payment obligations that may become due under Section 3.10 of the License Agreement related to any sale of the partnership interests in CPR L.P. Cardiac Science assumed all other obligations under the License Agreement, which obligations have been fully satisfied.

24.     In exchange for the assets of Complient and CPR L.P., other than the Retained Assets, Cardiac Science agreed to transfer a specified amount of shares of Cardiac Science common stock to Complient. A portion of the total amount of Cardiac Science common stock to be transferred to Complient as consideration for the purchased assets of Complient was withheld for a period of one year from the date of sale -- October 21, 2004 -- pending any potential claims for indemnity.

25.     Pursuant to the Indemnification provisions of the APA, the shares of Cardiac Science common stock held in escrow will be transferred to Complient on October 21, 2004, so long as no claims for indemnification are pending against Complient and/or so long as the shares held in escrow are not subject to reduction as a result of any then-known indemnification obligations of Complient. If an indemnification claim was made and/or is pending against Complient as of October 21, 2004 as contemplated by the APA, the amount of shares to be

transferred to Complient is subject to be reduced accordingly and pursuant to the terms of the APA.

## Hutchins Files Suit Against Cardiac Science

26.     On July 2, 2004, Hutchins filed suit against Cardiac Science in the Massachusetts District Court, which action is captioned Hutchins v. Cardiac Science, Case No. 3:04-CV-30126. In this Complaint, Hutchins claims that Cardiac Science is liable for copyright infringement, patent infringement by means of sale, patent infringement by means of manufacture, negligence and breach of contract. A copy of this Complaint, exclusive of its exhibits, is attached as Exhibit C.

27.     Hutchins is admittedly aware of the terms of the APA -- a fact he expressly admits in the Hutchins v. Cardiac Science Complaint in paragraph 18.   On August 18, 2004, Hutchins filed an "*Ex Parte* Emergency Motion for Temporary Restraining Order" in the Massachusetts District Court, seeking to suspend the transfer of shares of Cardiac Science common stock to Complient pending resolution of the Hutchins v. Cardiac Science Complaint. As a result, Hutchins is clearly aware that, by filing that Complaint, he is, at least, delaying and, possibly, preventing transfer to Complient of the shares of Cardiac Science common stock held in escrow.

28.     Hutchins claims, in his Complaint against Cardiac Science, that he gave notice to Complient, under the License Agreement, of his intent to reclaim the intellectual properties covered thereby. Hutchins further alleged that Complient abandoned these intellectual properties and, essentially, according to Hutchins, terminated the License Agreement.

29.     Section 8.2 of the License Agreement requires that a party to the License Agreement may terminate the License Agreement prior to expiration of its term only in the event

of a material breach by the other party and only upon written notice to the other party. CPR L.P. has not received notice, written or otherwise, from Defendants of a material breach of the License Agreement at any time subsequent to the Notices received in November of 1999, which Notices were nullified.

30.    Further, Hutchins claims at paragraph 26 of his Complaint against Cardiac Science that Defendants are entitled to 7.5% of Complient upon its "divestiture." Hutchins further alleged at, *inter alia*, paragraph 49 of his Complaint against Cardiac Science that he is entitled to 7.5% of the proceeds to Complient of the APA among Cardiac Science, Complient and CPR L.P.

31.    On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient based on the Complaint filed in <u>Hutchins v. Cardiac Science</u> citing Sections 1.2 and 2.2 of the APA.

**COUNT I**

32.    Complient repeats and reavers paragraphs 1 through 31 hereof as if fully rewritten herein.

33.    Pursuant to Hutchins' express admissions in the Complaint filed in <u>Hutchins v. Cardiac Science</u> and his "*Ex Parte* Emergency Motion for Temporary Restraining Order," Hutchins is aware of the existence and terms of the APA among Cardiac Science, Complient and CPR L.P.

34.    Due to his knowledge of the terms of the APA, Hutchins is aware that Cardiac Science did not purchase Complient's partnership interests in CPR L.P. Further, based on the express terms of the License Agreement and the declaratory judgment entered against Defendants in <u>Complient v. CPR Prompt</u>, Hutchins is aware that only a sale of the partnership

interests in CPR L.P. will trigger the requirement of Section 3.10 of the License Agreement to pay Defendants 7.5% of the value of the net proceeds of the sale to a third party of the partnership interests in CPR L.P.

35.    Hutchins is further aware, by virtue of the declaratory judgment entered in Complient v. CPR Prompt and the express terms of the License Agreement, that Defendants are not, pursuant to Section 3.10 of the License Agreement or otherwise, entitled to 7.5% of the net proceeds of the sale of Complient.

