| Name | | | | |
|---|---:|---:|---:|---:|
| Cardiac Science Co-Investment, LP(4) | 2,086,504 | 2,086,504 | — | * |
| Complient Corporation | 1,690,089 | 1,690,089 | — | * |
| Embassy & Co.(5) | 1,025,000 | 1,025,000 | — | * |
| Walter Villiger(6) | 1,454,979 | 495,000 | 959,979 | 1.2% |
| Langley Partners L.P.(7) | 1,411,667 | 1,411,667 | — | * |
| Thomas Girschweiler(8) | 990,000 | 495,000 | 495,000 | * |
| General Electric Medical Information Systems(9) | 750,000 | 750,000 | — | * |
| Truk Opportunity Fund L.L.C.(10) | 55,000 | 55,000 | — | * |
| Allen & Caron, Inc.(11) | 24,000 | 24,000 | — | * |
| Matt Clawson(12) | 9,000 | 6,000 | 3,000 | * |
| County Line Limited, L.L.C.(13) | 65,118 | 65,118 | — | * |
| Medtronic Physio-Control Corp.(13) | 145,835 | 145,835 | — | * |
| J.P. Morgan Partners (BHCA), L.P.(13) | 1,776,817 | 1,776,817 | — | * |
| Healthcare Equity Partners, L.P.(13) | 80,944 | 80,944 | — | * |
| Healthcare Equity QP Partners, L.P.(13) | 247,430 | 247,430 | — | * |
| Healthcare Equity CPR, L.L.C.(13) | 3,447 | 3,447 | — | * |
| Great Lakes Capital Investments II, | 14,716 | 14,716 | — | * |

| | | | | |
|---|---:|---:|---:|---:|
| L.L.C.(13) | | | | |
| Great Lakes Capital Investments III, L.L.C.(13) | 11,335 | 11,335 | — | * |
| Great Lakes Capital Investments IV, L.L.C.(13) | 7,444 | 7,444 | — | * |
| National City Equity Partners, Inc.(13) | 189,187 | 189,187 | — | * |
| The Kindt-Collins Company LLC(13) | 550,525 | 550,525 | — | * |

(Continued from prior page)

| Selling Stockholder | Number of Shares of Common Stock Beneficially Owned Prior to Offering(1) | Number of Shares of Common Stock Offered for Sale Hereunder | Number of Shares of Common Stock Beneficially Owned Assuming Sale of All Shares offered Hereunder | Percentage of Common Stock Beneficially Owned Assuming Sale of All Shares Offered Hereunder |
|---|---|---|---|---|
| Marvin Marks(13) | 19,444 | 19,444 | — | * |
| Stephen W. and Barbara Schuman(13) | 1,646 | 1,646 | — | * |
| Laura McKenna(13) | 15,967 | 15,967 | — | * |
| PineTree Co. Ltd.(13) | 127,622 | 127,622 | — | * |
| Sells Investment Co.(13) | 1,719 | 1,719 | — | * |
| Boake A. Sells Trust dtd. 12/14/88(13) | 121,865 | 121,865 | — | * |
| John W. Dorsey(13) | 4,861 | 4,861 | — | * |
| Brenton P. Cook, Trustee, Brenton P. Cook Trust dtd. 6/28/99(13) | 740 | 740 | — | * |
| McDonald Investments Inc. C/FBO John J. Meilner IRA A/C 85879052 dtd. 6/6/96(13) | 1,042 | 1,042 | — | * |
| Wayne Van Dam(13) | 740 | 740 | — | * |
| Cleveland Clinic Foundation(13) | 72,917 | 72,917 | — | * |

