UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

U.S. DISTRICT COURT

| | |
|---|---|
| DONALD C. HUTCHINS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action: 04-30126-MAP |
| | ) |
| CARDIAC SCIENCE, INC., *et al.*, | ) |
| Defendants. | ) |

## COMPLIENT CORPORATION'S ANSWER TO
## PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM

For its Answer to Plaintiff Donald C. Hutchins' ("Plaintiff") Amended Complaint, Defendant, Complient Corporation ("Complient"), answers and avers as follows:

1.    Complient admits the allegations set forth in paragraph 1 of the Amended Complaint.

2.    Complient denies the allegations set forth in paragraph 2 of the Amended Complaint for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof and because the allegations do not pertain to this answering Defendant.

3.    In response to paragraph 3 of the Amended Complaint, Complient admits that the Court entered an Order dated November 18, 2004, that Steven Lindseth is the President of Complient Corporation, that Mr. Lindseth maintains offices at the referenced address in Warrensville Heights, Ohio and that CPR Limited Partnership is a limited partnership organized in the State of Ohio and denies the remaining allegations set forth therein.

4.    Complient denies the allegations set forth in paragraph 4 of the Amended Complaint as they do not pertain to this answering Defendant.

5.    Complient admits the allegations set forth in paragraph 5 of the Amended Complaint.

6.    Complient denies the allegations set forth in paragraph 6 of the Amended Complaint for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof and as said allegations do not pertain to this answering Defendant.

7.    Complient admits that it dissolved effective December 28, 2004 and denies the remaining allegations set forth in paragraph 7 of the Amended Complaint for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof to the extent said allegations pertain to this answering Defendant.

8.    Complient admits that a copy of U.S. Patent Number 4,583,524 is attached to the Amended Complaint as Exhibit A, states that Patent Number 4,583,524 speaks for itself and denies the remaining allegations set forth in paragraph 8 of the Amended Complaint.

9.    Complient admits that a copy of U.S. Reissued Patent Number 34,800 is attached to the Amended Complaint as Exhibit B, states that Reissued Patent Number 34,800 speaks for itself, and denies the remaining allegations set forth in paragraph 9 of the Amended Complaint for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

10.    Complient admits that a copy of U.S. Patent Number 5,913,685 is attached to the Amended Complaint as Exhibit C, states that Patent Number 5,913,685 speaks for itself and denies the remaining allegations set forth in paragraph 10 of the Amended Complaint.

11.    Complient denies the allegations set forth in paragraph 11 of the Amended Complaint for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

12.    Complient admits that a copy of the trademark for CPR Prompt is attached to the Amended Complaint as Exhibit D, states that Exhibit D speaks for itself and denies the remaining allegations set forth in paragraph 12 of the Amended Complaint.

13.    Complient denies the allegations set forth in paragraph 13 of the Amended Complaint.

14.    Complient denies the allegations set forth in paragraph 14 of the Amended Complaint.

15.    Complient denies the allegations set forth in paragraph 15 of the Amended Complaint.

16.    In response to paragraph 16 of the Amended Complaint, Complient states that Exhibit E speaks for itself and denies the remaining allegations set forth therein as they do not pertain to this answering Defendant.

17.    Complient denies the allegations set forth in paragraph 17 of the Amended Complaint.

18.    In response to paragraph 18 of the Amended Complaint, Complient states that Exhibit F speaks for itself and denies the remaining allegations set forth therein as they do not pertain to this answering Defendant.

19.    In response to paragraph 19 of the Amended Complaint, Complient states that Exhibit G speaks for itself and denies the remaining allegations set forth therein as they do not pertain to this answering Defendant.

20.    In response to paragraph 20 of the Amended Complaint, Complient states that Exhibit H speaks for itself, admits that, on October 21, 2003, Cardiac Science acquired certain assets of Complient Corporation, and denies the remaining allegations set forth therein for want of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

21.    In response to paragraph 21 of the Amended Complaint, Complient admits that County Line Limited Partnership ("County Line") entered into a License Agreement with Hutchins dated June 1, 1994, a copy of which is attached hereto as Exhibit 1 and which speaks for itself (the "License Agreement"), and denies the remaining allegations set forth in paragraph 21 of the Amended Complaint.

