# EXHIBIT B

# STRADLING YOCCA CARLSON & RAUTH
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW
650 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
TELEPHONE (949) 725-4000
FACSIMILE (949) 725-4100

KEVIN W. KIRSCH
DIRECT DIAL: (949) 725-4142
KKIRSCH@SYCR.COM

SAN FRANCISCO OFFICE
44 MONTGOMERY STREET, SUITE 4200
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 283-2240
FACSIMILE (415) 283-2255

SANTA BARBARA OFFICE
302 OLIVE STREET
SANTA BARBARA, CALIFORNIA 93101
TELEPHONE (805) 564-0065
FACSIMILE (805) 564-1044

June 29, 2004

*VIA FEDERAL EXPRESS*

Gary Martinelli, Esq.
P.O. Box 15407
Suite 912, Tower Square
1500 Main Street
Springfield, Massachusetts 01115

Re: Donald C. Hutchins

Dear Mr. Martinelli:

    We are in receipt of Mr. Hutchins' June 5, 2004 correspondence to Randall T. Skaar. STRADLING YOCCA CARLSON & RAUTH has been retained to represent Cardiac Science, Inc. ("Cardiac Science") in this matter. Please direct all future communications to our office.

    Mr. Hutchins has raised three issues: (1) he claims that the acquisition of Complient by Cardiac Science triggers an alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994"; (2) he claims that the scope of the June 1, 1994 Agreement (the "1994 License Agreement") is limited to United States Patent Nos. 4,583,524; and (3) he claims that County Line Limited Partnership and its subsequent assignees have abandoned their rights under the 1994 License Agreement. In addition, Mr. Hutchins has threatened Cardiac Science with SEC action in the event that an agreement is not reached.

    Prior to addressing the first three points, we would like to take the opportunity to advise Mr. Hutchins that threats of SEC action are not well received by Cardiac Science. Cardiac Science maintains the highest level of integrity in its business dealings and takes such frivolous and ill conceived threats extremely seriously. Cardiac Science is already reviewing the publication of the current threat for possible action against Mr. Hutchins. Should Mr. Hutchins elect to publish such allegations again in a less discrete manner, Cardiac Science will vigorously protect its reputation and business.

    As to Mr. Hutchins' first substantive point, the alleged "7-1/2% exit strategy" allegedly "negotiated by the Lindseths in 1994" does not touch or concern Cardiac Science. Cardiac Science was not a party to any such alleged oral agreement. Further, the legal instrument giving rise to Cardiac Science's current ownership of the rights under the 1994 License Agreement was in the form

DOCSOC/1053211v1/16761-0000

Gary Martinelli
June 29, 2004
Page Two

of an asset purchase. Any issue over any such alleged breach of any alleged oral agreement is between Mr. Hutchins and the Lindseths, Complient, et al.

With respect to Mr. Hutchins' second point, Cardiac Science does not agree with his extremely narrow reading of sections 1.8, 1.9 and 4.6, *inter alia*, of the 1994 License Agreement. Cardiac Science purchased and will exercise all of the rights contained and outlined in the 1994 License Agreement.

With respect to Mr. Hutchins' third point, the alleged abandonment position appears to be based on two arguments: (1) Mr. Hutchins' assertion that Complient is no longer an ongoing concern and (2) Complient's alleged failure to maintain the Licensed Patents. Issue number one is irrelevant. Cardiac Science is the assignee under the 1994 License Agreement and is performing under the 1994 License Agreement. Issue No. 2 appears to reflect a misunderstanding on Mr. Hutchins' part of the duties and obligations owed under the 1994 License Agreement. Pursuant to Section 4.4 of the 1994 License Agreement, it is the responsibility of Mr. Hutchins and CPR-Prompts to maintain, sustain, reexamine, reissue or extend the Licensed Patents. The Licensee merely has an obligation to pay or reimburse reasonable expenses associated therewith. Cardiac Science is not aware of any claim by Mr. Hutchins that any licensee under the 1994 License Agreement has failed to reimburse the licensor for any such expense. In addition, Cardiac Science has paid in full all royalty amounts due and owing under the 1994 License Agreement to Mr. Hutchins' through the quarter ended March 31, 2004. Further, there is no forfeiture provision in the 1994 License Agreement. Finally, the licensor has not provided formal notice of any material breach pursuant to sections 8.2 and 9.1 triggering the 90 day opportunity to cure.

