UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC., et al; )<br>)<br>Defendants. )<br>) | Civil Action: 04-30126-MAP |

**DEFENDANT COMPLIENT CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

I. **INTRODUCTION**

Complient Corporation ("Complient") is entitled to summary judgment as a matter of law on Plaintiff's, Donald C. Hutchins ("Hutchins"), claims. Hutchins asserted claims against Complient for fraud (Amended Complaint, Count IV), fraudulent misappropriation and sale of patent (id., Count V) and breach of contract (id., Count VIII). As established below, Hutchins failed to sufficiently plead these claims and the evidence and law applicable to this case indisputably establishes that Hutchins cannot meet his burden under Rule 56 of the Federal Rules of Civil Procedure. Accordingly, Complient is entitled to judgment in its favor as a matter of law.

{CM02049.DOC;1}

II. **STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, the following is a concise statement of material facts with supporting evidentiary citations that establish that Complient is entitled to summary judgment as a matter of law.

A. **The License Agreement**

The linchpin of Hutchins' claims against both Defendants in this case is a License Agreement entered into on June 1, 1994 by and between Hutchins, his closely-held corporation, CPR Prompt Corporation ("CPR Prompt"), and County Line Limited Partnership ("County Line") (the "License Agreement"). Hutchins failed to specifically reference or attach the License Agreement to his Complaint despite its irrefutable bearing on his alleged claims.[1] A true, genuine, and correct copy of the License Agreement is attached hereto at Exhibit A.[2]

Pursuant to the License Agreement, Hutchins and his company granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instruction to trained individuals concerning cardiopulmonary resuscitation. See Exhibit A, p. 1. The parties to the License Agreement mutually agreed that County Line would assign its interest therein to an Affiliate of County Line after the date of the Agreement. See Exhibit A, § 3.10.

Accordingly, on September 19, 1994, County Line, as required by the License Agreement, assigned the License Agreement to CPR Limited Partnership ("CPR L.P."), an Affiliate of County Line as defined by § 1.1 thereunder. See Agreement of Limited Partnership, a copy of which is attached as Exhibit 1 and authenticated at ¶ 4 of the Affidavit of Steven

---

[1] One of the probable reasons for this omission is the fact that, as addressed *inter alia*, two Ohio Courts have already concluded that the License Agreement does not afford Hutchins certain of the relief he seeks herein.

[2] The License Agreement is authenticated at pages 40-41 of the Deposition Transcript of Donald C. Hutchins (the "Hutchins Dep."). The excerpts from the Hutchins Deposition cited herein are attached hereto and incorporated herein as Exhibit B.

Lindseth (the "Lindseth Affidavit"), attached hereto and incorporated herein as Exhibit C. See also Exhibit A, §1.1. At all times since September 19, 1994, CPR L.P. has been the Affiliate under the License Agreement. See Lindseth Affidavit ¶ 5;

CPR L.P. originally had two partners: County Line, L.P. was the 99% general partner and Catalog Products, Inc. was the 1% limited partner. See Lindseth Affidavit Exhibit 1 at Schedule A. In December, 1997, County Line's successor transferred its 99% general partnership interest in CPR L.P. to CPR Prompt L.L.C. See Lindseth Affidavit, ¶ 6. Thereafter, in June of 2000, CPR Prompt LLC converted to a Delaware corporation, Complient Corporation, that, at all times since, has held the 99% general partnership interest in CPR L.P. Id.

Throughout this period of time, the entity that was the general partner of CPR L.P. conducted various services relative to the License Agreement on behalf of CPR L.P. pursuant to a Services Agreement. Specifically, on September 1, 1994, County Line L.P. and CPR L.P. entered into a Services Agreement whereby CPR L.P. retained County Line to conduct Administrative Services, Manufacturing & Distribution Services, Marketing & Sales Services, and Product Development Services, all as defined in their Agreement. See Services Agreement, a copy of which is attached as Exhibit 2 and authenticated at ¶ 7 of the Lindseth Affidavit. Pursuant to the Services Agreement, County Line performed, among other things, certain accounting functions on behalf of CPR L.P. including, but not limited to, accounting for any and all royalties and/or payments due and owing by CPR L.P. under the License Agreement. Id. Throughout the corporate succession of County Line to Complient Corporation, each general partner of CPR L.P. assumed the obligation to conduct services on its behalf. Id.

