interests in CPR L.P. were not sold to Cardiac Science by virtue of the APA;

(v)     On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that the 7.5% payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science; and

(vi)    interest, costs, attorneys fees and such other and further relief as the Court deems equitable and just.

*Colleen Moran O'Neil*

WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Plaintiff,
Complient Corporation

# EXHIBIT 2



CASE:   CV-04-540066

263542

COMPLIENT CORPORATION
VS.
DONALD C. HUTCHINS, ET AL

JUDGE: EILEEN A GALLAGHER
ROOM:   23A JUSTICE CENTER
DOCKET DATE:    05/26/2005
PRE-TRIAL HELD ON 05/25/2005. COUNSEL FOR
PLAINTIFF AND DEFENDANT PRESENT PRO SE.
DISCOVERY IN PROGRESS. DISPOSITIVE MOTIONS
SHALL BE FILED ON OR BEFORE 7/10/05.
RESPONSES PER RULE. JURY TRIAL SET FOR
12/12/2005 AT 09:00 AM. FULL JURY INSTRUCTIONS
AND TRIAL BRIEFS SHALL BE FILED ON OR BEFORE
12/5/05.

BOOK 3336 PAGE 0746 05/26/2005
NOTICE ISSUED

First-Class Mail
U. S. Postage Paid
Cleveland, OH
Permit No. 1962

**FROM:**
CUYAHOGA COUNTY - COURT OF COMMON PLEAS
GERALD E. FUERST - CLERK OF COURTS
JUSTICE CENTER - COURT TOWER
1200 ONTARIO ST
CLEVELAND, OH 44113

**TO:**
DONALD C. HUTCHINS
1047 LONGMEADOW STREET
LONGMEADOW, MA 01106

# EXHIBIT 3



# CALFEE, HALTER & GRISWOLD LLP

ATTORNEYS AT LAW
Cleveland

Direct Dial No. 216/622-8530
email: coneil@calfee.com

February 2, 2001

<u>VIA CERTIFIED MAIL</u>

CPR Prompt Corporation                Donald C. Hutchins
c/o Gary Martinelli, Resident Agent   60 Brookdale Drive
5 Laurel Street                       Springfield, Massachusetts  01104
Longmeadow, Massachusetts  01106

        Re:    **CPR Limited Partnership v. CPR Prompt Corp., et al.**
               American Arbitration Association

Dear Messrs. Martinelli and Hutchins:

        Enclosed is a Demand for Arbitration which will be filed with the American Arbitration Association on Monday, February 5, 2001 pursuant to Section 9.4 of the License Agreement.  This letter shall serve as notice of such arbitration pursuant to Rule R-4 of the American Arbitration Association Commercial Dispute Resolution procedures.

                        Very truly yours,

                        Colleen M. O'Neil

                        Colleen M. O'Neil

CMO/jab
Enclosure

1400 McDonald Investment Center    800 Superior Avenue    Cleveland, Ohio 44114-2688    216/622-8200    Fax 216/241-0816

1650 Fifth Third Center    21 East State Street    Columbus, Ohio 43215-4243    614/621-1500    Fax 614/621-0010

www.calfee.com

{JAB2250;1}

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| CPR LIMITED PARTNERSHIP<br>27070 Miles Road<br>Solon, Ohio 44139, | ) <br> ) <br> ) <br> ) | CASE NO: |
| Claimant, | ) <br> ) | |
| v. | ) <br> ) | |
| CPR PROMPT CORPORATION<br>c/o Gary Martinelli, Resident Agent<br>5 Laurel Street<br>Longmeadow, Massachusetts 01106, | ) <br> ) <br> ) <br> ) <br> ) | |
| and | ) <br> ) | **DEMAND FOR ARBITRATION** |
| DONALD C. HUTCHINS<br>60 Brookdale Drive<br>Springfield, Massachusetts 01104, | ) <br> ) <br> ) <br> ) | |
| Respondents. | ) | |

Claimant CPR Limited Partnership ("CPR"), for its Demand for Arbitration against Respondents CPR Prompt Corporation ("CPR Prompt") and Donald C. Hutchins ("Hutchins"), alleges as follows:

### PARTIES

1.    Claimant CPR Limited Partnership ("CPR") is a limited partnership organized and existing under the laws of the State of Ohio, with its principal place of business in Solon, Ohio.

2.    Respondent CPR Prompt Corporation ("CPR Prompt") is a Massachusetts corporation with its principal place of business located in Springfield, Massachusetts.

