UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action: **04-30126-MAP** |
| v. ) | |
| ) | |
| CARDIAC SCIENCE, INC., et al; ) | |
| ) | |
| Defendants ) | |

### PLAINTIFF DONALD C. HUTCHINS' MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff Donald C. Hutchins ("Hutchins") submits this Memorandum in support of his Motion for Summary Judgment on all claims brought against defendant, Complient Corporation ("Complient"). Specifically, Hutchins requests that this Court enter an order finding against Complient committed the following: Count IV. (Fraud), Count V. (Fraudulent Misappropriation and Sale of Patent), Count VII. (Tortious Interference with Contract), Count VIII. (Breach of Contract) as contained in the Amended Complaint.

### INTRODUCTION

This lawsuit arises out of a misrepresentation by the Complient Corporation ("Complient") of Section 3.10 of a License Agreement between Hutchins and County Line LLC ("County Line"), the parties to this Agreement. Steven Lindseth, who now claims to be President of Complient has misrepresented the meaning of Section 3.10 first to the investors in County Line and its successor CPR Prompt LLC and later in the sale and transfer of Hutchins' licensed properties to Cardiac Science, Inc. ("Cardiac Science").

### FACTS

**A.    The Asserted License Agreement of June 1, 1994**

The linchpin of Hutchins' claims against Complient in this Case is a License Agreement entered into on June 1, 1994 by and between Hutchins the owner of the

licensed properties, and County Line Limited Partnership ("County Line"). Complient is the successor to County Line and has transacted business as the only licensee as defined by the License Agreement. Complient has developed, manufactured and sold the licensed products. As the licensee, Complient (dba: County Line Limited, CPR Prompt LLC and the Complient Corporation) has supplied Hutchins with sales reports, royalty payments, patent license fee payments and all other transactions covered by the License Agreement. Hutchins has not entered into, been a party to or signed any other agreement with County Line or its successors or its subsidiaries with regard to the intellectual properties licensed to County Line under the License Agreement of June 1, 1994.

Hutchins negotiated the licensing of his intellectual properties with Jon and Steven Lindseth in the months prior to June of 1994. Amended Complaint, ¶¶ 22, 23, 24, 25. Jon Lindseth communicated the terms resolved during these negotiations to his Attorney, Mark Kaufman of Southland, Asbill and Brennan of Atlanta, Georgia who sent a first draft of the Agreement to Attorney Gary Martinelli who represented Hutchins. Amended Complaint, ¶ 26., Martinelli Affidavit ¶ 2.

Exhibits A, B, C and D, attached to Martinelli's Affidavit, respectively are drafts of the License Agreement and Exhibit E is the final draft that was signed by Hutchins on June 1, 1994. Attorney Martinelli's understanding regarding the 7.5% "equity interest" concept as reflected in Section 3.10 of the License Agreement is contained in Martinelli's Affidavit ¶¶ 7 and 8.

As a co-author 2ith Attorney Kaufman of the June 1 1994 License Agreement, it is Attorney Martinelli's opinion that County Line's request to assign its rights under the Agreement to an Affiliate has no effect on Hutchins' equity deal as described in Section 3.10 of the License Agreement. Martinelli Affidavit ¶ 9. Attorney Kaufman has never disputed Attorney Martinelli's reading of Section 3.10.

Attorney Martinelli ends his Affidavit with the statement, "Upon information and belief, on October 20, 2003, a successor to County Line sold, transferred or otherwise assigned the assets covered by the License Agreement together with other assets to Cardiac Science, Inc. for approximately $47 million worth of Cardiac Science stock." This transfer invokes the terms of Section 3.10. Martinelli Affidavit ¶ 10.

**B.     The Asserted Asset Purchase Agreement**

On October 21, 2003, Complient and its 99% owned subsidiary CPR L.P. sold certain of its assets to Defendant Cardiac Science Inc. pursuant to an Asset Purchase Agreement (the "APA"). (The 99% owned CPR L.P. is not an independent entity under established tax and accounting standards) This APA effectively transferred the Complient Corporation's interest, as successor to County Line in the June 1, 1994 License Agreement, to Cardiac Science, Inc.

Cardiac Science's claims to Hutchins' properties as defined by the Asset Purchase Agreement with Complient were upheld by this Court in its Summary Judgment of June 23, 2005 as docketed 55. This Judgment validates the sale and transfer of properties licensed to County Line by Hutchins under the June 1, 1994 License Agreement from Complient, the successor of County Line, to Cardiac Science.

While Hutchins has disputed Cardiac Science's claims under terms of the APA, as the result of the Judgment (docketed 55), Hutchins now accepts as fact that Cardiac Science is the Licensee of Hutchins' properties under terms of the June 1, 1994 License Agreement.

