UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC., et al; )<br>)<br>Defendants ) | Civil Action: **04-30126-MAP** |

## PLAINTIFF DONALD C. HUTCHINS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

This Statement of Undisputed Material Facts is submitted pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts in support of Plaintiff Donald C. Hutchins' ("Hutchins") Motion for Summary Judgment. All record materials referenced herein but not previously filed with the Court are attached to the Affidavits of Gary E. Martinelli, Esq. ("Martinelli Affidavit.") or to the Affidavit of Donald C. Hutchins ("Hutchins Affidavit"), filed herewith.

### STATEMENT OF UNDISPUTED FACTS

#### Parties

1. Plaintiff Donald C. Hutchins is an individual residing in Massachusetts. Amended Complaint, ¶ 1.

2. Defendant Complient Corporation ("Complient") is a dissolved Delaware Corporation with no principle place of business in Ohio. The given address for correspondence is: Complient Corporation, c/o Calfee, Halter & Griswold LLP, 1400 McDonald Business Center, 800 Superior Avenue, Cleveland, Ohio 44114-2688, Attn: Gerald A. Monroe, Esq. Amended Complaint, ¶ 3.

#### The License Agreement

3. The linchpin of Hutchins' claims against Complient in this Case is a License Agreement entered into on June 1, 1994 by and between Hutchins, the owner of

the licensed properties, and County Line Limited Partnership ("County Line"). Complient is the successor to County Line and has transacted business as the only licensee as defined by the License Agreement. Complient has developed, manufactured and sold the licensed products. As the licensee, Complient (dba: County Line Limited, CPR Prompt LLC and the Complient Corporation) has supplied Hutchins with sales reports, royalty payments, patent license fee payments and all other transactions covered by the License Agreement.

4. Hutchins has not entered into, been a party to or signed any other agreement with County Line or its successors or its subsidiaries with regard to the intellectual properties licensed to County Line under the License Agreement of June 1, 1994.

5. Hutchins negotiated the licensing of his intellectual properties with Jon and Steven Lindseth in the months prior to June of 1994 Amended Complaint, ¶s 22, 23, 24, 25.

6. Jon Lindseth communicated the terms resolved during these negotiations to his Attorney, Mark Kaufman of Southland, Asbill and Brennan of Atlanta, Georgia and sent a first draft of the Agreement to Attorney Gary Martinelli who represented Hutchins. Amended Complaint, ¶ 26., Martinelli Affidavit ¶ 2.

7. Exhibits A, B, C and D, attached to Martinelli's Affidavit, respectively are drafts of the License Agreement and Exhibit E is the final draft that was signed by Hutchins on June 1, 1994.

8. Attorney Martinelli's understanding regarding the 7.5% "equity interest" concept as reflected in Section 3.10 of the License Agreement is contained in Martinelli's Affidavit ¶s 7 and 8.

9. As a creator of the June 1 1994 License Agreement, it is Attorney Martinelli's opinion that County Line's request to assign its rights under the Agreement to an Affiliate has no effect on Hutchins' equity deal as described in Section 3.10 of the License Agreement. Martinelli Affidavit ¶ 9.

10. Attorney Martinelli ends his Affidavit with the statement, "Upon information and belief, on October 20, 2003, a successor to County Line sold, transferred or otherwise assigned the assets covered by the License Agreement together with other

assets to Cardiac Science, Inc. for approximately $47 million Cardiac Science stock." This transfer invokes the terms of Section 3.10. Martinelli Affidavit ¶ 10.

### The Asset Purchase Agreement

11. On October 21, 2003, Complient and its 99% owned subsidiary CPR L.P. sold certain of its assets to Defendant Cardiac Science Inc. pursuant to an Asset Purchase Agreement (the "APA"). (The 99% owned CPR L.P. is not an independent entity under established tax and accounting standards) This APA effectively transferred the Complient Corporation's interest, as successor to County Line in the June 1, 1994 License Agreement, to Cardiac Science, Inc.

