UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC. )<br>and )<br>COMPLIENT CORPORATION )<br>)<br>Defendants ) | Civil Action: **04-30126-MAP** |

## AFFIDAVIT OF DONALD C. HUTCHINS

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1. I am over 18 years of age and have personal knowledge of the matters attested to herein.

2. On October 20, 2003 the Complient Corporation the successor to County Line Limited sold, transferred or otherwise moved my intellectual properties to a non-affiliated company, Cardiac Science, Inc. for $47 million dollars in Cardiac Science common stock.

3. This sale triggered the terms of Section 3.10 of the June 1, 1994 License Agreement. The terms of Section 3.10 clearly require that the stockholders of the Complient Corporation pay the LICENSOR, namely Hutchins, seven and one-half percent (7-1/2) of the net proceeds of any sale to a non-affiliated entity.

4. I brought these matters to the attention of Cardiac Science's patent attorney, Randall Skaar with the hope that Cardiac Science would resolve these issues by diverting common stock from the APA "lock up" account to me.

5. My answer was a letter attached as Exhibit A from the law firm of Stradling, Uocca Carlson & Rauth refusing my overture for a peaceful settlement and threatening legal action against me.

6. Claiming to be the LICENSEE under terms of the June 1 1994 License Agreement Cardiac Science continued to manufacture and sell the CPR Prompt products that I had licensed to County Line.

7. With no other hope of recovering the royalties, patent fees, etc. that had been paid by County Line and its successors, I took the only course open to me and filed Civil Action 04-30126-MAP in the District Court of Massachusetts.

8. Although the Complient Corporation was not named in Civil Action 04-30126-MAP, was in the process of dissolution, had no place of business in Ohio and claimed not to be a party to the License Agreement, their so-called President, Steven Lindseth retaliated with Ohio Civil Action 04-540066 attached as Exhibit B.

9. Ohio Civil Action 04-540066 alleges that "An actual and justifiable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement and Section 1.2(i) of the APA for which declaratory relief is necessary." Complaint ¶ 58, Exhibit B.

10. In the next paragraph Complient asks the Ohio Court for "A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of both Section 3.10 of the License Agreement and Section 1.2(I) of the APA." Complaint ¶ 59, Exhibit B.

11. Mr. Lindseth's motives for this unfounded Ohio litigation are clear. Lindseth and the attorneys at Calfee, Halter and Griswold recognized that it would be difficult and cost prohibitive for me to conduct a defense from 800 miles away. Recognizing that I could not afford representation they presumed that the CPR Prompt Corporation would lose by default and that they could use *res judicata* for leverage against my *pro se* personal defense.

12. Recognizing that that the identical issues were being litigated in Civil Action 04-30126-MAP with all the parties present on a level playing field, Judge Gallagher put off trial to December 2005 pending the results of Civil Action 04-30126-MAP.

13. Fearing a negative judgment from this Court, Complient filed a Motion for Default Judgment against me in Ohio Civil Action 04-540066.attached as Exhibit C. One can see Complient's Motion and Memorandum include most of the lies and deceptions they have alleged against me in this case. However, their panic for a decision from Judge Gallagher has forced them to produce new evidence that applies to this federal Action.

14. The Memorandum included an Affidavit of Steven Lindseth sworn before a notary public on an unknown date in July of 2005 attached as Exhibit D. In his Affidavit Lindseth

swears that based on a lawsuit filed by Hutchins (04-30126-MAP), Complient received a Demand for Indemnity from Cardiac Science that included the 1,025,000 shares that remained in escrow that were tendered by Cardiac Science as payment under the APA. Lindseth Affidavit ¶ 9.

15. Lindseth swears that "because of the Demand for Indemnity and the lawsuit filed by Donald Hutchins against Cardiac Science, the shares held in escrow were not released to Complient on October 20, 2004." Lindseth Affidavit ¶10. Complient has capitulated to Cardiac Science's Demand for Indemnity and by releasing escrowed shares and $836,366 back to Cardiac Science.

16. Lindseth's Affidavit is certain proof that my federal Complaint was justifiable and that both Cardiac Science and Complient recognize that my assertions as to the construction and meaning of Section 3.10 of the June 1, 1994 License Agreement are legitimate.

17. As a result, I am owed 7.5% of $47 million in compensation for the sale and transfer of my intellectual properties from Complient Corporation, the successor of County Line to Cardiac Science Inc.

FURTHER AFFIANT SAYETH NAUGHT,

_____
DONALD C. HUTCHINS.

Sworn to before me and subscribed in my presence the 6th day of September 2005.

_____
NOTARY PUBLIC Karen M. Brisbois
My Commission Expires: May 5, 2011

3