UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action: **04-30126-MAP** |
| v. ) | |
| ) | |
| CARDIAC SCIENCE, INC., et al; ) | |
| ) | |
| Defendants ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

The Plaintiff, Donald C. Hutchins files this memorandum in support of the Plaintiff's Emergency Motion for a Temporary Restraining Order.

### I.   SUMMARY OF POSITION

On October 21, 2003 the Complient Corporation ("Complient") and Cardiac Science Inc. ("Cardiac Science") signed an Asset Purchase Agreement ("APA") that named Cardiac Science Licensee under terms of a June 1, 1994 License Agreement ("License Agreement") between County Line Limited and Donald C. Hutchins ("Hutchins"). Cardiac Science's claims to Hutchins' properties as Licensee under the APA and License Agreement were upheld by this Court in its Summary Judgment of June 23, 2005 as docketed 55.

The License Agreement specifies certain duties such as quarterly sales reports, foreign patent license payments, royalty payments and minimum yearly payments that have been adhered to since the 3rd quarter of 1994 by County Line Limited and its

successors CPR L.P. and Complient. With the exception of 2 royalty payments incurred by Complient prior to the October 21, 2003 closing, Cardiac Science has made no payments or fulfilled any other obligations as Licensee of Hutchins' properties since signing the APA.

On July 24, 2004 Mr. Kenneth F. Olson, the Chief Technical Officer of Cardiac Science served a request for indemnification on the Complient Corporation hereby attached as Exhibit #1. Mr. Olson states, "Cardiac Science hereby requests indemnification for the claims made against Cardiac Science in recently filed lawsuit against Cardiac Science in the lawsuit Donald C. Hutchins v. Cardiac Science, Inc. (04-30126-MAP) (D. Mass)." Exhibit #1, ¶1.

Olson continues, "Cardiac Science asserts that its request for indemnification is based upon at least Sections 1.2(I), 2.2(b).2.2(d), 2.2(h), 2.2(i) and 2.2(m) of the APA.". 2.2(m) covers, "All obligations of Seller arising under the CPR Partnership Agreement, and all obligations of CPR L.P. or Seller arising under the CPR Services Agreement." Exhibit #2, APA, Pages 7-10 attached.

Steven Lindseth states in his Affidavit attached herein as Exhibit #3 that Complient capitulated and resolved the Demand for Indemnity with Cardiac Science and agreed to a payment of 512,366 shares of stock This figure represents one-half the 1,025,000 shares of stock held in escrow to meet indemnity claims. Also included in the indemnity was the return from Complient of $836,366 in cash. Exhibit #3 ¶¶ 11,12.

Steven Lindseth swears in another affidavit dated February 1, 2005 and attached as Exhibit #4, that "I am the President of Complient Corporation, a defendant in the subject action. On October 21, 2003, substantially all the assets of Complient were sold

2

to an entity know as Cardiac Science, Inc. by and through an Asset Purchase Agreement entered into on that date by and among Complient, Cardiac Science and CPR Limited Partnership. In my capacity as President of Complient, I oversee the winding up and liquidation of Complient."

Cardiac Science's Demand for Indemnity and Complient's payment of indemnity are an admission by both Defendants that Hutchins' Complaint is valid and that he is owed a payment 7.5% of the shares exchanged in the APA transaction. Unfortunately most of the exchanged shares have been disbursed to the shareholders in the Complient Corporation. What remains of the $47 million in locked-up Cardiac Science stock paid to Complient in the asset purchase are the 512,366 shares that have been returned to Cardiac Science. The rest of these shares have been disbursed to the individual investors of the Complient Corporation as part of the Complient liquidation and are out of the reach of Hutchins' damage claims. These 512,366 shares are not the property of Cardiac Science but are being held by Cardiac Science in an account together with the reclaimed $836,366 as a contingency to cover Hutchins' damage claims in this action.

The affidavit of Donald C. Hutchins herein attached as Exhibit #5, testifies to the harm that he continues to suffer due to the failure of Cardiac Science to pay license royalties. For example the $8865.00 due for European patent annuities that Cardiac Science did not pay as depicted in Exhibit #6 attached.

More painful to Hutchins is Cardiac Science's failure to reveal to Hutchins through discovery its request for indemnity and the recapture of common stock and monies that belong to Hutchins as the result of the APA. Without this challenge from Hutchins, Cardiac Science would enjoy a win/win situation. They hold a license to

Hutchins' patents and also the equity return promised to Hutchins when the June 1, 1994 License Agreement was negotiated and signed.

Mr. Lindseth attests that in his capacity as President of Complient, I oversee the winding up and liquidation of Complient." Common stock from the sale has been dispersed to the Complient investors making it impossible for Hutchins to track down and reclaim 7.5% of each investor's return. There is a strong expectation that Hutchins will never be able to collect damages from the dissolved Complient Corporation or from Complient's scattered array of investors.

