UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS, | ) Civil Action 04-30126-MAP |
| ) | |
| Plaintiff, | ) Judge Michael A. Ponsor |
| ) | |
| v. | ) |
| ) | |
| CARDIAC SCIENCE, INC., et al., | ) |
| ) | |
| Defendants. | ) |

**DEFENDANT COMPLIENT CORPORATION'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.   **Introduction.**

Defendant Complient Corporation ("Complient") hereby responds in opposition to Plaintiff Donald C. Hutchins' Motion for Summary Judgment ("Motion"). Hutchins seeks summary judgment on his claims against Complient of fraud, fraudulent misappropriation and sale of patent, tortious interference of contract, and breach of contract. Because Hutchins has failed to show that there exists no genuine issue of material fact with respect to each of these claims, and that he is entitled to judgment as a matter of law, Hutchins' Motion should be denied.[1]

---

[1] By contrast, and pursuant to Complient's own Motion for Summary Judgment ("Complient's Motion") that is presently before this Court, judgment should be entered in favor of Complient and against Hutchins.

{JJL0547.DOC;2}

## II. Law and Analysis.

### A. <u>Res Judicata</u> Bars Hutchins' Claims.

Hutchins claims that "[s]ummary judgment must be granted to Hutchins because the undisputed facts show that Hutchins is owed an equity interest under terms of the June 1, 1994 License Agreement." Motion, at 4. Each of Hutchins' claims revolves around his interpretation of the language contained in Section 3.10 of the License Agreement that is central to this litigation. See <u>id</u>., at 1-2. Hutchins believes that § 3.10 supports his view that Hutchins is owed 7.5 % of the assets of the sale of Complient to Defendant Cardiac Science Inc. ("Cardiac"). <u>Id</u>. at 2.

Hutchins' Motion, because it relies on Hutchins' interpretation of § 3.10 of the License Agreement, must fail. First and foremost, a court of competent jurisdiction has <u>twice</u> found that Hutchins' interpretation of § 3.10 is wrong. The Cuyahoga County, Ohio, Court of Common Pleas ("The Ohio Court") has granted summary judgment in favor of Complient against Hutchins on the interpretation of § 3.10 on two occasions, in 2001 and 2005.

First, in <u>Complient v. CPR Prompt</u>, Case No. 01 CV 429394 (2001), the Ohio Court entered judgments in Complient's favor against Hutchins and his company, CPR Prompt LLC, as to the construction and effect of the License Agreement. Certified copies of the May 30, 2001 Judgment Entry ("Judgment Entry") and the September 5, 2001 Journal Entry were attached to Complient's Motion for Summary Judgment ("Complient's Motion") and incorporated therein as Exhibit F. The May 30, 2001 Judgment Entry provides:

> Pursuant to Section 3.10 of the License Agreement, in the event that the partners of CPR L.P., including, but not limited to Plaintiff Complient Corporation, sell all [o]r part of their respective partnership interest in CPR L.P. to an unrelated third party, Defendant CPR Prompt is entitled to 7.5% of the net proceeds of that sale. Section 3.10 of the License Agreement does not entitle

>CPR Prompt to 7.5% of the sale of any or all assets of any other entity other than CPR L.P.

Judgment Entry, May 30, 2001. Final judgment in favor of Complient and against Hutchins and his company was entered on September 5, 2001. See Exhibit F, attached to Complient's Motion.

Second, the Ohio Court in <u>Complient v. Hutchins</u>, Case No. 04 CV 540066 (2004), again entered judgment against Hutchins and CPR Prompt on the construction and effect of the License Agreement. Specifically, in its January 26, 2005 Judgment Entry against CPR Prompt, the Court found that "the 7.5.% payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the Asset Purchase Agreement." See Exhibit H, attached to Complient's Motion; <u>see also</u> Motion Requesting this Court to Take Judicial Notice of Decision of Cuyahoga County, Ohio, Court of Common Pleas, attached to which was a certified copy of the Ohio Court's Notice granting Summary Judgment in favor of Complient against Hutchins (filed with this Court on September 21, 2005).

