UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC., et al., )<br>)<br>Defendants ) | Civil Action: **04-30126-MAP** |

**PLAINTIFF, DONALD C HUTCHINS' *INSTANTER* REPLY BRIEF IN OPPOSITION TO DEFENDANT CARDIAC SCIENCE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

In his Emergency Motion for a Temporary Restraining Order, Plaintiff, Donald C. Hutchins ("Hutchins") asks this court to order Cardiac Science to meet all the ongoing requirements as Licensee pursuant to the June 1, 1994 License Agreement. Hutchins also asks that those funds and securities that were held in escrow through the U.S. Bank National Association as custodian and indemnified to a Cardiac Science's custodial account pending Hutchins' damage claims against the Complient Corporation continue in escrow pending the claims against the stockholders of the dissolved Complient Corporation. The Request for Indemnification as addressed to the custodian, U.S. Bank National Association is attached herein as Exhibit A.

1. **THE SUMMARY JUDGMENT ORDER DOES NOT RELIEVE CARDIAC SCIENCE OF ITS RESPONSIBLILTIES AS LICENSEE**

    This Court ruled that Hutchins must recognize Cardiac Science, Inc as Licensee under terms of the June 1, 1994 License Agreement and the Asset Purchase Agreement ("APA") that

3

has been in effect since October of 2003. As Licensee, Cardiac Science is obligated to pay Hutchins past and ongoing royalty payments, interest on past-due payments, yearly minimums, and obligated to meet the other terms of the Agreement such as sales reports, sublicenses, etc. No party has met these obligations to Hutchins since October of 2003 when the APA was signed. Now that Cardiac Science has been judged Licensee, Hutchins asks this Court as part of the Temporary Restraining Order to instruct Cardiac Science to meet these obligations.

The loss of these royalty payments fulfill the requirements of three elements, 1) the plaintiff must have suffered an injury-in-fact, 2) there must be causality and 3) there must be redressability. Blake v. Southcoast Health System, Inc., 145 F.Supp.2d 126, 131 (D. Mass. 2001).

2. **THE COMPLIENT CORPORATION IS DISSOLVED AND LIMITED UNDER DELAWARE CORPORATE LAW.**

In his affidavit attached herein as Exhibit B, Steven Lindseth swears that, "On October 21 2003, substantially all of the assets of Complient were sold to an entity known as Cardiac Science, Inc. by and through an Asset Purchase Agreement entered into on that date…I oversee the winding up and liquidation of Complient."

Section (13) of Cardiac Science Prospectus Supplement attached as Exhibit C indicates that Cardiac Science. Inc. issued 10,250,000 shares in payment for substantially all the assets Cleveland based Complient Corp. subject to a lock-up agreement and a general indemnification escrow. 92% of the purchase price or $42,494 million was accounted for under SFAS No. 141 as goodwill which is basically attributed to Hutchins' intellectual properties that were licensed to Cardiac Science under the APA.

The majority of the 10,250,000 shares were dispersed to the individual accounts of Complient shareholders in 8 installments "in connection with Complient Corporation's plan for liquidation and dissolution." Section (13) of Exhibit C. The remainder went into the lock-up account held for indemnity purposes by the custodian, U.S. Bank National Association. (Exhibit

4

A). None of these shares that are the focus of Hutchins' Motion for a Temporary Order became the property of or were ever the property of the dissolved Complient Corporation. Steven Lindseth as the controlling- stockholder and liquidator of Complient gained release of this lock-up stock with the agreement of each shareholder under terms of The Request for Indemnification as addressed to the custodian, U.S. Bank National Association as attached as Exhibit A.

Through affidavit, Attorney Gary Martinelli who wrote the Agreement swears that under Section 3.10 of the June 1, 1994 License Agreement between Hutchins and County Line Limited that each shareholder must pay Hutchins 7.5% of each shareholder's receipt from the sale divestiture or transfer of the License to a non-affiliated entity.

