## PARTIES, JURISDICTION AND VENUE

5.      Complient is a Delaware corporation with its principal place of business located in Warrensville Heights, Ohio.

6.      Donald C. Hutchins is an individual residing in Longmeadow, Massachusetts.

7.      CPR Prompt Corporation is a Massachusetts corporation with its principal place of business in Longmeadow, Massachusetts.  Hutchins is the President and Treasurer of CPR Prompt.

8.      Defendants are subject to the long-arm jurisdiction of this Court pursuant to Rule 4.6 of the Ohio Rules of Civil Procedure by virtue of their activities associated with the License Agreement.  Further, a substantial part of the events giving rise to this action occurred in this County.

## BACKGROUND

### The License Agreement

9.      Pursuant to the License Agreement, Defendants granted County Line an exclusive license to a product known as CPR Prompt, a device used to provide rescue aid instructions to trained individuals concerning cardiopulmonary resuscitation, which device is claimed in U.S. Patent Reexamination No. 34,800.

10.      As consideration for the License, Defendants were entitled to, among other things, the following under the License Agreement: (a) an initial payment of $100,000; (b) advance royalty payments of $4,000 per month during each of the first twelve months of the License Agreement, with such advance payments to be deducted from future royalties; (c) royalty payments of 5% of the sales of the professional version of the product during the first twelve months of sales and 3.5% of same thereafter; (d) royalty payments of 2% of the net sales of the

consumer version of the product; and (e) in the event a partner of the Affiliate, *i.e.* CPR L.P., sells all or part of its partnership interest to an unrelated third-party, 7.5% of the net proceeds of such sale.

11.    The parties to the License Agreement mutually agreed that, after the date of the Agreement, County Line would assign its interest in the License Agreement to an Affiliate of County Line.  Thus, on September 19, 1994, County Line, in accordance with its obligations under Section 3.10 of the License Agreement, assigned the License Agreement to CPR L.P., an Affiliate of County Line as defined by Section 1.1 of the License Agreement.  At all times since September 19, 1994, CPR L.P. has been the Affiliate contemplated by the License Agreement. CPR L.P. is an Ohio limited partnership formed in September of 1994.

12.    Between September of 1994 and December of 1997, County Line or its successor served as the general partner of CPR L.P. holding 99% of the partnership interest therein.  In December, 1997, County Line's successor transferred its 99% partnership interest in CPR L.P. to CPR Prompt L.L.C.  On June 20, 2000, CPR Prompt L.L.C. converted to a Delaware corporation named Complient Corporation.  As such, thereafter, Complient held the 99% general partnership interest in CPR L.P.

**Defendants Attempt to Rewrite the License Agreement**

13.    In November of 1999, Defendants attempted improperly to terminate the License Agreement by issuing a "Notice of Termination" and a "Final Notice of Termination" (the "Notices").  In the Notices, Defendants erroneously claimed that Section 3.10 of the License Agreement had been breached.  Complient, on behalf of CPR L.P. and County Line, responded to the Notices, advised that no breach of Section 3.10 of the License Agreement had, in fact,

occurred, and advised that CPR L.P., County Line and Complient deemed the License Agreement to be in full force and effect.

14.    Then, in January of 2001, Defendants sent correspondence to Complient setting forth an interpretation of Section 3.10 of the License Agreement that was directly contrary to its express terms and the intent of the parties. As a result, on February 2, 2001, Complient filed a Complaint for Declaratory Judgment in the Cuyahoga County Court of Common Pleas against Hutchins and CPR Prompt to protect the interests of CPR L.P. and those of its associated entities under the License Agreement, which was designated as Case Number 429394 and is hereinafter referred to as "Complient v. CPR Prompt."

## Defendants' Efforts to Extract Payments Under the License Agreement They Are Not Entitled To Are Rejected by the Courts

15.    On May 30, 2001, the Court, in Complient v. CPR Prompt, after extensive briefing and oral argument, entered a default judgment against CPR Prompt and in Complient's favor that Section 3.10 of the License Agreement entitles Defendants to 7.5% of the net proceeds of the sale to an unrelated third party of the partnership interests in CPR L.P. -- not to 7.5% of the net proceeds of the sale of Complient (as Defendants have repeatedly claimed). Summary judgment was entered against Hutchins by the Complient v. CPR Prompt Court on the same basis on September 5, 2001.

