**EXHIBIT A**

7

Table of Contents

Filed Pursuant to rule 424(b)(3)<br>
Registration Number 333-124514

To the stockholders of Quinton Cardiology Systems, Inc. and Cardiac Science, Inc.:

Quinton and Cardiac Science have entered into an agreement pursuant to which they have agreed to combine their respective businesses, which we refer to as the "transaction" or the "merger transaction." The combination will be accomplished by means of the mergers of Quinton and Cardiac Science with wholly-owned subsidiaries of CSQ Holding Company, which we refer to as "Newco," "we," "us" or "our" in this joint proxy statement/prospectus. Newco is expected to be renamed "Cardiac Science Corporation" upon the completion of the transaction.

When the transaction is completed, Quinton common stockholders will receive 0.77184895 shares of Newco common stock for each share of Quinton common stock they own and Cardiac Science common stockholders will receive 0.10 shares of Newco common stock for each share of Cardiac Science common stock they own. In addition, Cardiac Science senior note holders have agreed to convert senior notes having an approximately aggregate principal and accrued interest at February 28, 2005 of approximately $61 million, together with related warrants to purchase approximately 13.4 million shares of Cardiac Science common stock held by them, into an aggregate of $20 million in cash, payable by us, and 2,843,915 Newco common shares, as more fully discussed on page 104, which we refer to as the "note and warrant conversion transaction." The completion of the note and warrant conversion transaction is conditioned upon, and will take place concurrently with, the completion of the merger transaction. If the merger transaction is not approved, then the note and warrant conversion transaction will not be consummated. Based on the respective exchange ratios and the capitalization of each company as of February 28, 2005, the date we signed the merger agreement, former stockholders of Quinton will hold approximately 48.7%, and former stockholders and senior note holders of Cardiac Science will collectively hold approximately 51.3%, of our outstanding common stock immediately following the transaction. In addition, each outstanding stock option, warrant (other than the warrants held by the Cardiac Science senior note holders related to the senior notes) and right to purchase common stock issued by Quinton and Cardiac Science prior to the transaction will be assumed by us and will become a right to purchase Newco common stock, as more fully discussed in the section entitled "Quinton and Cardiac Science options, warrants and purchase rights" on page 87. We have applied to list our common stock on The Nasdaq National Market under the symbol "CSCX."

The attached joint proxy statement/prospectus provides you with detailed information concerning Quinton, Cardiac Science, Newco, the note and warrant conversion transaction and the merger transaction. Please give all the information contained in the joint proxy statement/prospectus your careful attention.

**In particular, you should carefully consider the discussion in the section entitled "RISK FACTORS" beginning on page 26 of the joint proxy statement/prospectus.**

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the securities to be issued in connection with the transaction or determined if this joint proxy statement/prospectus is accurate or complete. Any representation to the contrary is a criminal offense.

Sincerely,

*[signature: Raymond W Cohen]*

Raymond W. Cohen
Chief Executive Officer
Cardiac Science, Inc.

Sincerely,

*[signature: John R Hinson]*

John R. Hinson
Chief Executive Officer
Quinton Cardiology Systems, Inc.

This joint proxy statement/ prospectus is dated August 1, 2005 and was first mailed to stockholders on or about August 3, 2005.

Table of Contents

Outstanding options, warrants and purchase rights will be converted into options, warrants and purchase rights for the purchase of shares in Newco in accordance with the same exchange ratios.

The transaction will be accounted for as an acquisition of Cardiac Science by Quinton under the purchase method of accounting in accordance with Statement of Financial Accounting Standards No. 141, "Business Combinations." Quinton will be the acquiring entity for financial reporting purposes based on our review of the criteria for determining the accounting acquirer set forth in Statement 141. These criteria include but are not limited to: relative share ownership of the combined entity, composition of and ability to elect the board of directors, and the entity from which senior management positions are filled. A majority of our proposed board of directors will be comprised of current Quinton directors. In addition, Quinton executives will fill a majority of our senior management positions, thereby directing our policies, strategic direction, and day to day operations. Under the purchase method of accounting, the total estimated purchase price is allocated to the net tangible and intangible assets acquired by Quinton in connection with the transaction, based on their fair values as of the completion of the transaction. The excess cost over the net tangible and identifiable intangible assets has been allocated to goodwill. Valuation specialists have conducted a preliminary valuation in order to assist management of Quinton in determining the fair values of the intangible assets. The preliminary work performed by the valuation specialists has been considered in management's preliminary estimates of the fair values reflected in these unaudited pro forma condensed combined consolidated financial statements. A final determination of these fair values, which cannot be made prior to the completion of the transaction, will include management's consideration of a final valuation prepared by the valuation specialists. This valuation will be based on the actual net tangible and intangible assets of Cardiac Science that exist as of the date of the completion of the transaction.

