# EXHIBIT E

RECEIVED

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

MAY 1 1 2005

PATTERSON, THUENTE, SKAR
& CHRISTENSEN, P.A.

DONALD C. HUTCHINS,

        Plaintiff,

v.

CARDIAC SCIENCE, INC.,

        Defendant.

Civil Action No. 04-30126-MAP

### AFFIDAVIT OF RODERICK DE GREEF

I, Roderick de Greef, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I have been Cardiac Science's Executive Vice President, Chief Financial Officer and Secretary since March 2001.

2. Exhibit A to this affidavit is a true and correct copy of the April 14, 2005 letter and its attachments, including a replacement royalty check, a copy of the original check issued and Cardiac Science's bank activity reports, sent from Cardiac Science to Donald Hutchins.

3. Check number 34634 in the amount of $1990.38 dated June 10, 2004 was sent to Donald Hutchins for royalties due in compliance with the June 1, 1994 License Agreement for the second and third quarters of Cardiac Science's 2003-2004 fiscal year.

4. On March 17, 2005 check number 34634 was cashed and cleared Cardiac Science's bank. On March 21, 2005 Cardiac Science was notified that the check was credited back due to the stale date of the check.



EXHIBIT
6

5. On April 14, 2005 replacement check number 40736 in the amount of $1990.38 was sent to Donald Hutchins.

6. On April 21, 2005 check number 40736 was cashed and cleared Cardiac Science's bank.

7. To the best of my knowledge Cardiac Science has performed all its obligations under the June 1, 1994 License Agreement.

FURTHER YOUR AFFIANT SAYETH NOT.

[Notary Seal: SUSAN L. HAWKS, Commission # 1360103, Notary Public - California, Orange County, My Comm. Expires Jun 27, 2006]

_____
Roderick de Greef

Subscribed and sworn to before me this 10th day of May, 2005

_____
Notary Public

Table of Contents

senior note holders and other parties to the amended registration rights agreement will have the right to demand that their shares be registered by us on any appropriate form then available to us. The amended registration rights agreement contains other customary terms, including indemnification provisions.

Pursuant to employment agreements Cardiac Science has with the executive officers identified in the table below, if a change of control, such as the merger transaction, occurs during the term of the executive officer's employment with Cardiac Science and the executive officer's employment is terminated upon such change of control, or within 12 months thereafter, in the manner set forth in each respective employment agreement, the executive officer will be entitled to receive certain payments and other benefits for a specified period of time following their termination. Messrs. Evers, de Greef, Olson and Gioffredi are not expected to continue their employment with Newco following the merger transaction and will be entitled to receive their payments and benefits commencing upon completion of the merger transaction. Mr. Cohen will become our chairman of the board after the closing of the merger transaction, but will not continue as chief executive officer which will entitle him to receive certain payments and benefits commencing upon completion of the merger transaction. Messrs. Lin and Mathur are expected to continue their employment with Newco and therefore will only be entitled to additional payments or benefits under their existing employment agreement if they are terminated by Newco within 12 months after the consummation of the merger transaction under certain circumstances described in their employment agreement. The following table sets forth for each of Cardiac Science's executive officers the amounts payable as a result of such executive's termination, including (i) the amount of his severance payment, (ii) the amount of his prorated 2005 bonus payment, (iii) the amount of his health and other benefits, (iv) the dollar amount of his maximum accrued and unpaid vacation and (v) the number of months over which the severance payment is paid to the executive and to which the executive is entitled to continuing health benefits.

