# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>Plaintiff )<br>)<br>)<br>v. )<br>)<br>CARDIAC SCIENCE, INC. )<br>and )<br>COMPLIENT CORPORATION )<br>)<br>Defendants )<br>) | **AFFIDAVIT OF**<br>**DONALD C. HUTCHINS** |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1. I am over 18 years of age and have personal knowledge of the matters attested to herein.

2. This is a transcription and affidavit of testimony that will be given using electron means by Donald C. Hutchins in Civil Action 04-30126-MAP at a Hearing scheduled for January 4, 2006:

\* \* \* \* \* \*

"Thank you your Honor for the opportunity to testify. I address the Court in the capacity of a witness rather than as a *pro se* attorney and I swear that these statements are true. Patent Attorney Randall Skaar, who represents Cardiac Science, telephoned me in May of 2004, to discuss a cross-license of one of my patents. This patent was licensed to County Line Limited and its successor, the Complient Corporation under a 1994 License Agreement. I learned from Attorney

Skaar that six months earlier Cardiac Science had purchased my intellectual properties from the Complient Corporation. Steven Lindseth had dissolved Complient and moved on with no notification as required under terms of the License Agreement that he and I had signed in June of 1994.

Because the License Agreement guaranteed me an exit-payment from each Complient shareholder's return upon the sale or transfer of the license, I suggested that Attorney Skaar discuss this subject with Attorney Gary Martinelli, who had authored the 1994 License Agreement. In response to my attempt to gain a peaceful resolution through Attorney Skaar, I received a belligerent response from the law firm of Stradling, Yocca, Carlson & Rauth threatening legal action against me for interfering with the sale.

I filed my Complaint with this Court in reaction to the Stradling response. My hope was to use a temporary restraining order to assure that the remaining lock-up stock would stay with the trustee pending resolution of this action. This stock was being held under the indemnity clause of the Asset Purchase Agreement. The rest of the stock had been distributed to the Complient investors such as JP Morgan, Medtronic and National City Bank as directed by Steven Lindseth, the organizer of this investment group. I knew that once this lock-up stock was released to these shareholders, it would be impossible for me to track down 50 to 60 investors to recover the 7 and ½ percent from each investor's lock-up distribution that I was owed. I also knew an indemnity clause in the Cardiac Science/Complient Asset Purchase Agreement gave ultimate control of the remaining lock-up stock to Cardiac Science.

As venture capitalists, Steven Lindseth and the people who control Cardiac Science turn deals quickly to the best advantage of themselves and their investors. Stradling is a law firm that is paid enormous sums to support many of these ventures by furnishing investment banking counsel and due diligence.

The attorneys representing Cardiac Science and Complient have been successful in playing a shell game to hide their clients, buy time and discourage my efforts to recover my property. Complient delayed joinder for a six-month period by dodging service of the Amended Complaint. This delay helped them press for a

Summary Judgment against me in Ohio. Throughout this litigation I have furnished over 100 documents to both Cardiac Science and Complient through the discovery process while I have received no voluntary or involuntary discovery from them. There has never been a case management conference to guide the parties to this litigation.

The transcript of the September 9, 2004 hearing was transcribed by Alice Moran as part of the Appeal and is in the court record. The transcript shows that I met the legal standard for injunctive relief because the risk of irreparable harm to me, in light of the chances of success on my claims, outweighed the defendant's probable harm and likelihood of prevailing on the merits of the case.

At the hearing Attorney Skaar addressed the issue of locked-up stock by saying, "And then there's this problem with the lock-up agreement that I think Mr. Hutchins actually recognizes. . . he acknowledges the fact that we need jurisdiction over the lock-up trustee because in fact Cardiac Science doesn't have the stock anymore…"

Accepting Attorney Skaar's argument that control of this stock had passed on to Complient, this Court refused my request for the TRO with the statement, "There's no order that this Court could issue directed at Cardiac Science that would have any effect on Cardiac Science to control that stock. It's already out of the barn. It's in the hands of Complient, and the only thing Complient is doing is simply presumably just tossing the shares on the market and selling them at a certain rate."

If the Court had granted me the TRO, this lock-up stock would have remained in trust pending resolution of this action. Cardiac Science would have suffered no harm because they had already paid out the stock as compensation for the Complient purchase. The TRO could cause no ill effect on the Complient Corporation because this company was dissolved and out-of-business. If this Court had granted me the TRO, there would be no winners or losers because each party would get that for which they had contracted.

I quote this testimony of Attorney Skaar because with this and other statements he lied and mislead the Court into believing that this stock was in the

hands of Complient. In truth, at the same time that Attorney Skaar was making these remarks, he was preparing to retrieve this locked-up stock from the trustee with a Demand for Indemnity to Complient under the indemnity clause of the Asset Purchase Agreement. <u>Hutchins' Third-Party Claim</u> was referenced as the basis for this Demand for Indemnity.

