# EXHIBIT C

```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2                          WESTERN SECTION

 3

 4

 5   DONALD HUTCHINS           .    Docket No. CR 04-30126-MAP
                               .
 6           v.                .    Springfield, MA
                               .
 7   CARDIAC SCIENCE           .    September 9, 2004
     . . . . . . . . . . . . . .    11:38 a.m.
 8

 9

10              TRANSCRIPT OF HEARING HELD BEFORE

11              THE HONORABLE MICHAEL A. PONSOR,

12            UNITED STATES DISTRICT COURT JUDGE.

13

14

15   APPEARANCES:

16   For the plaintiff:   Donald C. Hutchins, 1047 Longmeadow
                          Street, Longmeadow, MA 01106.
17

18   For the defendant:   Randall T. Skaar, 4800 IDS Center, 80
                          South Eighth Street, Minneapolis MN
19                        55402-2100.

20                        Adam Basch, 33 State Street,
                          Springfield, MA 01103.
21

22
                    Alice Moran, CSR, RPR, RMR
23                Official Federal Court Reporter
                    1550 Main Street, Room 536
24                    Springfield, MA 01103
              Tel: 413-731-0086   Fax: 413-737-7333
25                    amoran@prodigy.net
```

1  foreign or alien environment for you to be in here today
2  arguing your case.
3      You should feel free to ask me to express myself
4  more clearly. I'm going to try to make things as simple
5  as I possibly can so that they're understandable to you.
6      This is not -- it is not unusual for me to have
7  people to come to court who are representing themselves.
8  It is a little unusual to have someone representing
9  themself in a case this complex I will tell you, and to
10 that extent you are at something of a disadvantage.
11     I want to try to make sure, to the extent that I
12 possibly can, to keep the playing field level and I'm not
13 going to burst into Latin or anything like that. I'll
14 try to keep my remarks as straightforward as possible,
15 but I won't be offended if you're confused about
16 something and need some explanation. I'm going to try to
17 make sure that the hearing we have here is as fair as I
18 possibly can make it.
19     MR. HUTCHINS: I appreciate that.
20     THE COURT: All right. So Mr. Hutchins is here
21 representing himself pro se and representing the
22 defendants?
23     MR. SKAAR: Randall Skaar for Cardiac Science
24 and I'm here with Adam Basch from Bacon & Wilson, local
25 counsel.

1 Science but with Complient.

2 And I think if you read the agreements, it's pretty
3 apparent that the 7 1/2 percent that's really at the
4 bottom of this that Mr. Hutchins thinks he's entitled to,
5 that will never come from Cardiac Science no matter how
6 you read these agreements or look at it.

7 If that event was triggered to pay the 7 1/2 percent
8 to Mr. Hutchins, that would have to be paid by Complient
9 or one of those entities surrounding Complient.

10 THE COURT: Is Complient a corporation, or what
11 kind of a beast is Complient?

12 MR. SKAAR: Well, I thought you did a pretty
13 good job when you were explaining it all, but the
14 agreements we have show County Line Limited transferring
15 some IEP rights to another entity which became the CPR
16 Limited Partnership and then eventually County Line
17 became Complient. So they stood in the shoes of County
18 Line so that's how the agreements, the way I read them,
19 kind of hook up.

20 So now Complient was in partnership -- was a general
21 partner in a partnership with CPR Limited Partnership.
22 CPR Limited Partnership actually holds the IP assets of
23 Mr. Hutchins, among other things.

