UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,          )
        PLAINTIFF            )
                             )
        v.                   )  C.A. No. 04-30126-MAP
                             )
CARDIAC SCIENCE, INC.,       )
ET AL.,                      )
        DEFENDANTS           )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTIONS FOR MISCELLANEOUS RELIEF
(Dkt. Nos. 107, 108, and 191)

September 29, 2006

PONSOR, D.J.


I. INTRODUCTION

This is a suit brought by pro se Plaintiff Donald C.
Hutchins against Cardiac Science, Inc. ("Cardiac Science")
and Complient Corporation ("Complient").  Plaintiff alleges
that Cardiac Science is liable for copyright and patent
infringement, abuse of process, and tortious interference
with contract.

Cardiac Science has denied Plaintiff's allegations and
asserted counterclaims against Plaintiff seeking damages,
certain declaratory judgments, and injunctive relief.

Plaintiff has filed three motions presently before the
court.  Two of these motions are fairly straightforward.
For the reasons set forth below, the court will: (1) deny
Plaintiff's Motion for Relief from the Court's September 28,

2005 Order Denying His Emergency Motion for a Temporary Restraining Order (Dkt. No. 107); and (2) deny Plaintiff's Motion for Sanctions Against Counsel for Cardiac Science (Dkt. No. 191).

The third motion, Plaintiff's Motion for Relief from the Court's June 23, 2005 Order Allowing Cardiac Science's Motion for Summary Judgment (Dkt. No. 108), raises disturbing issues.  Plaintiff contends, and Cardiac Science now appears to concede, that Cardiac Science made repeated misrepresentations regarding its possession of certain license rights to Plaintiff's intellectual property, when it knew that these license rights, in fact, had been transferred to a third party.  Because these misrepresentations have generated serious questions about Cardiac Science's entitlement to summary judgment on any of Plaintiff's claims, the court will, upon reconsideration, deny Cardiac Science's motion and set the case for a scheduling conference to determine future proceedings.

## II. <u>BACKGROUND</u>[1]

---

[1] The origins of Plaintiff's dispute with Complient were documented in great detail in a recently issued memorandum and order.  <u>See</u> <u>Hutchins v. Cardiac Science, Inc.</u>, C.A. No. 04-30126-MAP, 2006 WL 2789866 (D. Mass. Sept. 27, 2006).  Because Plaintiff's dispute with Cardiac Science is based, in part, on Plaintiff's 1994 agreement with Complient's progenitor, many of the facts provided in the Background section of the recently issued memorandum and order will be set forth here as well.

On June 1, 1994, Plaintiff and his closely-held company, CPR Prompt Corporation ("CPR Prompt"), entered into a license agreement (the "License Agreement") with County Line Limited Partnership ("County Line").  Under the terms of this agreement, Plaintiff and his company provided County Line with an exclusive license to various intellectual properties, including CPR Prompt® -- a device designed to instruct individuals in the performance of cardiopulmonary resuscitation.[2]  (See Dkt. No. 56, Ex. 1, License Agreement.)

Pursuant to § 3.10 of the License Agreement, County Line also agreed to assign its interest to an "Affiliate" that would

> cause each partner of such Affiliate who purchases
> or otherwise acquires a partnership interest of
> such Affiliate directly from such Affiliate to
> agree to pay CPR-PROMPT seven and one-half percent

---

[2] CPR Prompt® is the embodiment of U.S. Patent No. 4,583,524 ("the '524 patent"), which the U.S. Patent and Trademark Office ("PTO") issued to Plaintiff on April 22, 1986. The device is also claimed in U.S. Patent Reexamination No. 34,800 ("the '800 patent"), which the PTO issued to Plaintiff on November 29, 1994.

In addition, Plaintiff owns U.S. Patent No. 5,913,685 (filed June 24, 1996) (issued June 22, 1999) ("the '685 patent"), which discloses an electronic device "to provide guidance to rescue personnel trained in CPR for resuscitating a victim under an emergency condition." '685 patent, col.9 ll.46-48.

Plaintiff also holds one trademark registration -- "CPR Prompt" -- and two copyright registrations -- U.S. Copyright No. TX-u-210-208, which covers the device's script and word list, and U.S. Copyright No. TX-u-213-859, which pertains to its assembler software program -- that are relevant to this litigation.

