# EXHIBIT A-1

# ASSET PURCHASE AGREEMENT

by and between

The Aristotle Corporation

and

Cardiac Science, Inc.

Dated August 11, 2004



EXHIBIT A

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is dated, August 11, 2004, by and between The Aristotle Corporation, a Delaware corporation (the "Buyer"), and Cardiac Science, Inc. a Delaware Corporation (the "Seller").

## RECITALS

**WHEREAS**, the Seller is engaged, inter alia, in the business of the design, manufacture and sale of products and accessories (including, without limitation, CPR manikins and related accessory items) which bear the name "CPR Prompt" (and certain derivations thereof), as well as any goodwill associated therewith (the "Business"); and

**WHEREAS**, pursuant to the terms and conditions set forth herein, the Seller desires to sell, and the Buyer desires to purchase, the Assets (as hereinafter defined) which constitute the Business for the consideration and on the terms set forth in this Agreement.

The parties, intending to be legally bound, agree as follows:

1. Definitions and Usage

    1.1   DEFINITIONS

    For purposes of this Agreement, the following terms and variations thereof have the meanings specified or referred to in this Section 1.1:

    "Accounts Receivable"--(a) all trade accounts receivable and other rights to payment from customers of the Seller and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of goods shipped or products sold or services rendered to customers of the Seller, (b) all other accounts or notes receivable of the Seller and the full benefit of all security for such accounts or notes and (c) any claim, remedy or other right related to any of the foregoing.

    "Adverse Consequences" shall mean all charges, complaints, actions, suits, proceedings, hearings, investigations, claims, demands, judgments, orders, decrees, stipulations, injunctions, damages, dues, penalties, fines, costs, amounts paid in settlement, liabilities, obligations, taxes, liens, losses, expenses, and fees, including all reasonable attorneys' fees and court costs.

    "Assets"--as defined in Section 2.1.

    "Assignment and Assumption Agreement"--as defined in Section 2.7(a)(ii).

    "Assumed Liabilities"--as defined in Section 2.4(a).

"Bill of Sale"--as defined in Section 2.7(a)(i).

"Breach"--any breach of, or any inaccuracy in, any representation or warranty or any breach of, or failure to perform or comply with, any covenant or obligation, in or of this Agreement or any other Contract, or any event which with the passing of time or the giving of notice, or both, would constitute such a breach, inaccuracy or failure.

"Bulk Sales Laws"--as defined in Section 10.8.

"Business Day"--any day other than (a) Saturday or Sunday or (b) any other day on which banks in Connecticut are permitted or required to be closed.

"Buyer" or "the Buyer"--as defined in the first paragraph of this Agreement.

"Cash Purchase Price" -- as defined in Section 2.3.

"Closing"--as defined in Section 2.6.

"Closing Date"--the date on which the Closing actually takes place.

"Code"--the Internal Revenue Code of 1986, as amended.

"Confidential Information"--as defined in Section 12.1.

"Complient Corporation"—a Delaware corporation.

"Complient Corporation Purchase Agreement"--that certain Asset Purchase Agreement by and between Complient Corporation, CPR Limited Partnership and the Seller, dated October 21, 2003, including all other documents, agreements, and related writings (including without limitation, certificates, notes and related items).

"Consent"--any approval, consent, ratification, waiver or other authorization.

"Contemplated Transactions"--all of the transactions contemplated by this Agreement.

"Contract"--any agreement, contract, Lease, consensual obligation, promise or undertaking (whether written or oral and whether express or implied) relating directly to the Business and/or the Assets, whether or not legally binding.

"Copyrights"--as defined in Section 3.24(a)(iii).

"CPR License Agreement"--that certain License Agreement dated as of June 1, 1994, among CPR-Prompt Corporation, Donald C. Hutchins and County Line Limited Partnership.

"Disclosure Letter"--the disclosure letter delivered by the Seller to the Buyer concurrently with the execution and delivery of this Agreement which cross-references or relates to a Section of this Agreement.

