```
 1            UNITED STATES DISTRICT COURT
 2              DISTRICT OF MASSACHUSETTS
 3
 4
 5   *******************************
 6   DONALD C. HUTCHINS              *
 7              Plaintiff            *  Civil Action
 8   v.                              *  04-30126-MAP
 9   CARDIAC SCIENCE                 *
10   and                             *
11   COMPLIENT CORPORATION           *
12              Defendants           *
13   *******************************
14
15
16        DEPOSITION OF:  DONALD C. HUTCHINS
17              Bacon & Wilson, P.C.
18              33 State Street
19              Springfield, Massachusetts
20              January 27, 2005     9:25 a.m.
21
22
23                   Lora A. Monroe
24         Certified Shorthand Reporter-807190
```

EXHIBIT 4

DONALD C. HUTCHINS
January 27, 2005

Page 2

1  APPEARANCES:
2
3  Representing Cardiac Science:
4      PATTERSON, THUENTE, SKAAR &
5      CHRISTENSEN, P.A.
6      4800 IDS Center
7      80 South 8th Street
8      Minneapolis, MN  55402-2100
9      BY:  RANDALL SKAAR, ESQ.
10         WENDY CUSICK, ESQ.
11     (612) 349-3019
12     (612) 349-9266
13
14
15
16
17
18
19
20
21
22
23
24

Page 52

1  next one, the Pierce Patent, why is that one in
2  there?
3      A.   I don't -- it's something they came
4  up with.
5      Q.   Okay. Let's go down to 2.1, the
6  same page there. So that's where it talks about
7  that you gave the licensor, which is County
8  Line, a worldwide exclusive right to license and
9  make under the license patents. And you did
10 give them the right to sublicense, right?
11     A.   Yes.
12     Q.   That's the way I understood that.
13     A.   Yes. And if you look further on,
14 the sublicense would be costly to them.
15     Q.   Right. And did you understand that
16 they had a right to also just to sell their
17 interest in your patent to somebody else, a
18 third party?
19     A.   Yes, I think that's understandable.
20     Q.   Okay. Because they had told you
21 that they had an exit strategy of a couple years
22 and try to sell it?
23     A.   Yeah.
24     Q.   Okay. All right. So off we go to

DONALD C. HUTCHINS
January 27, 2005

Page 74

1   myself. And it's called County Line Limited
2   Partnership. And as you can see it's --
3           MR. SKAAR: Off the record for a
4       second.
5
6           (Off record conference)
7
8           MR. SKAAR: Back on the record.
9       Q.      (By Mr. Skaar) Pick up Exhibit 2
10  again and there is this agreement of limited
11  partnership and you testified you had seen this
12  before; is that right?
13      A.      Attorney Martinelli sent me a copy
14  of it. I would say it could have been in
15  October of '94 and on and on and we went back
16  and forth on it.
17      Q.      And you're not a party to this
18  agreement, though, right; is that correct?
19      A.      If you'll note that there's a place
20  for my signature.
21      Q.      Certainly.
22      A.      They were prepared to be a partner
23  to acknowledge this thing, acknowledge and
24  agree. To this day you won't find a signed copy

DONALD C. HUTCHINS
January 27, 2005

Page 75

1  because there isn't one around. But if this is,
2  if you examine the documents of the assets sale
3  between Cardiac Science and Complient this
4  September 1994 agreement is mentioned. There's
5  a second agreement mentioned that evidently must
6  have been between Steven, himself, forming this
7  stuff. And you'll also note that the County
8  Line Limited Partnership owns 99 percent of it
9  and Catalog Products owns 1 percent. Well,
10 Catalog Products is, I understand from the
11 Secretary of State's Office in Ohio, a small
12 holding of Steve Lindseth's. One hundred
13 percent privately owned by Steve Lindseth.
14          So certainly you know Steve had an
15 agreement with himself on this CPR Limited
16 Partnership. Now, CPR Limited Partnership is
17 mentioned prominently in the asset sale
18 agreement between Complient and Cardiac
19 Science. This agreement is mentioned and
20 alluded to as being a valid agreement somehow
21 alluding to the fact that I participated in
22 things which I did not.
23     Q.    Let's get that straight. You never
24 signed this agreement, Exhibit 2?

