# EXHIBIT A

1

```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
                       WESTERN SECTION




DONALD HUTCHINS              .  Docket No. CR 04-30126-MAP
                             .
         v.                  .  Springfield, MA
                             .
CARDIAC SCIENCE              .  September 9, 2004
.........................      11:38 a.m.



          TRANSCRIPT OF HEARING HELD BEFORE

          THE HONORABLE MICHAEL A. PONSOR,

         UNITED STATES DISTRICT COURT JUDGE.



APPEARANCES:


For the plaintiff:  Donald C. Hutchins, 1047 Longmeadow
                    Street, Longmeadow, MA 01106.


For the defendant:  Randall T. Skaar, 4800 IDS Center, 80
                    South Eighth Street, Minneapolis MN
                    55402-2100.

                    Adam Basch, 33 State Street,
                    Springfield, MA 01103.



              Alice Moran, CSR, RPR, RMR
            Official Federal Court Reporter
               1550 Main Street, Room 536
                  Springfield, MA 01103
           Tel: 413-731-0086  Fax: 413-737-7333
                   amoran@prodigy.net
```

1  regard to the other question, quite honestly, I'm trying
2  to put Cardiac Science in a position, give them a little
3  leverage over Complient because this whole case begs for
4  resolution, settlement.
5      I can live with a settlement from all the parties,
6  and Cardiac Science is going to be the one who -- if this
7  ever got to the SEC, if this ever got publicized, if they
8  are using a patent illegally -- they're in a whole heap
9  of trouble.
10     So they've been deceived by Complient. I would look
11 upon them to go back to Complient and say let's
12 straighten this thing out and let's settle it. And I
13 look upon your position as one -- quite honestly, if you
14 review my motion, that's not a huge concern to me. I'm
15 trying to give Cardiac Science a little leverage.
16     THE COURT: Now let me hear from Cardiac
17 Science now. You've had to sit here for quite a long
18 time while listening to Mr. Hutchins. Let's hear what
19 Cardiac Science has to say.
20     MR. SKAAR: Thank you, Your Honor. Good
21 afternoon.
22     THE COURT: Good afternoon.
23     MR. SKAAR: I think after reading everything
24 that Mr. Hutchins has submitted and listening to him
25 argue, it's pretty clear the beef is with not Cardiac

1  Science but with Complient.
2      And I think if you read the agreements, it's pretty
3  apparent that the 7 1/2 percent that's really at the
4  bottom of this that Mr. Hutchins thinks he's entitled to,
5  that will never come from Cardiac Science no matter how
6  you read these agreements or look at it.
7      If that event was triggered to pay the 7 1/2 percent
8  to Mr. Hutchins, that would have to be paid by Complient
9  or one of those entities surrounding Complient.
10         THE COURT:  Is Complient a corporation, or what
11  kind of a beast is Complient?
12         MR. SKAAR:  Well, I thought you did a pretty
13  good job when you were explaining it all, but the
14  agreements we have show County Line Limited transferring
15  some IEP rights to another entity which became the CPR
16  Limited Partnership and then eventually County Line
17  became Complient.  So they stood in the shoes of County
18  Line so that's how the agreements, the way I read them,
19  kind of hook up.
20      So now Complient was in partnership -- was a general
21  partner in a partnership with CPR Limited Partnership.
22  CPR Limited Partnership actually holds the IP assets of
23  Mr. Hutchins, among other things.
24         THE COURT:  So this is not a corporation.  It's
25  an assembly of people and other entities working together

```
1    in some kind of partnership?
2         MR SKAAR: Well, they call themselves a
3    corporation.
4         MR. HUTCHINS: It is a Delaware corporation.
5         MR. SKAAR: They call themselves a corporation,
6    but they are as a corporation a general partner I believe
7    in another entity and it is complicated but I don't think
8    it's necessarily relevant to what's going on today.
9         The other fact that's interesting, and I know that
10   Mr. Hutchins has made a Rule 19 motion here to try to
11   bring in Complient Corporation and I just received
12   yesterday from Complient Corporation a courtesy copy of a
13   compliant that they have filed against Mr. Hutchins in
14   Ohio on these very same issues.
15        THE COURT: Is that in a federal district court
16   or the state court?
17        MR. SKAAR: State court. I have a copy here
18   with a coffee stain on it that I did this morning if
19   you'd like to have this copy, but basically it's asking
20   for declaratory judgment that they own the IP outright
21   and don't owe him any money.
22        So those issues are now being addressed elsewhere.
23   I think that will make it even harder now to bring
24   Complient here under the first to file rules we have
25   because I think they are the first one to address that
```

```
 1   issue head-on.
 2        But when I look at this thing from -- and our motion
 3   to dismiss has kind of all the underpinnings of the fact
 4   that we're not the right party here.  We don't have any
 5   duty.  You know, if there was a breach of a contract, it
 6   happened before we got it.  It happened when Complient
 7   didn't pay him the 7 1/2 percent, you know, if that's the
 8   case.
 9        Now they're alleging in their complaint, the Ohio
10   complaint, that no triggering event has yet taken place
11   to pay Mr. Hutchins the 7 1/2 percent.  I don't know if
12   that's true or not, but again even if it were true,
13   Cardiac Science has no obligation to pay those dollars.
14        So if we address head-on now the temporary
15   restraining order, basically the injunction to try to
16   hold off some of the shares, you know, to ask for an
17   injunction to preserve your damage remedy is unusual
18   anyway.  And I think it's an extraordinarily extreme
19   remedy that somehow that he's entitled to preserve his
20   damage pool even though he hasn't proved his case here
21   and doesn't have a judgment yet, and I don't think I have
22   ever seen anything quite like that before.
23        So first to say irreparable harm and some of these
24   other issues that are precedent to proceeding to actually
25   entering the order, I don't think are there.  I mean,
```

```
 1    Cardiac Science has assets.  And even if they didn't, Mr.
 2    Hutchins isn't a creditor yet.  So why should we be
 3    taking this extraordinary remedy and interfering with a
 4    lot of stock and a big sale just to preserve a damage
 5    pool for Mr. Hutchins when he's not yet a creditor?
 6        I don't see how his case is different than any other
 7    breach of contract -- hundreds of breach of contracts and
 8    patent infringement cases that are out there.  There's
 9    nothing special about this one, at least nothing that
10    he's pled.
11        And then there's this problem with the lock-up
12    agreement that I think Mr. Hutchins actually recognizes.
13    On his proposed order he says "The court orders Cardiac
14    Science and the lock-up trustee," you know, not -- well,
15    he acknowledges the fact that we need jurisdiction over
16    the lock-up trustee because in fact Cardiac Science
17    doesn't have the stock anymore.  It's held in trust and
18    that's of course what the two companies did.  They didn't
19    want either one of them to have control over it.  They
20    had to sit in trust and then was released on this timing
21    schedule.
22        So Cardiac Science doesn't have -- there's nothing
23    to enjoin Cardiac Science from doing.  Their duties are
24    done.  They had to pay their stock just like writing the
25    check for this stuff, and therefore there's nothing to
```