36.    By virtue of Hutchins' filing of the Complaint in Hutchins v. Cardiac Science, Hutchins intentionally seeks to delay and or prevent the transfer of the shares of Cardiac Science common stock from escrow for the benefit of Complient pursuant to Section 3.1 of the APA.

37.    Hutchins' efforts to delay and or prevent the transfer of the Cardiac Science common stock from escrow to Complient are without justification because Hutchins is aware that the partnership interests in CPR L.P. were not sold to Cardiac Science and, further, that in no event is he entitled to 7.5% of the net proceeds of a sale of Complient.

38.    As a result, Hutchins' conduct in filing the Complaint in Hutchins v. Cardiac Science constitutes a tortious interference with the APA among Complient, Cardiac Science and CPR L.P. for which Hutchins is liable to Complient for compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $25,000.

## COUNT II

39.    Complient repeats and reavers paragraphs 1 through 38 hereof as if fully rewritten herein.

40. On July 2, 2004, Hutchins filed a Complaint in the Massachusetts District Court captioned <u>Hutchins v. Cardiac Science</u>, Case No. 3:04-CV-030126. A copy of this Complaint is attached hereto as Exhibit C.

41. On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient pursuant to the terms of the APA entered into by and among Cardiac Science, Complient and CPR L.P. on October 21, 2003.

42. As Hutchins admits in paragraph 18 of the Complaint filed in <u>Hutchins v. Cardiac Science</u>, and as evidenced by the arguments made and relief sought by Hutchins in his Motion for Temporary Restraining Order filed therein, Hutchins is aware of the terms of the APA and is seeking to prevent the transfer of shares of Cardiac Science common stock to Complient under the APA.

43. Pursuant to the APA, certain shares of Cardiac Science common stock which constitute part of the consideration tendered to Complient under the APA are held in escrow until October 21, 2004. The shares of Cardiac Science common stock held in escrow will only be transferred to Complient if no claims for indemnity by Cardiac Science are pending on or before and/or as of October 21, 2004.

44. Hutchins' Complaint against Cardiac Science seeks damages of, among other things, diversion to him of 7.5% of the stock of Cardiac Science that is being transferred to Complient as payment under the APA and/or $3,525,000, which, according to Hutchins, constitutes the value of 7.5% of Complient.

45. Hutchins, by virtue of the outcome of <u>Complient v. CPR Prompt</u> and the express terms of the License Agreement, is aware that Defendants are not entitled to 7.5% of the value of Complient upon its sale under any circumstances but, rather, that, under the terms of the License

Agreement, Defendants are entitled to only 7.5% of the sale to a third party of the partnership interests in CPR L.P.

46.    Hutchins has knowledge that the partnership interests in CPR L.P. -- Complient's 99% general partnership interest or otherwise -- were not sold to Cardiac Science or any entity.

47.    Hutchins is further aware that, by virtue of filing the Complaint in <u>Hutchins v. Cardiac Science</u>, a claim for indemnity under the APA against Complient arose and that, pending the resolution of at least some of his claims against Cardiac Science, the Cardiac Science common stock held in escrow will or may not be transferred to Complient.

48.    Hutchins filed the Complaint against Cardiac Science with the ulterior purpose and motive of extorting a payment from Complient under Section 3.10 of the License Agreement -- a payment that is not due and owed to Defendants.

49.    As a result of Hutchins' wrongful and illegitimate filing of his Complaint against Cardiac Science in the Massachusetts District Court, Complient has and will suffer compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $25,000 and includes, but is not limited to, any decline in the value of the shares of Cardiac Science common stock from October 21, 2004 to the date the stock is transferred to Complient as well as any and all attorney fees and costs incurred by Complient related to Cardiac Science's demand for indemnity.

## COUNT III

50.     Complient repeats and reavers paragraphs 1 through 49 hereof as if fully rewritten herein.

51.     As fully explained above, as the plain language of Section 3.10 of the License Agreement provides (a copy of which is attached hereto as Exhibit A) and as the Cuyahoga County Court of Common Pleas held in its declaratory judgment entered against Defendants in Complient v. CPR Prompt, in the event the partners of CPR L.P. sell all or part of their respective partnership interests in CPR L.P. to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interests.

52.     Further, the plain language of Section 8.2 of the License Agreement provides that in order to effectively terminate the License Agreement prior to the expiration of its term, Defendants are required to provide written notice to CPR L.P. of a material breach. Upon such written notice, CPR L.P. is afforded at least 90 days to cure any breach.

53.     To date, CPR L.P. has not received the written notice required by Section 8.2 of the License Agreement.

54.     Despite the plain language of Section 3.10 of the License Agreement and, moreover, despite the declaratory judgment previously entered against them, Defendants continue to dispute the effect of Section 3.10 of the License Agreement and incorrectly contend that they are entitled to 7.5% of the sale of any or all assets of Complient.