| | | | | |
|---|---:|---:|---:|---:|
| GS Capital Partners III, L.P.(13) | 1,305,010 | 1,305,010 | — | * |
| GS Capital Partners III Offshore, L.P.(13) | 358,763 | 358,763 | — | * |
| Goldman Sachs & Co. Verwaltungs GmbH(13) | 60,246 | 60,246 | — | * |
| Stone Street Fund 2000, L.P.(13) | 164,193 | 164,193 | — | * |
| Bridge Street Special Opportunities Fund 2000, L.P.(13) | 82,096 | 82,096 | — | * |
| Seligman New Technologies Fund, Inc.(13) | 63,607 | 63,607 | — | * |
| Seligman Investment Opportunities (Master) Fund—NTV Portfolio(13) | 32,504 | 32,504 | — | * |
| Seligman Investment Opportunities (Master) Fund—NTV II Portfolio(13) | 195,559 | 195,559 | — | * |
| BancBoston Capital, Inc.(13) | 636,050 | 636,050 | — | * |
| Roundwood Capital L.P.(13) | 48,612 | 48,612 | — | * |
| Roundwood Capital II L.P.(13) | 48,612 | 48,612 | — | * |

| Name | | | | |
|---|---:|---:|---:|---:|
| Key Principal Partners LLC(13) | 722,692 | 722,692 | — | * |
| R. Louis Schneeberger(13) | 20,694 | 20,694 | — | * |
| Frank D. Gruttadauria(13) | 9,197 | 9,197 | — | * |
| Charles W. Walton(13) | 25,760 | 25,760 | — | * |
| Jack A. Staph(13) | 9,722 | 9,722 | — | * |
| Marvin Solganik(13) | 9,722 | 9,722 | — | * |
| Calfee, Halter & Griswold LLP(13) | 9,722 | 9,722 | — | * |
| Thomas R. Kully(13) | 7,292 | 7,292 | — | * |
| NonQuitt Partners(13) | 9,722 | 9,722 | — | * |
| Clark Callander(13) | 9,467 | 9,467 | — | * |
| Dominique Sémon(13) | 972 | 972 | — | * |
| Thomas G. Kelly(13) | 2,429 | 2,429 | — | * |
| Jeanne Chung(13) | 1,458 | 1,458 | — | * |
| Thomas W. Killilea(13) | 487 | 487 | — | * |
| Sheryl Skolnick(13) | 973 | 973 | — | * |
| Peter McNierney (13) | 1,944 | 1,944 | — | * |
| Cleveland Pacific Equity Partners I, L.P.(13) | 97,223 | 97,223 | — | * |
| EPKO Investment, Inc.(13) | 24,306 | 24,306 | — | * |
| Alain M. Oberrotman(13) | 6,448 | 6,448 | — | * |
| Robert A. Lauer(13) | 21,748 | 20,748 | 1,000 | * |
| David Strang(13) | 32,194 | 32,194 | — | * |

4/15/2004 4:28 PM

| | | | | |
|---|---|---|---|---|
| Moxahela Enterprises, LLC(13) | 55,126 | 55,126 | — | * |
| Totals: | 28,097,298 | 26,638,319 | 1,458,979 | 1.8% |

\* Indicates less than one percent (1%).

(1) "Prior to Offering" means prior to the offering by the selling stockholders of the securities registered under this S-3 for resale.

(2) Pursuant to that certain Senior Note and Warrant Purchase Agreement dated as of May 29, 2002 (the "Purchase Agreement"), Perseus Acquisition/Recapitalization Fund, LLC purchased (i) warrants to purchase 4,357,657 shares of our common stock at an exercise price of $3.00 as adjusted (ii) warrants to purchase 1,318,911 shares of our common stock at an exercise price of $3.96 as adjusted, (iii) warrants to purchase 43,577 shares of our common stock an exercise price of $4.61 as adjusted and (iv) warrants to purchase 10,894 shares of our common stock an exercise price of $1.75 as adjusted. All of the warrants are exercisable until May 30, 2009. The shares underlying the warrants are included in the registration statement of which this prospectus is a part. Ray E. Newton, III is a managing director of Perseus, LLC, is also a member of our board of directors.