22.    In response to paragraph 22 of the Amended Complaint, Complient admits that to the best of its knowledge Jon Lindseth is/was associated with the business ventures referenced therein and denies the remaining allegations set forth therein for lack of knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein.

23.    In response to paragraph 23 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

24.    In response to paragraph 24 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

25.    In response to paragraph 25 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

26.    In response to paragraph 26 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

27.    In response to paragraph 27 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

28.    In response to paragraph 28 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein.

29.    Complient admits the allegations contained in paragraph 29 of the Amended Complaint.

30.    Complient denies the allegations set forth in paragraph 30 of the Amended Complaint.

31.    In response to the allegations set forth in paragraph 31 of the Amended Complaint, Complient admits that CPR Prompt LLC was the successor in interest to County Line as the general partner of CPR L.P. and under a Services Agreement for certain obligations of the Licensee under the License Agreement (the "Services Agreement") which Services Agreement speaks for itself, and denies the remaining allegations set forth therein.

32.    In response to the allegations set forth in paragraph 32 of the Amended Complaint, Complient states that Exhibit K speaks for itself, admits that Complient was the successor in interest to CPR Prompt LLC under the Services Agreement and denies the remaining allegations set forth therein.

33.    In response to paragraph 33 of the Amended Complaint, Complient states that Exhibit N speaks for itself and denies the remaining allegations set forth therein.

34.    In response to paragraph 34 of the Amended Complaint, Complient admits that CPR L.P., the Affiliate under the License Agreement, filed a Demand for Arbitration in February of 2001 and denies the remaining allegations set forth therein.

35.    In response to paragraph 35 of the Amended Complaint, Complient states that the Demand for Arbitration speaks for itself and denies the remaining allegations set forth therein.

36.    Complient denies the allegations set forth in paragraph 36 of the Amended Complaint.

37.    Complient denies the allegations set forth in paragraph 37 of the Amended Complaint.

38.    Complient denies the allegations set forth in paragraph 38 of the Amended Complaint.

39.    Complient denies the allegations set forth in paragraph 39 of the Amended Complaint.

40.    Complient denies the allegations set forth in paragraph 40 of the Amended Complaint.

41.    Complient denies the allegations set forth in paragraph 41 of the Amended Complaint.

42.    Complient denies the allegations set forth in paragraph 42 of the Amended Complaint.

43.    Complient denies the allegations set forth in paragraph 43 of the Amended Complaint as they do not pertain to this answering Defendant.

44.    In response to the allegations set forth in paragraph 44 of the Amended Complaint, Complient admits that an "Affidavit" signed by Hutchins is attached to the Amended Complaint as Exhibit L the contents of which Complient denies, and denies the remaining allegations set forth therein.

45.    In response to paragraph 45 of the Amended Complaint, Complient incorporates paragraphs 1 through 44 hereof as if fully rewritten herein.

46.    Complient denies the allegations set forth in paragraph 46 of the Amended Complaint as they do not pertain to this answering Defendant.

47.    Complient denies the allegations set forth in paragraph 47 of the Amended Complaint as they do not pertain to this answering Defendant.

48.    Complient denies the allegations set forth in paragraph 48 of the Amended Complaint as they do not pertain to this answering Defendant.

49.    In response to paragraph 49 of the Amended Complaint, Complient incorporates paragraphs 1 through 48 hereof as if fully rewritten herein.

50.    Complient denies the allegations set forth in paragraph 50 of the Amended Complaint as they do not pertain to this answering Defendant.

51.    In response to paragraph 51 of the Amended Complaint, Complient admits that County Line entered into the License Agreement which speaks for itself, and denies the remaining allegations set forth therein to the extent they pertain to this answering Defendant.

52.    Complient denies the allegations set forth in paragraph 52 of the Amended Complaint as they do not pertain to this answering Defendant.

53.    In response to paragraph 53 of the Amended Complaint, Complient incorporates paragraphs 1 through 52 hereof as if fully rewritten herein.