Any position taken in this correspondence is merely part of an effort to respond to the assertions raised by Mr. Hutchins in his June 5, 2004 correspondence. The positions are not meant to be an exhaustive list of the defenses which could be raised to each of the allegations asserted by Mr. Hutchins. Further, any citation to specific portions of the 1994 License Agreement is not meant to preclude the possibility that other portions of the 1994 License Agreement or other documents may be probative to the issues addressed by Mr. Hutchins.

Very truly yours,

STRADLING YOCCA CARLSON & RAUTH

Kevin W. Kirsch

KWK:cml

DOCSOC/1053211v1/16761-0000

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DONALD C. HUTCHINS, | ) | Civil Action 04-30126-MAP |
| | ) | |
| Plaintiff, | ) | Judge Michael A. Ponsor |
| | ) | |
| v. | ) | |
| | ) | |
| CARDIAC SCIENCE, INC., et al., | ) | **AFFIDAVIT OF STEVEN LINDSETH** |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| STATE OF OHIO ) | |
| ) | SS: |
| COUNTY OF CUYAHOGA ) | |

NOW COMES STEVEN LINDSETH and upon first being duly sworn, states that:

    1.    I am over 18 years of age and have personal knowledge of the matters attested to herein.

    2.    I am the President of Complient Corporation ("Complient"), a defendant in the subject action. On October 21, 2003, substantially all of the assets of Complient were sold to an entity known as Cardiac Science, Inc. by and through an Asset Purchase Agreement entered into on that date (the "Asset Purchase Agreement") by and among Complient, Cardiac Science and CPR Limited Partnership ("CPR L.P."). In my capacity as President of Complient, I oversee the winding up and liquidation of Complient.

{JJL0345.DOC;1}

3.  As President of Complient, I am responsible for authorizing any person to receive service of process on Complient.

4.  I have never met or spoken to John J. Egan, the attorney on whom Hutchins attempted to serve the Amended Complaint in this matter. Mr. Egan and his firm serves only as local counsel for Complient in this case. I did not grant Mr. Egan or his firm authorization to accept service of process on behalf of Complient.

_____
STEVEN LINDSETH

Sworn to before me and subscribed in my presence this 1st day of February, 2005.

_____
NOTARY PUBLIC

Harry W. Heise
Notary Public
My Commission Expires
March 19, 2005

{JJL0345.DOC;1}

# EXHIBIT 2

**Copyright** | **Search Records Results**

Registered Works Database (Author Search)
**Search For:** HUTCHINS, DONALD C., 1935-
**Item 1 of 1**

|  |  |
|---|---|
| 1. Registration Number: | TXu-210-208 |
| Title: | Script & word list, "CPR-PROMPT." |
| Description: | 1 v. |
| Claimant: | Donald C. Hutchins |
| Created: | 1985 |
| Registered: | 13Sep85 |
| Author on © Application: | Donald C. Hutchins. |
| Special Codes: | 1/B |

Home | Contact Us | Legal Notices | Freedom of Information Act (FOIA) | Library of Congress

U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000


Search Records Results

Registered Works Database (Title Search)
**Search For:** LC5800 SERIES CROSS ASSEMBLER
**Item 1 of 1**

| | |
|---|---|
| 1. Registration Number: | TXu-213-859 |
| Title: | LC5800 series cross assembler. |
| Edition: | Rev. 1.0. |
| Description: | printout. |
| Claimant: | [Author and claimant] Donald C. Hutchins |
| Created: | 1985 |
| Registered: | 8Oct85 |
| Title on © Application: | LC 5800 series cross assembler. |
| Author on © Application: | text of computer program: Donald C. Hutchins, employer for hire of Robert W. Jeffway, |
| Special Codes: | 1/C |

Home | Contact Us | Legal Notices | Freedom of Information Act (FOIA) | Library of Congress

U.S. Copyright Office
101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000

# EXHIBIT 3

**Donald C. Hutchins**
**1047 Longmeadow Street**
**Longmeadow, MA 01106**

June 5, 2004

Randall T. Skaar, Esq.
Litigation Chair
Patterson, Thuente, Skaar & Christensen, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Dear Attorney Skaar,

In answer to your E-mail question of June 3, 2004, I do have a copy of the Parker Cross-License and I did not include it in the packet that I sent to you. My initial hesitation was my concern that you would interpret my act of sending this document as my testimony that Cardio Science is not infringing on the Parker Patent. I want you to understand that I am not able to provide such testimony.