B.     **Significant Provisions Of The License Agreement**

Under Section 2.1 of the License Agreement, CPR L.P. had the right to assign its license therein to a third party. See Exhibit A at § 2.1. Specifically, Section 2.1 states, in relevant part:

> Additionally, LICENSEE shall have the right to assign this Agreement and all of it rights, licenses and obligations hereunder to any person or entity, and in the event of such an assignment the term "LICENSEE" as used herein shall mean and refer to such assignee.

Exhibit A at § 2.1. The License Agreement does not require the consent of Hutchins or his company to such an assignment. See id.; see also Hutchins Dep. at 82: 14-18 ('Q. And did you feel that for them to form CPR Limited Partnership that they couldn't do that without your approval? A. No. I felt they can do whatever they want without my approval").

Further, Section 3.10 of the License Agreement expressly provides that, in the event a partner of the Affiliate, CPR L.P., sells all or part of its partnership interest in CPR L.P. to an unrelated third-party, Hutchins and his company are entitled to 7.5% of the net proceeds of such sale. See Exhibit A, § 3.10. Section 3.10 states, in relevant part:

> [A]ffiliate will cause each partner of such Affiliate who purchases or otherwise acquires a partnership interest of such Affiliate directly from such Affiliate to agree to pay to CPR-PROMPT seven and one-half percent (7.5%) of the net proceeds of any sale of any or all of such partnership interest to any person or entity which is not an Affiliate to such partner.

Exhibit A, § 3.10. Hutchins has been in denial concerning the construction and effect of Section 3.10 and continues to be in the present case.

In addition, in order to terminate the License Agreement, Section 8.2 thereof requires 90 days written notice of a material breach by the other party and allows the party against whom a material breach is asserted the opportunity to cure. See Exhibit A, § 8.2. It is undisputed that Hutchins never sent the written notice required by Section 8.2 of the License Agreement to CPR

L.P. or Complient. See Hutchins Dep. at 93:1-6, 96: 18-22 ("Q. Right. I'm just trying to get your perception. I thought your claim was you cancelled this license agreement successfully? A. No, not successfully. The attempt was made, but the reality was it didn't happen.").

C.  **Prior Litigation Between Hutchins And Complient Refutes His Claims In This Case.**

On February 2, 2001, Complient, the general partner of CPR L.P., filed suit, captioned Complient v. CPR Prompt, Case No. 429394 (hereinafter "Hutchins I"), in the State of Ohio, Cuyahoga County Court of Common Pleas for declaratory judgment against Hutchins and CPR Prompt as to the construction and effect of Section 3.10 of the License Agreement. See Complaint, a certified copy of which is attached hereto and incorporated herein as Exhibit D. Hutchins and CPR Prompt asserted a Counterclaim in Hutchins I for what appeared to be breach of contract, seeking a declaration that they are entitled to 7.5% of the assets of Complient upon its sale. See Counterclaim, a certified copy of which is attached hereto and incorporated herein as Exhibit E.

On May 30, 2001 and September 5, 2001, judgments were entered in Complient's favor against CPR Prompt and Hutchins in Hutchins I as to the construction and effect of the License Agreement. Certified copies of the May 30, 2001 Judgment Entry and the September 5, 2001 Journal Entry are attached hereto and incorporated herein as Exhibit F. The May 30, 2001 Judgment Entry provides:

> Pursuant to Section 3.10 of the License Agreement, in the event that the partners of CPR L.P., including, but not limited to Plaintiff Complient Corporation, sell all [o]r part of their respective partnership interest in CPR L.P. to an unrelated third party, Defendant CPR Prompt is entitled to 7.5% of the net proceeds of that sale. Section 3.1 of the License Agreement does not entitle CPR Prompt to 7.5% of the sale of any or all assets of any other entity other than CPR L.P.