{CMO0750;3}

3.    Respondent Donald C. Hutchins ("Hutchins") is an individual residing in Springfield, Massachusetts.  Hutchins is the President of CPR Prompt.  CPR Prompt and Hutchins are referred to collectively herein as "Hutchins".

## BACKGROUND

4.    On or about June 1, 1994, Respondents entered into a License Agreement with County Line Limited Partnership ("County Line"), which agreement forms the basis of the subject action.  A copy of the License Agreement is attached hereto and is incorporated herein as Exhibit A.

5.    The parties to the License Agreement mutually agreed that County Line would assign its interest in the License Agreement to an Affiliate of County Line after the date of the Agreement.

6.    On September 19, 1994, County Line, in accordance with its obligations under Section 3.10 the License Agreement, assigned the License Agreement to CPR, an Affiliate of County Line as defined by Section 1.1 of the License Agreement.  At all times since September 19, 1994, CPR has been the Affiliate contemplated by the License Agreement.

7.    CPR is an Ohio limited partnership formed in September of 1994.  Pursuant to the License Agreement, Respondents granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

8.    Section 9.4 of the License Agreement provides that any disputes under the License Agreement are subject to arbitration with the American Arbitration Association, which

arbitration is to take place in Cleveland, Ohio, and is to be governed by the laws of the State of Ohio.

9.    As consideration for the License, Hutchins was entitled to the following, among other things, under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the consumer version of the product; and (e) in the event a partner of the Affiliate sold all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

10.    Since the execution of the License Agreement, Respondents have repeatedly and routinely probed for and have been provided with information regarding the status of the partnership interests in CPR. Respondents have been fully apprised of such partnership interests, and CPR and its partners have fully complied with Section 3.10 of the License Agreement.

11.    On November 23, 1999, Respondents forwarded a "Notice of Termination" of the License Agreement, wherein Respondents stated their intent to terminate the License Agreement based on an alleged breach of Section 3.10 of the License Agreement. On November 28, 1999-- less than a week after dispatching the initial termination notice--Respondents forwarded a "Final Notice of Termination" on the same alleged grounds.

12.    Section 3.10 of the License Agreement states, in relevant part, as follows:

> After the date of this Agreement, LICENSEE will assign all of its rights and obligations under this Agreement to an Affiliate of LICENSEE. Such Affiliate will cause each partner of such Affiliate who purchases or otherwise acquires a partnership interest of such Affiliate directly from such Affiliate to agree to pay to CPR-PROMPT seven and one-half percent (7.5%) of the net proceeds of any sale of any or all of such

partnership interest to any person or entity which is not an Affiliate of such partner.

13.    On December 15, 1999, a related entity of CPR, Complient Corporation ("Complient"), responded to Respondents' termination notices, and explained that there has been no breach of Section 3.10 of the License Agreement. Specifically, Complient explained that County Line had properly caused an Affiliate of County Line--CPR--to be formed, and had assigned the License to such Affiliate; and that the partners of CPR had acknowledged the obligation to pay CPR Prompt 7.5% of the net proceeds of any sale of any or all of the partnership interests in such Affiliate to an unrelated third party as required by Section 3.10. Complient advised that if it did not receive a response to the foregoing explanation from Hutchins before December 31, 1999, Hutchins' termination notices would be considered null. No response was received from Hutchins.

14.    Nonetheless, on or about January 15, 2001, Hutchins sent correspondence to Complient which, once again, attempted to rewrite the License Agreement in apparent hope of collecting additional monies from the partners of the Affiliate. Specifically, Hutchins sent correspondence claiming that Section 3.10 of the License Agreement entitles Hutchins to 7.5% of the net proceeds of the sale of any or all assets of either or both CPR and Complient.

15.    Respondents' construction of Section 3.10 of the License Agreement is directly contrary to its terms. Specifically, the plain language of Section 3.10 renders clear that Hutchins is entitled to 7.5% of the net proceeds of the sale of the partnership interest in CPR by one of its partners to an unrelated third party. Section 3.10 is devoid of any mention of any entitlement by Hutchins to any proceeds of any sale of the assets of the partners of the Affiliate other than the partnership interest in the Affiliate, CPR to an unrelated third party.

16.    Thus, Section 3.10 of the License Agreement is clear that, in the event that the partners of the Affiliate, CPR, were to sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins would be entitled to 7.5% of the net proceeds of such sale.