The Asset Purchase Agreement was negotiated and signed by Robert Thompson as President and CEO of Complient. Complient has offered no evidence that Steven Lindseth had any involvement in the APA. With the execution of the APA that named Cardiac Science as the Licensee of Hutchins properties, Lindseth did not contact Hutchins concerning any obligations under the June 1, 1994 License Agreement. Neither Complient nor Cardiac Science supplied Hutchins with sales reports, patent fees, royalties, yearly minimum payments required under terms of the License Agreement.

The APA references Hutchins at least 7 times and acknowledges him as inventor and owner of the CPR Prompt patents. However, the APA fails to include a copy of the June 1, 1994 License Agreement or to recognize any obligations to Hutchins contained in the License Agreement such as royalty payments, patent license fees, sales reports or the satisfaction of the requirements of §3:10.

The APA of October 21, 2003 that transferred Hutchins intellectual properties from the successor of County Line to Cardiac Science was designed under terms of the June 1, 1994 License Agreement to trigger the payment of an equity interest to Hutchins. Martinelli Affidavit ¶¶ 7,8,9. Complient has shown no evidence that Robert Thompson

3

as President and CEO of Complient communicated this obligation to Cardiac Science in negotiating the APA. Complient has shown no evidence that have ever intended to honor this obligation so clearly defined in Attorney Martinelli's Affidavit. Martinelli Affidavit ¶¶ 4,5,6,7,8,9.

## ARGUMENT

Summary judgment must be granted to Hutchins because the undisputed facts show that Hutchins is owed an equity interest under terms of the June 1, 1994 License Agreement. Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P.56(c). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.317,322 (1986).

### I.    COMPLIENT FRAUDULENTLY MISREPRESENTED THE AGREEMENT.

Attorney Martinelli represented Hutchins in the preparation of the June 1, 1994 License Agreement. In paragraph 7 of his Affidavit, Attorney Martinelli testifies to the fact that, "*Lindseth and County Line offered to pay CPR 7.5% of the net proceeds arising from the sale of any partner (or should County Line Incorporate, any stockholder) in County Line of his interest in County Line. This concept is reflected in Section 3.10 of the May 16, 1994 draft attached as Exhibit A, is the subject of comment #15 set forth in my Memorandum attached as Exhibit F, and was further reflected in Exhibits B and C. The thrust of the provision was that in consideration of granting the licenses set forth in the License Agreement, CPR was to have an "equity interest" in the licensee.*" Martinelli Affidavit ¶7.

Pursuant to Local Rule 56.1, Cardiac Science declares as material fact that "On October 21, 2003, Complient, CPR, Limited Partnership and Cardiac Science entered into an Asset Purchase Agreement whereby Cardiac Science purchased certain assets from Complient and CPR, LP, including the License Agreement. (Ex.3,Sec. 1.1A)" Cardiac Science Memorandum of its Motion For Summary Judgment, Material Facts.

4

During negotiations that led to the APA Complient failed to tell Cardiac Science the meaning and construction of Section 3.10 of the June 1, 1994 License Agreement because such notice would reduce the receipts of each Complient shareholder by 7.5%. This travesty was compounded by the fact that Complient never told Hutchins that the License had been transferred and sold to Cardiac Science.

As of the date of the APA, Complient was dissolved as a going concern together with its 99% owned affiliate CPR L.P. Neither Complient nor its affiliate has made any effort to meet the requirements of Section 3.10 of the License Agreement. It is clear that the management of Complient planned to disappear and let Hutchins and Cardiac Science sort things out.

Cardiac Science has sorted things out to their own benefit through their Demand for Compensation for the return of 1,025,000 shares of Cardiac Science stock under terms of the APA. Complient met this Demand. Hutchins' Affidavit, Exhibit D. As of this date, Hutchins continues to be the loser because he has received no royalties due him under the License Agreement and has received no equity return on this license transfer to Cardiac Science.

Complient's misrepresentations to Cardiac Science resulted in a Demand for Indemnity from Cardiac Science to Complient as disclosed in the Affidavit of Steven Lindseth dated July of 2005. Hutchins Affidavit, Exhibit D. Cardiac Science demanded the return of 1,025,000 based on the lawsuit filed by Donald Hutchins. Lindseth Affidavit ¶¶9,10. This Demand for Indemnity is proof that Complient mislead Cardiac Science during the negotiation of the Asset Purchase Agreement and that Cardiac Science received these shares of stock as damages for the misrepresentations of Complient.