12. Cardiac Science's claims to Hutchins' properties as defined by the Asset Purchase Agreement with Complient were upheld by this Court in its Summary Judgment of June 23, 2005 as docketed 55.

13. This Judgment validates the sale and transfer of properties licensed to County Line by Hutchins under the June 1, 1994 License Agreement from Complient, the successor of County Line, to Cardiac Science.

14. While Hutchins has disputed Cardiac Science's claims under terms of the APA, as the result of the Judgment (docketed 55), Hutchins now accepts as fact that Cardiac Science is the Licensee of Hutchins' properties under terms of the June 1, 1994 License Agreement.

### Plaintiff's Claim of Fraud Against Complient

15. The Complient Corporation fraudulently misrepresented the June 1, 1994 License Agreement between County Line and Hutchins to induce the asset sale to Cardiac Science through the use of false and unsigned documents to which Hutchins was not a party. Amended Complaint, ¶s 56, 57, 58.

16. Complient's fraudulent acts on which the asset sale depended have caused great financial damage to Hutchins. Amended Complaint, ¶s 59, 60.

### Plaintiff's Claim of Fraudulent Misappropriation and Sale of Patent

17. The Complient Corporation never participated in the ownership of Hutchins U.S. Patent No. 5913685 because the invention, development and patent filing were independent of and came many years after the June 1, 1994 License Agreement. Amended Complaint, ¶ 62.

18. Complient deceived Cardiac Science into believing that Cardiac Science would receive rights to Patent No. 5913685 as part of the Asset Purchase Agreement. Amended Complaint, ¶ 63.

19. The confusion created by Complient has deflated the value of Patent No. 5913685 as an asset that can be licensed and sold by Hutchins. Amended Complaint, ¶64.

### Plaintiff's Claim of Abuse of Tortious Interference with Contract

20. The law firm that represented Cardiac Science in the APA has stated that, "The alleged "7-1/2% exit strategy negotiated by the Lindseths in 1994 does not touch or concern Cardiac Science." Amended Complaint, ¶ 73. Amended Complaint Exhibit O.

21. When neither Cardiac Science nor Complient communicated the transfer of his intellectual properties to Cardiac Science and no one was paying the royalties, patent fees, etc. that had been paid by County Line and its successors, Hutchins took the only course open to him and filed Civil Action 04-30126-MAP in the District Court of Massachusetts.

22. Although the Complient Corporation was not named in Civil Action 04-30126-MAP, was in the process of dissolution, had no place of business in Ohio and claimed not to be a party to the License Agreement, their so-called President, Steven Lindseth retaliated with Ohio Civil Action 04-540066. Hutchins' Affidavit ¶¶7,8, Exhibit B.

23. Ohio Civil Action 04-540066 alleges that "An actual and justifiable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement and Section 1.2( 1 ) of the APA for which declaratory relief is necessary." Complaint ¶ 58, Exhibit B. In the next paragraph Complient asks the Ohio Court for "A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of both Section 3.10 of the License Agreement and Section 1.2(I) of the APA." Complaint ¶ 59, Exhibit B.

24. Steven Lindseth elected not to enter this Action to resolve the same issues that he presented in the Ohio Complaint. Mr. Lindseth's motives for his unfounded Ohio litigation are clear. Lindseth and the attorneys at Calfee, Halter and Griswold recognized that it would be difficult and cost prohibitive for Hutchins to conduct a defense from 800

miles away. Recognizing that Hutchins could not afford representation Lindseth's attorneys presumed that the CPR Prompt Corporation would lose by default and that they, as Plaintiff in the action, could use *res judicata* for leverage against Hutchins' *pro se* personal defense. Hutchins' Affidavit ¶10.