Hutchins asks this Court to order Cardiac Science to pay him all past due royalty payments, to reimburse him for patent license fees and to meet all the ongoing requirements as the Licensee. Hutchins also asks this Court to order Cardiac Science to transfer to him the common stock shares and funds received by Cardiac Science as part of its June 28, 2004 Demand for Indemnity served on Complient.

## II. ARGUMENT

### A. Hutchins is Entitled to Injunctive Relief

The standard used to consider a request for a temporary restraining order is the same as that used for a preliminary injunction. See Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F.Supp. 1159,1160 (D.Mass.1986). To issue injunctive relief correctly, a judge initially must consider whether the plaintiff has demonstrated that without the relief he would suffer irreparable harm, not capable of remediation by a final judgment in law or equity. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass, 6117 n. 11 (1980). The Plaintiff also must show that there is a likelihood that he would prevail on the merits of the case at trial. See id. The judge then must balance these two factors against the

showing of irreparable harm which would ensue from the issuance, or the denial, of an injunction and the 'chance of success on the merits' presented by the defendant. See id. at 617. An injunction may issue properly only if the judge concludes that the risk of irreparable harm to a plaintiff, in light of the chances of success on his claim, outweigh[s] the defendant's probable harm and likelihood of prevailing on the merits of the case." See Commonwealth v. Mass. CRINC, 392 Mass. 79, 87-88 (1984).

In support of the Plaintiff's Motion, the Plaintiff will show that he is entitled to injunctive relief as he can demonstrate 1) a likelihood of success on the merits; 2) a risk of irreparable harm; and 3) the potential harm to the plaintiff outweighs the potential harm to the defendant. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-617 (1980).

### B. Hutchins is likely to succeed on the merits of the case.

A motion for summary judgment against the Complient Corporation was filed September 7, 2005. This motion and memorandum included undisputed facts and the affidavit of Gary Martinelli, the attorney who authored the June 1, 1994 License Agreement and bears witness as to its meaning and construction. In his opinion Hutchins is due the 7.5% equity return under Section 3.10 of the Agreement the meaning of which is the linchpin of this controversy. This overwhelming evidence and expert testimony assure that Hutchins is likely to succeed on the merits of the case.

The Request for Indemnification by Cardiac Science and the payment of indemnification by Complient also effect this case in terms of *res judicata*. The indemnification is tantamount to an admission by both Cardiac Science and Complient as to the veracity of Hutchins' claims.

5

### C. There is a great risk of irreparable harm if Hutchins' request for a temporary restraining order is denied.

If the plaintiff, Hutchins, is not granted the relief that has been requested, he will suffer irreparable harm by both the loss of royalty payments and the equity he was promised under Section 3.10 of the License Agreement. While the indemnification from Complient does not represent the full amount of damages, there is no guarantee that a dissolved Complient Corporation has sufficient funding to meet damage claims. As a result there is no guarantee to Hutchins of remediation by a final judgment in law or equity.

### D. The potential harm to Cardiac Science is outweighed by the potential harm to the Plaintiff.

The action sought by Hutchins will not harm Cardiac Science in any way except if Cardiac Science had fraudulent dreams of confiscating all the past-due royalty payments and also the remnants of Hutchins' equity position under terms of the License Agreement. Upon the signing of the APA Cardiac Science acquired a license to Hutchins' properties and other assets with the payment to Complient's stockholders of $47 million in Cardiac Science common stock. Exhibit #1, the request for indemnification based on Hutchins' lawsuit was the event that forced changes in the terms of the APA.

A review of the facts will show that irreparable harm to Hutchins far outweighs any harm that may be suffered by Cardiac Science. Without Hutchins, there would be no indemnification from Complient. Almost all the $47 million in stock has been dispersed to Complient's investors such as the giants J.P. Morgan/Chase, Medtronic, and National

City Corporation. All that remains to cover Hutchins' damage claims is the indemnification from Complient. This contingency fund is not the property of Cardiac Science but it is potentially the only recoverable for Hutchins.

## CONCLUSION

For all of the foregoing reasons, the Plaintiff's Motion for an Emergency Temporary Restraining Order should be granted.

The Plaintiff, DONALD C. HUTCHINS, Pro Se

Dated: 9/12/05

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 734-2625
(413) 739-4060 (facsimile)

### CERTIFICATE OF SERVICE

I, Donald C. Hutchins, 1047 Longmeadow Street, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by United Parcel Service to:

John J. Egan, Esq.
Egan, Flanagan and Cohen, P.C.
67 Market Street
P.O. Box 9035
Springfield, MA 01102-9035

and

Colleen Moran O'Neil
Calfee, Halter & Griswold LLP
1400 McDonald Investment Center
800 Superior Avenue.
Cleveland, OH 44114-2688

Paul H. Rothschild, Esq.
Bacon & Wilson, P.C.
33 State Street
Springfield, MA 01103

and

Randall T. Skaar, Esq.
Patterson, Thuente, Skaar & Christensen, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2100

Dated: 9/12/05

Donald C. Hutchins

7