In spite of having litigated and lost his claim repeatedly, Hutchins is, via this litigation, still incorrectly claiming that he is entitled to 7.5% of the net proceeds of the sale of Complient. In particular, he claims he is entitled to 7.5% of the net proceeds of the sale of Complient to Cardiac pursuant to the Asset Purchase Agreement ("APA") that accompanied that sale. The APA was attached to Complient's Motion at Exhibit 3. The Ohio Court has <u>twice</u> specifically rejected this claim insofar as it relates to the Cardiac APA. See Exhibits F, H to Complient's Motion. The Ohio Court found that, pursuant to Section 3.10 of the License Agreement, Hutchins is entitled to 7.5% of the net proceeds of the sale <u>of the partnership interests in CPR L.P. to a third party</u> and <u>not</u> to 7.5% of the sale of any assets of Complient. His claim here, therefore, is barred by the doctrine of <u>res judicata</u>.

Under the standards of full faith and credit enunciated in 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Further, because an Ohio court issued the judgments, Ohio law governs the application of res judicata to Hutchins' claims herein. Id.

The doctrine of res judicata encompasses both the concept of claim preclusion and issue preclusion (also known as "collateral estoppel"). Holzemer v. Urbanski, 86 Ohio St. 3d 129, 133; 712 N.E.2d 713, 716 (1999). The Holzemer Court described claim preclusion as:

> [a] valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action . . . [and] an existing final judgment or decree between the parties to litigation is conclusive of all claims which were or might have been litigated in that lawsuit.

Holzemer, 86 Ohio St. 3d at 133, 715 N.E.2d at 716 (citations omitted). Further, under Ohio law, "[t]he doctrine of issue preclusion . . . holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Fort Frye Teachers Assn. v. State Employment Relations Bd., 81 Ohio St. 3d 392, 395; 692 N.E.2d 140 (1998).

Here, Complient satisfies all of the requirements to invoke the concepts of issue and claim preclusion encompassed within the doctrine of res judicata to bar Hutchins' claims. First, claim preclusion clearly applies to Hutchins' claims because: (1) his alleged claims, i.e., whether he was somehow entitled to 7.5% of the proceeds of the sale of Complient to any third party, arose out of the same transaction— the License Agreement— as in the two Ohio cases; (2) his alleged breach of

contract claim was asserted in his Counterclaim in the first Ohio action; and specifically with respect to the Cardiac APA in the second Ohio action; and (3) final judgment on the merits <u>against</u> <u>Hutchins</u> was entered in both Ohio cases.

Second, issue preclusion likewise applies to Hutchins' claim. Hutchins had a full opportunity to defend both Ohio actions, and final judgment was entered in both. Further, Hutchins and Complient were parties to both Ohio actions. As a result, the same parties are clearly involved in this case and the Ohio actions. In addition, the issue of whether Hutchins is entitled to 7.5% of the proceeds of the sale of Complient was the issue in both Ohio actions as it is here, and was adjudicated in the negative. Accordingly, Hutchins' claims are barred and his Motion for Summary Judgment should be denied.

### B. The Affidavits of Donald Hutchins and Gary Martinelli are Parol Evidence and Cannot be Used to Refute the Plain Language of the License Agreement.

Furthermore, apart from the <u>res judicata</u> bar to Hutchins' claims and Motion, Hutchins' evidence fails to meet the standards necessary for an award of summary judgment. In support of his Motion, Hutchins presents only two pieces of evidence— his own affidavit and the affidavit of Gary Martinelli. Hutchins attempts to use these affidavits to prove that the parties intended a meaning to § 3.10 of the License Agreement that was contrary to its plain language. <u>See</u> Motion, at 2-4. Accordingly, Hutchins believes that the evidence presented in these two affidavits resolves all disputed facts in his favor and supports his construction of the License Agreement.