In his Emergency Motion for a Temporary Restraining Order, Plaintiff, Donald C. Hutchins ("Hutchins") asks that those funds and securities that were held in escrow through the U.S. Bank National Association as custodian and indemnified to a Cardiac Science's custodial account should be transferred to Hutchins. Or, at the very least, that the Court order that they not be dispersed to the Complient stockholding investors and that they continue to be held in escrow pending the claims against the stockholders which is all that remains of the dissolved Complient Corporation. The indemnified lock-up shares are not the property of Cardiac Science or Complient. They are currently the property of the Complient investor/shareholders until Hutchins prevails in this litigation. It should be obvious to this Court that for Hutchins' to retrieve these lock-up shares from over 80 investors after they are dispersed would be impossible even if the Court should so order.

The loss of these escrowed lock-up shares by Hutchins fulfill the requirements of three elements, 1) the plaintiff must have suffered an injury-in-fact, 2) there must be causality and 3) there must be redressability. Blake v. Southcoast Health System, Inc., 145 F.Supp.2d 126, 131 (D. Mass. 2001).

## PLAINTIFF MEETS THE CRITERIA FOR GRANTING
## A TEMPORARY RESTRAINING ORDER

Hutchins meets the criteria for granting a temporary restraining order to the standard established by Quincy Cablesystems v. Sully's Bar, Inc. 640 F.Supp. 1159,1160 (D.Mass 1986). With these four criteria: 1) the affidavit of Attorney Martinelli assures the likelihood of success in Hutchins' Complaint against the Complient Corporation and its stockholders; 2) The loss of an equity position upon the sale of County Line Limited or an exhausting attempt by Hutchins to retrieve these dispersed shares from each shareholder will cause irreparable injury if the injunction is not granted; 3) these locked-up shares have already been indemnified to Cardiac Science so pose no harm to Complient and the locked-up shares have not been the property of Cardiac Science since the APA sale in October of 2003. Thus granting injunctive relief would inflict no harm of Cardiac Science; 4) the public interest can only be bolstered when the public learns that an inventor has found relief from his oppressors after a *pro se* action that has exhausted his energy and finances but not his faith in the judicial system.

## CONCLUSION

Plaintiff's Motion for a Temporary Restraining Order must be allowed due to his standing and the fact that he has met the criteria for granting a temporary restraining order.

Respectfully submitted

The Plaintiff
Donald C. Hutchins, Pro Se

Dated: September 27, 2005

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 567-0606
(413) 739-4060 (facsimile)

6

## CERTIFICATE OF SERVICE

    I, Donald C. Hutchins, 1047 Longmeadow Street, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by first-class-mail to:

| | |
|---|---|
| John J. Egan, Esq.<br>Egan, Flanagan and Cohen, P.C.<br>67 Market Street<br>P.O. Box 9035<br>Springfield, MA 01102-9035 | Paul H. Rothschild, Esq.<br>Bacon & Wilson, P.C.<br>33 State Street<br>Springfield, MA 01103<br><br>And<br><br>Randall T. Skaar, Esq.<br>Patterson, Thuente, Skaar & Christensen, P.A.<br>4800 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402-2100 |

Dated: September 27, 2005

_____
Donald C. Hutchins

# EXHIBIT A

8

# OFFICER'S CERTIFICATE AND
# REQUEST FOR INDEMNIFICATION BY CARDIAC SCIENCE INC.

To:

Attn: Steven W. Lindseth
Complient Corporation
c/o 4670 Richmond Road
Suite 300
Warrensville Heights, Ohio 44128

Attn: Brad Scarbrough
U.S. Bank National Association
633 West Fifth Street
24th Floor
Los Angeles, California 90071

Attn: Gerald A Monroe, Esq.
Calfee, Halter & Griswold LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114-2688

PLEASE TAKE NOTICE:

A. Pursuant to section 3(a) of the General Escrow Agreement dated October 21, 2003 between Complient Corporation, Cardiac Science, Inc. and U.S. Bank National Association; and

B. Pursuant to Section 11.2(a) of the Asset Purchase Agreement ("APA") dated October 21, 2003, that:

1. Cardiac Science hereby requests indemnification for the claims made against Cardiac Science in recently filed lawsuit against Cardiac Science in the lawsuit Donald C. Hutchins v. Cardiac Science, Inc. (04-30126-MAP) (D.Mass).

2. Cardiac Science asserts that its request for indemnification is based upon at least Sections 1.2(i), 2.2(b), 2.2(d), 2.2(h), 2.2(i) and 2.2(m) of the APA.