16.    On June 27, 2001, less than a month after the default was entered against CPR Prompt, Hutchins, clearly dissatisfied with the outcome of Complient v. CPR Prompt, filed a Complaint in the Massachusetts District Court, alleging RICO violations against certain shareholders of Complient, which case was captioned Hutchins v. Lindseth, Case No. 3:01-CV-30120. The Complient shareholders moved to dismiss Hutchins' RICO claims on the grounds of, among others, failure to state a RICO claim, lack of personal jurisdiction and res judicata.

17.    On December 17, 2001, after extensive briefing and oral argument, the Massachusetts District Court dismissed Hutchins' RICO action for lack of personal jurisdiction. The dismissal of Hutchins' RICO action was affirmed, without oral argument, by the First Circuit on August 12, 2002.

18.    Concomitant with the filing of Complient v. CPR Prompt, CPR L.P. filed a parallel action before the American Arbitration Association ("AAA") on February 5, 2001, pursuant to the terms of the License Agreement. On August 14, 2002, given the resolution of Complient v. CPR Prompt, and Hutchins' steadfast and improper refusal to compensate the AAA arbitrators for their fees and/or appear in the AAA proceeding, CPR L.P. determined not to advance Hutchins' share of the fees associated with the AAA arbitration, and the AAA dismissed the action without prejudice.

19.    Then, Hutchins, on July 18, 2003, sued the AAA in the Massachusetts District Court for allegedly interfering with his patent rights by presiding over the action filed by CPR L.P. and for seeking payment of his share of the arbitration costs incurred by the AAA. The Massachusetts District Court dismissed Hutchins' Complaint against the AAA, which dismissal Hutchins appealed to the United States Court of Appeals for the First Circuit. That appeal is pending.

**The Asset Purchase Agreement**

20.    On October 21, 2003, certain assets of Complient were purchased by Cardiac Science, Inc., a Delaware corporation, pursuant to an Asset Purchase Agreement ("APA") executed by and among Complient, Cardiac Science, and CPR L.P. A copy of the APA, exclusive of its schedules, is attached hereto as Exhibit B.

21.    Pursuant to the terms of the APA, Cardiac Science purchased all of the assets of Complient and CPR L.P., except for those specifically retained by Complient and CPR L.P. The assets retained by Complient and CPR L.P. are specified in Section 1.2 of the APA and are specifically referred to as the "Retained Assets."

22.    The partnership interests in CPR L.P. are one of the Retained Assets specified in the APA. As a result, the partnership interests in CPR L.P. have not, to date, been sold to an unrelated third party.

23.    Further, pursuant to Section 1.2(i) of the APA, Complient retained the obligation to satisfy any payment obligations that may become due under Section 3.10 of the License Agreement related to any sale of the partnership interests in CPR L.P. Cardiac Science assumed all other obligations under the License Agreement, which obligations have been fully satisfied.

24.    In exchange for the assets of Complient and CPR L.P., other than the Retained Assets, Cardiac Science agreed to transfer a specified amount of shares of Cardiac Science common stock to Complient. A portion of the total amount of Cardiac Science common stock to be transferred to Complient as consideration for the purchased assets of Complient was withheld for a period of one year from the date of sale -- October 21, 2004 -- pending any potential claims for indemnity.

25.    Pursuant to the Indemnification provisions of the APA, the shares of Cardiac Science common stock held in escrow will be transferred to Complient on October 21, 2004, so long as no claims for indemnification are pending against Complient and/or so long as the shares held in escrow are not subject to reduction as a result of any then-known indemnification obligations of Complient. If an indemnification claim was made and/or is pending against Complient as of October 21, 2004 as contemplated by the APA, the amount of shares to be

transferred to Complient is subject to be reduced accordingly and pursuant to the terms of the APA.

**Hutchins Files Suit Against Cardiac Science**

26.    On July 2, 2004, Hutchins filed suit against Cardiac Science in the Massachusetts District Court, which action is captioned <u>Hutchins v. Cardiac Science</u>, Case No. 3:04-CV-30126. In this Complaint, Hutchins claims that Cardiac Science is liable for copyright infringement, patent infringement by means of sale, patent infringement by means of manufacture, negligence and breach of contract. A copy of this Complaint, exclusive of its exhibits, is attached as Exhibit C.

27.    Hutchins is admittedly aware of the terms of the APA -- a fact he expressly admits in the <u>Hutchins v. Cardiac Science</u> Complaint in paragraph 18. On August 18, 2004, Hutchins filed an "*Ex Parte* Emergency Motion for Temporary Restraining Order" in the Massachusetts District Court, seeking to suspend the transfer of shares of Cardiac Science common stock to Complient pending resolution of the <u>Hutchins v. Cardiac Science</u> Complaint. As a result, Hutchins is clearly aware that, by filing that Complaint, he is, at least, delaying and, possibly, preventing transfer to Complient of the shares of Cardiac Science common stock held in escrow.