We cannot assure you that Quinton and Cardiac Science will not incur charges in excess of those included in the pro forma total consideration related to the transaction or that management will be successful in its efforts to integrate the operations of the companies.

The unaudited pro forma condensed combined consolidated balance sheet of Quinton and Cardiac Science gives effect to the transaction as if it occurred on March 31, 2005. The unaudited pro forma condensed combined consolidated statement of operations for the year ended December 31, 2004, and the three months ended March 31, 2005, gives effect to the transaction as if it had occurred on January 1, 2004.

These unaudited pro forma condensed combined consolidated financial statements have been prepared based on preliminary estimates of fair values. Amounts preliminarily allocated to goodwill may significantly change and amounts allocated to intangible assets with definite lives may change significantly, which could result in a material change in amortization of acquired intangible assets. Therefore, the actual amounts recorded as of the completion of the transaction may differ materially from the information presented in these unaudited pro forma condensed combined consolidated financial statements. In addition to the impact of ongoing integration activities, the timing of completion of the transaction and other changes in Cardiac Science's net tangible and intangible assets that occur prior to completion of the transaction could cause material differences in the information presented.

The accompanying unaudited pro forma condensed combined consolidated financial statements are presented in accordance with Article 11 of Regulation S-X. The pro forma information is presented for illustrative purposes only and is not necessarily indicative of the operating results or financial position that would have occurred if the proposed transaction had been consummated as of March 31, 2005 or January 1, 2004, nor is it necessarily indicative of future operating results or financial position. See "Statements Regarding Forward-Looking Information" on page    . The pro forma adjustments are based upon information and assumptions available at the time of the filing of this joint proxy statement/ prospectus. The pro forma financial statements should be read in conjunction with the accompanying notes thereto and with Quinton and Cardiac Science historical consolidated financial statements and related notes thereto, incorporated by reference into this joint proxy statement/ prospectus.

107

Table of Contents

section entitled "Description of Newco Capital Stock Following the Transaction — Registration Rights" on page 128 for a more detailed description of these registration rights.

**Delisting and deregistration of Quinton and Cardiac Science common stock after the transaction and listing of our common stock**

If the transaction is completed, Quinton common stock and Cardiac Science common stock will be delisted from The Nasdaq National Market and will be deregistered under the Securities Exchange Act of 1934, as amended. We have applied to list our shares of common stock to be issued in the transaction on The Nasdaq National Market under the symbol "CSCX," and The Nasdaq National Market approval is subject to official notice of issuance prior to the effectiveness of the transaction.

92

Table of Contents

The discussion set forth below, subject to the limitations and qualifications set forth in this section, constitutes the opinion of Perkins Coie LLP for Quinton and Stradling Yocca Carlson & Rauth for Cardiac Science as to the material United States federal income tax consequences of the transaction that are applicable to holders of Quinton common stock and Cardiac Science common stock:

- No gain or loss will be recognized by the holders of Quinton common stock or Cardiac Science common stock upon their receipt of our common stock solely in exchange for their Quinton common stock or Cardiac Science common stock in the transaction;

- A holder of Quinton common stock or Cardiac Science common stock who receives cash in the transaction in lieu of a fractional share of our common stock will be treated as if the holder had received the fractional share and then had that share redeemed for cash. The holder will recognize gain or loss equal to the difference between the cash received and that portion of the holder's basis in our common stock attributable to the fractional share;

- The aggregate tax basis of our common stock received by each holder of Quinton common stock or Cardiac Science common stock in the transaction (including any fractional share that the holder will be treated as having received and then as having immediately redeemed for cash) will be the same as the aggregate tax basis of the Quinton common stock or Cardiac Science common stock surrendered in the exchange;

- The holding period of our common stock received by each holder of Quinton common stock or Cardiac Science common stock in the transaction will include the holding period of the Quinton common stock or Cardiac Science common stock surrendered in the exchange, if the holder held that Quinton common stock or Cardiac Science common stock as a capital asset at the time of the transaction; and

- Neither Quinton nor Cardiac Science will recognize gain as a result of the transaction; provided, however, that Cardiac Science may recognize cancellation of indebtedness income to the extent that the fair market value of our common stock and cash received by the senior note holders in exchange for the senior notes previously issued by Cardiac Sciences is less than the amount of such indebtedness (including accrued interest) that is surrendered.

This opinion has been rendered on the basis of certain assumptions, including assumptions regarding the absence of changes in existing facts and that the merger will be completed in accordance with the merger agreement. This opinion also has been rendered on the basis of statements and representations, including those contained in the merger agreement, the registration statement of which this proxy statement/prospectus forms a part, and officers' certificates of Quinton and Cardiac Science, all of which must be true, correct and complete as of the effective date of the registration statement and must continue to be true, correct and complete at all relevant times thereafter, including as of the effective time of the transaction. If any of those statements, representations or assumptions is untrue, incorrect, or incomplete, the conclusions contained in the opinion referred to in this paragraph or set forth below could be adversely affected.