| Name | Severance Payment | Prorated 2005 Bonus | Health and Other Benefits | Accrued Unpaid Vacation | Number of Months of Continuing Health Benefits and Severance Payment |
|---|---|---|---|---|---|
| Raymond W. Cohen | $ 770,646 | $ 157,340 | $ 24,815 | $ 88,921 | 24 |
| Howard L. Evers | $ 269,000 | $ 94,150 | $ 11,754 | $ 62,077 | 12 |
| Roderick C. de Greef | $ 240,000 | $ 84,000 | $ 11,855 | $ 55,385 | 12 |
| Kenneth F. Olson | $ 100,000 | $ 29,167 | $ 2,013 | $ 30,769 | 6 |
| Michael D. Gioffredi | $ 125,000 | $ 58,333 | $ 4,196 | $ 28,846 | 6 |
| Dongping Lin | $ 205,000 | $ 14,583 | $ 8,541 | $ 31,538 | 12 |
| Prabodh Mathur | $ 200,000 | $ 17,500 | $ 9,240 | $ 23,077 | 12 |

We intend to engage Raymond Cohen, Cardiac Science's chief executive officer, as our chairman of the board of directors. Following the effective time of the transaction through December 31, 2005, Mr. Cohen's compensation, which will be in addition to his severance payment benefits under his employment agreement with Cardiac Science, would consist of a salary of $29,125 per month and from January 1, 2006, until the earlier of the date Mr. Cohen's engagement as chairman of the board of directors has been terminated or our first annual meeting of stockholders after the completion of the merger transaction, Mr. Cohen's compensation will consist of an annual salary of $150,000. The terms of any such engagement are subject to approval by our compensation committee, in accordance with the Nasdaq Marketplace Rules, and the execution of a definitive agreement. In addition, Mr. Cohen will be entitled to receive the severance payments and health and other benefits pursuant to his employment agreement with Cardiac Science, as set forth above. Mr. Cohen currently receives an annual base salary of $385,320 as the chief executive officer of Cardiac Science.

Provisions in the merger agreement provide that Cardiac Science's charter documents will contain exculpation and indemnification provisions at least as favorable to the directors and officers of Cardiac Science as those contained in Cardiac Science's charter documents as in effect on February 28, 2005; such provisions will not be amended, repealed or otherwise modified in any manner adversely affecting the rights of parties indemnified by such provisions; subject to certain limitations, we will maintain directors' and officers' liability

85

Table of Contents

(2) Represents the dollar value of health and other benefits received per month as of May 31, 2005 multiplied by the number of months such benefits would continue upon termination.

(3) Mr. Hinson may accrue up to 10 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $52,404 in unpaid vacation based on his current salary.

(4) Mr. Matysik may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $31,107 in unpaid vacation based on his current salary.

(5) Mr. Criss may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $27,069 in unpaid vacation based on his current salary.

(6) Dr. Hadley may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $26,160 in unpaid vacation based on his current salary.

(7) Mr. Jhalani may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $25,186 in unpaid vacation based on his current salary.

(8) Mr. Lee may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $26,154 in unpaid vacation based on his current salary.

(9) Mr. Lustig may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $26,752 in unpaid vacation based on his current salary.

(10) Mr. Motafram may accrue up to 8 weeks of unpaid vacation, and thus, upon termination, may be entitled to receive an additional payment of up to $25,680 in unpaid vacation based on his current salary.

These employment agreements will be assumed by Newco as part of the transaction.

As a result of these interests, these directors and officers of Quinton could be more likely to support and recommend the transaction than if they did not hold these interests. Quinton stockholders should consider whether these interests may have influenced these directors and officers to support or recommend the transaction.

**Interests of Cardiac Science directors, officers and affiliates in the transaction**

When considering the recommendation of the Cardiac Science board of directors, you should be aware that Cardiac Science's directors and officers have interests in the transaction that may be different from, or are in addition to, your interests. The Cardiac Science board of directors was aware of these potential conflicts and considered them.