My claims in this action have been validated by this Demand of Indemnity. Cardiac Science recognized my Complaint as valid by using it as the basis for their Demand to have the trustee return the remaining lock-up stock to fund my damage claims in Civil Action 30126-MAP. As an unforeseen bonus to Cardiac Science, this Court granted Cardiac Science's Motion for Summary Judgment because I had inadvertently violated Local Rules by failing to file an immediate, timely opposition.

The lock-up stock that was returned to Cardiac Science through the Demand for Indemnity has been lost to me. The Stradling law firm as they shepherded the Cardiac Science sale to Quinton buried any audit trail to this locked-up stock. Recently Attorney Skaar has refused to even identify the current licensee of my properties.

During the September 9, 2004 hearing, when Attorney Skaar addressed the Court he had difficulty explaining the Complient Corporation as he ended by saying, "The other fact that's interesting, and I know that that Mr. Hutchins has made a rule 19 motion here to try to bring Complient Corporation and I just received a courtesy copy of a complaint that they have filed against Mr. Hutchins in Ohio on these very same issues."

The Complaint and "very same issues" to which Attorney Skaar referred are found in a Cuyahoga County, Ohio Case No. CV 04 540066 that was filed August 27, 2004 by the Complient Corporation against me. The Ohio Complaint states, "As a result, Hutchins' conduct in filing the <u>Complaint in Hutchins v. Cardiac Science</u> constitutes a tortious interference with the APA among Complient, Cardiac Science and CPR L.P. for which Hutchins is liable to Complient for compensatory and punitive damages.

Attorney Skaar was correct when he said that, "they have filed against Mr. Hutchins in Ohio on these very same issues." The standard course would be for

4

Complient to Join Cardiac Science in this forum. Instead, Complient chose to bring a parallel action against me in the State Court of Ohio.

Why state court in Ohio? Because Steven Lindseth knew that it would be financially impossible for me to hire legal counsel and mount a defense in Ohio.

Why file against the CPR Prompt Corporation that has had nothing to do with this federal case? Because Steven Lindseth knew that without the representation of a licensed attorney, the CPR Prompt Corporation would lose by default and the default judgment could be used in terms of *res judicata* against me both in Ohio and in the action we are addressing today.

Early on in the Ohio Civil Action Complient recognized my rights of the 7 and ½ percent "exit payment" by sending me a check in the amount of $14,625.00 that when endorsed would release Steven Lindseth and all the associated entities from all present and future claims. I of course was appalled because my damage claims in this action exceed 3 million dollars that is well beyond the federal threshold for diversity jurisdiction. Therefore I returned the Complient check. After Complient had paid reparations to Cardiac Science for its Demand for Indemnity, Steven Lindseth prodded his attorneys into gaining a Summary Judgement against me in Ohio. The standard for Summary Judgment is that there are no genuine issues to be tried. However, Lindseth gained this Summary Judgment, despite there being no jury trial or litigation of fact. This rush to judgment found me guilty of, "Tortious interference with the Asset Purchase Agreement among Complient, Cardiac Science and CPR L.P. for which Hutchins is liable to Complient for compensatory and punitive damages."

On November 16th I received a telephone call from my wife telling me that a sheriff had just served me with an $280,000 attachment on the home where we have lived for 30 years. Her first question was "Are we going to lose the house?"

I have spoken the truth through word, deposition and affidavit. The evidence I have provided has been abundant and accurate and my over 70 docketed pleas have met the Court's standards. The locked-up stock I sought through the TRO has been returned to Cardiac Science and lost to me with the purchase of Cardiac Science by Quinton. The Complient Corporation is dissolved and without

5

assets inhibiting my hope for recovery. The patents, trademarks, copyrights and FDA approvals that I licensed to Steven Lindseth are unrecoverable and have been dispersed to the winds. Now I am faced with the loss of my home as the result of a kangaroo court action in Ohio.

At the hearing of September 9th, the Court stated, "I want to make sure, to the extent that I can, to keep the playing field level." The results to this point place that commitment in question because these results have grown out the outright lies and misrepresentations of Attorney Skaar.

A few years ago the National Football League instituted a review using instant replay. A coach can throw a red flag and ask for a ruling on the field to be reviewed with the hope of having a decision reversed. If the ruling is not reversed, the coach loses one of its three time outs. I ask this Court to review Civil Action 30126-MAP in its entirety. While I recognize that decisions against me could cost me my home, I have faith in the truth I have spoken and the evidence that I have provided the Court.

With this hearing, I am asking the Court to recognize that the Complient Corporation and Cardiac Science, Inc. have been dissolved and have no assets from which I can seek recourse. I have filed motions for Joinder to include Steven Lindseth and the law firm of Stradling, Yocca, Carlson & Rauth each of which has gained from this action and succeeded Complient and Cardiac Science in accountability. I hope this Court can reverse any decisions allowed to Complient and Cardiac Science that could be used in the form of *res judicata* against me as I pursue their successors.

**Most fervently I ask that the Court find the means to relieve me and my wife of the threat of losing our home."**

\* \* \* \* \* \*

FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS

Sworn to before me and subscribed in my presence the 22nd day of December 2005.

_____
NOTARY PUBLIC

7