24 THE COURT: So this is not a corporation. It's
25 an assembly of people and other entities working together

```
 1  in some kind of partnership?
 2          MR SKAAR:  Well, they call themselves a
 3  corporation.
 4          MR. HUTCHINS:  It is a Delaware corporation.
 5          MR. SKAAR:  They call themselves a corporation,
 6  but they are as a corporation a general partner I believe
 7  in another entity and it is complicated but I don't think
 8  it's necessarily relevant to what's going on today.
 9       The other fact that's interesting, and I know that
10  Mr. Hutchins has made a Rule 19 motion here to try to
11  bring in Complient Corporation and I just received
12  yesterday from Complient Corporation a courtesy copy of a
13  compliant that they have filed against Mr. Hutchins in
14  Ohio on these very same issues.
15          THE COURT:  Is that in a federal district court
16  or the state court?
17          MR. SKAAR:  State court.  I have a copy here
18  with a coffee stain on it that I did this morning if
19  you'd like to have this copy, but basically it's asking
20  for declaratory judgment that they own the IP outright
21  and don't owe him any money.
22       So those issues are now being addressed elsewhere.
23  I think that will make it even harder now to bring
24  Complient here under the first to file rules we have
25  because I think they are the first one to address that
```

```
 1   Cardiac Science has assets.  And even if they didn't, Mr.
 2   Hutchins isn't a creditor yet.  So why should we be
 3   taking this extraordinary remedy and interfering with a
 4   lot of stock and a big sale just to preserve a damage
 5   pool for Mr. Hutchins when he's not yet a creditor?
 6       I don't see how his case is different than any other
 7   breach of contract -- hundreds of breach of contracts and
 8   patent infringement cases that are out there.  There's
 9   nothing special about this one, at least nothing that
10   he's pled.
11       And then there's this problem with the lock-up
12   agreement that I think Mr. Hutchins actually recognizes.
13   On his proposed order he says "The court orders Cardiac
14   Science and the lock-up trustee," you know, not -- well,
15   he acknowledges the fact that we need jurisdiction over
16   the lock-up trustee because in fact Cardiac Science
17   doesn't have the stock anymore.  It's held in trust and
18   that's of course what the two companies did.  They didn't
19   want either one of them to have control over it.  They
20   had to sit in trust and then was released on this timing
21   schedule.
22       So Cardiac Science doesn't have -- there's nothing
23   to enjoin Cardiac Science from doing.  Their duties are
24   done.  They had to pay their stock just like writing the
25   check for this stuff, and therefore there's nothing to
```

```
 1   enjoin anyway.
 2        But I think a more serious question is why would we
 3   be doing this?  What is so extraordinary about this case
 4   that we have to somehow create a damage pool for Mr.
 5   Hutchins even though we're so far away from him being a
 6   judgment of creditor of any kind.
 7        THE COURT:  Well, I can see one justification
 8   and then I can see a problem with that justification.  I
 9   mean, one justification is that this is just a little bit
10   like an attachment.  He thinks that he's going to get a
11   judgment against Complient eventually I guess because the
12   papers say that Price Waterhouse says that Complient or
13   maybe it says that your client doesn't have much in way
14   of assets.
15        MR. SKAAR:  That's my client.
16        THE COURT:  There's an asset here and he's
17   trying to get a hold of it with the idea that he will
18   eventually obtain judgment.  And that if he doesn't grab
19   the asset now, there will be no way to pay the judgment.
20   So it's like seizing somebody's equity in somebody's
21   house I suppose by putting a lien.  If somebody's dog
22   bites your kid and you bring a lawsuit, they don't have
23   very much money so you file a motion to attach their
24   house so when you obtain judgement, you'll have something
25   to collect against.
```

```
 1   because Complient continued to pay him and even attached
 2   a check that was after the alleged time that he took the
 3   IP back for a royalty check on the very intellectual
 4   property.
 5            THE COURT:  This is the December 2003 check?
 6            MR. SKAAR:  That's correct.  And, of course,
 7   there's nothing in the record but, you know, Cardiac
 8   Science continues to pay him royalties under the very
 9   same agreement.  So we think that we own that.  I don't
10   think he's cashing them but he's getting them.
11        So there is a dispute under the agreement that has
12   to be handled under the agreement, and there's condition
13   precedent under the agreement and the mandatory
14   arbitration clause under the agreement.  And again this
15   screams all for Complient to be here because really this
16   needs to be -- he is alleging that breach happened when
17   Complient owned it, and I think if Mr. Hutchins can get
18   through all this and show that in fact he did take his IP
19   back, then he could sue us for patent infringement
20   because we wouldn't have a viable license.  Of course,
21   we'd sue Complient for indemnification because we just
22   paid a bunch of money for it, but this is way too
23   premature.
24        He has to show -- and now Complient has sued him in
25   Ohio on that very same issue saying we own it.  There are
```