        (7.5%) of the net proceeds of any sale of any or
        all of such partnership interest to any person or
        entity which is not an Affiliate to such partner.

(License Agreement § 3.10.)

On September 19, 1994, County Line assigned all of its rights and obligations under the License Agreement to CPR Limited Partnership ("CPR L.P."), an Ohio entity that initially had two partners: Catalog Products, Inc., a 1% limited partner, and County Line itself, the 99% general partner.

In December, 1997, County Line's corporate successor transferred its general partnership interest in CPR L.P. to CPR Prompt LLC, which subsequently converted to Complient, a Delaware corporation. Like the previous general partners, Complient retained a 99% partnership interest in CPR L.P. and performed various services related to the License Agreement.

On October 21, 2003, unbeknownst to Plaintiff, Complient and CPR L.P. entered into an Asset Purchase Agreement ("APA") with Cardiac Science. Under the terms of the APA, Complient, as the general partner of CPR L.P., caused CPR L.P. to convey to Cardiac Science all of its "assets, properties, rights, and interests," including the License Agreement. (See Dkt. No. 56, Ex. 3, Asset Purchase Agreement § 1.1A.) Complient also transferred to Cardiac

Science "substantially all of [its] assets, properties, rights and interests," but retained its general partnership interest in CPR L.P. (Id. at § 1.2(i).)

In return, Complient received $47 million in Cardiac Science common stock. (Dkt. No. 40, Ex. H, Wedbush Morgan Securities Report 4, Oct. 29, 2003.) According to Plaintiff, in November of 2003, Cardiac Science began to manufacture and sell products covered by Plaintiff's patents and bearing the CPR Prompt® trademark. (Dkt. No. 40, Ex. L., Hutchins Aff. ¶ 12, July 1, 2004.)

In the spring of 2004, Plaintiff noticed that he had not received any royalty payments or reports from Complient since the previous summer. (Id. at ¶ 8.) When Plaintiff called Complient's Cleveland headquarters he discovered that CPR L.P.'s general partner was no longer in business. (Id.)

Plaintiff subsequently contacted the law firm of Fish & Richardson and learned that Complient, for the first time since 1995, had recently failed to pay certain fees related to Plaintiff's patents. Under the circumstances, Plaintiff concluded that Complient had abandoned his intellectual properties, and he began discussing the possibility of licensing these properties to another entity. (Id. at ¶ 9.)

On April 29, 2004, Plaintiff received a phone call from Attorney Randall Skaar, a representative of Cardiac Science,

who informed Plaintiff that Cardiac Science had acquired his intellectual properties.  (Id. at ¶ 11.)  After familiarizing himself with the terms of the APA, Plaintiff concluded that the 7.5% exit payment described in § 3.10 of the License Agreement had been triggered.  On July 2, 2004, in response to Cardiac Science's refusal to recognize his right to an equity interest of $3,525,000, Plaintiff filed his original complaint against Cardiac Science, alleging: copyright infringement (Count I); patent infringement by means of sales (Count II); patent infringement by means of manufacture (Count III); negligence (Counts IV and V); and breach of contract (Count VI).[3]

It now appears undisputed that on August 11, 2004, Cardiac Science conveyed its interest in the License Agreement to Aristotle Corporation ("Aristotle").  (See Dkt. No. 210, Skaar Decl. ¶ 2.)  This marked the second time in less than ten months that Plaintiff's intellectual properties were transferred without Plaintiff's knowledge or consent.

On August 18, 2004, Plaintiff filed an ex parte emergency motion for a temporary restraining order in an attempt to prevent Cardiac Science from disbursing stock to

_____

[3] On July 28, 2004, Cardiac Science issued a demand for indemnity to Complient based on Plaintiff's complaint.

Complient pursuant to the APA.  Two days later, on August
20, 2004, Cardiac Science filed its first brief in this
action, opposing Plaintiff's emergency motion on the ground
that Plaintiff had failed to show a substantial likelihood
of success on the merits of his case.  (See Dkt. No. 8).  In
this memorandum, Cardiac Science argued that it was "the
exclusive licensee of the intellectual property at issue"
and that therefore any claim for infringement was
foreclosed, despite the fact that it had already conveyed
these very licensing rights to Aristotle.