"Employee Plans"-- all "employee benefit plans" as defined by Section 3(3) of ERISA, all specified fringe benefit plans as defined in Section 6039D of the Code, and all other bonus, incentive-compensation, deferred-compensation, profit-sharing, stock-option, stock-appreciation-right, stock-bonus, stock-purchase, employee-stock-ownership, savings, severance, change-in-control, supplemental-unemployment, layoff, salary-continuation, retirement, pension, health, life-insurance, disability, accident, group-insurance, vacation, holiday, sick-leave, fringe-benefit or welfare plan, and any other employee compensation or benefit plan, agreement, policy, practice, commitment, contract or understanding (whether qualified or nonqualified, currently effective or terminated, written or unwritten) and any trust, escrow or other agreement related thereto that (i) is maintained or contributed to by the Seller or any other corporation or trade or business controlled by, controlling or under common control with the Seller (within the meaning of Section 414 of the Code or Section 4001(a)(14) or 4001(b) of ERISA) ("ERISA Affiliate") or has been maintained or contributed to in the last six (6) years by the Seller or any ERISA Affiliate, or with respect to which the Seller or any ERISA Affiliate has or may have any liability, and (ii) provides benefits, or describes policies or procedures applicable to any current or former director, officer, employee or service provider of the Seller or any ERISA Affiliate, or the dependents of any thereof, regardless of how (or whether) liabilities for the provision of benefits are accrued or assets are acquired or dedicated with respect to the funding thereof.

"Encumbrance"--any charge, claim, community or other marital property interest, condition, equitable interest, lien, option, pledge, security interest, mortgage, right of way, easement, encroachment, servitude, right of first option, right of first refusal or similar restriction, including any restriction on use, voting (in the case of any security or equity interest), transfer, receipt of income or exercise of any other attribute of ownership.

"Environment"--soil, land surface or subsurface strata, surface waters (including navigable waters and ocean waters), groundwaters, drinking water supply, stream sediments, ambient air (including indoor air), plant and animal life and any other environmental medium or natural resource.

"Environmental, Health and Safety Liabilities"--any cost, damages, expense, liability, obligation or other responsibility arising from or under any Environmental Law or Occupational Safety and Health Law, including those consisting of or relating to:

(a) any environmental, health or safety matter or condition (including on-site or off-site contamination, occupational safety and health and regulation of any chemical substance or product);

(b) any fine, penalty, judgment, award, settlement, legal or administrative proceeding, damages, loss, claim, demand or response, remedial or inspection cost or expense arising under any Environmental Law or Occupational Safety and Health Law;

(c) financial responsibility under any Environmental Law or Occupational Safety and Health Law for cleanup costs or corrective action, including any cleanup, removal, containment or other remediation or response actions ("Cleanup") required by any Environmental Law or Occupational Safety and Health Law (whether or not such Cleanup has been required or requested by any Governmental Body or any other Person) and for any natural resource damages; or

(d) any other compliance, corrective or remedial measure required under any Environmental Law or Occupational Safety and Health Law.

The terms "removal," "remedial" and "response action" include the types of activities covered by the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA).

"Environmental Law"--any Legal Requirement that requires or relates to:

(a) advising appropriate authorities, employees or the public of intended or actual Releases of pollutants or hazardous substances or materials, violations of discharge limits or other prohibitions and the commencement of activities, such as resource extraction or construction, that could have significant impact on the Environment;

(b) preventing or reducing to acceptable levels the Release of pollutants or hazardous substances or materials into the Environment;

(c) reducing the quantities, preventing the Release or minimizing the hazardous characteristics of wastes that are generated;

(d) assuring that products are designed, formulated, packaged and used so that they do not present unreasonable risks to human health or the Environment when used or disposed of;

(e) protecting resources, species or ecological amenities;

(f) reducing to acceptable levels the risks inherent in the transportation of hazardous substances, pollutants, oil or other potentially harmful substances;

(g) cleaning up pollutants that have been Released, preventing the Threat of Release or paying the costs of such clean up or prevention; or

(h) making responsible parties pay private parties, or groups of them, for damages done to their health or the Environment or permitting self-appointed representatives of the public interest to recover for injuries done to public assets.