1   A.   So they could hold it that way.
2        I don't -- what somebody does
3   internally they can assign it to them, but that
4   wasn't going to have anything to do with exit
5   strategy.  It was only because they got two or
6   three product lines and they wanted to segregate
7   them.  That was the reason given.
8   Q.   I understand that now.  Going back
9   to my original question.  Do you feel you had a
10  right to approve their formation and transfers
11  under 3.10 over the affiliate?
12  A.   I didn't think there'd be any need
13  for a right.  I didn't think it was involved in
14  the affiliate.  The affiliate was of no --
15  Q.   So you think they could have formed
16  the affiliate, done the transfer of the rights
17  and obligations under 3.10 without your
18  permission?
19  A.   Yeah.
20  Q.   Okay.  And why is it that Exhibit 2
21  isn't doing just that?
22  A.   It probably is doing just that.
23  I'm not saying, I don't know what it's doing.  I
24  mean, you probably have a hundred agreements in

Page 115

1  is just a total wrong.  It's not right.
2  People -- and it's a deception to Cardiac
3  Science.  A disruption to Complient.  It's a
4  disruption and it's disrupting Cardiac Science
5  being a public corporation where they have to
6  file things with the SEC.  There are probably
7  some things that the SEC would find to be
8  probably illegal at the least.
9           Okay.  Now, if you take it from the
10 other standpoint and you read over the asset
11 sale agreement and you just read it, you see
12 such loop holes such they alluded to the June 1,
13 1994 agreement.  Then they allude to CPR
14 Limited, but the name Donald Hutchins and the
15 name Donald Hutchins is probably there as much
16 as CPR Limited is.  So it's not like I wasn't
17 involved in some way.  It wasn't like the
18 patents weren't involved.
19          And then something that you
20 produced for me that I've never seen produced in
21 any other way and it wasn't -- when you sent me
22 a copy of the agreement, it's not in there.
23 The allusion to patent, to 5913685, where it
24 says that it's something, says it's assumed from

1   Q.   You're saying right in there?
2   A.   In the agreement.
3   Q.   In the license agreement?
4   A.   Yeah. The original agreement,
5   Exhibit 1. The stuff would come back to me.
6   Okay. There you are, you hear from the patent,
7   from Fish and Richardson, they haven't been
8   paid. Your office manager can't find to get
9   royalty payments from, there's absolutely
10  nothing. There's no communication. There's
11  absolutely nothing. So at that point, not
12  happily, but you just accept the fact that this
13  stuff is, now belongs to Hutchins for good or
14  worse, I mean that's it. It's back, it's yours.
15  So that that would be, anybody would understand
16  it that way.
17  Q.   Well, my understanding we talked
18  earlier and after we beat it up for quite a
19  while you decided you never canceled this
20  agreement, Exhibit 1?
21  A.   I never did.
22  Q.   How would you end up with
23  everything back if you hadn't cancelled that
24  agreement?

1  some bogus --

2  Q.   We can fight over whether CPR
3  Limited Partnership is a successor.  The law
4  will tell us whether it is.

5  A.   The law will state to you --

6  Q.   Again, here, you don't dispute the
7  fact that they could have sold this all kit and
8  caboodle, all the obligations under this June
9  1994 agreement to a third party?

10  A.   No, I don't -- no, I think that
11  that was in there.

12  Q.   You're not disputing that?

13  A.   I'm not disputing that.

14  Q.   What you're disputing is whether or
15  not such a transfer to a third party would
16  trigger the seven and a half percent payment,
17  isn't that kind of the crux of your dispute
18  here?

19  A.   No.  The crux of my dispute is that
20  I have never granted Cardiac Science permission
21  to use my intellectual properties.

22  Q.   And, of course, Cardiac Science
23  position is you didn't have any because you
24  transferred them all to County Line and County

1  Line and their successors?

2      A.    Again I'm a layman.

3      Q.    I understand.

4      A.    If I go into a pawn shop and I buy
5  a watch and the watch had been stolen by
6  somebody who pawned it, then if I claim, hey, I
7  bought this watch, there's a sales slip from the
8  pawn shop, this is my watch now.  If the pawn
9  shop got a stolen piece of property who does
10 that watch belong to.  And that's the real
11 question here.

12     Q.    So you're saying this is stolen
13 property?

14     A.    This is stolen property.  It's my
15 property.  They confiscated it.  And they sold
16 it to Cardiac Science.  Now, Cardiac Science
17 says I got a agreement here.  See, I bought this
18 thing, but they bought stolen goods.  It's that
19 simple and I, this, any jury would understand
20 exactly what I'm talking about.