1   enjoin anyway.
2       But I think a more serious question is why would we
3   be doing this?  What is so extraordinary about this case
4   that we have to somehow create a damage pool for Mr.
5   Hutchins even though we're so far away from him being a
6   judgment of creditor of any kind.
7       THE COURT:  Well, I can see one justification
8   and then I can see a problem with that justification.  I
9   mean, one justification is that this is just a little bit
10  like an attachment.  He thinks that he's going to get a
11  judgment against Complient eventually I guess because the
12  papers say that Price Waterhouse says that Complient or
13  maybe it says that your client doesn't have much in way
14  of assets.
15      MR. SKAAR:  That's my client.
16      THE COURT:  There's an asset here and he's
17  trying to get a hold of it with the idea that he will
18  eventually obtain judgment.  And that if he doesn't grab
19  the asset now, there will be no way to pay the judgment.
20  So it's like seizing somebody's equity in somebody's
21  house I suppose by putting a lien.  If somebody's dog
22  bites your kid and you bring a lawsuit, they don't have
23  very much money so you file a motion to attach their
24  house so when you obtain judgement, you'll have something
25  to collect against.

1     The problem in this case is that the only defendant
2  is Cardiac Science and the assets that's trying to be
3  seized is not Cardiac Science's assets. Even if Mr.
4  Hutchins eventually obtained a judgment from you, you
5  would not be able to pay that judgment out of the stock
6  that you pledge to Complient.
7        MR. SKAAR: That's correct.
8        THE COURT: So Mr. Hutchins is essentially
9  trying to seize a Complient asset to secure an eventual
10 judgment which he thinks he will get against your client.
11       MR. SKAAR: Right.
12       THE COURT: And that is kind of an unusual
13 approach to the situation.
14       MR. SKAAR: And I think he recognizes that by
15 trying to get Complient into the case now. He realizes
16 that this is really Complient. They're the ones entitled
17 to this stuff and not Cardiac Science.
18       The other problem, of course, is we don't have any
19 kind of idea of the kind -- I mean, there's going to be a
20 huge dispute here I imagine eventually between Complient
21 and Mr. Hutchins about the value of this intellectual
22 property. He's saying the wholesale is the value of the
23 intellectual property and I'm sure Complient is going to
24 say, I'm sorry, it was a very small percentage.
25       So there is going to be this battle for how much are