55.     Further, Defendants claim that the 7.5% payment provision of Section 3.10 of the License Agreement was somehow triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science.

{CMO1740.DOC;2}                                13

56.    The plain language of the APA (a copy of which is attached hereto as Exhibit B), specifically section 1.2(i) thereof, expressly provides that the partnership interests in CPR L.P. were not sold to Cardiac Science in October of 2003 as Defendants now claim.

57.    In order to give effect to the plain language of the License Agreement, the APA and the prior order of this Court, the Court should enter a judgment declaring that: (a) neither Defendant has effectively terminated the License Agreement; (b)  the partnership interests in CPR L.P. were not sold to Cardiac Science in October of 2003 as Defendants now contend; and (c) the 7.5 % payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science.

58.    An actual and justiciable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement and Section 1.2(i) of the APA for which declaratory relief is necessary.

59.    A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of both Section 3.10 of the License Agreement and Section 1.2(i) of the APA.

WHEREFORE, Complient prays that judgment be entered in its favor as follows:

(i)    On Count I of the Complaint, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $25,000 to be determined at trial;

(ii)    On Count II of the Complaint, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $25,000 to be determined at trial;

(iii)    On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that Defendants have not effectively terminated the License Agreement;

(iv)    On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that the partnership

interests in CPR L.P. were not sold to Cardiac Science by virtue of the APA;

(v)    On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that the 7.5% payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science; and

(vi)    interest, costs, attorneys fees and such other and further relief as the Court deems equitable and just.

_Colleen Moran O'Neil_

WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio  44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Plaintiff,
Complient Corporation

# EXHIBIT "2"

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | **AFFIDAVIT OF** |
| ) | **DONALD C. HUTCHINS** |
| v. ) | |
| ) | |
| CARDIAC SCIENCE, INC. ) | |
| ) | |
| Defendant ) | |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1.    I am over 18 years of age and have personal knowledge of the matters attested to herein.

2.    The Complient Corporation closed down its operation at 27070 Miles Road, Cleveland, Ohio and released its employees in November 2003 after the asset sale to Cardiac Science. During the last four months my telephone calls to Complient's main phone number of 440-498-8800 are met day after day with only a busy signal.

3.    Robert I. Thompson who signed the Asset Sale Agreement with Cardiac Science as President and CEO appears to be relieved of his duties. He can not be found at any Complient facility.

4.    I recently refused a settlement offer that was sent to me by Complient. The offer came from the law offices of Calfee, Halter and Griswold LLP and the settlement

check was signed by Steven Lindseth who remains the only visible person even remotely active with the Complient Corporation.

5.    The Complient Corporation is a Delaware corporation. Complient can not claim citizenship in Ohio because it no longer operates as a business in Ohio. Any activities relating me to Cardiac Science and have not taken place in Ohio.

6.    Case No. CV 04 540066 was filed by the Complient Corporation in response to Civil Action 04-30126-MAP that is currently being adjudicated in the District Court of Massachusetts.

7.    The issues Civil Action 04-30126-MAP and Case No. CV 04 540066 are identical. They both ask for resolution of questions of infringement by Cardiac Science of my patents as they relate to the asset sale by the Complient Corporation.

8.    Case No. CV 04 540066 is an attempt by Complient to circumvent Civil Action 04-30126-MAP. Steven Lindseth is aware that the Ohio action will strain my resources and will not resolve questions that can only be answered by all parties assembled in this Court. Mr. Lindseths hope is to exhaust me and gain a default judgement in Ohio that can be applied to Civil Action 04-30126-MAP.

9.    Steven Lindseths actions undertaken many years ago and designed to deny me payments for the use of my intellectual properties now place Cardiac Science in the position of infringement. Cardiac Science is not authorized to practice my intellectual properties. I have not agreed to a license, sub-license or the sale of these assets to Cardiac Science. The 1994 License Agreement with County Line does not allow a sublicense or transfer without my signed and written permission.

2

10.    The Complaint for Ohio Case CV 04 540066 asks that the same issues be resolved

that are at issue in this Court in Civil Action 04-30126-MAP. The issues involve

the authority to exercise Hutchins' intellectual properties. The dispute between

Hutchins and Cardiac Science is directly related to the Complient Corporation's

relationship to Hutchins and Cardiac Science. The issues can be resolved most

equitably on evidence produced by all three parties. The absence of the

Complient Corporation places an unfair burden on Cardiac Science to defend

fraudulent acts committed by the Complient Corporation, County Line Limited,

and Steven Lindseth prior to the Cardiac Science asset purchase.


FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS



Sworn to before me and subscribed in my presence the 28th day of October,
2004


_____
NOTARY PUBLIC

3