(3) Pursuant to the Purchase Agreement, Perseus Market Opportunity Fund, LP, purchased (i) warrants to purchase 4,055,847 shares of our common stock at an exercise price of $3.00 as adjusted (ii) warrants to purchase 1,227,564 shares of our common stock at an exercise price of $3.96 as adjusted, (iii) warrants to purchase 40,558 shares of our common stock at an exercise price of $4.61 as adjusted and (iv) warrants to purchase 10,140 shares of our common stock at an exercise price of $1.75 as adjusted. All of the warrants are exercisable until May 30, 2009. The shares underlying the warrants are included in the registration statement of which this prospectus is a part. Ray E. Newton III is a managing director of Perseus, LLC, and is also a member of our board of directors.

(4) Pursuant to the Purchase Agreement, Cardiac Science Co-Investment, LP, purchased (i) warrants to purchase 1,586,496 shares of our common stock at an exercise price of $3.00 as adjusted, (ii) warrants to purchase 480,177 shares of our common stock at an exercise price of $3.96 as adjusted, (iii) warrants to purchase 15,865 shares of our common stock an exercise price of $4.61 as adjusted and (iv) warrants to purchase 3,966 shares of our common stock at an exercise price of $1.75 as adjusted. All of the warrants are exercisable until May 30, 2009. The shares underlying the warrants are included in the registration statement of which this prospectus is a part. Ray E. Newton III is a managing director of Perseus, LLC, and is also a member of our board of directors.

(5) Embassy & Co. is holding the shares as nominee for U.S. Bank N.A. in its capacity as escrow agent for the benefit of Complient Corporation.

(6) Represents 1,409,979 shares of common stock and warrants to purchase 45,000 shares of common stock at $5.00.

(7) Represents 1,283,334 shares of common stock and warrants to purchase 128,333 shares of common stock at $5.00.

(8) Represents 945,000 shares of common stock and warrants to purchase 45,000 shares of common stock at $5.00.

(9) Pursuant to a development agreement, we issued GE a warrant to purchase 750,000 shares of our common stock with an exercise price of $3.00 per share.

(10) Represents 50,000 shares of common stock and warrants to purchase 5,000 shares of common stock at $5.00.

(11) Represents warrants to purchase 12,000 shares of common stock at $1.80 and 12,000 at $3.27. Allen & Caron, Inc. provides corporate communication services to us and is compensated partly through warrants to purchase shares of our common stock.

(12) Represents warrants to purchase 3,000 shares of common stock at $1.80, 3,000 at $3.27 and 3,000 at $2.00. Matt Clawson is an employee of Allen & Caron, Inc., which provides corporate communication services to us and is compensated partly through warrants to purchase shares of our common stock.

(13) Represents shares of common stock assigned by Complient Corporation to certain of its stockholders, respectively, pursuant to an assignment instrument dated January 20, 2004, as amended March 19, 2004, in connection with Complient Corporation's plan of liquidation and dissolution. Prior to the delivery of any shares to a Complient Corporation stockholder, such stockholder shall have entered into a lock-up agreement that provides for, among other things, a proportionate monthly release of a portion of the stockholder's shares from lock-up over an 8-month period ending on or about November 14, 2004.

---

All information in this prospectus supplement is as of March 31, 2004.

---

**The date of this prospectus supplement is March 31 2004.**

# EXHIBIT N

## E. MARTINELLI & ASSOCIATES, P.C.
### LAWYERS

January 15, 2001

Mr. Steven W. Lindseth, President
Complient Corporation
27070 Miles Road
Salon, OH 44139-1121

Dear Steve:

Don Hutchins wrote to you and/or your counsel, Scott R. Wilson, Esq., several times over the last year and one-half to inquire about the status of CPR-Prompt Corporation's ("CPR-Prompt") 7.5% interest in the proceeds that will attend to the ultimate sale of your business. Although each of you and Mr. Wilson has responded to Don's inquiries, Don has never been satisfied that the nature of CPR-Prompt's 7.5% interest is acknowledged by Complient Corporation ("Complient") or understood by the investors in Complient. Accordingly, Don has asked me to write to clarify his concerns and to request you to address them.