54.    Complient denies the allegations set forth in paragraph 54 of the Amended Complaint as they do not pertain to this answering Defendant.

55.    In response to paragraph 55 of the Amended Complaint, Complient incorporates paragraphs 1 through 54 hereof as if fully rewritten herein.

56.    Complient denies the allegations set forth in paragraph 56 of the Amended Complaint.

57.    Complient denies the allegations set forth in paragraph 57 of the Amended Complaint and specifically denies that any notice to or permission by Hutchins as alleged therein was required under the License Agreement.

58.    Complient denies the allegations set forth in paragraph 58 of the Amended Complaint.

59.    Complient denies the allegations set forth in paragraph 59 of the Amended Complaint.

60.    Complient denies the allegations set forth in paragraph 60 of the Amended Complaint.

61.    In response to paragraph 61 of the Amended Complaint, Complient incorporates paragraphs 1 through 60 hereof as if fully rewritten herein.

62.    Complient denies the allegations set forth in paragraph 62 of the Amended Complaint.

63.    Complient denies the allegations set forth in paragraph 63 of the Amended Complaint.

64.     Complient denies the allegations set forth in paragraph 64 of the Amended Complaint.

65.     In response to paragraph 65 of the Amended Complaint, Complient incorporates paragraphs 1 through 64 hereof as if fully rewritten herein.

66.     Complient denies the allegations set forth in paragraph 66 of the Amended Complaint as they do not pertain to this answering Defendant.

67.     Complient denies the allegations set forth in paragraph 67 of the Amended Complaint as they do not pertain to this answering Defendant.

68.     Complient denies the allegations set forth in paragraph 68 of the Amended Complaint as they do not pertain to this answering Defendant.

69.     Complient denies the allegations set forth in paragraph 69 of the Amended Complaint as they do not pertain to this answering Defendant.

70.     In response to paragraph 70 of the Amended Complaint, Complient states that all obligations under the License Agreement were complied with prior to October 21, 2003, and denies the remaining allegations set forth therein to the extent they pertain to this answering Defendant.

71.     In response to paragraph 71 of the Amended Complaint, Complient incorporates paragraphs 1 through 70 hereof as if fully rewritten herein.

72.     Complient denies the allegations set forth in paragraph 72 of the Amended Complaint as they do not pertain to this answering Defendant.

73.     In response to paragraph 73 of the Amended Complaint, Complient states that Exhibit O speaks for itself, and denies the remaining allegations set forth therein as they do not pertain to this answering Defendant.

74.     Complient denies the allegations set forth in paragraph 74 of the Amended Complaint as they do not pertain to this answering Defendant.

75.     Complient denies the allegations set forth in paragraph 75 of the Amended Complaint as they do not pertain to this answering Defendant.

76.     Complient denies the allegations set forth in paragraph 76 of the Amended Complaint to the extent they pertain to this answering Defendant.

77.     In response to paragraph 77 of the Amended Complaint, Complient admits that it dissolved effective December 31, 2004 and denies the remaining allegations set forth therein.

78.     Complient denies the allegations set forth in paragraph 78 of the Amended Complaint.

79.     Complient denies the allegations set forth in paragraph 79 of the Amended Complaint to the extent they pertain to this answering Defendant.

80.     Complient denies the allegations set forth in paragraph 80 of the Amended Complaint as they do not pertain to this answering Defendant.

81.     Complient denies the allegations set forth in paragraph 81 of the Amended Complaint to the extent they pertain to this answering Defendant.

82.     In response to paragraph 82 of the Amended Complaint, Complient incorporates paragraphs 1 through 81 hereof as if fully rewritten herein.

83.     Complient denies the allegations set forth in paragraph 83 of the amended Complaint.

84.     Complient admits that the License Agreement speaks for itself and denies the remaining allegations set forth in paragraph 84 of the Amended Complaint.

85.    In response to paragraph 85 of the Amended Complaint, Complient admits that no notice of the sale of certain of Complient's assets to Cardiac Science was provided to Hutchins because no such notice was required and denies the remaining allegations set forth therein.