Prior to your phone call to me on April 29th, I was in the dark about Cardio Science's acquisition of the Complient Corporation assets. I should have been aware that Complient had ceased operations because they had not sent quarterly reports, royalty payments or the $10,000 minimum royalty payment since late summer of 2003. Complient, as a successor to CPR Prompt LLC and County Line Limited, has had a history of irresponsibility. As a consequence, I have become frustrated with the Lindseth's and complacent toward their ventures in protecting my interests.

Alerted by you of the sale to Cardio Science, I have investigated these matters and the results are appalling. This acquisition has placed both Cardio Science and me in great jeopardy. You were not involved with the acquisition or responsible for the due-diligence. This places you in a good position to understand the issues while protecting your client's interests in both the Complient acquisition and the Parker Action. I have enclosed a copy of the Parker-Cross License as a gesture of good faith, with the hope that you will attempt to understand my concerns and relay them to the management of Cardio Science. I can assure you that in doing so, you will be of great service to both parties.

I invented, developed and contracted with Texas Instruments, Inc. to manufacture the CPR Prompt® in the early 1980s. The programs were copyrighted, the trademark

1

registered, a class II FDA approval was issued and Patent #4,583,524 was issued in 1986. With this came a limited test market of the commercial model that proved very successful. I realized at the time that I lacked the financial resources to bring a consumer model of the CPR Prompt® devise to market.

Jon Lindseth came from a well-to-do family and graduated from Cornell University. He is a member of the class of '56 at Cornell as is my brother, Bob Hutchins. While Jon Lindseth operates a privately owned Cleveland company named Kindt-Collins, he became better known at Cornell reunions through his success with two ventures that he founded, the *Interplak* toothbrush and *Thermoscan* thermometer. *Interplak*, under the corporate name, Dental Research, sold to Bausch & Lomb in 1988 for $133 million dollars and *Thermoscan* to *Gillette* for an estimated $178 million dollars around 1993. Jon Lindseth continues to be a great benefactor to Cornell.

While attending a Cornell reunion in 1993, Bob Hutchins showed a CPR Prompt® unit to some alumni including Jon Lindseth. Jon became interested to the point that he contacted me and offered his concept of doing with CPR Prompt® what he had done with *Interplak* and *Thermoscan*. To start he suggested that I visit Cleveland and meet with him and his son, Steve Lindseth, who was operating a startup company called County Line Limited. At that time County Line Limited had brought two venture products to market, a high quality patented bird feeder and a state of the art Christmas tree stand. Jon pointed to full-page ads in magazines and the *Wall Street Journal* as evidence that these items were receiving millions of dollars in market development. He suggested that he would start a new company and raise $14 million, as the minimum investment needed to bring CPR Prompt® to the consumer market. Steve Lindseth would manage this new venture that the Lindseths predicted could exceed the success Jon had had with *Interplak* and *Thermoscan*.

Negotiations with Steve to license my Patent for a consumer version of CPR Prompt® came to an impasse in February of 1994 because Steve wanted to pay a very low royalty percentage of 2%. A week after I ended negotiations, Jon and Steve called to re-open negotiations. Jon explained that the Lindseth's success with products like *Interplak* and *Thermoscan* came upon exiting the projects. Their plan would be to build a company around CPR Prompt®, develop the market and divest with an IPO or sale in about three years.

While Jon Lindseth wanted to retain the low 2% royalty, he sweetened the deal by offering the CPR Prompt Corporation 7-1/2% of the receipts when the venture was sold or went public as an IPO. If the new company had the same success as *Thermoscan* and *Interplak*, the share for the CPR Prompt Corporation and me as the largest stockholder could equal over $10 million. Jon said that this was the first time they had ever offered a patent owner participation in their exit strategy. He was willing to do the 7-1/2% deal if the royalty payments were low and the Lindseths took total control of the US and foreign patents and trademark.