Exhibit F, Judgment Entry, May 30, 2001. Final judgment in favor of Complient and against Hutchins and his company was entered in Hutchins I on September 5, 2001. Id. As explained below, the adjudication of Hutchins I is fatal to Hutchins' breach of contract claim herein.

**D.    Complient Sells Certain Of Its Assets To Cardiac Science.**

On October 21, 2003, Complient and CPR L.P. sold certain of their assets to Defendant Cardiac Science, Inc. pursuant to an Asset Purchase Agreement (the "APA"). See Asset Purchase Agreement, a copy of, which exclusive of its Schedules, is attached as Exhibit 3 and authenticated at ¶ 8 of the Lindseth Affidavit. Pursuant to Section 1.1A of the APA and in keeping with Section 2.1 of the License Agreement, CPR L.P. transferred its interest in the License Agreement to Cardiac Science. See Lindseth Affidavit, Exhibit 8 at Section 1.1A; Exhibit A at Section 2.1. Significantly, Complient did not sell or otherwise transfer its partnership interest in CPR L.P. to Cardiac Science. See Lindseth Affidavit, ¶ 9 and Exhibit 3 at Section 1.2(i).

In June of 2004, Hutchins filed his claims herein against Cardiac Science. Thereafter, under the terms of the APA, Cardiac Science issued a Demand for Indemnity to Complient and CPR L.P. relative to Hutchins' claims. To protect its interests, those of CPR L.P. and Cardiac Science, Complient filed suit in the State of Ohio, Cuyahoga County Court of Common Pleas against Hutchins for tortious interference with contract and abuse of process and against Hutchins and CPR Prompt for declaratory judgment as to the effect of the APA on the parties rights and obligations under the License Agreement. See Complaint filed in Complient v. Hutchins, State of Ohio Cuyahoga County Court of Common Pleas Case No. 540066 ("Hutchins II"), a certified copy of which is attached hereto and incorporated herein as Exhibit G.

On January 26, 2005, the State of Ohio Cuyahoga County Court of Common Pleas entered a declaratory judgment against Hutchins' company, CPR Prompt, that set forth the following judgments significant to this case:

It is the order of this Court that a declaratory judgment is entered as follows:

(a) that Defendant CPR-Prompt Corporation has not effectively terminated the License Agreement dated June 1, 2004 ...;

(b) that the partnership interests in CPR L.P. were not sold to Cardiac Science Incorporated pursuant to the Asset Purchase Agreement by and among Complient, CPR L.P. and Cardiac Science Incorporated dated October 21, 2003 ...; and

(c) that the 7.5% payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the Asset Purchase Agreement.

Judgment Entry dated January 26, 2005, a certified copy of which is attached hereto and incorporated herein as Exhibit H.

The foregoing facts construed in the light most favorable to Hutchins and in accordance with the applicable law leads to one conclusion: summary judgment is warranted in Complient's favor on all of Hutchins' claims. Accordingly, Complient respectfully requests that the Court enter judgment in its favor.

## III.  LAW & ARGUMENT

### A.  Summary Judgment Standard

On a motion for summary judgment, the moving party, here Complient, must establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts that there is a genuine, triable issue. Id. at 324. Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 30 (1st Cir. 1990) *citing* Fed. R. Civ. P.56(c)). Here, the evidence and applicable law establish that Complient is entitled to summary judgment in its favor.

**B.    Complient Is Entitled To Summary Judgment On Hutchins' Claims.**

In his Amended Complaint, Hutchins asserts three claims against Complient -- a claim for fraud, fraudulent misappropriation and sale of patent, and breach of contract. As explained below, each of these claims fails as a matter of law. Accordingly, Complient is entitled to judgment in its favor on Hutchins' claims.