17.    Section 3.10 of the License Agreement does not entitle Hutchins to 7.5% of the net proceeds of the sale of any or all assets of any entity other than the Affiliate as claimed by Hutchins.

18.    In addition to granting an exclusive license, Hutchins undertook additional obligations under the License Agreement. Specifically, among other things, Respondents agreed to the following contained in Section 4.6 of the License Agreement:

> If, while this Agreement is in effect, LICENSOR [Hutchins] makes further improvements to the Licensed Products, or similar products, or becomes the owner of any such improvements or similar products, then LICENSOR shall communicate such improvements or similar products to LICENSEE. At LICENSEE'S option, such improvements or similar products shall then be incorporated into the Licensed Patents, Confidential Information and Trade Secrets, Know-How and Licensed Products without further consideration from LICENSEE therefor, and LICENSOR shall give LICENSEE full information regarding such improvements or similar products.

19.    At some time subsequent to 1999, Hutchins forwarded undated correspondence to the Sales Director of Complient regarding a distributorship agreement entered into by and between Hutchins and Complient, which agreement is wholly unrelated to the License Agreement. In said correspondence, Hutchins advised that he was issued U.S. Patent No. 5913685 in 1999 (the "CPRNET Patent"), and that this patent was for "Cardiopulmonary Resuscitation prompting using computers and digital networks." Hutchins further advised that "we have completed and are currently Beta testing CPRNET® Local Area Network (LAN)

software that will instantly supply this prompting to persons connected to a licensed server" (hereinafter the "Software").

20.     The CPRNET Patent and Software constitute improvements or similar products as contemplated by Section 4.6 of the License Agreement. As such, Respondents were obligated to communicate the existence of the CPRNET Patent and Software from its genesis to Claimant by personal delivery or by registered or certified mail as required by Section 9.1 of the License Agreement.

21.     Respondents failed to communicate the existence of the CPRNET Patent or the Software to Claimant as required by the License Agreement, which failure has resulted in substantial and irreparable harm to CPR due to, among other things, CPR's inability to market such improvements or similar products by virtue of Respondents' non-disclosure.

## COUNT I

22.     CPR repeats and reavers paragraphs 1 through 21 hereof as if fully rewritten herein.

23.     As fully explained above, the plain language of Section 3.10 of the License Agreement provides that, in the event the partners of CPR sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

24.     Hutchins disputes the effect of Section 3.10 of the License Agreement and contends that this provision entitles Hutchins to the payment of 7.5% of the net proceeds of the sale of any or all assets of entities other than CPR.

25.     In order to give effect to Section 3.10 of the License Agreement, the Arbitrators should find that, in the event the partners of CPR sell all or part of their respective partnership

interests in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

26.    An actual and justiciable controversy exists between CPR and the Respondents with respect to the construction and effect of Section 3.10 of the License Agreement for which declaratory relief is necessary.

27.    A declaration is therefore necessary and appropriate under these circumstances in order that CPR may ascertain its respective rights and obligations to Hutchins under Section 3.10 of the License Agreement.

## COUNT II

28.    CPR repeats and reavers paragraphs 1 through 27 hereof as if fully rewritten herein.

29.    Respondents have materially breached their obligations under Section 4.6 of the License Agreement by failing to communicate and disclose improvements and similar products to CPR.

30.    CPR has complied with all of its obligations under the License Agreement.

31.    As a result of Respondents' material breach of the License Agreement, CPR has been irreparably and immediately damaged in a manner and to an extent that cannot as of yet be fully ascertained and which is not fully compensable by monetary damages. Accordingly, in addition to monetary damages, CPR is entitled to specific performance of the terms of Section 4.6 of the License Agreement, including, but not limited to, the assignment to CPR of all rights, title and interest in the CPRNET Patent, Software and technology, and the disclosure of all improvements and similar products as required by Section 4.6 of the License Agreement.

WHEREFORE, CPR prays that judgment be entered in its favor on its claim as follows:

(a)    On Count I, that a declaratory judgment be entered in favor of CPR giving full force and effect to Section 3.10 of the License Agreement and declaring that Section 3.10 of the License Agreement entitles Hutchins solely to payment of 7.5% of the net proceeds of the sale of any or all of the partnership interests in CPR to an unrelated third party and of no other entity; and

(b)    On Count II, that judgment be entered in CPR's favor and against Respondents, jointly and severally, on the grounds that Respondents breached their contractual obligations to CPR by failing to disclose improvements and similar products to Claimant together with an award of damages in an amount to be proven at arbitration;

(c)    On Count II, that judgment be entered in CPR's favor and against Respondents requiring specific performance by Respondents of Section 4.6 of the License Agreement, including, but not limited to, the transfer and assignment of all rights, title and interest to the CPRNET Patent, Software and technology, and the immediate and full disclosure of any and all improvements and similar products as required by Section 4.6 of the License Agreement; and

(d)    On any and all Counts, that an award of reasonable attorney fees and costs incurred in association with this arbitration be entered in favor of CPR and against Respondents, and such other and further relief as may be deemed just.