## II.    COMPLIENT MISAPPROPRIATED HUTCHINS' PATENT.

The Complient Corporation never participated in the ownership of Hutchins U.S. Patent No. 5913685 because the invention, development and patent filing were independent of and came many years after the June 1, 1994 License Agreement. Amended Complaint, ¶ 62.

Complient deceived Cardiac Science into believing that Cardiac Science would receive rights to Patent No. 5913685 as part of the Asset Purchase Agreement. Amended Complaint, ¶ 63.

The confusion created by Complient has deflated the value of Patent No. 5913685 as an asset that can be licensed and sold by Hutchins. Amended Complaint, ¶64. The first 7 years of a patent's 20-year life is the time when most patents have their greatest value. Complient has misappropriated Hutchins' Patent No. 5913685 by identifying it as an asset being transferred in the Cardiac Science Asset Purchase Agreement. Amended Complaint, ¶ 63. With the ownership in question, Hutchins has not been able to exploit the value of this patent through licensing and/or sale.

### III. COMPLIENT COMMITTED TORTIOUS INTERFERENCE

When neither Cardiac Science nor Complient communicated the transfer of his intellectual properties to Cardiac Science and no one was paying the royalties, patent fees, etc. that had been paid by County Line and its successors, Hutchins took the only course open to him and filed Civil Action 04-30126-MAP in the District Court of Massachusetts. Although the Complient Corporation was not named in Civil Action 04-30126-MAP, was in the process of dissolution, had no place of business in Ohio and claimed not to be a party to the License Agreement, their so-called President, Steven Lindseth retaliated with Ohio Civil Action 04-540066. Hutchins' Affidavit ¶¶7,8, Exhibit B.

Ohio Civil Action 04-540066 alleges that "An actual and justifiable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement and Section 1.2( I ) of the APA for which declaratory relief is necessary." Complaint ¶ 58, Exhibit B. In the next paragraph Complient asks the Ohio Court for "A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of both Section 3.10 of the License Agreement and Section 1.2(l) of the APA." Complaint ¶ 59, Exhibit B.

Steven Lindseth elected not to enter this Action to resolve the same issues that he presented in the Ohio Complaint. Mr. Lindseth's motives for his unfounded Ohio litigation are clear. Lindseth and the attorneys at Calfee, Halter and Griswold recognized that it would be difficult and cost prohibitive for Hutchins to conduct a defense from 800 miles away. Recognizing that Hutchins could not afford representation Lindseth's attorneys presumed that the CPR Prompt Corporation would lose by default and that they,

6

as Plaintiff in the action, could use *res judicata* for leverage against Hutchins' *pro se* personal defense. Hutchins' Affidavit ¶10.

Recognizing that that the identical issues were being litigated in Civil Action 04-30126-MAP with all the parties present on a level playing field, Judge Gallagher put off trial to December 2005 pending the results of Civil Action 04-30126-MAP. Fearing results from this federal action, on July 29, 2005 Complient filed a Motion for Summary Judgment against Hutchins in Ohio Civil Action 04-540066. Hutchins' Affidavit ¶12, Exhibit C. Complient's Motion and Memorandum include most of the lies and deceptions they have alleged against Hutchins in this case. However, their panic for a decision from Judge Gallagher has forced them to produce new evidence that applies to this Action.

The Memorandum included an Affidavit of Steven Lindseth sworn before a notary public on an unknown date in July of 2005. Hutchins' Affidavit ¶10, Exhibit D. In his Affidavit Lindseth swears that based on a lawsuit filed by Hutchins (04-30126-MAP), Complient received a Demand for Indemnity from Cardiac Science that included the 1,025,000 shares that remained in escrow that were tendered by Cardiac Science as payment under the APA. Hutchins' Affidavit ¶14, Exhibit D.

Lindseth swears that "because of the Demand for Indemnity and the lawsuit filed by Donald Hutchins against Cardiac Science, the shares held in escrow were not released to Complient on October 20, 2004." Hutchins' Affidavit ¶15, Exhibit D. In his sworn statement Lindseth admits that Cardiac Science saw merit in Hutchins' Complaint to the point where Complient was forced to capitulate to Cardiac Science's Demand for Indemnity and by releasing escrowed shares and $836,366 back to Cardiac Science. Hutchins' Affidavit ¶15, Exhibit D. Lindseth's Affidavit is certain proof that Hutchins' federal Complaint was justifiable and that both Cardiac Science and Complient recognize that Hutchins' assertions as to the construction and meaning of Section 3.10 of the June 1, 1994 License Agreement are legitimate.