25. Recognizing that that the identical issues were being litigated in Civil Action 04-30126-MAP with all the parties present on a level playing field, Judge Gallagher put off trial to December 2005 pending the results of Civil Action 04-30126-MAP. Fearing results from this federal action, on July 29, 2005 Complient filed a Motion for Summary Judgment against Hutchins in Ohio Civil Action 04-540066. Hutchins' Affidavit ¶12, Exhibit C.

26. Complient's Motion and Memorandum include most of the lies and deceptions they have alleged against Hutchins in this case. However, their panic for a decision from Judge Gallagher has forced them to produce new evidence that applies to this Action. The Memorandum included an Affidavit of Steven Lindseth sworn before a notary public on an unknown date in July of 2005. Hutchins' Affidavit ¶10, Exhibit D. In his Affidavit Lindseth swears that based on a lawsuit filed by Hutchins (04-30126-MAP), Complient received a Demand for Indemnity from Cardiac Science that included the 1,025,000 shares that remained in escrow that were tendered by Cardiac Science as payment under the APA. Hutchins' Affidavit ¶14, Exhibit D.

27. Lindseth swears that "because of the Demand for Indemnity and the lawsuit filed by Donald Hutchins against Cardiac Science, the shares held in escrow were not released to Complient on October 20, 2004." Hutchins' Affidavit ¶15, Exhibit D. In his sworn statement Lindseth admits that Cardiac Science saw merit in Hutchins' Complaint to the point where Complient was forced to capitulate to Cardiac Science's Demand for Indemnity by releasing escrowed shares and $836,366 back to Cardiac Science. Hutchins' Affidavit ¶15, Exhibit D. Lindseth's Affidavit is certain proof that Hutchins' federal Complaint was justifiable and that both Cardiac Science and Complient recognize that Hutchins' assertions as to the construction and meaning of Section 3.10 of the June 1, 1994 License Agreement are legitimate.

### **Plaintiff's Claim of Breach of Contract**

28. The Complient Corporation as successor to County Line Limited failed to notify Hutchins of the transfer of his properties to the non-affiliated Licensee, Cardiac Science as required under terms of the License Agreement. Amended Complaint, ¶ 84.

29. The Complient Corporation as successor to County Line Limited failed to place this dispute with the American Arbitration Association as required under terms of the License Agreement. Amended Complaint, ¶ 84.

30. Since June of 2003, the Complient Corporation as successor to County Line Limited has failed to provide quarterly sales reports as required under terms of the License Agreement. Amended Complaint, ¶ 84.

31. Since June of 2003, the Complient Corporation as successor to County Line Limited has failed to provide royalty payments as required under terms of the License Agreement. Amended Complaint, ¶ 84.

32. The Complient Corporation as successor to County Line Limited has failed to notify the Patent Office of the transfer of the Hutchins Patent and Trademark to the non-affiliated Licensee, Cardiac Science as required under terms of the License Agreement. Amended Complaint, ¶ 84.

33. Since June of 2003 the Complient Corporation as successor to County Line Limited has failed to pay Hutchins the $10,000 yearly minimum royalty payment as required under terms of the License Agreement. Amended Complaint, ¶ 89.

34. The Complient Corporation as successor to County Line Limited failed to notify Hutchins of the transfer of his properties to the non-affiliated Licensee, Cardiac Science as required under terms of the License Agreement. Section 3.10 of the License Agreement allots Hutchins an equity position of 7.5% of the gross receipts from such a sale or transfer. Complient not transferred to Hutchins 7.5% of the Cardiac Science stock received from Cardiac Science as part of the APA. Amended Complaint, ¶ 93.

35. The Complient Corporation as successor to County Line Limited Partnership failed to allot Hutchins 7.5% of the $47,000,000 acquisition price that Cardiac Science paid Complient for the asset purchase. Amended Complaint, ¶s 93, 94.

                                Respectfully submitted

                                The Plaintiff
                                Donald C. Hutchins, Pro Se

Dated: September 7, 2005

                                4047 Longmeadow Street
                                Longmeadow, Massachusetts 01106
                                (413) 567-0606
                                (413) 739-4060 (facsimile)