The License Agreement is to be interpreted consistent with Ohio law. <u>See</u> License Agreement, at § 9.6, attached to Complient's Motion at Exhibit A. Under Ohio law, Hutchins may not rely on his affidavit or that of Mr. Martinelli to support his interpretation of the License Agreement. The statements contained within the affidavits constitute parol evidence, and cannot

be used to refute the language that appears in the License Agreement.[2] The parol evidence rule provides that "the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." Galmish v. Cicchini, 90 Ohio St. 3d 22, 26 (2000). Section 3.10 of the License Agreement is clear on its face and states that the 7.5 % payment to Hutchins and/or his company would only be triggered upon the "sale of any or all of [a] partnership interest [in CPR L.P.] to any person or entity which is not an Affiliate of [the seller]." See also Exhibits F, H to Complient's Motion. Hutchins now attempts to use his affidavit and that of Mr. Martinelli to refute that plain language and prove that the parties intended the payment to be triggered upon a sale of a partnership interest in CPR L.P. to any party, even if that party was related to the seller, or upon a sale of the assets of the licensee. See, e.g., Affidavit of Gary Martinelli, attached at Exhibit A to Hutchins' Motion, at ¶¶ 7-9.

However, Hutchins' and Martinelli's understanding of the License Agreement is irrelevant in the face of the plain language of the document. The parol evidence rule prevents the use of the affidavits to refute that plain language:

> The principal purpose of the parol evidence rule is to protect the integrity of written contracts. By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments. It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writings. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document.

---

[2] The result would be the same if the contract were to be interpreted under Massachusetts law. See, e.g., Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992) (stating that the parol evidence rule precludes the use of prior or subsequent outside statements "to vary or modify the terms of an unambiguous written contract."); see also Coll v. PB Diagnostic Systems, 50 F.3d 1115, 1122 (1st Cir. 1995).

Galmish, 90 Ohio St. 3d at 27-28 (citing Ed Schory & Sons, Inc. v. Soc. Natl. Bank, 75 Ohio St. 3d 433, 440 (1996)). Accordingly, the affidavits of Hutchins and Martinelli should be given no weight, and Hutchins' Motion for Summary Judgment should be denied.

    C.    **Hutchins' Motion must be Denied to the Extent It is Based on his Claim of Fraud against Complient.**

Hutchins claims that Complient misrepresented the terms of the License Agreement to Cardiac during the negotiations that led to the signing of the Asset Purchase Agreement with Cardiac. See Motion, at 5. Even if Hutchins' contentions were true, Hutchins does not properly allege the elements of a prima facie case of fraud against Complient. This failure warrants the denial of Hutchins' Motion.

To successfully prove a claim of fraud under Massachusetts law, a plaintiff must establish that, "the defendant made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Sands v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir. 2000) (citing Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963)). Hutchins has offered no evidence sufficient to satisfy these elements.

The alleged acts complained of by Hutchins, in addition to being complete fabrications, fail to constitute actionable fraud as a matter of law because Hutchins does not contend that the alleged fraudulent misrepresentations were directed to him; rather, he claims that the alleged fraudulent misrepresentations were made by Complient to Cardiac. Accordingly, as a matter of law, the conduct alleged is not actionable fraud as it was not intended to induce Hutchins to act, nor could Hutchins have relied on alleged misrepresentations directed toward another. See Movitz v. Home Depot USA, Inc., 82 Fed. Appx. 230, 2003 U.S. App. LEXIS 24516 (1st Cir. 2003) (summary judgment on pro se plaintiff's fraud claim affirmed because, among other

reasons, plaintiff's allegation that alleged misrepresentation directed at a third party failed to establish an actionable claim of fraud). Given that Hutchins fails to even claim that Complient made any false misrepresentations <u>to him</u>, his fraud claim fails as a matter of law, and his Motion must be denied.

### D. Hutchins' Motion must be Denied to the Extent It is Based on His Claim of Misappropriation against Complient.

Hutchins also seeks summary judgment on his claim of "fraudulent sale and misappropriation" against Complient. In this claim, Hutchins attempts to recover for Complient's alleged attempted sale to Cardiac of Hutchins' patent number 5913685. <u>See</u> Motion, at 6. Summary judgment should be denied on this claim as well because Hutchins has not presented any evidence to establish that Complient committed any fraud against Hutchins, and therefore has not adduced evidence to establish that Complient misappropriated the patent. Accordingly, Hutchins' Motion must be denied.