3. Mr. Hutchins' claims (see attached Complaint and exhibits thereto) seeks to have Cardiac Science provide compensation for an alleged failure of CPR L.P. to provide Mr. Hutchens 7.5% of the proceeds of any sale of partnership interest in CPR L.P. as provided in the CPR Prompt License and the CPR Partnership Agreement. The alleged obligation to compensate Mr. Hutchins is a retained liability pursuant to the sections of the APA identified in paragraph 3, above.

4. As a result and consequence of Complient's alleged failure to compensate Mr. Hutchins per the CPR Prompt License and the CPR Partnership Agreement, he has initiated claims of copyright and patent infringement against Cardiac Science.

5. The attached Complaint and Exhibits for Mr. Hutchins' lawsuit sets forth the alleged factual basis for his claims and the claimed amount of damages, wherein money damages are claimed at least in the amount of $3,795,000.

Dated: 7/27/2004

Mr. Kenneth F. Olson,
Chief Technical Officer
Cardiac Science, Inc.

Enclosure: Hutchins' Complaint
Cc:
Attn: Shivbir S. Grewal, Esq.
Stradling, Yocca, Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, California 92660

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS, ) | Civil Action 04-30126-MAP |
| ) | |
| Plaintiff, ) | Judge Michael A. Ponsor |
| ) | |
| v. ) | |
| ) | |
| CARDIAC SCIENCE, INC., et al., ) | **AFFIDAVIT OF STEVEN LINDSETH** |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| STATE OF OHIO ) | |
| ) SS: | |
| COUNTY OF CUYAHOGA ) | |

NOW COMES STEVEN LINDSETH and upon first being duly sworn, states that:

1. I am over 18 years of age and have personal knowledge of the matters attested to herein.

2. I am the President of Complient Corporation ("Complient"), a defendant in the subject action. On October 21, 2003, substantially all of the assets of Complient were sold to an entity known as Cardiac Science, Inc. by and through an Asset Purchase Agreement entered into on that date (the "Asset Purchase Agreement") by and among Complient, Cardiac Science and CPR Limited Partnership ("CPR L.P."). In my capacity as President of Complient, I oversee the winding up and liquidation of Complient.

{JJL0345.DOC;1}

3. As President of Complient, I am responsible for authorizing any person to receive service of process on Complient.

4. I have never met or spoken to John J. Egan, the attorney on whom Hutchins attempted to serve the Amended Complaint in this matter. Mr. Egan and his firm serves only as local counsel for Complient in this case. I did not grant Mr. Egan or his firm authorization to accept service of process on behalf of Complient.

_____
STEVEN LINDSETH

Sworn to before me and subscribed in my presence this 1st day of February, 2005.

_____
NOTARY PUBLIC

Harry W. Heise
Notary Public
My Commission Expires
March 19, 2005

{JJL0345.DOC;1}

# EXHIBIT C

### 6. Other Assets

In July 2002, the Company entered into preliminary negotiations regarding a possible transaction with Medical Research Laboratories, Inc. ("MRL"), a privately-held medical device manufacturer. The Company made an initial investment in the common stock of the manufacturer in the amount of $1,000 and placed $2,001 into an escrow account pending the outcome of further negotiations. On December 3, 2002, the Company filed a Complaint in Orange County Superior Court against Medical Research Laboratories, Inc. ("MRL") alleging declaratory relief and breach of contract arising out of a July 29, 2002 letter of intent entered into between the parties. The Company alleged that MRL failed to comply with certain conditions of closing set forth in the letter of intent whereby the Company would acquire all of MRL's stock. MRL filed a cross-complaint, also seeking breach of contract and declaratory relief arising out of the same letter of intent. On February 25, 2003, the Company filed suit against MRL for patent infringement in the United States District Court for the District of Minnesota. The Company alleged that MRL's LifeQuest JumpStart AED infringed the Company's patented disposable electrode pre-connect technology. The Company settled both law suits with MRL on June 24, 2003. Under the terms of the confidential settlement agreement, the Company received a settlement amount from MRL and MRL received the right to license two of the Company's patents for additional royalties.