28.    Hutchins claims, in his Complaint against Cardiac Science, that he gave notice to Complient, under the License Agreement, of his intent to reclaim the intellectual properties covered thereby. Hutchins further alleged that Complient abandoned these intellectual properties and, essentially, according to Hutchins, terminated the License Agreement.

29.    Section 8.2 of the License Agreement requires that a party to the License Agreement may terminate the License Agreement prior to expiration of its term only in the event

of a material breach by the other party and only upon written notice to the other party. CPR L.P. has not received notice, written or otherwise, from Defendants of a material breach of the License Agreement at any time subsequent to the Notices received in November of 1999, which Notices were nullified.

30.    Further, Hutchins claims at paragraph 26 of his Complaint against Cardiac Science that Defendants are entitled to 7.5% of Complient upon its "divestiture." Hutchins further alleged at, *inter alia*, paragraph 49 of his Complaint against Cardiac Science that he is entitled to 7.5% of the proceeds to Complient of the APA among Cardiac Science, Complient and CPR L.P.

31.    On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient based on the Complaint filed in <u>Hutchins v. Cardiac Science</u> citing Sections 1.2 and 2.2 of the APA.

<b><u>COUNT I</u></b>

32.    Complient repeats and reavers paragraphs 1 through 31 hereof as if fully rewritten herein.

33.    Pursuant to Hutchins' express admissions in the Complaint filed in <u>Hutchins v. Cardiac Science</u> and his "*Ex Parte* Emergency Motion for Temporary Restraining Order," Hutchins is aware of the existence and terms of the APA among Cardiac Science, Complient and CPR L.P.

34.    Due to his knowledge of the terms of the APA, Hutchins is aware that Cardiac Science did not purchase Complient's partnership interests in CPR L.P. Further, based on the express terms of the License Agreement and the declaratory judgment entered against Defendants in <u>Complient v. CPR Prompt</u>, Hutchins is aware that only a sale of the partnership

interests in CPR L.P. will trigger the requirement of Section 3.10 of the License Agreement to pay Defendants 7.5% of the value of the net proceeds of the sale to a third party of the partnership interests in CPR L.P.

35.    Hutchins is further aware, by virtue of the declaratory judgment entered in Complient v. CPR Prompt and the express terms of the License Agreement, that Defendants are not, pursuant to Section 3.10 of the License Agreement or otherwise, entitled to 7.5% of the net proceeds of the sale of Complient.

36.    By virtue of Hutchins' filing of the Complaint in Hutchins v. Cardiac Science, Hutchins intentionally seeks to delay and or prevent the transfer of the shares of Cardiac Science common stock from escrow for the benefit of Complient pursuant to Section 3.1 of the APA.

37.    Hutchins' efforts to delay and or prevent the transfer of the Cardiac Science common stock from escrow to Complient are without justification because Hutchins is aware that the partnership interests in CPR L.P. were not sold to Cardiac Science and, further, that in no event is he entitled to 7.5% of the net proceeds of a sale of Complient.

38.    As a result, Hutchins' conduct in filing the Complaint in Hutchins v. Cardiac Science constitutes a tortious interference with the APA among Complient, Cardiac Science and CPR L.P. for which Hutchins is liable to Complient for compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $25,000.

## COUNT II

39.    Complient repeats and reavers paragraphs 1 through 38 hereof as if fully rewritten herein.

40.    On July 2, 2004, Hutchins filed a Complaint in the Massachusetts District Court captioned Hutchins v. Cardiac Science, Case No. 3:04-CV-030126. A copy of this Complaint is attached hereto as Exhibit C.

41.    On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient pursuant to the terms of the APA entered into by and among Cardiac Science, Complient and CPR L.P. on October 21, 2003.

42.    As Hutchins admits in paragraph 18 of the Complaint filed in Hutchins v. Cardiac Science, and as evidenced by the arguments made and relief sought by Hutchins in his Motion for Temporary Restraining Order filed therein, Hutchins is aware of the terms of the APA and is seeking to prevent the transfer of shares of Cardiac Science common stock to Complient under the APA.