*Stockholders are urged to consult their own tax advisors as to the specific tax consequences to them of the transaction, including the applicability and effect of United States federal, state and local and foreign income and other tax laws in their particular circumstances.*

**Accounting treatment of the transaction**

We expect to account for the transaction as a purchase of Cardiac Science by Quinton for financial reporting and accounting purposes, in accordance with accounting principles generally accepted in the United States of America.

**Regulatory matters related to the transaction**

The transaction is subject to the requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, which prevents specified transactions from being completed until required information and materials are furnished to the Antitrust Division of the Department of Justice and the Federal Trade Commission and

90

Table of Contents

| | Year Ended December 31, | | | | | Three Months Ended March 31, | |
|---|---|---|---|---|---|---|---|
| | 2000 | 2001 | 2002 | 2003 | 2004 | 2004 | 2005 |
| | (In thousands, except percentages and per share data) | | | | | | |
| Loss from continuing operations | (32,946) | (26,215) | (15,000) | (13,030) | (18,669) | (4,832) | (53,84?) |
| Income (loss) from discontinued operations | — | — | (52) | 493 | — | — | — |
| Net loss | $ (32,946) | $ (26,215) | $ (15,052) | $ (12,537) | $ (18,669) | (4,832) | (53,84?) |
| Basic and diluted loss per share: | | | | | | | |
| Continuing operations | $ (1.82) | $ (0.78) | $ (0.22) | $ (0.19) | $ (0.22) | $ (0.06) | $ (0.6?) |
| Discontinued operations | — | — | — | 0.01 | — | — | — |
| Net loss per share | $ (1.82) | $ (0.78) | $ (0.22) | $ (0.18) | $ (0.22) | $ (0.06) | $ (0.63) |
| Weighted average share used in computing net loss per share | 18,080 | 33,507 | 67,199 | 69,848 | 83,094 | 80,533 | 86,019 |
| **Consolidated Statement of Cash Flow Data:** | | | | | | | |
| Cash flows used in operating activities | $ (17,076) | $ (23,036) | $ (20,781) | $ (16,347) | $ (8,776) | $ (1,854) | $ (3,268) |
| Cash flows from (used in) investing activities | (6,935) | (11,864) | (93) | 219 | 596 | (513) | (428) |
| Cash flows from (used in) financing activities | 31,646 | 37,115 | 20,469 | 9,509 | 13,227 | 145 | (593) |
| **Selected Consolidated Balance Sheet Data:** | | | | | | | |
| Cash and cash equivalents | $ 13,537 | $ 15,830 | $ 15,598 | $ 8,871 | $ 13,913 | $ 6,641 | $ 9,624 |
| Working capital | 18,022 | 12,388 | 19,177 | 22,981 | 27,046 | 20,355 | 23,814 |
| Total assets | 33,336 | 145,469 | 153,920 | 203,001 | 203,334 | 198,727 | 152,571 |
| Long term debt, net of current portion | 192 | 27,780 | 41,145 | 46,522 | 52,648 | 46,630 | 54,134 |
| Total stockholders' equity | 28,985 | 98,344 | 94,270 | 137,591 | 132,915 | 134,277 | 81,812 |

**Selected Unaudited Pro Forma Condensed Combined Consolidated Financial Data**

Our selected unaudited pro forma condensed combined consolidated financial data are derived from the unaudited pro forma condensed combined consolidated financial information, which gives effect to the transaction using the purchase method of accounting as if it had occurred on January 1, 2004, and should be read in conjunction with the unaudited pro forma condensed combined financial statements and related notes, which are included elsewhere in this joint proxy statement/ prospectus. Our unaudited pro forma condensed combined consolidated financial information gives effect to the transaction, based on a preliminary allocation of the total purchase cost. The historical financial information has been derived from the respective historical financial statements of Quinton and Cardiac Science, and should be read in conjunction with such financial statements and the related notes incorporated by reference in this joint proxy statement/ prospectus.

We expect to account for the transaction as a purchase of Cardiac Science by Quinton using the purchase method of accounting.

We will record the fair value of the consideration given for Cardiac Science common stock and for options to purchase Cardiac Science common stock assumed by us, plus the amount of its acquisition related costs.

The total estimated purchase cost of the transaction has been allocated on a preliminary basis to Cardiac Science's assets and liabilities based on management's best estimates of their fair value with the excess of cost over the net assets acquired allocated to goodwill. This allocation is subject to change pending a final analysis of the total purchase cost and the fair value of the assets acquired and liabilities assumed. The impact of such changes could be material.

19