Under the terms of the merger agreement and based on subsequent discussions between Quinton and Cardiac Science, the following members of Cardiac Science's board of directors and executive management team will become our officers and/or members of the board of directors:

| Name | Cardiac Science Position | Newco Position |
|---|---|---|
| **Management:** | | |
| Raymond W. Cohen | Chairman and Chief Executive Officer | Chairman |
| Peter L. Foster | Senior Vice President, Global Sales | Vice President, Public Access Defibrillation |
| Kurt B. Lemvigh | President, European Operations | Vice President, International |
| **Non-employee Directors:** | | |
| Bruce J. Barclay | Director | Director |
| Ray E. Newton, III | Director | Director |
| Jeffrey F. O'Donnell, Sr. | Director | Director |

As of June 1, 2005, after giving effect to the Cardiac Science exchange ratio of 0.10, Cardiac Science's directors and officers hold options to purchase an aggregate of 153,150 shares of Cardiac Science common stock granted under the 1997 Stock Option/Stock Issuance Plan that will become fully-vested upon completion of the transaction. The weighted average exercise price for these options is $32.00 per share.

83

Table of Contents

*Miscellaneous*

Cardiac Science has agreed to pay CIBC World Markets for its financial advisory services in connection with the transaction an aggregate fee based on a percentage of the total consideration, including liabilities assumed, payable in the transaction. The aggregate fee payable to CIBC World Markets is currently estimated to be approximately $1.8 million, of which approximately $1.25 million is contingent upon completion of the transaction. In addition, Cardiac Science has agreed to reimburse CIBC World Markets for its reasonable expenses, including reasonable fees and expenses of its legal counsel, and to indemnify CIBC World Markets and related parties against liabilities, including certain liabilities under the federal securities laws, relating to, or arising out of, its engagement. CIBC World Markets and its affiliates in the past have provided services to Cardiac Science unrelated to the proposed transaction, including having acted as Cardiac Science's financial advisor in its acquisition of Complient Corporation, for which services CIBC World Markets and its affiliates have received compensation totaling approximately $610,000 during the past two years. In the ordinary course of business, CIBC World Markets and its affiliates may actively trade securities of Cardiac Science and Quinton for their own accounts and for the accounts of customers and, accordingly, may at any time hold a long or short position in those securities.

Cardiac Science selected CIBC World Markets as its financial advisor based on CIBC World Markets' reputation, experience and familiarity with Cardiac Science and its business. CIBC World Markets is an internationally recognized investment banking firm and, as a customary part of its investment banking business, is regularly engaged in valuations of businesses and securities in connection with acquisitions and mergers, underwritings, secondary distributions of securities, private placements and valuations for other purposes.

## Interests of Quinton directors, officers and affiliates in the transaction

When considering the recommendation of the Quinton board of directors, you should be aware that Quinton's directors and officers have interests in the transaction that may be different from, or are in addition to, your interests. The Quinton board of directors was aware of these potential conflicts and considered them.

Under the terms of the merger agreement and based on subsequent discussions between Cardiac Science and Quinton, the following members of Quinton's executive management team and board of directors will become our executive officers and/or members of the board of directors:

| Name | Quinton Position | Newco Position |
|---|---|---|
| **Management:** | | |
| Ruediger Naumann-Etienne, Ph.D. | Chairman | Vice Chairman |
| John R. Hinson | President, Chief Executive Officer and Director | President, Chief Executive Officer and Director |
| Michael K. Matysik | Senior Vice President, Chief Financial Officer and Secretary | Senior Vice President, Chief Financial Officer and Secretary |
| Allan R. Criss | Vice President, Acute Care | Vice President, Acute Care |
| David M. Hadley, Ph.D. | Vice President, Research | Vice President, Research |
| Brian R. Lee | Vice President, Engineering | Vice President, Engineering |
| Darryl R. Lustig | Vice President, Primary Care | Vice President, Primary Care |
| **Non-employee Directors:** | | |
| W. Robert Berg | Director | Director |
| Jue-Hsien Chern, Ph.D. | Director | Director |
| Harvey N. Gillis | Director | Director |

Provisions in the merger agreement provide that Newco's charter documents will contain exculpation and indemnification provisions at least as favorable to the directors and officers of Quinton as those contained in Quinton's charter documents as in effect on February 28, 2005; such provisions will not be amended, repealed

80