That same day, Cardiac Science filed a motion to dismiss
based, in part, on the fact that "Cardiac Science is the
exclusive licensee to the intellectual property allegedly
infringed."  (Dkt. No. 10, Cardiac Science's Mem. Supp. Mot.
Dismiss 1.)  On August 24, 2004, in response to Plaintiff's
second motion for a temporary restraining order, Cardiac
Science once again characterized itself as "the exclusive
licensee of the intellectual property at issue" and
therefore, it claimed, Cardiac Science "[could ]not be an
infringer."  (Dkt. No. 13, Cardiac Science's Mem. Opp'n
Pl.'s Second Mot. TRO 2.)

The court heard argument on three motions on September
9, 2004, including Cardiac Science's motion to dismiss.
During oral argument, Attorney Skaar stated that "Cardiac

7

Science continues to pay [Plaintiff] royalties under the
[License] [A]greement.  So we think that we own that."
(Hr'g Tr. 36:7-9, Sept. 9, 2004.)[4]

On September 22, 2004, Cardiac Science filed an answer
denying Plaintiff's allegations and asserting counterclaims
for: breach of contract (Count I); abuse of process (Count
II); tortious interference with the APA (Count III);
tortious interference with the License Agreement (Count IV);
interference with prospective advantage (Count V); and
attorney's fees under 35 U.S.C. § 285 (Count VI).  In
addition, Cardiac Science requested declaratory judgments
establishing: its compliance with the terms of the APA
(Count VII); its non-infringement of Plaintiff's
intellectual property rights (Count VIII); and its rights as
a licensee under the APA (Count IX).  Cardiac Science also
sought preliminary and permanent injunctive relief,
enjoining Plaintiff from continuing to: (i) assert an
ownership interest in certain intellectual property; (ii)
allege infringement on the part of Cardiac, its customers,
and/or prospective customers; and (iii) breach the License
Agreement (Count X).

On December 22, 2004, pursuant to an order allowing

---

[4] Ultimately, the court allowed Cardiac Science's motion
to dismiss with respect to Plaintiff's negligence claims, but
otherwise denied it.

Plaintiff's Rule 19 motion to join Complient, Plaintiff filed an eight-count amended complaint asserting claims of copyright infringement (Count I), patent infringement by means of sales (Count II), patent infringement by means of manufacture (Count III), abuse of process (Count VI), and tortious interference with contract (Count VII) against Cardiac Science, and claims of fraud (Count IV), fraudulent misappropriation and sale of patent (Count VI), and breach of contract (Count VIII) against Complient.  Notably, while Plaintiff's original complaint contained a breach of contract claim against Cardiac Science, he chose not to pursue this cause of action in his amended complaint.

Cardiac Science once again denied Plaintiff's allegations and asserted the same counterclaims that it had set forth in response to Plaintiff's original complaint.

On May 16, 2005, Cardiac Science moved for summary judgment on every claim brought against it by Plaintiff, as well as its declaratory judgment counterclaims.  Cardiac Science then sent a letter to the court and Plaintiff dated June 13, 2005, in which it noted that the fourteen-day deadline for Plaintiff's opposition had passed, and Plaintiff had not yet offered a response.  See Local Rule 7.1(b)(2) (requiring opposition to a motion within fourteen days after its service, "unless another period is fixed by

9

rule or statute, or by order of the court").

On June 23, 2005, having heard nothing from Plaintiff in the face of counsel's letter, the court allowed Cardiac Science's motion for summary judgment based both on its merits and Plaintiff's failure to file a timely opposition. In response to this ruling, Plaintiff finally offered his opposition on June 27, 2005, sought relief from the court's ruling on June 29, 2005, and appealed the court's ruling on June 30, 2005.

The court denied Plaintiff's motion for relief on July 19, 2005. Plaintiff then filed another emergency motion for a temporary restraining order, which sought to compel Cardiac Science to: (1) pay Plaintiff all past due royalty payments; (2) reimburse Plaintiff for patent license fees; (3) meet all the ongoing requirements as the Licensee; and (4) transfer to Plaintiff the common stock shares and funds received by Cardiac Science as part of the June 28, 2004 demand for indemnity it served upon Complient. See Dkt. No. 97.)