"Event of Breach" shall mean any one or more of the following: (i) any material untruth, inaccuracy or misrepresentation in or breach of any of the representations, warranties, covenants or agreements under this Agreement or any other certificate, document, writing or instrument delivered in connection with this Agreement made by the party making such representation, warranty, covenant or agreement, (ii) any failure of a party to perform or observe any material term, provision, covenant, obligation, agreement or condition on the part of that party to be performed or observed under this Agreement or any other certificate, document, writing or instrument delivered in connection with this Agreement; and (iii) any intentional misrepresentation of a party in, or omission from, any statement, certificate, exhibit, schedule or other document prepared or furnished by that party pursuant to this Agreement or any other certificate, document, writing or instrument delivered in connection with this Agreement.

"ERISA"--the Employee Retirement Income Security Act of 1974.

"Exchange Act"--the Securities Exchange Act of 1934.

"Excluded Assets"--as defined in Section 2.2.

"Financial Records" – as defined in Section 3.4.

"GAAP"--generally accepted accounting principles for financial reporting in the United States.

"Governing Documents"--with respect to any particular entity, (a) if a corporation, the articles or certificate of incorporation and the bylaws; (b) if a general partnership, the partnership agreement and any statement of partnership; (c) if a limited partnership, the limited partnership agreement and the certificate of limited partnership; (d) if a limited liability company, the articles of organization and operating agreement; (e) if another type of Person, any other charter or similar document adopted or filed in connection with the creation, formation or organization of the Person; and (f) any amendment or supplement to any of the foregoing.

"Governmental Authorization"--any Consent, license, registration or permit issued, granted, given or otherwise made available by or under the authority of any Governmental Body or pursuant to any Legal Requirement.

"Governmental Body"--any:

(a) nation, state, county, city, town, borough, village, district or other jurisdiction;

 (b) federal, state, local, municipal, foreign or other government;

 (c) governmental or quasi-governmental authority of any nature (including any agency, branch, department, board, commission, court, tribunal or other entity exercising governmental or quasi-governmental powers);

 (d) multinational organization or body;

 (e) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power; or

 (f) official of any of the foregoing.

"Ground Lease"--any long-term lease of land in which most of the rights and benefits comprising ownership of the land and the improvements thereon or to be constructed thereon, if any, are transferred to the tenant for the term thereof.

"Ground Lease Property"--any land, improvements and appurtenances subject to a Ground Lease in favor of the Seller.

"Improvements"--all buildings, structures, fixtures and improvements located on the Land or included in the Assets, including those under construction.

"Intellectual Property Assets"--as defined in Section 3.24(a).

"Inventories"--all inventories of the Seller, wherever located, including all finished goods, work in process, raw materials, spare parts and all other materials and supplies to be used or consumed by the Seller in the production of finished goods for the Business.

"IRS"--the United States Internal Revenue Service and, to the extent relevant, the United States Department of the Treasury.

"Knowledge"--an individual will be deemed to have Knowledge of a particular fact or other matter if:

 (a) that individual is actually aware of that fact or matter; or

 (b) a prudent individual could be expected to discover or otherwise become aware of that fact or matter in the course of conducting a commercially reasonable inquiry regarding the accuracy of any representation or warranty contained in this Agreement.

A Person (other than an individual) will be deemed to have Knowledge of a particular fact or other matter if such individual is serving as an executive officer of that Person and has Knowledge of that fact or other matter (as set forth in (a) and (b) above).

"Land"--all parcels and tracts of land in which the Seller has an ownership interest.