21     Now, I don't -- if I were Cardiac
22 Science I would look upon Don Hutchins as a
23 hero, as a total hero.  They have been duped.
24 They've been duped by somebody who is an evil

1  person. And so my reaction, and this is
2  initially the way I discussed it with you
3  thinking back when I was talking to you and we
4  were e-mailing back and forth, and all of a
5  sudden I realized what was happening. Gee, let
6  me explain to you and I sent a letter to you
7  explaining it. And I asked you to get in touch
8  with Martinelli and discuss the whole thing.
9  And I'm sure Martinelli would have discussed the
10 whole thing. Yeah, this is the way it is. So
11 you would say, halt that sale, don't let that
12 stock of Cardiac Science be transferred to
13 anybody.
14         Q.    We are getting way off the track
15 here.
16         A.    I'm just telling you.
17         Q.    I know the story real well. I'm
18 just trying to get a record here. And so one of
19 my questions is, we have kind of beat this up
20 and we know this license agreement between you
21 and County Line was good when you signed it.
22 We have got no evidence that anybody ever gave
23 written notice to cancel it, evidently, we have
24 agreed to that?

1    A.    Hm-hmm.

2    Q.    So how is it that you feel that
3 somebody stole your intellectual property from
4 you since you transferred it all to County Line?

5    A.    Because Cardiac Science is, uses
6 my intellectual property and it has not been
7 authorized by me.

8    Q.    We've already agreed that County
9 Line and their successor could sell it and we
10 bought it from, we think County Line and their
11 successor, how can Cardiac Science could be the
12 bad guy here?

13    A.    Because you didn't buy it and
14 County Line and the successor kept you without
15 it from CPR Limited.

16    Q.    Which we say is a successor to
17 County Line?

18    A.    No, it's not a successor to County
19 Line.

20    Q.    Or a related company we felt?

21    A.    I can't understand you.  I don't
22 have any -- my major concern with you people is
23 losing my patent 658.  That's a major, major
24 costly proposition.

1  and nothing else, I'm good with that?

2    A.    It's everything there and nothing

3  else, plus it's as a result of your

4  counterclaims.

5    Q.    I think you say that, don't you?

6    A.    I don't know if I do or not.

7    Q.    But what about our counterclaim is

8  Abuse of Process?

9    A.    Every one of them.

10    Q.    What about them?

11    A.    What about them?

12    Q.    Yes. What's your understanding of

13  Abuse of Process?

14    A.    Abuse of Process is the use of

15  litigation and the court systems to hammer

16  somebody into submission or to the point where

17  they have to back off.

18    Q.    Okay.

19    A.    And that's exactly what you're

20  doing and exactly what I was told you would be

21  doing by Attorney Kevin Kirsch of Stradling,

22  Yocca, Carlson and Rauth. And he told me he

23  would do that initially and it looks like he, I

24  don't know if there was any sympathy on the part

1  of your office initially during or since, but
2  coming back at me to put me in a situation to
3  defend myself with counterclaims is total
4  aberration and abuse of process.
5      Q.    So I'm just trying to, this is a
6  fact deposition. I'm just trying to get all the
7  facts out. So you listed facts 65, Paragraph 65
8  through 70, and I'm trying to determine whether
9  there are any other facts and you've stated
10 while your counterclaims. So if you take the
11 allegations of our counterclaim along with these
12 facts and 65 through 70, do we have everything
13 that's a basis of your abuse of process?
14     A.    Not everything because it's
15 ongoing.
16     Q.    Everything that you know of now?
17     A.    Today?
18     Q.    Today.
19     A.    Today's an abuse.
20     Q.    Okay. Taking your deposition is an
21 abuse of process?
22     A.    Yes, I would say so. I mean,
23 you're using my time, you're using my energy,
24 you're using my resources, you know, yeah,