1   we actually going to enjoin and preserve for Mr. Hutchins
2   even if there was a, you know, a reason to do that,
3   which I don't see in this case.
4           THE COURT:  All right.  Let's move onto another
5   topic then and that's your motion to dismiss.  The motion
6   for TRO is almost certainly going to be denied.  Mr.
7   Hutchins has said that's not that big a deal to him
8   anyway even if it were denied, but I don't think that
9   there has been an adequate showing of likelihood of
10  success on the merits here against Cardiac Science, and I
11  don't think that the asset that's sought to be seized is
12  one that Cardiac Science could use to indemnify itself
13  even if there were a judgment obtained against Cardiac
14  Science.
15          So for those reasons the motion for temporary
16  restraining order will be denied, and I'm afraid the
17  motion to join parties is going to have to be denied
18  based upon local Rule 15.
19          That leaves me with your motion to dismiss and Mr.
20  Hutchins said that the big picture is you're selling
21  something that belongs to him, and whether or not it fell
22  off the back of the truck or you picked it up and started
23  selling it or whatever, he says it got to you through an
24  improper procedure.
25          You don't really have any entitlement to sell that

```
 1   product and you're selling that product and he wants an
 2   opportunity to come in here and prove to some kind of
 3   fact finder that what you have belongs to him. You may
 4   have gotten it from somebody else but they stole it from
 5   him, gave it to you and you're now exploiting it, and he
 6   wants an opportunity, not today, but he wants an
 7   opportunity to take discovery and present his case on
 8   that point and you say it should be dismissed right from
 9   the threshold. Tell me why.
10          MR. SKAAR: It goes back to the agreements with
11   Complient and with County Line Limited and all these
12   other parties on their face transfer Mr. Hutchins'
13   interests in the same intellectual property he's now
14   asserting that we are infringing to a party that we
15   bought it from.
16      And all these contracts, and the 1994 contract in
17   particular, has all these conditions precipice saying,
18   hey, if you're going to take your intellectual property
19   back, you got to jump through these hoops. He can't show
20   he's done that, and I think that's a very minimum on the
21   pleading to state that at least he has done that and
22   followed the conditions in the contract.
23      And, in fact, I think there's allegations in this
24   complaint that show that the parties don't believe that's
25   the case that there's a dispute there, number one,
```

1  because Complient continued to pay him and even attached
2  a check that was after the alleged time that he took the
3  IP back for a royalty check on the very intellectual
4  property.
5          THE COURT:  This is the December 2003 check?
6          MR. SKAAR:  That's correct.  And, of course,
7  there's nothing in the record but, you know, Cardiac
8  Science continues to pay him royalties under the very
9  same agreement.  So we think that we own that.  I don't
10 think he's cashing them but he's getting them.
11         So there is a dispute under the agreement that has
12 to be handled under the agreement, and there's condition
13 precedent under the agreement and the mandatory
14 arbitration clause under the agreement.  And again this
15 screams all for Complient to be here because really this
16 needs to be -- he is alleging that breach happened when
17 Complient owned it, and I think if Mr. Hutchins can get
18 through all this and show that in fact he did take his IP
19 back, then he could sue us for patent infringement
20 because we wouldn't have a viable license.  Of course,
21 we'd sue Complient for indemnification because we just
22 paid a bunch of money for it, but this is way too
23 premature.
24         He has to show -- and now Complient has sued him in
25 Ohio on that very same issue saying we own it.  There are

1   underlying factors here that have to be dealt with before
2   Cardiac Science gets thrown in the mix.
3           THE COURT: Isn't Mr. Hutchins's position
4   though not that he ever had to take it -- he doesn't have
5   to take it back because he never lost it in the first
6   place? That it was never properly transferred I guess to
7   Complient or Complient never properly transferred it to
8   you and therefore he doesn't take it back. He doesn't
9   have to take it back because Complient never actually did
10  transfer it to you, ever actually gave it to you?
11          MR. SKAAR: I didn't understand that to be his
12  position. That's an interesting position. I read the
13  document that's the 1994 agreement that says that he's a
14  part of that and he did assign his interests there so at
15  least they left there.
16      Now if he ever took them back, that agreement at
17  least states on its face that he assigned his
18  intellectual property rights, and he's never shown that
19  he followed the condition precedent in the 1994 agreement
20  to take that IP back.
21          THE COURT: All right.
22          MR. SKAAR: I think that needs to be dealt
23  with, and I think if that's all dealt with, that takes
24  care of the breach of contract and the copyright and
25  patent infringement claims, that's Counts 1, 2, 3, and 5

1  -- or I'm sorry -- 6.
2       That leaves us with the negligence counts and I
3  think they just they fail on their face because we didn't
4  have a duty, any duty.  We didn't deal with Mr. Hutchins.
5  We dealt with Complient and County Line Limited and CPR
6  Prompt Limited Partnership.  We didn't deal with Mr.
7  Hutchins.  We didn't have a duty to him.
8       And, you know, the fact that he doesn't think they
9  did their due diligence, well, I'm sure Cardiac Science
10 hired an M&A firm to do their due diligence.  I'm sure
11 they did.  I can't imagine that they would spend that
12 kind of money without knowing what they were buying.
13 But, again, that's maybe the shareholders' problems of
14 Cardiac Science but not Mr. Hutchins' concern and he
15 doesn't have standing to pursue those claims now.
16           THE COURT:  All right.  Let me hear from Mr.
17 Hutchins on this motion to dismiss and then we will have
18 to wrap it up here today.
19      I'm going to deny, as I said, the motion for
20 temporary restraining order for the reasons that I've
21 already stated.  It may be that Complient will have to
22 come in here but you will have to file a motion that's in
23 compliance with local Rule 15 of our district court here
24 and that hasn't been done so far.  So I'm going to deny
25 the motion to join Complient.