When Don negotiated what became the License Agreement dated as of June 1, 1994 between CPR-Prompt and County Line Limited Partnership ("County Line") with you, there were three primary elements of consideration involved;

a) an up-front payment of $100,000;
b) royalty payments; and
c) a back-end payment equal to 7.5% of the sale price realized by the owners of the business the foundation of which was the License Agreement.

During the negotiations, you and your father had described your recent successes with the sales of both the Interplak and Thermoscan companies and held those transactions out as illustrative of the financial rewards that could be generated by successful development of a company built around a patent. As a consequence of these discussions, the 7.5% interest became, from Don's perspective, the sine qua non of the deal.

In the course of the drafting of the License Agreement, you informed Don

Suite 912, Tower Square          1500 Main Street
P.O. Box 15407                   Springfield, MA 01115
Telephone: 413-746-4677          Telecopier: 413-747-3928

Mr. Steven Lindseth, President
January 15, 2001
Page 2

Hutchins that, inasmuch as County Line had separate lines of business including Christmas tree stands and birdhouses, you intended to form a new entity to be controlled by County Line for purposes of conducting the business to be built around the invention covered by the License Agreement. You indicated the new entity would raise venture capital from outside investors.

Accordingly, Section 3.10 was incorporated into the License Agreement providing for the creation of an "Affiliate" and for the payment of 7.5% of the proceeds of any sale by a "partner" (intended to include County Line and any outside venture investors) of the Affiliate to CPR-Prompt. Consistent with this, Section 4.9 (d) of the License Agreement provided that the Affiliate would provide and update the names and addresses of the investor partners to CPR-Prompt.

On December 15, 1999, Mr. Wilson wrote to Don Hutchins and CPR-Prompt explaining why, in his view, Complient had no duty to acknowledge CPR-Prompt's 7½% interest in future sale proceeds. At the same time, Mr. Wilson supplied an excerpt (page 70) from Complient's Confidential Information Statement dated July 1999 delivered to investors (the "Excerpt") showing that a 7.5% interest had been disclosed to Complient investors.

Mr. Wilson's letter and the Excerpt indicate that County Line proceeded with <u>two affiliated companies</u>, one to hold the rights under the License Agreement (CPR Limited Partnership) and another (now Complient Corporation) to actually raise venture funding, to conduct the business and to own CPR Limited Partnership. It appears that Mr. Scott's thinking is that while CPR-Prompt may be entitled to 7.5% of the proceeds to be derived from the sale of CPR Limited Partnership, CPR-Prompt is not entitled to 7.5% of the proceeds to be derived from the sale of Complient Corporation (except insofar as the sale of Complient Corporation may include the sale of CPR Limited Partnership, in which case some undefined portion of the aggregate sale proceeds would be allocable to the sale of CPR Limited Partnership and 7.5% of those proceeds would be so payable).

This interpretation of the License Agreement is completely at odds with the understanding of the parties at the time the License Agreement was executed. The intent was that one "Affiliate" be the holder of the License Agreement, the repository of the venture funding and the operating company. The discussion in Section 3.10 of the consequences of a public offering or a merger would be irrelevant absent this conclusion as would be the undertaking in Section 4.9 (d) to provide and update the names of other investors in the Affiliate. It is also totally inconsistent with the discussions held with you leading up to the execution of the License Agreement and

Mr. Steven Lindseth, President
January 15, 2001
Page 3

with discussions held with you as late as May, 1995, which, as set forth, one year after execution of the License Agreement, in your June 1, 1995 memo to CPR-Prompt, noted: "4. We will prepare for you and Gary documentation of the 7.5% back-end protection provided for in all of our shareholder agreements." (Emphasis supplied). Finally, it is inconsistent with the early drafts of the License Agreement in which County Line itself was to be not only the licensee but also the investment vehicle. The notion of assigning the license to an affiliate was developed late in our discussions when you sought to separate bird feeder / Christmas tree stand operations from the CPR Prompt business.