86.    Complient denies the allegations set forth in paragraph 86 of the Amended Complaint.

87.    Complient denies the allegations set forth in paragraph 87 of the Amended Complaint.

88.    In response to paragraph 88 of the Amended Complaint, Complient admits that it has not paid a patent license fee under the License Agreement since September of 2003 because no such payment was required and denies the remaining allegations set forth therein.

89.    Complient denies the allegations set forth in paragraph 89 of the Amended Complaint.

90.    Complient denies the allegations set forth in paragraph 90 of the Amended Complaint.

91.    In response to paragraph 91 of the Amended Complaint, Complient admits that it did not notify Hutchins of the sale of certain of its assets to Cardiac Science because no such notice was required and denies the remaining allegations set forth therein.

92.    In response to paragraph 92 of the Amended Complaint, Complient admits that it and its principals are and were fully aware of the requirements of the License Agreement, states that the terms of the License Agreement were fully complied with prior to October 21, 2003 and denies the remaining allegations set forth therein.

93.    In response to paragraph 93 of the Amended Complaint, Complient admits that reports filed with the SEC speak for themselves and denies the remaining allegations set forth therein.

94.    Complient denies the allegations set forth in paragraph 94 of the Amended Complaint.

95.    Complient denies each and every allegation set forth in the Amended Complaint not specifically admitted herein.

96.    Complient controverts Hutchins' prayer for relief.

## AFFIRMATIVE DEFENSES

97.    Hutchins failed to state a claim upon which relief may be granted.

98.    Hutchins' claims are barred by the terms of the License Agreement attached hereto as Exhibit 1.

99.    Hutchins' claims are barred, in whole or in part, by the doctrines of laches, waiver and estoppel.

100.    Hutchins' claims are barred, in whole or in part, by the statute of frauds.

101.    Hutchins' claims are barred, in whole or in part, by the doctrine of unclean hands.

102.    Hutchins' claims are barred, in whole or in part, by the doctrine of *res judicata*.

WHEREFORE, Defendant Complient, Inc., requests that the Amended Complaint be dismissed and that Complient be awarded its costs herein and such other relief as the Court deems just and proper.

## COUNTERCLAIM

For its Counterclaim against Plaintiff, Donald C. Hutchins ("Hutchins"), Complient alleges and avers as follows:

1.    Pursuant to Rule 13 of the Federal Rules of Civil Procedure, and without admitting the truth thereof, but solely for the purposes of establishing its Counterclaim against Hutchins, Complient incorporates by reference the allegations set forth in Hutchins' Amended Complaint and its answer and affirmative defenses thereto, as set forth in paragraphs 1 through 102 hereof as if fully restated herein.

2.    On or about June 1, 1994, Defendants entered into a License Agreement with County Line. County Line, in keeping with the terms of the License Agreement, subsequently transferred its interests in the License Agreement to an Affiliate of County Line, CPR L.P. As explained below, in time, Complient became the general partner of CPR L.P. A copy of the License Agreement is attached hereto as Exhibit 1.

2.    Section 3.10 of the License Agreement, among other things, entitles Hutchins to 7.5% of the net proceeds of the sale of the partnership interests in CPR L.P. to a third party if and when such a sale occurs. To date, no such sale has occurred. Nonetheless, Hutchins has repeatedly and incorrectly claimed that such a sale has occurred, has repeatedly and wrongfully attempted to terminate the License Agreement and, significantly, has repeatedly instituted frivolous and vexatious litigation in an effort to extort the payment contemplated by Section 3.10 of the License Agreement from Complient. The correct interpretation of Section 3.10 of the License Agreement was previously litigated in an Ohio Court wherein Hutchins' untenable interpretation of this provision was rejected and judgment was entered against him.

3.       Hutchins' Complaint in this action is, once again, instituted a frivolous and unfounded because Hutchins claims entitlement to the 7.5% payment contemplated by Section 3.10 of the License Agreement, despite the fact that he is admittedly aware no such payment is due and despite the prior judgment against him. Complient is entitled to relief as a result of this abusive and tortious conduct by Hutchins.