2

I agreed to the 7-1/2% deal and Jon Lindseth communicated the terms to his attorney, Mark Kaufman of Southland, Asbill and Brennan of Atlanta, Georgia. On May 17, 1994, Attorney Kaufman sent a first draft of the Agreement to my attorney, Gary Martinelli and me. This draft correctly stated the terms that Jon and I had negotiated. Paragraph 3:10 said:

3:10 **LICENSEE will cause each shareholder of LICENSEE who purchases common stock of LICENSEE directly from LICENSEE to agree to pay to LICENSOR seven and one-half percent (7-1/2) of the net proceeds of any sale of any or all of such common stock to any person or entity which is not an Affiliate of such selling stockholder..."**

A series of drafts went back and forth between Attorneys Kaufman and Martinelli to iron out some minor differences. On May 20, 1994, Attorney Martinelli suggested that section 3:10 speaks of "shareholders" and "common stock" when the Licensee entity is a limited partnership. He also suggested that the possibility of dispute resolution by arbitration. These suggestions led to changes in section 3:10 and the addition of an AAA clause in the later drafts.

Section 3.10 was changed to accommodate the fact that County Line Limited was a partnership that continued to include the bird feeder and Christmas tree product lines. It was understood that County Line would eventually divest itself from the bird feeder and Christmas tree stand products as separate companies and build a new entity around CPR Prompt®. The 7-1/2% exit strategy would apply to that new CPR Prompt® entity. Pending divestiture of the bird feeder and Christmas tree stand lines; we agreed to allow the Patent to be held in a separate entity. When the divestiture occurred and CPR Prompt LLC succeeded County Line, the License Agreement would be held by and the 7-1/2% applied to the shareholders of CPR Prompt LLC. When the Complient Corporation succeeded CPR Prompt LLC the same terms and exit strategy would apply to the new shareholders because all these companies were affiliates. You will note that the original shareholders of County Line Limited continued to participate as shareholders of CPR Prompt LLC and Complient when new investors joined at various stages.

After the License Agreement was signed June 1, 1994, Jon Lindseth's son Steve took total control. I worked closely with Steve in 1994 and 1995 as County Line contracted with me to develop the speech, software and electronics for the new consumer model. I was successful with this development and created a consumer CPR Prompt® with good speech quality that met the target cost of $19.00 each.

In September of 1994, Attorney Scott Wilson of Calfee, Halter and Griswold of Cleveland, Ohio sent a License Agreement to Attorney Martinelli requesting my signature both as patent owner and as President of the CPR Prompt Corporation. Recognizing that this License Agreement was a fabrication that completely distorted the intention of section 3:10 and the 7-1/2% exit distribution formula, Attorney Martinelli advised against my signing or recognizing this Agreement. I never signed or accepted

3

the validity of the Agreement dated September 19, 1994. Both Complient and Cardio Science treat this Agreement as legitimate even though it does not carry my signature. This puts to question the amount of due diligence performed by counsel for both parties in preparation of the 8-K Form.

After 1994, County Line divested itself of the Christmas tree stand and bird feeder lines and concentrated on the CPR Prompting device and CPR related training and products. The Lindseths formed a new entity called the CPR Prompt LLC. Under this CPR Prompt umbrella, during the next six years the Lindseths raised over $50 million dollars in venture capital to promote the CPR Prompt ® trademarked educational and safety products.

The Lindseths also used this capital to purchase safety equipment dealers such as SOS Technologies. SOS is significant in that SOS had developed software for the automotive industry to aid companies with safety compliance. In later years, when Internet business models got hot, the Lindseths saw the opportunity to build on SOS's safety compliance software for e-business compliance programming. The Complient Corporation succeeded CPR Prompt LLC that had succeeded County Line Limited. In the year 2001, the Lindseths spun-off the compliance software division into a new company called Axentis LLC. Robert Thompson, who headed the services division (CPR Prompt) of Complient became President of Complient and Ted Frank became President of Axentis. Robert Thompson signed the acquisition papers as President of Complient Corporation and 99% General Partner of the bogus CPR LP. The Lindseths avoided signing or appearing in any acquisition documentation although Jon Lindseth's Kindt-Collins Company and the law firm of Calfee, Halter and Griswold appear as stockholders of the Complient Corporation.

Since 1994 all License Agreement royalty payments have been paid to the CPR Prompt Corporation with checks from the National City Bank of Ashland, Ohio through the succession of companies: County Line Limited/CPR Prompt LLC/Complient Corporation. There is no evidence such as letterheads, telephone numbers, receipts, reports, payment checks, etc. that CPR LLP ever functioned as a going concern. Attorney Martinelli and I have never recognized CPR LLC as anything but a paper entity established by Steve Lindseth to obstruct the intentions of section 3:10 of the License Agreement. The acquisition of Complient by Cardio Science is the event that triggers the 7-1/2% exit strategy negotiated by the Lindseths in 1994. For this acquisition and the transfer of the License Agreement to Cardio Science to be valid, the CPR Prompt Corporation is owed 7-1/2% of the stock being transferred from Cardio Science to the stockholders of the Complient Corporation as the successor to County Line Limited.