**1.    Hutchins' claim of fraud against Complient fails as a matter of law.**

Hutchins failed to plead the elements of a *prima facie* case of fraud against Complient. This failure, combined with the fact that the undisputed facts establish that Complient is not liable to Hutchins on his claim of fraud, warrants the entry of summary judgment in Complient's favor on Count IV of the Complaint.

To successfully plead and prove a claim of fraud under Massachusetts law, a plaintiff must establish that, " the defendant made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Sands v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir. 2000) (citing Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963)). Hutchins' Complaint misses the mark on these necessary elements and so, too, does the evidence in this case.

With respect to his fraud claim, Hutchins appears to allege the following misrepresentations by Complient:

- " Complient ... fraudulently misrepresented the June 1, 1994 License Agreement between County Line Limited and Hutchins to induce the asset sale to Cardiac Science through the use of false and unsigned documents to which Hutchins was not a party." Amended Complaint, § 57;

- "Complient falsely represented to Cardiac Science that Hutchins' properties were under the control of CPR LP and could be legally transferred to Cardiac Science." Id. at 58; and

- "By fraudulently misleading Cardiac Science on the terms of the License Agreement dated June 1, 1994, .... Id. at 59.

These alleged acts, in addition to being complete fabrications, fail to constitute actionable fraud as a matter of law because Hutchins does not contend that the alleged fraudulent misrepresentations were directed to him; rather, he claims that the alleged fraudulent misrepresentations were made by Complient to Cardiac Science. Accordingly, as a matter of law, the conduct alleged in Count IV of the Complaint is not actionable fraud as it was not intended to induce Hutchins to act, nor could Hutchins have relied on alleged misrepresentations directed toward another. See Movitz v. Home Depot USA, Inc., 82 Fed. Appx. 230, 2003 U.S. App. LEXIS 24516 (1st Cir. N.H. 2003) (summary judgment on *pro se* plaintiff's fraud claim affirmed because, among other reasons, plaintiff's allegation that alleged misrepresentation directed at a third party failed to establish an actionable claim of fraud).[3]

Hutchins also alleges, as an apparent basis for his fraud claim, that Complient failed to notify him of the sale of assets to Cardiac Science and failed to "apply to Hutchins for permission to transfer Hutchins' intellectual properties to Cardiac Science as required under the terms of the June 1, 1994 License Agreement." Amended Complaint, ¶ 57. Neither of these alleged actions by Complient constitute a "false representation of material fact" sufficient to

---

[3] Copies of all unreported opinions cited herein are attached hereto in alphabetical order at Exhibit I.

{CMO2049.DOC;1}                                9

sustain a claim of fraud. Further, both of these allegations also fail to establish fraud as a matter of law as they are barred by the License Agreement Hutchins alludes to, and that he tellingly does not attach to the Amended Complaint. Specifically, as set forth supra, the License Agreement does not require that any notice be provided to Hutchins of any asset sale of Complient under any circumstances and, further, it does not require that any person or entity seek Hutchins' permission or assent to an assignment of the License, *i.e.* Hutchins' intellectual properties. See Exhibit A at §2.1. Hutchins' claims to the contrary are wishful thinking.

Given that Hutchins fails to even plead that Complient made any false misrepresentations to him, his fraud claim fails as a matter of law. Further, the evidence in this case, specifically the License Agreement, only fortifies the entire lack of merit to this claim. Accordingly, Complient respectfully requests that the Court enter summary judgment in its favor on Count IV of the Complaint.

      2.    **Hutchins' Claim Of Fraudulent Sale And Misappropriation Fails As A Matter of Law.**

Count V of Hutchins' Amended Complaint attempts to state a claim of "fraudulent sale and misappropriation" against Complient. In this claim, Hutchins attempts to recover for Complient's alleged attempted sale to Cardiac of Hutchins' patent number 5913685. This claim likewise fails as a matter of law because Hutchins has not plead and cannot adduce evidence to establish that Complient visited any fraud upon Hutchins, let alone Cardiac, nor can Hutchins adduce evidence to establish that Complient misappropriated the patent. Accordingly, Complient is entitled to summary judgment on this claim as a matter of law.