*Colleen Moran O'Neil*

WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Claimant,
CPR Limited Partnership

# EXHIBIT 4

# SUMMONS IN A CIVIL ACTION   COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER

CASE NO.

01-429494-CV  BC2 Ch              014-32876

CLEVELAND, OHIO 44113

Rule 4 (B) Ohio
Rules of Civil Procedure

COMPLIENT CORPORATION

Plaintiff

**VS**

CPR PROMPT CORPORATION
ET AL

Defendant

**SUMMONS**

HUTCHINS, DONALD C.
60 BROOKDALE DRIVE
SPRINGFIELD        MA 01104

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

O'NEIL, COLLEEN MORAN
800 SUPERIOR
1400 MCDONALD INVESTMENT CTR.
CLEVELAND        OH44114

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

Case has been assigned to Judge:

DAVID T. MATIA

Do not contact judge.       Judge's name is given
for attorney's reference only.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

DATE
FEB. 13, 2001

**GERALD E. FUERST**

Clerk of the Court of Common Pleas

By _____
                                    Deputy

4   COMPLAINT FILED 02/02/2001

**SERVICE COPY**

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| COMPLIENT CORPORATION<br>27070 Miles Road<br>Solon, Ohio 44139, | )<br>)<br>)<br>) | CASE NO: **429394**<br><br>JUDGE |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| CPR PROMPT CORPORATION<br>c/o Gary Martinelli, Resident Agent<br>5 Laurel Street<br>Longmeadow, Massachusetts 01106, | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | **COMPLAINT FOR DECLARATORY** |
| DONALD C. HUTCHINS<br>60 Brookdale Drive<br>Springfield, Massachusetts 01104, | )<br>)<br>)<br>) | **JUDGMENT** |
| Defendants. | ) | |

Plaintiff Complient Corporation ("Complient), for its Complaint for Declaratory Judgment ("Complaint") against Defendants CPR Prompt Corporation ("CPR Prompt") and Donald C. Hutchins ("Hutchins"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Complient is a Delaware corporation with its principal place of business located in Solon, Ohio.

2.     CPR Prompt is a Massachusetts corporation with its principal place of business located in Springfield, Massachusetts.

3.    Donald C. Hutchins is an individual residing in Springfield, Massachusetts. Hutchins is the President of CPR Prompt. CPR Prompt and Hutchins are referred to collectively herein as "Hutchins".

4.    Defendants are subject to the long-arm jurisdiction of this Court pursuant to Rule 4.6 of the Ohio Rules of Civil Procedure by virtue of their activities associated with the License Agreement. Further, a substantial part of the events giving rise to this action occurred in this County.

## BACKGROUND

5.    On or about June 1, 1994, Defendants entered into a License Agreement with County Line Limited Partnership ("County Line"), which agreement forms the basis of the subject action. A copy of the License Agreement is attached hereto and is incorporated herein as Exhibit A.

6.    The parties to the License Agreement mutually agreed that County Line would assign its interest in the License Agreement to an Affiliate of County Line after the date of the Agreement.

7.    On September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement, assigned the License Agreement to CPR Limited Partnership ("CPR"), an Affiliate of County Line as defined by Section 1.1 of the License Agreement. At all times since September 19, 1994, CPR has been the Affiliate contemplated by the License Agreement.

8.    CPR is an Ohio limited partnership formed in September of 1994. Pursuant to the License Agreement, Defendants granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning

cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

9.      Between September of 1994 and December of 1997, County Line or its successor served as the general partner of CPR, holding 99% of the interest therein. In December, 1997, County Line's successor transferred its 99% partnership interest in CPR to CPR Prompt L.L.C. On June 20, 2000, CPR Prompt L.L.C. converted to a Delaware corporation named Complient Corporation. As such, at present, Complient holds the 99% general partnership interest in CPR.