Complient has committed repeated acts of tortious interference through instituting this Ohio action rather than joining Civil Action 04-30126-MAP where the same issues were being contested. Hutchins' inability to afford legal counsel in the State of Ohio and the necessity of acting *pro se*, has caused great hardship, continues to damage Hutchins.

For example, the Complaint asked for at least $50,000 in damages from Hutchins. This exposure has effected Hutchins' credit rating. There have also been travel and hotel expenses for Ohio Court Hearings together with hundreds of hours of work in preparing defense papers to be filed.

IV.    **COMPLIENT BREACHED THE CONTRACT.**

Donald C. Hutchins and the Complient Corporation as successor to County Line Limited are both parties to the June 1, 1994 License Agreement. The June 1, 1994 License Agreement carries specific instructions for the parties with regard to: Dispute resolution through the AAA; Abandonment of registrations and patents; Notification or transfer of intellectual properties; Sub-licensing; Payment of royalties; Quarterly reports; Return of properties to patent owner; Transfer of license between affiliated parties; Sale of License to foreign entities. Complaint ¶ 83.

The Complient Corporation has never provided written notice to Donald C. Hutchins of the transfer of assets to Cardiac Science. As we have learned during the Enron scandal, the partnership CPR L.P. established by Steven Lindseth is not an independent entity. CPR L.P. can not operate independently from Complient because under accounting and legal standards ownership by the Complient Corporation is 99%. This exceeds the 97% limit required for an entity to claim independence. Complaint ¶¶ 85,86.

Since September of 2003, the Complient Corporation has paid no royalties or sent any quarterly reports to Hutchins breaching the June 1, 1994 Agreement. Since September of 2003 the Complient Corporation has paid no patent license fees as required by the June 1, 1994 Agreement. Complaint ¶¶ 87,88.

The Complient Corporation has not paid the $10,000 yearly minimum royalty payment to Hutchins breaching the June 1, 1994 Agreement. The Complient Corporation has never provided Hutchins with written notice that it intended to close its Cleveland office and suspend its sales of Hutchins' licensed products in breach of the June 1, 1994 Contract. Complaint ¶¶ 89,90.

The Complient Corporation as successor to County Line Limited did not notify Hutchins of the existence and terms of the APA between Cardiac Science and Complient. They did not notify Hutchins about the illegal transfer of Hutchins' properties to Cardiac

8

Science either prior to, during or after October of 2003 thereby breaching the June 1, 1994 Agreement. Complaint ¶ 91.

Steven Lindseth and Complient are well aware that Section 3.10 of the June 1, 1994 Agreement entitles Hutchins to 7.5% of the return upon divestiture to a non-affiliated party. Reports filed with the Security and Exchange Commission indicate that Cardiac Science paid a $47,000,000 acquisition price to the Complient Corporation. As a result Hutchins is due 7-1/2% of the proceeds, which equals $3,525,000. Complaint ¶¶ 92,93. As a result of this breach, Donald C. Hutchins has suffered damages in excess of $3,525,000. Complaint ¶ 94.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that he is entitled to Summary Judgment on all claims at issue, as a matter of law, because the undisputed facts and the testimony of Gary E. Martinelli, Esq. show that Hutchins is entitled to 7.5% of the proceeds of Asset Purchase Agreement. The undisputed facts and sworn testimony of Donald C. Hutchins also show that the Complient Corporation has committed acts of fraud, misappropriated Hutchins Patent, breached the License Agreement Contract and misappropriated Hutchins' Patent No.5913685 to Complient's financial benefit.

Complient acceded to Cardiac Science's demand for the return of 1,025,000 shares based on Hutchins' Compliant in this action. This demand and accidence is tantamount to an admission by both Cardiac Science and Complient that Hutchins' claims are justified. Accordingly, Hutchins requests that this Court grant his motion for summary judgment in its entirety and dismiss Defendant's counterclaims with prejudice.

Respectfully submitted

The Plaintiff
Donald C. Hutchins, Pro Se

Dated: September 7, 2005

_____
1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 567-0606
(413) 739-4060 (facsimile)

9

## CERTIFICATE OF SERVICE

I, Donald C. Hutchins, 1047 Longmeadow Street, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by United Parcel Service to:

John J. Egan, Esq.
Egan, Flanagan and Cohen, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035

and

Colleen Moran O'Neil
Calfee, Halter & Griswold LLP
1400 McDonald Investment Center
800 Superior Avenue.
Cleveland, OH 44114-2688

Dated: 9/7/05

Paul H. Rothschild, Esq.
Bacon & Wilson, P.C.
33 State Street
Springfield, MA 01103

and

Randall T. Skaar, Esq.
Patterson, Thuente, Skaar & Christensen, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2100

Donald C. Hutchins