First, as with Hutchins' claim of fraud, this claim fails as a matter of law because Hutchins fails to even claim that Complient committed any fraudulent acts relative to Hutchins; Instead, as with his fraud claim, Hutchins' allegations relate to statements between Complient and Cardiac to which he was not a party. These deficiencies are fatal to this claim and, under Massachusetts law, Hutchins' Motion must be denied. <u>See</u> <u>Sands v. Ridefilm Corp.</u>, 212 F.3d at 663 (setting forth necessary elements of fraud claim, which include reliance by the plaintiff on the alleged misstatement, under Massachusetts law); <u>Barrett Assocs.</u>, 346 Mass. at 152 (accord); <u>Movitz.</u>, 82 Fed. Appx. 230, 2003 U.S. App. LEXIS 24516 (1st Cir. 2003) (summary judgment on *pro se* plaintiff's fraud claim affirmed because, among other reasons, plaintiff's allegation that alleged misrepresentation directed at a third party failed to establish an actionable claim of fraud).

Second, Hutchins' misappropriation claim also fails based on the very evidence he refers to— the APA. Hutchins claims that Complient fraudulently misrepresented that it was selling Hutchins' patent number 5913685 to Cardiac Science as part of the APA; however, the APA itself specifically and directly refutes this claim. Specifically, Article 5.1(p) of the APA states, in relevant part:

> Intellectual Property. Schedule 5.1(p) attached hereto sets forth a complete and correct list ... of all patents ... and copyrights for which registrations have been obtained ... which are owned by [Complient]. True correct and complete copies of such patents ... and copyrights ... identified on such Schedule have been delivered to [Cardiac]. Except as set forth in Schedule 5.1(p), [Complient] is the sole owner and has the exclusive right to use, free and clear of any payment, restriction or encumbrance, all such patents ... and copyrights. ...

See Exhibit 3 to Complient's Motion. Schedule 5.1(p) of the APA does not list Hutchins' patent number 5913685 as intellectual property owned by Complient that was being transferred and/or assigned to Cardiac Science pursuant to the APA. Id. at Schedule 5.1(p). Indeed, the APA makes no reference to Hutchins' patent number 5913685. Given the express representation and warranty by Complient to Cardiac that the patents listed on Schedule 5.1(p) of the APA constitute the totality of the patents owned and/or controlled by Complient, Hutchins' claims that Complient somehow represented to Cardiac Science that it was the owner of patent number 5913685, and that this patent was being transferred under the APA, are clearly baseless.

### E. Hutchins' Motion must be denied to the Extent it is based on His Claim of Tortious Interference against Complient.

Furthermore, Hutchins claims that Complient tortiously interfered with Hutchins, but fails to prove, or even mention, any of the elements of a tortious interference claim. Accordingly, Hutchins' Motion must be denied.

The elements of a tortious interference claim are firmly established. The plaintiff has the burden of demonstrating (1) that a business relationship from which the plaintiff might benefit

existed; (2) the defendant knew of the relationship; (3) the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and (4) the plaintiff was damaged by that interference. See United Truck Leasing Corp. v. Geltman, 406 Mass. 801 (1990); Swanset Dev. Corp. v. Taunton, 423 Mass. 390 (1996).

To support this claim in his Motion, Hutchins states that:

> Complient has committed repeated acts of tortious interference through instituting this Ohio action [sic] rather than joining [this matter] where the same issues were being contested. Hutchins' inability to afford legal counsel in the State of Ohio and the necessity of acting pro se, has caused great hardship, continues to damage Hutchins. [sic] . . . This exposure has effected [sic] Hutchins' credit rating. There have also been travel and hotel expenses for Ohio Court Hearings together with hundreds of hours of work in preparing defense papers to be filed.

Motion, at 8. Hutchins' contentions, however, do not even begin to satisfy the elements of a tortious interference action. He has not proven, or even alleged, the existence of a business relationship with which he believes Complient interfered.