On December 18, 2000, the Company entered into a non-binding letter of intent to acquire Inovise Medical, Inc., a privately held Oregon based corporation, which potential acquisition was terminated in February 2001. In connection with this proposed transaction, the Company advanced funds for a bridge loan to support working capital requirements. The bridge loan was collateralized by all assets of Inovise, excluding certain receivables from royalty payments, accrued interest at 6% and was convertible into equity of Inovise. The total amount advanced to Inovise was $1,038. In February 2002, the Company's convertible bridge loan was converted into 13,000,000 shares of Inovise's Series D convertible preferred stock. As there is currently no market for these shares and there is no foreseeable recovery of the initial investment, the Company has determined that these shares have no value. Accordingly, the Company was fully reserved for this investment at December 31, 2003 and 2002.

### 7. Accrued Expenses

Accrued expenses consist of the following as of December 31:

|  | 2003 | 2002 |
|---|---|---|
| Accrued warranty | $ 836 | $1,604 |
| Accrued commissions | 961 | 694 |
| Accrued lease obligations and deferred rent | 1,895 | — |
| Accrued plant closure cost and severances | 209 | 2,122 |
| Accrued accounts receivable factoring costs | — | 366 |
| Accrued bonus | 315 | 360 |
| Accrued vacation and payroll tax | 965 | 716 |
| Accrued other expenses | 1,361 | 1,326 |
|  | $6,542 | $7,188 |

### 8. Business Combinations

*Complient Corporation*

On October 21, 2003, the Company acquired substantially all of the assets and certain liabilities of Cleveland-based Complient Corporation, a privately-held company that is the nation's leading independent provider of AED and CPR training and comprehensive AED program management. As consideration, the Company issued to Complient 10,250,000 shares of its

46

Table of Contents

common stock. The common stock is subject to a lock-up agreement and a general indemnification escrow. The resale of the shares will be registered with the Securities and Exchange Commission and 1,325,000 shares will become available for resale on the effective date of the registration statement. The balance of the shares issued are subject to a lock-up agreement pursuant to which they will be released from the "lock-up" in 12 equal monthly installments of 743,750 shares, beginning on the effective date of the registration statement.

The acquisition was accounted for as a purchase under SFAS No. 141, *Business Combinations*. In accordance with SFAS No. 141, the Company allocated the purchase price based on the fair value of the assets acquired and liabilities assumed. Portions of the purchase price, including intangible assets, were identified by an independent appraiser. These intangible assets include approximately $42.5 million for goodwill, $2.9 million in customer relationships, $726 for covenants not to compete, and $128 for custom-developed software. The customer relationships are being amortized over 7 years, and the covenants not to compete and the software are being amortized over 3 years.

The components of the purchase price allocation are as follows:

| | |
|---|---:|
| **Purchase Price:** | |
| Stock consideration (10,250,000 shares @ $4.42/share) | $45,305 |
| Acquisition costs | 894 |
| Total | $46,199 |
| **Allocation of Purchase Price:** | |
| Current assets | $ 2,569 |
| Property and equipment, net | 2,685 |
| Current liabilities | (3,053) |
| Deferred revenue | (2,257) |
| Customer relationships | 2,907 |
| Covenants not to compete | 726 |
| Software | 128 |
| Goodwill | 42,494 |
| Total | $46,199 |

The following unaudited pro forma data summarizes the results of operations for the periods indicated as if the Complient acquisition had been completed as of the beginning of the periods presented. The pro forma data gives effect to actual operating results prior to the acquisition, adjusted to include the pro forma effect of amortization of identified intangible assets and the elimination of sales to Complient prior to the acquisition.

| | 2003 | 2002 |
|---|---:|---:|
| | (unaudited) | |
| Net sales | $ 70,069 | $ 62,629 |
| Net loss | $ (15,493) | $ (20,061) |
| Pro forma net loss per share (basic and diluted) | $ (0.20) | $ (0.26) |
| Pro forma weighted-averaged shares | 78,104,179 | 77,449,419 |

*Lifetec Medical Limited*

On May 29, 2003, the Company acquired Lifetec Medical Limited, its U.K. distributor. The purchase price was $383 in cash and $61 in acquisition costs. The acquisition was accounted for as a purchase under SFAS No. 141. The Company allocated the purchase price based on the fair value of the assets and liabilities assumed. Current assets acquired were valued at

Table of Contents

## SIGNATURES

PURSUANT TO THE REQUIREMENTS OF SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934, THE REGISTRANT HAS DULY CAUSED THIS REPORT TO BE SIGNED ON ITS BEHALF BY THE UNDERSIGNED, THEREUNTO DULY AUTHORIZED.