43.    Pursuant to the APA, certain shares of Cardiac Science common stock which constitute part of the consideration tendered to Complient under the APA are held in escrow until October 21, 2004. The shares of Cardiac Science common stock held in escrow will only be transferred to Complient if no claims for indemnity by Cardiac Science are pending on or before and/or as of October 21, 2004.

44.    Hutchins' Complaint against Cardiac Science seeks damages of, among other things, diversion to him of 7.5% of the stock of Cardiac Science that is being transferred to Complient as payment under the APA and/or $3,525,000, which, according to Hutchins, constitutes the value of 7.5% of Complient.

45.    Hutchins, by virtue of the outcome of Complient v. CPR Prompt and the express terms of the License Agreement, is aware that Defendants are not entitled to 7.5% of the value of Complient upon its sale under any circumstances but, rather, that, under the terms of the License

Agreement, Defendants are entitled to only 7.5% of the sale to a third party of the partnership interests in CPR L.P.

46.    Hutchins has knowledge that the partnership interests in CPR L.P. -- Complient's 99% general partnership interest or otherwise -- were not sold to Cardiac Science or any entity.

47.    Hutchins is further aware that, by virtue of filing the Complaint in <u>Hutchins v. Cardiac Science,</u> a claim for indemnity under the APA against Complient arose and that, pending the resolution of at least some of his claims against Cardiac Science, the Cardiac Science common stock held in escrow will or may not be transferred to Complient.

48.    Hutchins filed the Complaint against Cardiac Science with the ulterior purpose and motive of extorting a payment from Complient under Section 3.10 of the License Agreement -- a payment that is not due and owed to Defendants.

49.    As a result of Hutchins' wrongful and illegitimate filing of his Complaint against Cardiac Science in the Massachusetts District Court, Complient has and will suffer compensatory and punitive damages in an amount to be determined at trial but which amount is in excess of $25,000 and includes, but is not limited to, any decline in the value of the shares of Cardiac Science common stock from October 21, 2004 to the date the stock is transferred to Complient as well as any and all attorney fees and costs incurred by Complient related to Cardiac Science's demand for indemnity.

## COUNT III

50.    Complient repeats and reavers paragraphs 1 through 49 hereof as if fully rewritten herein.

51.    As fully explained above, as the plain language of Section 3.10 of the License Agreement provides (a copy of which is attached hereto as Exhibit A) and as the Cuyahoga County Court of Common Pleas held in its declaratory judgment entered against Defendants in Complient v. CPR Prompt, in the event the partners of CPR L.P. sell all or part of their respective partnership interests in CPR L.P. to an unrelated third party, Hutchins is entitled to 7.5% of the net proceeds of the sale of such partnership interests.

52.    Further, the plain language of Section 8.2 of the License Agreement provides that in order to effectively terminate the License Agreement prior to the expiration of its term, Defendants are required to provide written notice to CPR L.P. of a material breach. Upon such written notice, CPR L.P. is afforded at least 90 days to cure any breach.

53.    To date, CPR L.P. has not received the written notice required by Section 8.2 of the License Agreement.

54.    Despite the plain language of Section 3.10 of the License Agreement and, moreover, despite the declaratory judgment previously entered against them, Defendants continue to dispute the effect of Section 3.10 of the License Agreement and incorrectly contend that they are entitled to 7.5% of the sale of any or all assets of Complient.

55.    Further, Defendants claim that the 7.5% payment provision of Section 3.10 of the License Agreement was somehow triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science.

56.    The plain language of the APA (a copy of which is attached hereto as Exhibit B), specifically section 1.2(i) thereof, expressly provides that the partnership interests in CPR L.P. were not sold to Cardiac Science in October of 2003 as Defendants now claim.

57.    In order to give effect to the plain language of the License Agreement, the APA and the prior order of this Court, the Court should enter a judgment declaring that: (a) neither Defendant has effectively terminated the License Agreement; (b)  the partnership interests in CPR L.P. were not sold to Cardiac Science in October of 2003 as Defendants now contend; and (c) the 7.5 % payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science.

58.    An actual and justiciable controversy exists between Complient and the Defendants with respect to the construction and effect of Section 3.10 of the License Agreement and Section 1.2(i) of the APA for which declaratory relief is necessary.

59.    A declaration is therefore necessary and appropriate under these circumstances in order that Complient may ascertain the construction and effect of both Section 3.10 of the License Agreement and Section 1.2(i) of the APA.