After the court denied this motion for injunctive relief on September 28, 2005, Plaintiff filed a motion seeking relief from this ruling pursuant to Fed. R. Civ. P. 60(b)(3). On October 21, 2005, Plaintiff filed another Rule 60(b)(3) motion, which sought relief from the court's June

10

23, 2005 order allowing Cardiac Science's motion for summary judgment.  Both Rule 60(b)(3) motions initially highlighted Cardiac Science's failure to comply with Local Rule 7.3.[5]

In opposing these motions, Cardiac Science cited the court's summary judgment determination that its "license rights to Plaintiff's asserted intellectual properties are in full force and effect."  (Dkt. No. 113, Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from TRO Ruling 2; Dkt. No. 114, Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from Summ. J. 2.)  Cardiac Science also claimed that Plaintiff had not shown misconduct, by clear and convincing evidence, that prevented the full and fair preparation or presentation of the case.

On June 20, 2006, the court noted that since obtaining summary judgment on Plaintiff's claims and its declaratory judgments, Cardiac Science had taken no action concerning its other counterclaims, which sought monetary damages or equitable relief.  Accordingly, the court ordered Cardiac Science to file a status report informing the court whether it would continue to pursue such relief.  In response, Cardiac Science filed a motion voluntarily to dismiss these

--------

[5] This provision requires corporate litigants to "file a statement identifying any parent corporation and any publicly held company that owns 10% or more of the party's stock" and "promptly supplement the statement upon any change in the information that the statement requires."  Local Rule 7.3.

counterclaims without prejudice, which the court allowed on
July 17, 2006.

On July 24, 2006, the First Circuit dismissed, without
prejudice, Plaintiff's appeal of this court's June 23, 2005
order allowing Cardiac Science's motion for summary
judgment.  See Hutchins v. Cardiac Science, Inc., No. 05-
2182, slip op. (1st Cir. July 24, 2006) ("An order granting
summary judgment on claims against one party is not
appealable as a final judgment because it does not finally
dispose of all rights of all parties." (citing 28 U.S.C. §
1291)).

Finally, on August 4, 2006, Plaintiff filed the pending
motion for sanctions against counsel for Cardiac Science
based on Attorney Skaar's conversations with counsel for
Complient and his failure to disclose the sale of
Plaintiff's intellectual property to Aristotle.  In
response, Cardiac Science claimed that Plaintiff's
conspiracy allegation was baseless and that its
representatives had not deceived the court.  No satisfactory
explanation was offered in these papers for Cardiac
Science's repeated claims that it possessed license rights
that it knew had been transferred to a third party.

### III. DISCUSSION

A.  Plaintiff's Motion for Relief from the Court's September
    28, 2005 Order Denying Plaintiff's Emergency Motion for

12

<u>a Temporary Restraining Order (Dkt. No. 107)</u>.

As stated above, Plaintiff seeks relief from this court's previous refusal to order Cardiac Science to: (1) pay Plaintiff all past due royalty payments; (2) reimburse Plaintiff for patent license fees; (3) meet all the ongoing requirements as the Licensee; and (4) transfer to Plaintiff the common stock shares and funds received by Cardiac Science as part of the June 28, 2004 demand for indemnity it served upon Complient.

In support of his original Rule 60(b)(3) motion, Plaintiff stressed Cardiac Science's failure to inform Plaintiff or the court of its dissolution.  While Cardiac Science has yet to make good on its stated intention to file an updated corporate disclosure statement reflecting its name change and merger with another entity (see Cardiac Science's Mem. Opp'n Pl.'s Mot. Relief from TRO Ruling 3-4), this failure to comply with Local Rule 7.3 plainly did not interfere with Plaintiff's application for preliminary injunctive relief.[6]

The closer question is whether Cardiac Science's misrepresentation regarding its status as the Licensee

_____

[6] That being said, the court hereby orders Cardiac Science to file an updated corporate disclosure statement should the circumstances of its merger and/or name change implicate the dictates of Local Rule 7.3.

deprived Plaintiff of a fair hearing on his motion and entitles him to relief from the court's decision.

    To prevail on a Rule 60(b)(3) motion, a movant must establish, among other things, that an alleged misrepresentation prevented him from fully and fairly presenting his case. See Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 135 (1st Cir. 2005). Although it now appears clear Cardiac Science did misrepresent itself as the Licensee, this misrepresentation did not compromise the court's ruling denying Plaintiff's motion for a temporary restraining order.