"Lease"--any Real Property Lease or any lease or rental agreement, license, right to use or installment and conditional sale agreement to which the Seller is a party and any other Seller Contract pertaining to the leasing or use of any Tangible Personal Property.

"Legal Requirement"--any federal, state, local, municipal, foreign, international, multinational or other constitution, law, ordinance, principle of common law, code, regulation, statute or treaty.

"Liability"--with respect to any Person, any liability or obligation of such Person of any kind, character or description, whether known or unknown, disclosed or undisclosed, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise, and whether or not the same is required to be accrued on the financial statements of such Person.

"Marks"--as defined in Section 3.24(a)(i).

"Non-Income Tax" and "Non-Income Taxes" means any and all property taxes, personal property taxes and similar ad valorem obligations.

"Non-Income Tax Returns" means any and all federal, state, local and foreign Tax and information returns with respect to Non-Income Taxes imposed on the Assets.

"Occupational Safety and Health Law"--any Legal Requirement designed to provide safe and healthful working conditions and to reduce occupational safety and health hazards, including the Occupational Safety and Health Act, and any program, whether governmental or private (such as those promulgated or sponsored by industry associations and insurance companies), designed to provide safe and healthful working conditions.

"Order"--any order, injunction, judgment, decree, ruling, assessment or arbitration award of any Governmental Body or arbitrator.

"Ordinary Course of Business"--an action taken by a Person will be deemed to have been taken in the Ordinary Course of Business only if that action:

(a) is consistent in nature, scope and magnitude with the past practices of such Person and is taken in the ordinary course of the normal, day-to-day operations of such Person;

      (b)     does not require authorization by the board of directors or stockholders of such Person (or by any Person or group of Persons exercising similar authority) and does not require any other separate or special authorization of any nature; and

      (c)     is similar in nature, scope and magnitude to actions customarily taken, without any separate or special authorization, in the ordinary course of the normal, day-to-day operations of other Persons that are in the same line of business as such Person.

"Part"--a part or section of the Disclosure Letter.

"Patents"--as defined in Section 3.24(a)(ii).

"Permitted Encumbrances"--as defined in Section 3.9.

"Person"--an individual, partnership, corporation, business trust, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, joint venture or other entity or a Governmental Body.

"Proceeding"--any action, arbitration, audit, hearing, investigation, litigation or suit (whether civil, criminal, administrative, judicial or investigative, whether formal or informal, whether public or private) commenced, brought, conducted or heard by or before, or otherwise involving, any Governmental Body or arbitrator.

"Purchase Price"--as defined in Section 2.3.

"Real Property"--the Land and Improvements and all appurtenances thereto and any Ground Lease Property.

"Real Property Lease"--any Ground Lease or Space Lease.

"Record"--information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

"Related Person"--

      With respect to a particular individual:

      (a)     each other member of such individual's Family;

      (b)     any Person that is directly or indirectly controlled by any one or more members of such individual's Family;

      (c)     any Person in which members of such individual's Family hold (individually or in the aggregate) a Material Interest; and

(d) any Person with respect to which one or more members of such individual's Family serves as a director, officer, partner, executor or trustee (or in a similar capacity).

With respect to a specified Person other than an individual:

(a) any Person that directly or indirectly controls, is directly or indirectly controlled by or is directly or indirectly under common control with such specified Person;

(b) any Person that holds a Material Interest in such specified Person;

(c) each Person that serves as a director, officer, partner, executor or trustee of such specified Person (or in a similar capacity);

(d) any Person in which such specified Person holds a Material Interest; and

(e) any Person with respect to which such specified Person serves as a general partner or a trustee (or in a similar capacity).