Page 144

1           Can you point me to a paragraph,
2  boy, this is where Cardiac Science really
3  messed up this agreement?
4       A.    Well, let's assume that on October
5  21, 2003, that's when Cardiac Science became the
6  other party to the June 1, 1994 agreement.
7  Let's assume it, let's --
8       Q.    For the sake of argument we'll
9  say --
10      A.    I deny it, I don't, but let's
11 assume that.
12      Q.    Okay.
13      A.    Okay.  I complained as a business
14 person the lack of communication, but that June
15 1, 1994 agreement has some obligations for the
16 other party.  Obligations include reports,
17 payments, notifications, any number of things.
18 And Cardiac Science at least up until after the,
19 after this litigation began, this action began,
20 all of a sudden they at some point sent me a
21 letter and a check and said you must have
22 received another check and so forth and so on,
23 but this was probably nine months with a report
24 and this was probably nine months after and a

Page 148

1  sent by certified mail, there's all this stuff
2  in that agreement.
3      Q.    Have you sent a notice to Cardiac
4  Science that the agreement is in Breach?
5      A.    No.  Because I don't recognize
6  Cardiac Science.
7      Q.    Okay.  So I see a little conflict
8  between breaching an agreement, but you don't
9  recognize Cardiac Science, how do you resolve
10 that?
11     A.    As of not receiving, not receiving
12 the, any notification, nothing from anybody for
13 six months, I could have sent records on these
14 where a notification that I was taking back my
15 property rights who would you send this to.  I
16 have absolutely no idea.  You know, it's like --
17     Q.    But you never done that?
18     A.    There's nobody to do it to.
19     Q.    Looking at where, Wherefore, the
20 plaintiff, where do these figures come from.  If
21 we go to A, Wherefore under A for Count I, which
22 is the copyright in front $270,000 plus
23 interest, how you are calculating that?
24     A.    If you're asking specifically

Page 159

1   Q.   Okay.

2   A.   They show that they should get
3   145,835 shares. Now, as this was set up I
4   should get seven and a half percent of 145,835.

5   Q.   Under what provision of the
6   contract do you get any shares of anything?

7   A.   Because of Paragraph 3.10 says each
8   shareholder when they receive their money will
9   pay from their findings seven and a half
10  percent.

11  Q.   Well, what I'm trying to get at is
12  this is not an agreement that Cardiac Science is
13  a party to, is that true?

14  A.   Well, they're claiming to be a
15  party to it, I thought.

16  Q.   I'm talking about 1994 when you
17  executed it wasn't even a twinkle in anyone's
18  eye?

19  A.   That's right.

20  Q.   And so this agreement contemplates
21  you being paid by either County Line or one of
22  the successor companies; isn't that true?

23  A.   No, that's not true.

24  Q.   Show me where it is contemplated

Page 160

1  that anybody else is going to pay you the seven
2  and a half percent in the agreement?
3        A.    Okay.  Three point ten says will
4  cause each partner, each investor, right?
5        Q.    Right.
6        A.    Each investor.
7        Q.    It says partner, okay.
8        A.    Who otherwise acquires a
9  partnership interest.
10       Q.    And there was assets, there was no
11 partnership interest involved in this
12 transaction, right?
13       A.    No.  No, we're talking, we are not
14 talking Cardiac Science.  We are talking about
15 right here.  Each affiliate will cause each
16 partner and the reason it's written that way you
17 had your original partner venture guys and then
18 you had people that came in after.
19       Q.    Understood.
20       A.    So each will agree to pay CPR
21 Prompt seven and a half percent of the net
22 proceeds of any sale of any or all such
23 partnership interest.  Well, Medtronics has been
24 in there from the beginning.  Medtronics X

Page 161

1  number of shares. Now, as they have enough
2  shares in Complient so that they are going to be
3  paid 145,835 shares without any problem, without
4  any cost to Cardiac Science.
5       Q.    **Why do you feel that they're**
6  **liable, Medtronic to Cardiac Science, that's**
7  **what I'm trying to get to here?**
8       A.    That's what I'm saying, forget
9  Cardiac Science.
10      Q.    **Then you have to, too, then.**
11      A.    I'm forgetting Cardiac Science on
12 this particular point here.
13            Medtronic is an individual nor a,
14 neither it's written to, it could be a partner,
15 somebody who had stock.
16      Q.    **In Complient?**
17      A.    Counsel, could you leave Complient,
18 so forth. When it's sold on the exit strategy,
19 each partner or each investor would pay seven
20 and a half percent of the net proceeds of any
21 sale or any and all such parties to any person
22 or entity which is not affiliated with the
23 partner. That was the way for us to get seven
24 and a half percent of the total amount.