If, as I believe, Complient Corporation is a successor to CPR-Prompt, LLC, there can be no doubt as to the genesis of Complient's business and the foundation upon which it was built.

Given the history of the License Agreement, I find it difficult to believe you would have structured the business built upon the License Agreement in a way which stripped away all of the upside Don was led to believe would be derived by CPR-Prompt from the entity you were forming to hold the License Agreement.

CPR-Prompt believes it is entitled to a 7.5% of the proceeds of any sale by any partner/member/ shareholder of Complient Corporation and not simply on Complient's interest in CPR Limited Partnership.

I request your explanation as to how and why CPR Limited Partnership was relegated to a dark corner of Complient's corporate structure when the premise under which the License Agreement we entered into was that the Affiliate, i.e., CPR Limited Partnership, would be the vehicle which would grow the CPR business and the businesses (now the businesses of Complient) that were related to it.

Very truly yours,

Gary E. Martinelli

GEM/slt

cc: Scott R. Wilson, Esq.
    Donald C. Hutchins

# EXHIBIT O

# STRADLING YOCCA CARLSON & RAUTH

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
TELEPHONE (949) 725-4000
FACSIMILE (949) 725-4100

KEVIN W. KIRSCH
DIRECT DIAL: (949) 725-4142
KKIRSCH@SYCR.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 4200
SAN FRANCISCO CALIFORNIA 94104
TELEPHONE (415) 283-2240
FACSIMILE (415) 283-2255

SANTA BARBARA OFFICE
302 OLIVE STREET
SANTA BARBARA, CALIFORNIA 93101
TELEPHONE (805) 564-0065
FACSIMILE (805) 564-1044

June 29, 2004

***VIA FEDERAL EXPRESS***

Gary Martinelli, Esq.
P.O. Box 15407
Suite 912, Tower Square
1500 Main Street
Springfield, Massachusetts 01115

Re: Donald C. Hutchins

Dear Mr. Martinelli:

We are in receipt of Mr. Hutchins' June 5, 2004 correspondence to Randall T. Skaar. STRADLING YOCCA CARLSON & RAUTH has been retained to represent Cardiac Science, Inc. ("Cardiac Science") in this matter. Please direct all future communications to our office.

Mr. Hutchins has raised three issues: (1) he claims that the acquisition of Complient by Cardiac Science triggers an alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994"; (2) he claims that the scope of the June 1, 1994 Agreement (the "1994 License Agreement") is limited to United States Patent Nos. 4,583,524; and (3) he claims that County Line Limited Partnership and its subsequent assignees have abandoned their rights under the 1994 License Agreement. In addition, Mr. Hutchins has threatened Cardiac Science with SEC action in the event that an agreement is not reached.

Prior to addressing the first three points, we would like to take the opportunity to advise Mr. Hutchins that threats of SEC action are not well received by Cardiac Science. Cardiac Science maintains the highest level of integrity in its business dealings and takes such frivolous and ill conceived threats extremely seriously. Cardiac Science is already reviewing the publication of the current threat for possible action against Mr. Hutchins. Should Mr. Hutchins elect to publish such allegations again in a less discrete manner, Cardiac Science will vigorously protect its reputation and business.

As to Mr. Hutchins' first substantive point, the alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994" does not touch or concern Cardiac Science. Cardiac Science was not a party to any such alleged oral agreement. Further, the legal instrument giving rise to Cardiac Science's current ownership of the rights under the 1994 License Agreement was in the form

DOCSOC/1053211v1/16761-0000

Gary Martinelli
June 29, 2004
Page Two

of an asset purchase. Any issue over any such alleged breach of any alleged oral agreement is between Mr. Hutchins and the Lindseths, Complient, et al.