4.       Complient has and will incur extensive economic damage as a result of Hutchins' wrongful conduct and unfounded claims. Specifically, as a result of Hutchins' baseless claims, Complient was prevented and/or delayed from redeeming certain shares of common stock of Cardiac Science to which, as explained below, Complient is entitled by contract. The delay in Complient's ability to redeem this stock may result in significant economic damages due to the possibility of a decline in the stock's value.

## PARTIES, JURISDICTION AND VENUE

5.       Complient is a Delaware corporation in dissolution with an office address in Beachwood, Ohio.

6.       Donald C. Hutchins is an individual residing in Longmeadow, Massachusetts.

7.       Subject matter jurisdiction over Complient's claims is conferred by 28 U.S.C. § 1332 because diversity jurisdiction exists given that the parties are citizens of different states ad the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. Jurisdiction over Complient's claim for a declaratory judgment is also proper under 28 U.S.C. §§ 2201 and 2202 and an actual and justiciable controversy exists between the parties. Supplemental jurisdiction also exists over Hutchins' claims under 28 U.S.C. § 1367.

8.     Venue is proper in this District under 28 U.S.C. § 1391 as Hutchins resides in this juridical district is subject to personal jurisdiction and filed the Amended Complaint in this Court.

## BACKGROUND

**The License Agreement**

9.     Pursuant to the License Agreement, Hutchins granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

10.     As consideration for the License, Hutchins was entitled to, among other things, the following under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the consumer version of the product; and (e) in the event a partner of the Affiliate, *i.e.* CPR L.P., sells all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

11.     The parties to the License Agreement mutually agreed that, after the date of the Agreement, County Line would assign its interest in the License Agreement to an Affiliate of County Line. Thus, on September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement, assigned the License Agreement to CPR L.P., an Affiliate of County Line as defined by Section 1.1 of the License Agreement. At all times since

{CMO2030;2}                                    15

September 19, 1994, CPR L.P. has been the Affiliate contemplated by the License Agreement. CPR L.P. is an Ohio limited partnership formed in September of 1994.

12.    Between September of 1994 and December of 1997, County Line or its successor served as the general partner of CPR L.P. holding 99% of the partnership interest therein. In December, 1997, County Line's successor transferred its 99% partnership interest in CPR L.P. to CPR Prompt L.L.C. On June 20, 2000, CPR Prompt L.L.C. converted to a Delaware corporation named Complient Corporation. Thereafter, Complient held the 99% general partnership interest in CPR L.P.

## Hutchins Attempts to Rewrite the License Agreement

13.    In November of 1999, Hutchins attempted improperly to terminate the License Agreement by issuing a "Notice of Termination" and a "Final Notice of Termination" (the "Notices"). In the Notices, Hutchins erroneously claimed that Section 3.10 of the License Agreement had been breached. Complient, on behalf of CPR L.P. and County Line, responded to the Notices, advised that no breach of Section 3.10 of the License Agreement had, in fact, occurred, and advised that CPR L.P., County Line and Complient deemed the License Agreement to be in full force and effect.

14.    Then, in January of 2001, Hutchins sent correspondence to Complient setting forth an interpretation of Section 3.10 of the License Agreement that was directly contrary to its express terms and the intent of the parties. As a result, on February 2, 2001, Complient filed a Complaint for Declaratory Judgment in the State of Ohio, Cuyahoga County Court of Common Pleas against Hutchins and his company, CPR Prompt, to protect the interests of CPR L.P. and those of its associated entities under the License Agreement, which was designated as Case Number 429394 and is hereinafter referred to as "Complient v. CPR Prompt."

**Hutchins' Efforts to Extract Payments Under the License Agreement He Is Not Entitled To Are Rejected by the Courts**

15.    On May 30, 2001, the Court, in <u>Complient v. CPR Prompt</u>, after extensive briefing and oral argument, entered a default judgment against CPR Prompt and in Complient's favor that Section 3.10 of the License Agreement entitles CPR Prompt and Hutchins to 7.5% of the net proceeds of the sale to an unrelated third party of the partnership interests in CPR L.P. -- <u>not</u> to 7.5% of the net proceeds of the sale of Complient (as Hutchins has repeatedly claimed). Summary judgment was entered against Hutchins by the <u>Complient v. CPR Prompt</u> Court on the same basis on September 5, 2001.