I am attempting to paint a clear picture of these events because since 1994 Steven Lindseth together with his attorneys at Calfee, Halter and Griswold have gone to great lengths to avoid obligations under Section 3:10. This effort has involved unsuccessful claims in arbitration and inconclusive action in state and federal courts. As a result, I can make many documents available that authenticate our position. It is clear to me that

Steve Lindseth's subterfuge regarding Section 3:10 has complicated the Cardio Science acquisition of Complient assets and placed the License Agreement in jeopardy.

After your telephone call on April 29th regarding the Parker Agreement, I researched the acquisition of Complient assets by Cadio Science. You were able to provide the INTELLECTUAL PROPERTY ASSIGNMENT and Schedule 5.1(p) that included a reference to "Hutchins license agreement dated June 1, 1994. The European patents and the re-issue patent were not acknowledged. There is a reference to my Patent #5,913,685 that was issued June 22, 1999 and the statement, "Complient is of the opinion that this patent is already included in the license."

Searches on the Internet provided me with press releases, security analyst reports, and Forms 8-K and 10-K that fleshed-out terms of the acquisition. I also consulted with my patent attorneys and Attorney Martinelli who worked with Attorney Kaufman on the language of the License Agreement with County Line. My attempts to communicate with Complient have failed because they have abandoned their Cleveland facility. Complient has paid no royalties, furnished no reports, paid no patent fees to maintain the foreign patents nor met any of the obligations of the License Agreement for the transfer of the intellectual properties. My patent attorneys profess that the Lindseths and the various entities they control have abandoned the Patents and CPR Prompt® Trademark. Under the terms of the License Agreement and trademark registration transfer, when abandoned these intellectual properties revert back to my control. As a consequence, Cardio Science is infringing on these intellectual properties.

Of greatest concern to my patent attorneys is the statement contained in Schedule 5.1(p) that included a reference to my Patent #5,913,685 that was issued June 22, 1999 and the statement, "Complient is of the opinion that this patent is already included in the license." The Arbitration proved Complient's claims to my Patent #5,913,685 to be fraudulent.

I am torn between a number of courses of action that are open to me. The patent attorneys believe that they can show the Court that the complete transfer of all the Cardio Science to the control of Complient stockholders will irreparably harm me. They advise an immediate Restraining Order to prevent further erosion. They also point out that because Complient is no longer a going concern and has not and can not fulfill obligations under the License Agreement, the Patents and Trademark revert to my control. As a result Cardio Science is infringing on these intellectual properties with each sale and use of the mark. They also believe that without the protection of Hutchins' Patent, Cardio Science may be infringing on Parker.

Attorney Martinelli is experienced in SEC matters and takes a business persons rather than litigators approach to disputes. He sees problems in this acquisition that relate to SEC regulations and due diligence on the part of both Complient and Cardio Science. We are mystified that you were not involved in the acquisition as a patent attorney. Whatever the circumstances, Attorney Martinelli feels that these issues can be resolved amicably to everyone's best interest. We believe that the CPR Prompt Corporation's 7-

5

1/2% exit interest can be apportioned from the stock that has not already been released to Complient. This stock was placed in trust to resolve such contingencies. The Lindseths and the venture investors in Complient will accept a 7-1/2% dilution to avoid SEC scrutiny that could void the acquisition. We believe that the License Agreement of June I, 1994 can be correctly transferred to Cardio Science and the royalty payments to the CPR Prompt Corporation restored. We believe that Cardio Science can recognize the $10,000 minimum payment. We believe Cardio Science can understand that they have no rights to my Patent #5,913,685 unless they sign a separate license with me at a future date.

With each month that passes more Cardio Science stock is transferred to Complient stockholders. It is imperative that I have resolution soon to prevent seeking resolution through the courts and SEC. Therefore, I encourage you to contact Attorney Martinelli and to begin discussions of these issues. Please contact:

>Attorney Gary Martinelli
>P.O. Box 15407
>Suite 912, Tower Square
>1500 Main Street
>Springfield, MA 01115
>Tel: 413-746-4677

I appreciate your participation in these matters.

Sincerely,

Donald C. Hutchins

Enclosure: Parker Cross-License Agreement

cc: Gary Martinelli, Esq.

6