In this claim, Hutchins alleges that Complient "deceived Cardiac Science to believe that Cardiac Science purchased rights to Hutchins' Patent No. 5913685 as part of the Asset Purchase Agreement." Amended Complaint, ¶ 62. Hutchins further claims that Complient and others

"misappropriated this Patent from Hutchins and attempted to sell it for their personal gain." Id. at 63.  Complient is entitled to summary judgment on this claim for a number of reasons.

First, as with Hutchins' claim of fraud found at Count IV of the Complaint, Count V fails as a matter of law because Hutchins fails to even plead that Complient committed any fraudulent acts relative to Hutchins; instead, like Count IV, Hutchins' allegations of fraud relate to alleged misrepresentations that transpired between Complient and Cardiac <u>to which he was not a party and he does not even claim to have known of or relied upon the alleged misrepresentations at the time they were made</u>.  See Amended Complaint at ¶¶ 61-64.  These deficiencies are fatal to this Claim and, under Massachusetts law, Complient is entitled to summary judgment.  See <u>Sands v. Ridefilm Corp.</u>, 212 F.3d at 663 (setting forth necessary elements of fraud claim, which include reliance by the plaintiff on the alleged misstatement, under Massachusetts law); <u>Barrett Assocs.</u>, 346 Mass. at 152 (accord); <u>Movitz.</u>, 82 Fed. Appx. 230, 2003 U.S. App. LEXIS 24516 (1st Cir. N.H. 2003) (summary judgment on *pro se* plaintiff's fraud claim affirmed because, among other reasons, plaintiff's allegation that alleged misrepresentation directed at a third party failed to establish an actionable claim of fraud).

Second, and significantly, Hutchins' misappropriation claim also fails based on the very evidence he refers to -- specifically, the APA.  Hutchins claims that Complient fraudulently misrepresented that it was selling Hutchins' patent number 5913685 to Cardiac Science as part of the APA; however, the APA itself specifically and directly refutes this claim.  Specifically, Article 5.1(p) of the APA states, in relevant part:

> <u>Intellectual Property.</u>  <u>Schedule 5.1(p)</u> attached hereto sets forth a complete and correct list ... of all patents ... and copyrights for which registrations have been obtained ... which are owned by [Complient].  True correct and complete copies of such patents ... and copyrights ... identified on such Schedule have been delivered to [Cardiac].  Except as set forth in <u>Schedule 5.1(p)</u>, [Complient] is the

> sole owner and has the exclusive right to use, free and clear of any payment, restriction or encumbrance, all such patents ... and copyrights. ...

Lindseth Affidavit, Exhibit 3 at pp. 19-20. Schedule 5.1(p) of the APA does not list Hutchins' patent number 5913685 as intellectual property owned by Complient that was being transferred and/or assigned to Cardiac Science pursuant to the APA. Id. at Schedule 5.1(p). Indeed, the APA makes no reference to Hutchins' patent number 5913685 whatsoever. Given the express representation and warranty by Complient to Cardiac Science that the patents listed on Schedule 5.1(p) of the APA constitute the totality of the patents owned and/or controlled by Complient, Hutchins' claims that Complient somehow represented to Cardiac Science that it was the owner of patent number 5913685, and that this patent was being transferred under the APA are clearly baseless.

Hutchins failed to properly plead a claim of fraud or misappropriation to support the relief he seeks in Count V of his Complaint. Further, the allegations made in this Count are directly refuted by the very evidence he claims to rely on -- the APA. Accordingly, Complient is entitled to summary judgment as a matter of law on Count V of the Amended Complaint.