10.      As consideration for the License, Hutchins was entitled to the following, among other things, under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the consumer version of the product; and (e) in the event a partner of the Affiliate sold all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

11.      Since the execution of the License Agreement, Defendants have repeatedly and routinely probed for and have been provided with information regarding the status of the partnership interests in CPR. Defendants have been fully apprised of such partnership interests, and CPR and its partners have fully complied with Section 3.10 of the License Agreement.

12.      On November 23, 1999, Defendants forwarded a "Notice of Termination" of the License Agreement to Complient, wherein Defendants stated their intent to terminate the License Agreement based on an alleged breach of Section 3.10 of the License Agreement. On November

28, 1999--less than a week after dispatching the initial termination notice--Defendants forwarded a "Final Notice of Termination" to Complient on the same alleged grounds.

13.    Section 3.10 of the License Agreement states, in relevant part, as follows:

> After the date of this Agreement, LICENSEE will assign all of its rights and obligations under this Agreement to an Affiliate of LICENSEE. Such Affiliate will cause each partner of such Affiliate who purchases or otherwise acquires a partnership interest of such Affiliate directly from such Affiliate to agree to pay to CPR-PROMPT seven and one-half percent (7.5%) of the net proceeds of any sale of any or all of such partnership interest to any person or entity which is not an Affiliate of such partner.

14.    On December 15, 1999, Complient, on behalf of County Line and CPR, responded to Defendants' termination notices, and explained that there had been no breach of Section 3.10 of the License Agreement.  Specifically, Complient explained that County Line had properly caused an Affiliate of County Line--CPR--to be formed, and had assigned the License to such Affiliate; and that the partners of CPR had acknowledged the obligation to pay CPR Prompt 7.5% of the net proceeds of any sale of any or all of the partnership interests in such Affiliate to an unrelated third party as required by Section 3.10.  Complient advised that, if it did not receive a response from Hutchins to the foregoing explanation before December 31, 1999, Hutchins' termination notices would be considered null.  No response was received from Hutchins.

15.    Nonetheless, on or about January 15, 2001, Hutchins sent correspondence to Complient which, once again, attempted to rewrite the License Agreement in apparent hope of collecting additional monies from the partners of the Affiliate.  Specifically, Hutchins sent correspondence claiming that Section 3.10 of the License Agreement entitles Hutchins to 7.5% of the net proceeds of the sale of any or all assets of either or both CPR and Complient.

16.    Defendants' construction of Section 3.10 of the License Agreement is directly contrary to its terms.  Specifically, the plain language of Section 3.10 renders clear that Hutchins is entitled to 7.5% of the net proceeds of the sale of the partnership interest in CPR by one of its partners to an unrelated third party.  Section 3.10 is devoid of any mention of any entitlement by Hutchins to any proceeds of any sale of the assets of the partners of the Affiliate other than the partnership interest in the Affiliate, CPR to an unrelated third party.

17.    Thus, Section 3.10 of the License Agreement is clear that, in the event that the partners of the Affiliate, CPR, were to sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins would be entitled to 7.5% of the net proceeds of such sale.

18.    Section 3.10 of the License Agreement does not entitle Hutchins Prompt to 7.5% of the net proceeds of the sale of any or all assets of any entity other than the Affiliate as claimed by Hutchins.

## COUNT I

19.    Complient repeats and reavers paragraphs 1 through 18 hereof as if fully rewritten herein.

20.    As fully explained above, the plain language of Section 3.10 of the License Agreement provides that, in the event the partners of CPR sell all or part of their respective partnership interests in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

21.    Hutchins disputes the effect of Section 3.10 of the License Agreement and contend that this provision entitles Hutchins to the payment of 7.5% of the net proceeds of the sale of any or all assets of entities other than CPR, including, but not limited to, Complient.

22.    In order to give effect to Section 3.10 of the License Agreement, this Court should find that, in the event the partners of CPR sell all or part of their respective partnership interest(s) in CPR to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interest.

23.    An actual and justiciable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement for which declaratory relief is necessary.

24.    A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of Section 3.10 of the License Agreement.

WHEREFORE, Complient prays that a declaratory judgment be entered in its favor giving full force and effect to Section 3.10 of the License Agreement and declaring that Section 3.10 of the License Agreement entitles Hutchins solely to payment of 7.5% of the net proceeds of the sale of any or all of the partnership interests in the Affiliate, CPR, by its partners to an unrelated third party and, further, that Hutchins is not entitled to the proceeds of the sale of any other entity.

*Colleen Moran O'Neil*

WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Plaintiff,
Complient Corporation