Moreover, and perhaps more importantly, Complient was victorious in the Ohio actions that Hutchins references, as detailed above. Thus, even if it were actionable under a theory of tortious interference to bring unfounded actions against a party, Complient's conduct would not be actionable here. There is no theory of law under which Hutchins could claim damages against Complient for bringing lawsuits against Hutchins that it actually won.

**F.    Hutchins' Motion must be denied to the extent it is based on his claim of Breach of Contract against Complient.**

Lastly, Hutchins' breach of contract claim against Complient likewise fails as a matter of law. In this claim, Hutchins alleged that Complient breached the License Agreement by failing to notify him of the APA, and because it "has never provided Hutchins with written notice that it intended to close its Cleveland office . . . ." Motion, at 8. The License Agreement, however, did

not require any notice to Hutchins of a sale of the License granted thereby, see License Agreement, Exhibit A to Complient's Motion, at §2.1; and did not require Complient to notify Hutchins of any of its business activities.

Hutchins also alleges, as apparent grounds for his breach of contract claim, that Complient breached the License Agreement by not having paid royalties to him or patent fees subsequent to September of 2003. Hutchins is admittedly aware that the License Agreement was sold to Cardiac as of October 21, 2003. See e.g., Amended Complaint, ¶ 58. As a result, as of October 21, 2003, all royalty payment obligations under the License Agreement transferred to Cardiac Science. See also Cardiac Science's Memorandum in Support of Motion for Summary Judgment, at 6 (establishing compliance with royalty payment obligations under License Agreement).

Further, Hutchins' claims that the $10,000 minimum royalty payment was not met, see Motion, at 8; are refuted by his own testimony. See Deposition of Donald Hutchins, excerpts attached at Exhibit B to Complient's Motion, at 96-97 ("Q. [N]ow after your attempt to cancel the license agreement did they continue to pay you royalty or fees under Paragraph 3 under the Section 3? A. To my knowledge, they might have been a little slow in payment and payments didn't come until two months after and the report might have been vague, but they quite honestly did not miss a payment over that period. . . ."). Hutchins also admitted that at least until the time of the Asset Purchase Agreement, all patent fees under the License Agreement were paid. Id. at 103. Hutchins' own testimony thus directly refutes his claims.

Finally, as alleged grounds for his breach of contract claim, Hutchins claims that Complient breached the License Agreement by failing to pay him 7.5% of the proceeds of the APA. See Motion, at 9. This allegation fails as a matter of law under the express terms of the

License Agreement which require that the 7.5% payment only be made upon a sale of the partnership interests in CPR L.P. to a third party. The APA makes clear that no such sale occurred, and, as detailed above, Hutchins' claims in this regard are barred by the doctrine of <u>res judicata</u>. Accordingly, because Hutchins has failed to demonstrate that there is no genuine issue of material fact, his Motion should be denied.

## III. Conclusion

For the foregoing reasons, Defendant Donald Hutchins' Motion for Summary Judgment should be denied.

Respectfully submitted,

*/s/ John J. Egan*

JOHN J. EGAN (151680)
EGAN, FLANAGAN & COHEN, P.C.
67 Market Street
P.O. Box 9035
Springfield, Massachusetts 01102-9035
(413) 727-0260
Fax: (413) 737-0121


WILLIAM E. COUGHLIN (OH #0010874)
COLLEEN M. O'NEIL (OH #0066576)
JEFFREY J. LAUDERDALE (OH #0074859)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Complient Corporation

## CERTIFICATE OF SERVICE

I certify that, on September 26, 2005, I sent via first-class U.S. mail, postage prepaid, a copy of the foregoing Defendant Complient Corporation's Memorandum in Opposition to Plaintiff's Motion For Summary Judgment, upon the following:

Donald C. Hutchins
1047 Longmeadow Street
Longmeadow, Massachusetts 01106
Pro Se

Randall T. Skaar, Esq.
Patterson, Thuente, Skaar, & Christensen, P.A.
4800 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Paul T. Rothschild, Esq.
Bacon & Wilson, P.C.
33 State Street
Springfield, Massachusetts 01103

_____
One of the Attorneys for Defendant,
Complient Corporation