CARDIAC SCIENCE, INC.

By: /s/ RAYMOND W. COHEN

Raymond W. Cohen
Chairman & Chief Executive Officer

By: /s/ RODERICK DE GREEF

Roderick de Greef
Chief Financial Officer & Secretary
(Principal Financial and Accounting Officer)

## POWER OF ATTORNEY

Each person whose signature appears below constitutes and appoints each of Raymond W. Cohen and Roderick de Greef as his attorney-in-fact, with full power of substitution, in any and all capacities, to sign any amendments to this Form 10-K, and to file the same, with all exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, hereby ratifying and confirming all that each attorney-in-fact, or his substitute, may do or cause to be done by virtue hereof.

Date: March 15, 2004

PURSUANT TO THE REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, THIS REPORT HAS BEEN SIGNED BELOW BY THE FOLLOWING PERSONS ON BEHALF OF THE REGISTRANT AND IN THE CAPACITIES AND ON THE DATES INDICATED.

| Signature | Title | Date |
|---|---|---|
| /s/ RAYMOND W. COHEN<br>Raymond W. Cohen | Director | March 15, 2004 |
| /s/ RAY E. NEWTON, III<br>Ray E. Newton, III | Director | March 15, 2004 |
| /s/ PETER CROSBY<br>Peter Crosby | Director | March 15, 2004 |
| /s/ HOWARD L. EVERS<br>Howard Evers | Director | March 15, 2004 |

424B3 1 d424b3.htm CARDIAC SCIENCE PROSPECTUS SUPPLEMENT

**PROSPECTUS SUPPLEMENT NO. 1**  Filed Pursuant to Rule 424(b)(3)
(To Prospectus Dated December 19, 2003)  Registration No. 333-110898

# CARDIAC SCIENCE, INC.

## 26,638,319 Shares of Common Stock
## ($0.001 par value)

This prospectus supplement supplements information contained in that certain prospectus dated December 19, 2003 of Cardiac Science, Inc., relating to the offer and sale from time to time of up to (i) 12,483,334 shares of our outstanding common stock and (ii) 14,154,985 shares of our common stock issuable upon exercise of warrants, which are held by certain stockholders and warrant holders named in the prospectus under the section entitled "Selling Stockholders." This prospectus supplement is not complete without, and may not be delivered or utilized except in connection with, the prospectus, including any amendments or supplements thereto. Capitalized terms used in this prospectus supplement but not defined shall have the meanings assigned to such terms in the prospectus.

Subsequent to the date of the prospectus, an aggregate of 7,534,911 shares of our common stock set forth in the prospectus as being owned by Complient Corporation were assigned to certain of Complient Corporation's stockholders in connection with Complient Corporation's plan of liquidation and dissolution. The following table amends and restates in its entirety the table set forth in the prospectus under the caption "Selling Stockholders" to reflect the foregoing assignments (no additional shares of our common stock are being offered for resale hereunder):

| Selling Stockholder | Number of Shares of Common Stock Beneficially Owned Prior to Offering(1) | Number of Shares of Common Stock Offered for Sale Hereunder | Number of Shares of Common Stock Beneficially Owned Assuming Sale of All Shares offered Hereunder | Percentage of Common Stock Beneficially Owned Assuming Sale of All Shares Offered Hereunder |
|---|---|---|---|---|
| Perseus Acquisition/ Recapitalization Fund, LLC(2) | 5,731,039 | 5,731,039 | — | * |
| Perseus Market Opportunity Fund, LP(3) | 5,334,109 | 5,334,109 | — | * |