WHEREFORE, Complient prays that judgment be entered in its favor as follows:

(i)     On Count I of the Complaint, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $25,000 to be determined at trial;

(ii)    On Count II of the Complaint, judgment in Complient's favor for compensatory and punitive damages against Donald Hutchins in an amount in excess of $25,000 to be determined at trial;

(iii)   On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that Defendants have not effectively terminated the License Agreement;

(iv)    On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that the partnership

interests in CPR L.P. were not sold to Cardiac Science by virtue of the APA;

(v)     On Count III of the Complaint, a declaratory judgment against Donald Hutchins and CPR Prompt Corporation declaring that the 7.5% payment provision of Section 3.10 of the License Agreement was not triggered by virtue of the APA among Complient, CPR L.P. and Cardiac Science; and

(vi)    interest, costs, attorneys fees and such other and further relief as the Court deems equitable and just.

*Colleen Moran O'Neil*

WILLIAM E. COUGHLIN (0010874)
COLLEEN MORAN O'NEIL (0066576)
CALFEE, HALTER & GRISWOLD LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio 44114
(216) 622-8200
(216) 241-0816 (facsimile)

Attorneys for Plaintiff,
Complient Corporation

# EXHIBIT #3

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| COMPLIENT CORPORATION | ) | CASE NO: CV04540066 |
| 4670 Richmond Road | ) | |
| Warrensville Heights, Ohio 44128 | ) | |
| | ) | JUDGE: EILEEN A GALLAGHER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Donald C. Hutchins | ) | |
| 1047 Longmeadow Street | ) | |
| Longmeadow, Massachusetts 01106 | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED.R. CIV. P.12(b)(1), P.12(b)(2) and P.12(b)(6)

### INTRODUCTION

Defendant Donald C. Hutchins ("Hutchins") seeks dismissal of the claims in Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted, because many of the claims are ultimately subject to a mandatory and binding arbitration clause. However, even without the consideration of arbitration, the Plaintiff has not pled sufficient material facts to sustain any claim for relief under the identified legal theories.

Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction under Federal Rule 12(b)(1), lack of jurisdiction, because the agreement cited by the Plaintiff is subject to arbitration and the patents cited are subject to federal jurisdiction.

Plaintiff's complaint must be dismissed for reasons under Federal Rule 12(b)(2), lack of jurisdiction over the person. The Complient sale to the Cardiac Science Corporation involved a $54 million dollar transaction. It is clear that the damages claimed by the Plaintiff exceed the federal financial limit placed on litigation between citizens of different states.

## FACTUAL BACKGROUND

Complient is a Delaware corporation in the process of being dissolved after completion of an asset sale to the Cardiac Science Corporation ("Cardiac Science"). In October of 2003 Complient released it employees, sold its assets and vacated its principle place of business that was located in Solon, Ohio. Complient Corporation currently can not be found in Ohio business directories and uses the law offices of Calfee, Halter & Griswold, LLP. Donald C. Hutchins ("Hutchins") is an individual residing in Longmeadow, Massachusetts.

The License Agreement dated June 1, 1994, that accompanied the Complaint, as Plaintiff's Exhibit A, states in Section 9.4 that any disputes under the Agreement shall be submitted to and settled by arbitration in accordance with the then prevailing arbitration rules of the American Arbitration Association. Section 9.4 of the License Agreement governs jurisdiction and venue. Cuyahoga County Court of Common Pleas does not have jurisdiction to resolve the issues stated in the Complaint under the terms of License Agreement dated June 1, 1994.

On February 12, 2001 Judge Matia awarded Complient a Declaratory Judgement in Case No. 429394 in the Court of Common Please of Cuyahoga County, Ohio. This Judgment, attached herein as Exhibit #1, ruled that Complient was not a party to the

2

License Agreement dated June 1, 1994 and therefore had no ownership or claim to Hutchins' intellectual properties described in the License Agreement. Complient has no ownership interest in Hutchins' intellectual properties, the sale of these intellectual properties by Complient to Cardiac Science in October of 2003 was an illegal transfer of assets.

Because the transfer of Hutchins patents to Cardiac Science was an illegal transfer, Cardiac Science has no legal claim on this patent and therefore is infringing by the manufacture and sale of products carrying this patent. Federal Courts have exclusive subject matter jurisdiction in lawsuits involving copyright and patent infringement and this infringement is currently being adjudicated in the Federal District Court of Massachusetts, Case No. 04-30126-MAP.