    In order to allow a motion for preliminary relief, a court must conclude that the movant is likely to obtain ultimate judgment on the merits. See Langlois v. Abington Hous. Auth., 207 F.3d 43, 54 (1st Cir. 2000) ("[A] demonstrated likelihood of success on the merits is a sine qua non' of preliminary injunctive relief in this circuit." (citation omitted)). In this case, Plaintiff's first three requests for relief had no grounding in any underlying claim.

    As previously noted, Plaintiff's amended complaint asserts claims against Cardiac Science for copyright and patent infringement, abuse of process, and tortious interference with contract. Despite the fact that the

amended complaint did not set forth a breach of contract claim against Cardiac Science, Plaintiff, in his motion for a temporary restraining order, asked for an order compelling Cardiac Science to fulfill its contractual obligations. Because Plaintiff was unlikely to succeed on a theory he had not set forth in his amended complaint, the court correctly denied Plaintiff's motion with respect to his first three requests for preliminary relief.

As for the fourth request, because Plaintiff did not appear to be entitled to any of the proceeds Cardiac Science conveyed to Complient pursuant to the APA, he was not likely to be able to demonstrate at the ultimate trial that he was entitled to any stock or funds Complient conveyed to Cardiac Science pursuant to Cardiac Science's demand for indemnity. The fact that Cardiac Science responded to Plaintiff's suit by serving Complient with a demand for indemnity, which Complient paid, is not, as Plaintiff suggests, "tantamount to an admission by both Cardiac Science and Complient as to the veracity of [Plaintiff's] claims."  (Pl.'s Mem. Supp. Emergency Mot. TRO 5.)

In short, the misrepresentations by Cardiac Science in no way affected the court's decision on Plaintiff's emergency motion for a temporary restraining order. Reconsideration of this ruling is therefore not called for.

15

B.   **Plaintiff's Motion for Relief from the Court's June 23,**
     **2005 Order Allowing Cardiac Science's Motion for**
     **Summary Judgment (Dkt. No. 108).**

As stated above, on June 23, 2005, the court allowed
Cardiac Science's motion for summary judgment on every claim
brought against it by Plaintiff and every declaratory
judgment claim brought by Cardiac Science against Plaintiff.
After the court denied Plaintiff's motion for relief from
this ruling pursuant to Fed. R. Civ. P. 60(b)(1) and (2),
Plaintiff filed the pending motion, which seeks relief from
the June 23, 2005 order under Fed. R. Civ. P. 60(b)(3).

Cardiac Science takes the position that Rule 60(b)
relief is improper due to the fact that certain claims
involving Plaintiff and Complient are still pending.  "It is
. . . well settled that Rule 60 applies only to final
judgments."  Farr Man & Co., Inc. v. M/V Rozita, 903 F.2d
871, 874 (1st Cir. 1990) (citations omitted).  Because
Complient's counterclaims against Plaintiff have yet to be
resolved and the court's allowance of summary judgment on
Cardiac Science's behalf was never certified as a final
judgment, this ruling was interlocutory pursuant to Fed. R.
Civ. P. 54.

Of course, the fact that the June 23, 2005 order was
interlocutory does not negate this court's authority to
reconsider it.  On the contrary, such an order is "subject

16

to the district court's discretionary power to alter it at any time prior to the entry of the final decree." Id. at 875; see also Jusino v. Zayas, 875 F.2d 986, 990 n.3 (1st Cir. 1989) ("The inherent power of a court to correct, within a reasonable time, a manifest error in its own interlocutory order was not completely displaced by the adoption of the Civil Rules." (citations omitted)).

Here, as noted, Cardiac Science's misrepresentation appears conceded. Its repeated and knowingly false assertion that it possessed the license rights at issue was at the core of its motion for summary judgment. Based on this, the court lacks confidence in its ruling on the motion for summary judgment and, upon reconsideration, will deny it. For all the court can discern at this point, Cardiac Science "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly . . . unfairly hampering the presentation of [Plaintiff's] claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); see also Pearson v. First NH Mortgage Corp., 200 F.3d 30, 37 (1st Cir. 1999) (indicating that intentionally preventing the court "from knowing all the facts necessary to make an appropriate judicial decision on the matter before it" may be grounds for Rule 60(b)(3)

17

relief (citations omitted)).

Cardiac Science now contends that it "never misrepresented the present ownership of the 1994 Hutchins License Agreement.  The IP assets were transferred to Aristotle Corporation in August of 2004 and Cardiac Science retained the obligation to defend this lawsuit by Hutchins." (Skaar Decl. ¶ 2.)