For purposes of this definition, (a) "control" (including "controlling," "controlled by," and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise, and shall be construed as such term is used in the rules promulgated under the Securities Act; (b) the "Family" of an individual includes (i) the individual, (ii) the individual's spouse, (iii) any other natural person who is related to the individual or the individual's spouse within the second degree and (iv) any other natural person who resides with such individual; and (c) "Material Interest" means direct or indirect beneficial ownership (as defined in Rule 13d-3 under the Exchange Act) of voting securities or other voting interests representing at least ten percent (10%) of the outstanding voting power of a Person or equity securities or other equity interests representing at least ten percent (10%) of the outstanding equity securities or equity interests in a Person.

"Representative"--with respect to a particular Person, any director, officer, manager, employee, agent, consultant, advisor, accountant, financial advisor, legal counsel or other representative of that Person.

"Retained Liabilities"--as defined in Section 2.4(b).

"Seller or "the Seller""--as defined in the first paragraph of this Agreement.

"Seller Contract"--any Contract (a) under which the Seller has or may acquire any rights or benefits (including, without limitation, the Complient Corporation Purchase Agreement); (b) under which the Seller has or may become subject to any obligation or liability; or (c) by which the Seller or any of the Assets is or may become bound.

"Software"--all computer software and subsequent versions thereof, including source code, object, executable or binary code, objects, comments, screens, user interfaces, report formats, templates, menus, buttons and icons and all files, data, materials, manuals, design notes and other items and documentation related thereto or associated therewith.

"Space Lease"--any lease or rental agreement pertaining to the occupancy of any improved space on any Land.

"Subsidiary"--with respect to any Person (the "Owner"), any corporation or other Person of which securities or other interests having the power to elect a majority of that corporation's or other Person's board of directors or similar governing body, or otherwise having the power to direct the business and policies of that corporation or other Person (other than securities or other interests having such power only upon the happening of a contingency that has not occurred), are held by the Owner or one or more of its Subsidiaries.

"Tangible Personal Property"--all machinery, equipment, tools, furniture, office equipment, computer hardware, supplies, materials, vehicles and other items of tangible personal property (other than Inventories) of every kind owned or leased by the Seller (wherever located and whether or not carried on the Seller's books), together with any express or implied warranty by the manufacturers or the Seller or lessors of any item or component part thereof and all maintenance records and other documents relating thereto.

"Tax"--any income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, windfall profit, customs, vehicle, airplane, boat, vessel or other title or registration, capital stock, franchise, employees' income withholding, foreign or domestic withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, value added, alternative, add-on minimum and other tax, fee, assessment, levy, tariff, charge or duty of any kind whatsoever and any interest, penalty, addition or additional amount thereon imposed, assessed or collected by or under the authority of any Governmental Body or payable under any tax-sharing agreement or any other Contract.

"Tax Return"--any return (including any information return), report, statement, schedule, notice, form, declaration, claim for refund or other document or information filed with or submitted to, or required to be filed with or submitted to, any Governmental Body in connection with the determination, assessment, collection or payment of any Tax or in connection with the administration, implementation or enforcement of or compliance with any Legal Requirement relating to any Tax.

"Third Party"--a Person that is not a party to this Agreement.

1.2    USAGE

(a)    Interpretation. In this Agreement, unless a clear contrary intention appears:

(i)    the singular number includes the plural number and vice versa;

(ii)    reference to any Person includes such Person's successors and assigns but, if applicable, only if such successors and assigns are not prohibited by this Agreement, and reference to a Person in a particular capacity excludes such Person in any other capacity or individually;

(iii)    reference to any gender includes each other gender;

(iv)    reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof;

(v)    reference to any Legal Requirement means such Legal Requirement as amended, modified, codified, replaced or reenacted, in whole or in part, and in effect from time to time, including rules and regulations promulgated thereunder, and reference to any section or other provision of any Legal Requirement means that provision of such Legal Requirement from time to time in effect and constituting the substantive amendment, modification, codification, replacement or reenactment of such section or other provision;

(vi)    "hereunder," "hereof," "hereto," and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Article, Section or other provision hereof;

(vii)    "including" (and with correlative meaning "include") means including without limiting the generality of any description preceding such term;

(viii)    "or" is used in the inclusive sense of "and/or";

(ix)    with respect to the determination of any period of time, "from" means "from and including" and "to" means "to but excluding"; and

(x)    references to documents, instruments or agreements shall be deemed to refer as well to all addenda, exhibits, schedules or amendments thereto.

(b) **Accounting Terms and Determinations.** Unless otherwise specified herein, all accounting terms used herein shall be interpreted and all accounting determinations hereunder shall be made in accordance with GAAP.

(c) **Legal Representation of the Parties.** This Agreement was negotiated by the parties with the benefit of legal representation, and any rule of construction or interpretation otherwise requiring this Agreement to be construed or interpreted against any party shall not apply to any construction or interpretation hereof.

2. <u>Sale and Transfer of Assets; Closing</u>

2.1 ASSETS TO BE SOLD

Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Seller shall sell, convey, assign, transfer and deliver to the Buyer, and the Buyer shall purchase and acquire from the Seller, free and clear of any Encumbrances other than Permitted Encumbrances, all of the Seller's right, title and interest in, to and under the following described assets utilized solely in the conduct of the Business (but excluding the Excluded Assets):

(a) all Tangible Personal Property described in Part 2.1(a);

(b) all Inventories (including, without limitation, those items of Inventory listed in Part 2.1(b));

(c) all the Seller Contracts (including without limitation the CPR License Agreement) listed in Part 3.20(a) and all outstanding offers or solicitations made by or to the Seller to enter into any Contract, in each case to the extent assignable to Buyer;

(d) all Governmental Authorizations and all pending applications therefor or renewals thereof listed in Part 2.1(d), in each case to the extent transferable to the Buyer;

(e) all data and Records related to the operation of the Business, including client and customer lists and Records, referral sources, research and development reports and Records, production reports and Records, service and warranty Records, equipment logs, operating guides and manuals, financial and accounting Records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and Records and, subject to Legal Requirements, copies of all personnel Records other than Records described in Section 2.2(f), in each instance relating solely to the Business;

(f) all of the intangible rights and property of the Seller, including Intellectual Property Assets, going concern value, goodwill, telephone, telecopy and e-

mail addresses and listings relating solely to the Business, and those items listed in Parts 3.24(d), (e) and (f);

 (g) all claims of the Seller against third parties relating to the Assets, whether choate or inchoate, known or unknown, contingent or noncontingent, including all such claims listed in Part 2.1(g);

 (h) all rights of the Seller relating to deposits and prepaid expenses, claims for refunds and rights to offset in respect thereof that are not listed in Part 2.2(c) and that are not excluded under Section 2.2(h); and

 (i) the name "CPR Prompt" and all derivations thereof, together with the goodwill of the Business symbolized thereby.

All of the property and assets to be transferred to the Buyer hereunder with respect to the Business are herein referred to collectively as the "Assets." The assets are being sold on an "as is" and "where is" condition.

Notwithstanding the foregoing, the transfer of the Assets pursuant to this Agreement shall not include the assumption of any Liability related to the Assets unless the Buyer expressly assumes that Liability pursuant to Section 2.4(a).

 2.2 EXCLUDED ASSETS

Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets of the Seller relating to the Business (collectively, the "Excluded Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Assets and shall remain the property of the Seller after the Closing:

 (a) all cash, cash equivalents and short-term investments;

 (b) all minute books, stock Records and corporate seals;

 (c) those rights relating to deposits and prepaid expenses and claims for refunds and rights to offset in respect thereof listed in Part 2.2(c);

 (d) all insurance policies and rights thereunder (except to the extent specified in Section 2.1(g));

 (e) all of the Seller Contracts listed in Part 2.2(e);

 (f) all personnel Records and other Records that the Seller is required by law to retain in its possession;

 (g) all claims for refund of Taxes and other governmental charges of whatever nature;