With respect to Mr. Hutchins' second point, Cardiac Science does not agree with his extremely narrow reading of sections 1.8, 1.9 and 4.6, *inter alia*, of the 1994 License Agreement. Cardiac Science purchased and will exercise all of the rights contained and outlined in the 1994 License Agreement.

With respect to Mr. Hutchins' third point, the alleged abandonment position appears to be based on two arguments: (1) Mr. Hutchins' assertion that Complient is no longer an ongoing concern and (2) Complient's alleged failure to maintain the Licensed Patents. Issue number one is irrelevant. Cardiac Science is the assignee under the 1994 License Agreement and is performing under the 1994 License Agreement. Issue No. 2 appears to reflect a misunderstanding on Mr. Hutchins' part of the duties and obligations owed under the 1994 License Agreement. Pursuant to Section 4.4 of the 1994 License Agreement, it is the responsibility of Mr. Hutchins and CPR-Prompts to maintain, sustain, reexamine, reissue or extend the Licensed Patents. The Licensee merely has an obligation to pay or reimburse reasonable expenses associated therewith. Cardiac Science is not aware of any claim by Mr. Hutchins that any licensee under the 1994 License Agreement has failed to reimburse the licensor for any such expense. In addition, Cardiac Science has paid in full all royalty amounts due and owing under the 1994 License Agreement to Mr. Hutchins' through the quarter ended March 31, 2004. Further, there is no forfeiture provision in the 1994 License Agreement. Finally, the licensor has not provided formal notice of any material breach pursuant to sections 8.2 and 9.1 triggering the 90 day opportunity to cure.

Any position taken in this correspondence is merely part of an effort to respond to the assertions raised by Mr. Hutchins in his June 5, 2004 correspondence. The positions are not meant to be an exhaustive list of the defenses which could be raised to each of the allegations asserted by Mr. Hutchins. Further, any citation to specific portions of the 1994 License Agreement is not meant to preclude the possibility that other portions of the 1994 License Agreement or other documents may be probative to the issues addressed by Mr. Hutchins.

Very truly yours,

STRADLING YOCCA CARLSON & RAUTH

Kevin W. Kirsch

KWK:cml

DOCSOC/1053211v1/16761-0000

# EXHIBIT P

# Calfee, Halter & Griswold

| | | |
|---|---|---|
| Columbus Office:<br>Suite 1500<br>88 East Broad Street<br>Columbus, Ohio 43215-3506<br>(614) 621-1500<br>Telecopier (614) 621-0010 | Attorneys at Law<br>Suite 1800<br>800 Superior Avenue<br>Cleveland, Ohio 44114-2688<br>(216) 622-8200 | Cleveland<br>Telecopier (216) 241-0816<br><br>Writer's Direct Dial<br>No. (216) 622-8503 |

September 7, 1995

Donald C. Hutchins
60 Brookdale Drive
Springfield, MA   01104

Re:   Invention Disclosures

Dear Don:

This is a follow-up to your letters of August 4 and September 4, 1995 concerning the four patent disclosures you have forwarded to our attention. The Lindseths were encouraged that you are continuing to reduce your inventions to practice. As I had previously mentioned, the disclosures we received would require additional technical information prior to preparation of an application.

The Lindseths are certainly interested in your disclosures. However, at this time, as you know, they are involved with the CPR Prompt product and are not currently certain of plans for the future. The Lindseths advise that you should contact your attorney and proceed as you see fit.

Pursuant to Paragraph 4.6 of the License Agreement, County Line Limited retains its option with respect to these improvements or similar products. Please let us know if you have any questions.

Very truly yours,

Jeanne E. Longmuir

JEL:ysc
cc:  Gary Martinelli, Esq.
     Steven W. Lindseth

188\22775APA.20I

Case 3:04-cv-30126-MAP    Document 40-7    Filed 12/22/2004    Page 18 of 18