16.    On June 27, 2001, less than a month after the default was entered against CPR Prompt, Hutchins, clearly dissatisfied with the outcome of <u>Complient v. CPR Prompt</u>, filed a Complaint in the Massachusetts District Court, alleging RICO violations against certain shareholders of Complient, which case was captioned <u>Hutchins v. Lindseth</u>, Case No. 3:01-CV-30120. The Complient shareholders moved to dismiss Hutchins' RICO claims on the grounds of, among others, failure to state a RICO claim, lack of personal jurisdiction and *res judicata*.

17.    On December 17, 2001, after extensive briefing and oral argument, the Massachusetts District Court dismissed Hutchins' RICO action for lack of personal jurisdiction. The dismissal of Hutchins' RICO action was affirmed, without oral argument, by the First Circuit on August 12, 2002.

18.    Concomitant with the filing of <u>Complient v. CPR Prompt</u>, CPR L.P. filed a parallel action before the American Arbitration Association ("AAA") on February 5, 2001, pursuant to the terms of the License Agreement. On August 14, 2002, given the resolution of <u>Complient v. CPR Prompt</u>, and Hutchins' steadfast and improper refusal to compensate the AAA arbitrators for their fees and/or appear in the AAA proceeding, CPR L.P. determined not to

{CMO2030;2}

advance Hutchins' share of the fees associated with the AAA arbitration, and the AAA dismissed the action without prejudice.

19.     Then, Hutchins, on July 18, 2003, sued the AAA in the Massachusetts District Court for allegedly interfering with his patent rights by presiding over the action filed by CPR L.P. and for seeking payment of his share of the arbitration costs incurred by the AAA. The Massachusetts District Court dismissed Hutchins' Complaint against the AAA, which dismissal Hutchins appealed to the United States Court of Appeals for the First Circuit. The United States Court of Appeals for the First Circuit affirmed the District Court.

**The Asset Purchase Agreement**

20.     On October 21, 2003, certain assets of Complient were purchased by Cardiac Science, Inc., a Delaware corporation, pursuant to an Asset Purchase Agreement ("APA") executed by and among Complient, Cardiac Science, and CPR L.P. A copy of the APA, exclusive of its schedules, is attached hereto as Exhibit 2.

21.     Pursuant to the terms of the APA, Cardiac Science purchased all of the assets of Complient and CPR L.P., except for those specifically retained by Complient and CPR L.P. The assets retained by Complient and CPR L.P. are specified in Section 1.2 of the APA and are specifically referred to as the "Retained Assets."

22.     The partnership interests in CPR L.P. are one of the Retained Assets specified in the APA. As a result, the partnership interests in CPR L.P. have not, to date, been sold to an unrelated third party.

23.     Further, pursuant to Section 1.2(i) of the APA, Complient retained the obligation to satisfy any payment obligations that may become due under Section 3.10 of the License

Agreement related to any sale of the partnership interests in CPR L.P. Cardiac Science assumed all other obligations under the License Agreement.

24.    In exchange for the assets of Complient and CPR L.P., other than the Retained Assets, Cardiac Science agreed to transfer a specified amount of shares of Cardiac Science common stock to Complient. A portion of the total amount of Cardiac Science common stock to be transferred to Complient as consideration for the purchased assets of Complient was withheld for a period of one year from the date of sale.

25.    Pursuant to the Indemnification provisions of the APA, the shares of Cardiac Science common stock held in escrow were to be transferred to Complient on October 21, 2004, so long as no claims for indemnification are pending against Complient and/or so long as the shares held in escrow are not subject to reduction as a result of any then-known indemnification obligations of Complient. If an indemnification claim was made and/or was pending against Complient as of October 21, 2004 as contemplated by the APA, the amount of shares to be transferred to Complient was subject to be reduced accordingly and pursuant to the terms of the APA.

## Hutchins Files Suit Against Cardiac Science

26.    Hutchins filed the subject action on July 2, 2004. In his Amended Complaint, Hutchins claims that Cardiac Science is liable for copyright infringement, patent infringement by means of sale, patent infringement by means of manufacture, negligence and breach of contract.

27.    Hutchins is admittedly aware of the terms of the APA -- a fact he expressly admits in paragraph 18 of the Amended Complaint. On August 18, 2004, Hutchins filed an "*Ex Parte* Emergency Motion for Temporary Restraining Order" in this case seeking to suspend the transfer of shares of Cardiac Science common stock to Complient pending resolution of this

case. As a result, Hutchins is clearly aware that, by filing the Complaint, he was, at least, delaying and, possibly, preventing transfer to Complient of the shares of Cardiac Science common stock held in escrow.

28.    In his Amended Complaint, Hutchins claims that he gave notice to Complient, under the License Agreement, of his intent to reclaim the intellectual properties covered thereby. Hutchins further alleged that Complient abandoned these intellectual properties and, essentially, according to Hutchins, terminated the License Agreement.

29.    Section 8.2 of the License Agreement requires that a party to the License Agreement may terminate the License Agreement prior to expiration of its term only in the event of a material breach by the other party and only upon written notice to the other party. CPR L.P. has not received notice, written or otherwise, from Hutchins or CPR Prompt of a material breach of the License Agreement at any time subsequent to the Notices received in November of 1999, which Notices were nullified.

30.    Further, Hutchins claims at paragraph 28 of his Amended Complaint that he is entitled to 7.5% of Complient upon its "divestiture." Hutchins further alleged at, *inter alia*, paragraph 92 of his Amended Complaint that he is entitled to 7.5% of the proceeds to Complient of the APA among Cardiac Science, Complient and CPR L.P.

31.    On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient based on the initial Complaint, citing Sections 1.2 and 2.2 of the APA.

### COUNT 1

32.    Complient repeats and reavers paragraphs 1 through 31 hereof as if fully rewritten herein.

33.    Pursuant to Hutchins' express admissions in the Amended Complaint and his "*Ex Parte* Emergency Motion for Temporary Restraining Order," Hutchins is aware of the existence and terms of the APA among Cardiac Science, Complient and CPR L.P.

34.    Due to his knowledge of the terms of the APA, Hutchins is aware that Cardiac Science did not purchase Complient's partnership interests in CPR L.P. Further, based on the express terms of the License Agreement and the judgment entered against Hutchins in Complient v. CPR Prompt, Hutchins is aware that only a sale of the partnership interests in CPR L.P. will trigger the requirement of Section 3.10 of the License Agreement to pay him and/or CPR Prompt 7.5% of the value of the net proceeds of the sale to a third party of the partnership interests in CPR L.P.

35.    Hutchins is further aware, by virtue of the declaratory judgment entered in Complient v. CPR Prompt and the express terms of the License Agreement, that he is not, pursuant to Section 3.10 of the License Agreement or otherwise, entitled to 7.5% of the net proceeds of the sale of Complient.

36.    By virtue of Hutchins' filing of the Complaint and the Amended Complaint, Hutchins intentionally seeks to delay and or prevent the transfer of the shares of Cardiac Science common stock from escrow for the benefit of Complient pursuant to Section 3.1 of the APA.

37.    Hutchins' efforts to delay and or prevent the transfer of the Cardiac Science common stock from escrow to Complient are without justification because Hutchins is aware that the partnership interests in CPR L.P. were not sold to Cardiac Science and, further, that in no event is he entitled to 7.5% of the net proceeds of a sale of Complient.

38.    As a result, Hutchins' conduct in filing the Complaint and the Amended Complaint constitutes a tortious interference with the APA among Complient, Cardiac Science

and CPR L.P. for which Hutchins is liable to Complient for compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $75,000.

## COUNT II

39.    Complient repeats and reavers paragraphs 1 through 38 hereof as if fully rewritten herein.

40.    As a result of the Complaint filed by Hutchins in this case, on July 28, 2004, Cardiac Science issued a demand for indemnity to Complient pursuant to the terms of the APA entered into by and among Cardiac Science, Complient and CPR L.P. on October 21, 2003.

41.    As Hutchins admits in paragraph 18 of the Amended Complaint, and as evidenced by the arguments made and relief sought by Hutchins in his Motion for Temporary Restraining Order, Hutchins is aware of the terms of the APA and is seeking to prevent the transfer of shares of Cardiac Science common stock to Complient under the APA.

42.    Pursuant to the APA, certain shares of Cardiac Science common stock which constitute part of the consideration tendered to Complient under the APA were held in escrow until October 21, 2004. The shares of Cardiac Science common stock held in escrow would only be transferred to Complient if no claims for indemnity by Cardiac Science were pending on or before and/or as of October 21, 2004.

43.    Hutchins' Amended Complaint seeks damages of, among other things, diversion to him of 7.5% of the stock of Cardiac Science transferred to Complient as payment under the APA and/or $3,525,000, which, according to Hutchins, constitutes the value of 7.5% of Complient.

44.    Hutchins, by virtue of the outcome of <u>Complient v. CPR Prompt</u> and the express terms of the License Agreement, is aware that he is not entitled to 7.5% of the value of

{CMO2030;2}

22

Complient upon its sale under any circumstances but, rather, that, under the terms of the License Agreement, he is entitled to only 7.5% of the sale to a third party of the partnership interests in CPR L.P.

45.    Hutchins has knowledge that the partnership interests in CPR L.P. -- Complient's 99% general partnership interest or otherwise -- were not sold to Cardiac Science or any entity.

46.    Hutchins is further aware that, by virtue of filing the Complaint, a claim for indemnity under the APA against Complient arose and that, pending the resolution of at least some of his claims against Cardiac Science, the Cardiac Science common stock held in escrow would or may not be transferred to Complient or, at the very least, that such transfer could be delayed.

47.    Hutchins filed the Complaint against Cardiac Science and the Amended Complaint against Cardiac Science and Complient with the ulterior purpose and motive of extorting a payment from Complient under Section 3.10 of the License Agreement -- a payment that is not due and owed him.

48.    As a result of Hutchins' wrongful and illegitimate filing of the Complaint and the Amended Complaint, Complient has and will suffer compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $75,000 and includes, but is not limited to, any decline in the value of the shares of Cardiac Science common stock from October 21, 2004 to the date the stock is/was transferred to Complient as well as any and all attorney fees and costs incurred by Complient related to Cardiac Science's demand for indemnity.

WHEREFORE, Complient prays that judgment be entered in its favor as follows:

(i)    On Count I of the Counterclaim, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $75,000 to be determined at trial;

(ii)   On Count II of the Counterclaim, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $75,000 to be determined at trial; and

(vi)   interest, costs, attorneys fees and such other and further relief as the Court deems equitable and just.


Respectfully submitted,

JOHN J. EGAN (151680)
EGAN, FLANAGAN & COHEN, P.C.
PO Box 9035
67 Market Street
Springfield, MA  01102-9035
(413) 737-0260
FAX (413) 737-0121


WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio  44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Complient Corporation

{CMO2030;2}

24

## **CERTIFICATE OF SERVICE**

A copy of the foregoing Answer of Defendant Complient Corporation to Plaintiff's Amended Complaint and Counterclaim is being served via first-class mail this _16th_ day of May, 2005 upon:

| | |
|---|---|
| Donald C. Hutchins<br>1047 Longmeadow Street<br>Longmeadow, Massachusetts 01106 | Paul H. Rothschild, Esq.<br>Bacon & Wilson, P.C.<br>33 State Street<br>Springfield, MA 01103<br><br>And<br><br>Randall T. Skaar, Esq.<br>Scott G. Ulbrich<br>Patterson, Thuente, Skaar & Christensen, P.A.<br>4800 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402-2100<br><br>Attorneys for Defendant Cardiac Science, Inc. |

One of the Attorneys for Complient Corporation