### 3. Hutchins' Claim For Breach Of Contract Fails As A Matter Of Law.

Hutchins' breach of contract claim against Complient, found at Count VIII of the Amended Complaint, likewise fails as a matter of law. In this claim, Hutchins alleged that Complient breached the License Agreement by failing to notify him of the APA (see Amended Complaint, ¶ 85, 91) and by not providing him with notice that it "intended to close its Cleveland office and suspend its sales of Hutchins' licensed products..." (id. at ¶ 90). The License Agreement, however, did not require any notice to Hutchins of a sale of the License granted thereby. See Exhibit A at §2.1. Further, Complient had no contractual obligation, under the License Agreement or otherwise, whatsoever to notify Hutchins of any of its activities.

Hutchins also alleges, as apparent grounds for his breach of contract claim, that Complient breached the License Agreement by not having paid royalties to him or patent fees subsequent to September of 2003. Hutchins is admittedly aware that the License Agreement was sold to Cardiac Science as of October 21, 2003. See e.g., Amended Complaint, ¶ 58. As a result, as of October 21, 2003, all royalty payment obligations under the License Agreement transferred to Cardiac Science. See Lindseth Affidavit, Exhibit 3 at §1.1A. See also Cardiac Science's Memorandum in Support of Motion for Summary Judgment at p. 6 (establishing compliance with royalty payment obligations under License Agreement). Further, Hutchins' claims that the $10,000 minimum royalty payment was not met are refuted by his own testimony. See Hutchins Dep. at 96-97 ("Q. [N]ow after your attempt to cancel the license agreement did they continue to pay you royalty or fees under Paragraph 3 under the Section 3? A. To my knowledge, they might have been a little slow in payment and payments didn't come until two months after and the report might have been vague, but they quite honestly did not miss a payment over that period...."). Hutchins also admitted that at least until the time of the Asset Purchase Agreement, all patent fees under the License Agreement were paid. Id. at 103. Hutchins' own testimony thus directly refutes his claims.

Finally, as alleged grounds for his breach of contract claim, Hutchins claims that Complient breached the License Agreement by failing to pay him 7.5% of the proceeds of the APA. See Amended Complaint, ¶ 92-93. This allegation fails as a matter of law under the express terms of the License Agreement which require that the 7.5% payment only be made upon a sale of the partnership interests in CPR L.P. to a third party. See Exhibit A at § 3.10. The APA makes clear that no such sale occurred. See Lindseth Affidavit, Exhibit 3, §1.2(i). Further, Hutchins' claims in this regard are barred by the doctrine of *res judicata*.

4.   **Hutchins' Claim to the 7.5% Payment is Barred by the Doctrine of *Res Judicata*.**

Despite having litigated and lost his claim repeatedly, Hutchins is, once again, incorrectly claiming that he is entitled to 7.5% of the net proceeds of the sale of Complient. Here, he claims he is entitled to 7.5% of the net proceeds of the sale of Complient to Cardiac Science pursuant to the APA. See Amended Complaint at ¶¶ 92-93. Two separate Ohio Courts entered judgments against Hutchins and/or his company, CPR Prompt, on the exact claim he asserts in this case relative to the 7.5% payment provision found at Section 3.10 of the License Agreement. See Exhibit F. His claim, therefore, in this regard is barred by the doctrine of *res judicata*.

As set forth above, in Hutchins I, an Ohio court entered final judgment against Hutchins finding that, pursuant to Section 3.10 of the License Agreement, Hutchins is entitled to 7.5% of the net proceeds of the sale of the partnership interests in CPR L.P. to a third party and not to 7.5% of the sale of any assets of Complient. See Exhibit F. In Hutchins II, an Ohio court issued judgment against Hutchins' corporation, CPR Prompt, finding that the partnership interests in CPR L.P. were not sold to Cardiac Science under the APA and, further, that the APA between Complient and Cardiac Science did not trigger the 7.5% payment provision of Section 3.10 of the License Agreement. See Exhibit F. Hutchins' claims herein to the contrary are thus barred by the doctrine of *res judicata*.

Under the standards of full faith and credit enunciated in 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Further, because Ohio courts issued the judgments, Ohio law governs the application of *res judicata* to Hutchins' claims herein. Id.

The doctrine of *res judicata* encompasses both the concept of claim preclusion and issue preclusion (also known as "collateral estoppel"). Holzemer v. Urbanski, 86 Ohio St. 3d 129, 133; 712 N.E.2d 713, 716 (1999). The Holzemer Court described claim preclusion as:

> [a] valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action...[and] an existing final judgment or decree between the parties to litigation is conclusive of all claims which were or might have been litigated in that lawsuit.

Holzemer, 86 Ohio St. 3d at 133, 715 N.E.2d at 716 (citations omitted). Further, under Ohio law, "[t]he doctrine of issue preclusion...holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Fort Frye Teachers Assn. v. State Employment Relations Bd., 81 Ohio St. 3d 392, 395; 692 N.E.2d 140 (1998).

Here, Complient satisfies all of the requirements to invoke the concepts of issue and claim preclusion encompassed within the doctrine of *res judicata* to bar Hutchins' claims. First, claim preclusion clearly applies to Hutchins' claims because: (1) his alleged claims, *i.e.*, whether he was somehow entitled to 7.5% of the proceeds of the sale of Complient to any third party, arose out of the same transaction--the License Agreement--as in the Ohio Action; (2) his alleged breach of contract claim was asserted in the Counterclaim to Hutchins I (see Exhibit E); and (3) final judgment on the merits was entered in Hutchins I and a default judgment was entered in Hutchins II. Hutchins was a party to both of these actions. See Exhibit F.

Second, issue preclusion likewise applies to Hutchins' claim. Hutchins had a full opportunity to defend both Hutchins I and Hutchins II, and final judgment was entered in Hutchins

I. Further, Hutchins and Complient were parties to <u>Hutchins I</u>, and Complient and CPR Prompt, to which Hutchins is indisputably in privity, were parties to the judgment entered in <u>Hutchins II</u>. As a result, the same parties or their privies are clearly involved in this case and the Ohio actions. In addition, the issue of whether Hutchins is entitled to 7.5% of the proceeds of the sale of Complient was the issue in <u>Hutchins I</u> as it is here, and was adjudicated in the negative. Further, the issue of whether the APA triggered the 7.5% payment provision of Section 3.10 of the License Agreement was one of the issues in <u>Hutchins II</u>, as it is here, and was adjudicated in the negative.

The foregoing renders clear that Hutchins' breach of contract claim was already decided and litigated. While Hutchins is clearly dissatisfied with the prior results (and the bargain he struck), he is not entitled to repeatedly sue the same (or related) parties in hopes of finding a court to see things his way. Indeed, that is precisely what the doctrine of *res judicata* is designed to prevent. Accordingly, Complient is entitled to judgment as a matter of law on Hutchins' claim for breach of contract.

## IV.   **CONCLUSION**

Based on the foregoing evidence, arguments and authority, Complient is indisputably entitled to summary judgment in its favor as a matter of law on each of the claims Hutchins asserted against Complient in this case. Accordingly, Complient respectfully requests that judgment be entered in its favor on Hutchins' claims.

Respectfully submitted,

*/s/ John J. Egan*

JOHN J. EGAN (151680)
EGAN, FLANAGAN & COHEN, P.C.
PO Box 9035
67 Market Street
Springfield, MA 01102-9035
(216) 622-8200
FAX (216) 241-0816


WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114-2688
(216) 622-8200
FAX (216) 241-0816


Attorneys for Complient Corporation

## **CERTIFICATE OF SERVICE**

A copy of the foregoing Complient Corporation's Motion for Summary Judgment and Memorandum in Support thereof was served via first-class mail this ____ day of July, 2005:

Donald C. Hutchins
1047 Longmeadow Street
Longmeadow, Massachusetts 01106

Paul H. Rothschild, Esq.
Bacon & Wilson, P.C.
33 State Street
Springfield, MA 01103

And

Randall T. Skaar, Esq.
Scott G. Ulbrich
Patterson, Thuente, Skaar
 & Christensen, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2100

Attorneys for Defendant Cardiac Science, Inc.

_____
One of the attorneys for Complient Corporation