| Name | | | | |
|---|---:|---:|---:|---:|
| Cardiac Science Co-Investment, LP(4) | 2,086,504 | 2,086,504 | — | * |
| Complient Corporation | 1,690,089 | 1,690,089 | — | * |
| Embassy & Co.(5) | 1,025,000 | 1,025,000 | — | * |
| Walter Villiger(6) | 1,454,979 | 495,000 | 959,979 | 1.2% |
| Langley Partners L.P.(7) | 1,411,667 | 1,411,667 | — | * |
| Thomas Girschweiler(8) | 990,000 | 495,000 | 495,000 | * |
| General Electric Medical Information Systems(9) | 750,000 | 750,000 | — | * |
| Truk Opportunity Fund L.L.C.(10) | 55,000 | 55,000 | — | * |
| Allen & Caron, Inc.(11) | 24,000 | 24,000 | — | * |
| Matt Clawson(12) | 9,000 | 6,000 | 3,000 | * |
| County Line Limited, L.L.C.(13) | 65,118 | 65,118 | — | * |
| Medtronic Physio-Control Corp.(13) | 145,835 | 145,835 | — | * |
| J.P. Morgan Partners (BHCA), L.P.(13) | 1,776,817 | 1,776,817 | — | * |
| Healthcare Equity Partners, L.P.(13) | 80,944 | 80,944 | — | * |
| Healthcare Equity QP Partners, L.P.(13) | 247,430 | 247,430 | — | * |
| Healthcare Equity CPR, L.L.C.(13) | 3,447 | 3,447 | — | * |
| Great Lakes Capital Investments II, | 14,716 | 14,716 | — | * |

| | | | | |
|---|---:|---:|---:|---:|
| L.L.C.(13) | | | | |
| Great Lakes Capital Investments III, L.L.C.(13) | 11,335 | 11,335 | — | * |
| Great Lakes Capital Investments IV, L.L.C.(13) | 7,444 | 7,444 | — | * |
| National City Equity Partners, Inc.(13) | 189,187 | 189,187 | — | * |
| The Kindt-Collins Company LLC(13) | 550,525 | 550,525 | — | * |

| (Continued from prior page)<br>Selling Stockholder | Number of Shares of Common Stock Beneficially Owned Prior to Offering(1) | Number of Shares of Common Stock Offered for Sale Hereunder | Number of Shares of Common Stock Beneficially Owned Assuming Sale of All Shares offered Hereunder | Percentage of Common Stock Beneficially Owned Assuming Sale of All Shares Offered Hereunder |
|---|---|---|---|---|
| Marvin Marks(13) | 19,444 | 19,444 | — | * |
| Stephen W. and Barbara Schuman(13) | 1,646 | 1,646 | — | * |
| Laura McKenna(13) | 15,967 | 15,967 | — | * |
| PineTree Co. Ltd.(13) | 127,622 | 127,622 | — | * |
| Sells Investment Co.(13) | 1,719 | 1,719 | — | * |
| Boake A. Sells Trust dtd. 12/14/88(13) | 121,865 | 121,865 | — | * |
| John W. Dorsey(13) | 4,861 | 4,861 | — | * |
| Brenton P. Cook, Trustee, Brenton P. Cook Trust dtd. 6/28/99(13) | 740 | 740 | — | * |
| McDonald Investments Inc. C/FBO John J. Meilner IRA A/C 85879052 dtd. 6/6/96(13) | 1,042 | 1,042 | — | * |
| Wayne Van Dam(13) | 740 | 740 | — | * |
| Cleveland Clinic Foundation(13) | 72,917 | 72,917 | — | * |

| | | | | |
|---|---:|---:|---:|---:|
| GS Capital Partners III, L.P.(13) | 1,305,010 | 1,305,010 | — | * |
| GS Capital Partners III Offshore, L.P.(13) | 358,763 | 358,763 | — | * |
| Goldman Sachs & Co. Verwaltungs GmbH(13) | 60,246 | 60,246 | — | * |
| Stone Street Fund 2000, L.P.(13) | 164,193 | 164,193 | — | * |
| Bridge Street Special Opportunities Fund 2000, L.P.(13) | 82,096 | 82,096 | — | * |
| Seligman New Technologies Fund, Inc.(13) | 63,607 | 63,607 | — | * |
| Seligman Investment Opportunities (Master) Fund—NTV Portfolio(13) | 32,504 | 32,504 | — | * |
| Seligman Investment Opportunities (Master) Fund—NTV II Portfolio(13) | 195,559 | 195,559 | — | * |
| BancBoston Capital, Inc.(13) | 636,050 | 636,050 | — | * |
| Roundwood Capital L.P.(13) | 48,612 | 48,612 | — | * |
| Roundwood Capital II L.P.(13) | 48,612 | 48,612 | — | * |