The Plaintiff has referenced to Federal Case No.04-30126-MAP in its Complaint and included it as Exhibit C. Case No. 04-30126-MAP preceded this action and addresses the same issues as this Complaint filed in Ohio. The Complient Corporation has been enjoined in this federal case. To have parallel issues adjudicated in Ohio would result in needless duplicated effort and eventually to *res judicata.*

## ARGUMENT

**I.    PLANTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED.R.CIV.P.12(b)(6) BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A claim may be dismissed under Rule 12(b)(6) if Plaintiff fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal. Inc., 99 F.3d 780,783 (9th Cir. 1996). Under Rule 12(b)(6) all allegations in the complaint are to be treated as true and all reasonable inferences therefrom drawn in favor

of the plaintiff. <u>Rumford Pharmacy, Inc. v. City of East Providence,</u> 970 F.2d 996,997

(1st Cir. 1992). "[A[plaintiff. . . is nonetheless required to set forth factual allegations,

either direct or inferential, *respecting each material element necessary to sustain*

*recovery under some actionable legal theory.*" <u>Id.</u> at 998 (emphasis original). "The

pleading requirements, though minimal,' are not non-existent."' <u>Id.</u>

II.    **COUNTS I, II, AND III SHOULD BE DISMISSED UNDER 12(b)(1) BECAUSE THIS COURT LACKS JURISDICTION TO ADJUDICATE WHETHER THERE HAS BEEN A BREACH OF THE JUNE 1, 1994 LICENSE AGREEMENT**.

All disputes under the June 1, 1994 license agreement must be submitted to and

settled by arbitration pursuant to ¶ 9.4 of the agreement. Because arbitration is

mandatory and binding, this Court lacks subject matter jurisdiction to decide breach

issues. This court should therefore dismiss these claims pending an arbitrator's decision.

Federal Courts have exclusive subject matter jurisdiction in lawsuits involving

copyright and patent infringement and this infringement is currently being adjudicated in

the Federal District Court of Massachusetts, Case No. 04-30126-MAP

III.    **PLANTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED.R.CIV.P.12(b)(2) BECAUSE THIS COURT LACKS JURISDICTION OVER THE PERSONS.**

Complient is a Delaware corporation that vacated its principle place of business

that was located in Solon, Ohio. Donald C. Hutchins ("Hutchins") is an individual

residing in Longmeadow, Massachusetts.

The Declaratory Judgement requested by Complient involves intellectual assets

valued by Hutchins at over $3,500,000 dollars. Loss of these intellectual assets would

damage Hutchins far in excess of the $75,000 threshold for Federal jurisdiction. Because

4

Plaintiff, residing in Ohio, is suing Hutchins, residing in Massachusetts, for a judgement with a value in excess of $75,000, jurisdiction falls under the Federal Court System.

## IV.  PLANTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA.

Federal Case No. 04-30126-MAP preceded this action and addresses the same issues as this Complaint filed in Ohio. The Complient Corporation has been enjoined in this federal case. To have parallel issues adjudicated in Ohio would result in needless duplicated effort and eventually to *res judicata*.

Under Ohio law, "[t]he doctrine of issue preclusion. . . holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question as a subsequent action between the same parties or their privies, whether the cause of the actions be identical or different." Fort Frye Teachers Assn. v. State Employment Relations Bd., 81 Ohio St. 3d 392, 395; 692 N.E.2d 140 (1998).

### CONCLUSION

All of Plaintiff's claims should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. Count I should be dismissed because Plaintiff is not a party to the conditions precedent in the June 1, 1994 licensing agreement and has no standing. Counts I, II, and III should be dismissed because this Court lacks jurisdiction to adjudicate whether there has been a breach of the June 1, 1994 agreement according to the terms of the agreement. Counts I, II, and III should also be dismissed because this Court lacks jurisdiction over the subject matter and persons.

Federal Case No. 04-30126-MAP preceded this action and addresses the same issues. To have parallel issues adjudicated in Ohio would result in needless duplicated

effort and costs to the parties and eventually to *res judicata*.  Therefore, Defendant,

Donald C. Hutchins, requests this Court to dismiss all of the Plaintiff's claims.

Respectfully submitted,

DONALD C. HUTCHINS, pro se

Dated: _9/20/04_

_____

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 567-0606
(413) 739-4060 (facsimile)


## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by mailing a copy of the same to William E. Coughlin, Esq., Calfee, Halter & Griswold, LLP, 1400 McDonald Investment Center, 800 Superior Avenue, Cleveland, Ohio 44114.

Dated: _9/20/04_

_____
Richard J. Moriarty

6