This explanation flies in the teeth of Cardiac Science's explicit representations.  From the onset of this litigation, Cardiac Science has, without equivocation, represented itself to be the Licensee (see Dkt. No. 8, Cardiac Science's Mem. Opp'n Pl.'s Mot. TRO 2 ("Cardiac Science is the exclusive licensee of the intellectual property at issue and cannot be an infringer.")) and claimed to be abiding by the terms of the Licence (Cardiac Science's Mem. Supp. Mot. Summ J. 3 ("Cardiac Science has met and is meeting the terms and obligations of the License Agreement.") (emphasis added).)  Cardiac Science's new-found agnosticism concerning whether the current Licensee, Aristotle, "has paid or owes Plaintiff any royalties" (Skaar Decl. ¶ 5) is inconsistent with past representations. Moreover, its concealment of the true licensing arrangement interfered with the court's ability to "impartially . . . adjudicate a matter."  Aoude, 892 F.2d at 1118.

18

Evidence of Cardiac Science's status as a <u>former</u> Licensee would obviously have been invaluable in opposing Cardiac Science's request for a declaration that it is the <u>current</u> Licensee. Such evidence would have also completely undermined Cardiac Science's only articulated defense to Plaintiff's infringement claims, <u>i.e.</u>, that its rights under the License Agreement constituted a valid affirmative defense.

Evidence that Cardiac Science concealed the identity of the true Licensee would have also provided much needed ballast to Plaintiff's allegation that Cardiac Science's counterclaims, far from being compulsory, were filed for the ulterior purpose of "intimidat[ing Plaintiff], diminsh[ing] his resources and destroy[ing] his will to defend his intellectual properties." (Am. Compl. ¶ 66.)[7]

Finally, while Cardiac Science's misrepresentations did not constitute or conceal a tortious interference with Plaintiff's contract with Complient, such misconduct certainly seems to have interfered with Plaintiff's contract with Aristotle. Unlike Complient, which merely sold Plaintiff's intellectual property to Cardiac Science without

---

[7] <u>Cf. Hull v. Municipality of San Juan</u>, 356 F.3d 98, 102 (1st Cir. 2004) (finding the "unfairness" to be "two-fold" in case where plaintiff provided false information about an issue "peculiarly within [his] privileged control").

informing him, Cardiac Science sold Plaintiff's intellectual property to Aristotle and actively concealed that any such sale occurred.

In short, the consequences of Cardiac Science's misconduct have hardly been "nugacious." See Klonoski v. Mahlab, 156 F.3d 255, 275 (1st Cir. 1998) ("[I]f the movant can successfully demonstrate that the misconduct was knowing or deliberate . . . a presumption of substantial interference arises," which can only be defeated "by a clear and convincing demonstration that the consequences of the misconduct were nugacious." (citation omitted)), cert. denied, Mary Hitchcock Memorial Hosp. v. Klonoski, 526 U.S. 1039 (1999).[8] With no lesser remedy reasonably effective, the court will vacate its June 23, 2005 ruling in favor of Cardiac Science.

C.   Plaintiff's Motion for Sanctions Against Counsel for Cardiac Science (Dkt. No. 191).

Having vacated its ruling on Cardiac Science's motion for summary judgment, the court sees no reason further to sanction counsel pursuant to Local Rule 1.3.  It is not clear at this point whether counsel himself was responsible for the misrepresentation, or was relying on misinformation

---

[8] It also bears noting that the misconduct of Cardiac Science has prompted Plaintiff to file his ninth suit in this court.  (See Hutchins v. Aristotle Corp., 06-cv-30140-MAP.)

supplied to him by his client.  The court may return to this issue at a later date.

## IV. CONCLUSION

Based on the foregoing, the court hereby: DENIES Plaintiff's Motion for Relief from the Court's September 28, 2005 Order Denying His Emergency Motion for a Temporary Restraining Order (Dkt. No. 107); (2) ALLOWS Plaintiff's Motion for Relief from the Court's June 23, 2005 Order Allowing Cardiac Science's Motion for Summary Judgment (Dkt. No. 108); and (3) DENIES Plaintiff's Motion for Sanctions Against Counsel for Cardiac Science (Dkt. No. 191).

The clerk will set this case for a status conference to determine further proceedings.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge