UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,            )
    PLAINTIFF              )
                                  )
    v.                     )  C.A. No. 04-30126-MAP
                                  )
CARDIAC SCIENCE, INC.          )
    DEFENDANT              )

MEMORANDUM AND ORDER
REGARDING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO COMPEL DISCOVERY
(Dkt. Nos. 252 & 249)

June 1, 2007

PONSOR, D.J.

I. INTRODUCTION

In this action, pro se Plaintiff Donald C. Hutchins alleges that Defendant Cardiac Science, Inc. ("Cardiac Science") is liable for copyright infringement (Count One), patent infringement by means of sales (Count Two), patent infringement by means of manufacture (Count Three), abuse of process (Count Six), and tortious interference with contract (Count Seven).[1]

Cardiac Science denies Plaintiff's allegations and has moved for summary judgment on all of Plaintiff's claims.

---

[1] On September 27, 2006, this court allowed Co-Defendant Complient Corporation's motion for summary judgment with respect to Counts Four, Five, and Eight of the amended complaint. See Hutchins v. Cardiac Science, Inc., 456 F. Supp. 2d 173, 183-89 (D. Mass. 2006).

Plaintiff opposes this motion and has filed his own motion to compel discovery.

For the reasons set forth below, Defendant's motion for summary judgment will be allowed with respect to Counts One, Two, Three, and Seven and denied with respect to Count Six; Plaintiff's motion to compel discovery will be allowed with respect to documentation concerning the sale of his intellectual property to the Aristotle Corporation ("Aristotle") and denied with respect to the claim for indemnification served on the Complient Corporation ("Complient") by Cardiac Science.

## II. BACKGROUND

The genesis and travel of this case has been chronicled in the past and will not be repeated here. See Hutchins v. Cardiac Science, Inc., 456 F. Supp. 2d 196, 197-201 (D. Mass. 2006). For present purposes, it suffices to state that this is not the first time that Cardiac Science has sought summary judgment.

On June 23, 2005, this court allowed Defendant's previous motion for judgment as a matter of law based both on its merits and Plaintiff's failure to file a timely opposition. At that time, the undisputed facts indicated that Cardiac Science had an exclusive license to various intellectual properties, which Plaintiff and his closely-

held company had previously conveyed to a predecessor of Complient.  As licensee, Cardiac Science had a valid affirmative defense against Plaintiff's infringement claims, and nothing in the record suggested that the "compulsory" counterclaims filed by Cardiac Science constituted an abuse of process or that Cardiac Science had in any way tortiously interfered with Plaintiff's contract with Complient.

When it later came to light that Cardiac Science had knowingly concealed its sale of Plaintiff's intellectual properties to Aristotle and repeatedly misrepresented itself as the licensee, the court became concerned its earlier ruling lacked an adequate foundation and, upon reconsideration, vacated it.  See id. at 202-04.

At a subsequent status conference, counsel for Cardiac Science apologized for his client's actions, but took the position that the effect of these misrepresentations was inconsequential.  Ultimately, the court allowed Cardiac Science's request to re-brief its motion for summary judgment "with a factual underpinning that fully corresponds to the real situation confronting the parties."  (Dkt. No. 248, Scheduling Order 2.)

On March 2, 2007, Plaintiff filed his pending motion to compel discovery.  Cardiac Science offered its opposition to this motion on March 8, 2007, and filed its pending motion

for summary judgment the next day. As will be discussed, the memorandum submitted by Cardiac Science in support of summary judgment is, in most respects, a duplicate of its previous brief.

### III. DISCUSSION

A. Defendant's Motion for Summary Judgment.

   1. Standard of Review.

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Johnson v. Gordon, 409 F.3d 12, 16-17 (1st Cir. 2005) (citation omitted). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

   2. The Infringement Claims.

As previously noted, Cardiac Science initially took the position that summary judgment was proper with respect to Plaintiff's copyright and patent infringement claims -- Counts One, Two, and Three -- due to its status, at that time, as the current licensee of Plaintiff's intellectual properties. Since a licensee cannot be held liable for infringing a licensed patent or copyright, see, e.g., Intel Corp. v. VIA Technologies, Inc., 319 F.3d 1357, 1364 (Fed. Cir. 2003), the argument went, Cardiac Science was free to

manufacture and sell CPR Prompt® products with impunity.

In its most recent brief, Cardiac Science takes the position that summary judgment remains proper on Plaintiff's infringement claims because it <u>was</u> the owner of Plaintiff's intellectual properties at the time in the past when it made and sold CPR Prompt® products and because it stopped making and selling such products when it sold the license to Plaintiff's intellectual properties to Aristotle on August 11, 2004. (<u>See</u> Dkt. No. 253, Ex. 8, Mathur Decl. ¶ 2.)

In response, Plaintiff concedes that Cardiac Science ceased making and selling products covered by his patents and copyrights after entering into the asset purchase agreement with Aristotle. The crux of his opposition stems from Plaintiff's continued belief that Cardiac Science never lawfully acquired a license to his intellectual properties in the first place. (<u>See</u> Dkt. No. 255, Pl.'s Opp'n to Def.'s Mot. for Summ. J. 2 ("Plaintiff's claims of patent infringement must succeed because the facts show that Cardiac Science had no license rights to any of Hutchins' patents and trademarks . . . .").)

This contention is foreclosed by the plain language of the 1994 License Agreement. Under the terms of that agreement, Complient's predecessor was required to assign its license to Plaintiff's intellectual properties to an

5

affiliate (Dkt. No. 253, Ex. 1, 1994 License Agreement § 3.10), which would retain "the right to assign this Agreement and all of its rights, licenses and obligations hereunder to any person or entity" (id. § 2.1). Cardiac Science became that entity on October 21, 2003 when Complient caused the affiliate, CPR Limited Partnership ("CPR L.P."), to convey its interest in Plaintiff's intellectual properties to Cardiac Science. (See Dkt. No. 253, Ex. 3, Asset Purchase Agreement § 1.1A.)

Since there is no allegation, let alone evidence, that Cardiac Science sold CPR Prompt® products before it acquired the license from CPR LP or after it sold the license to Aristotle, the court will allow Defendant's motion for summary judgment with respect to Counts One, Two, and Three.

    3.    <u>Tortious Interference with Contract</u>.

Under Massachusetts law, a plaintiff asserting tortious interference with contract must show that: "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." <u>Draghetti v. Chmielewski</u>, 416 Mass. 808, 816 (1994) (citations omitted).

Although it appears that a colorable argument might

6

perhaps be made that Cardiac Science tortiously interfered with Plaintiff's contract with Aristotle, Plaintiff has elected not to offer that claim. Instead, he continues to maintain that Cardiac Science tortiously interfered with his contract with Complient.

The premise of this argument seems to be that Cardiac Science knew, or should have known, that Complient could not sell the rights to Plaintiff's intellectual properties without paying Plaintiff 7.5% of the proceeds. Since Cardiac Science knew, or should have known, that Complient had no intention to honor this obligation, Cardiac Science (according to Plaintiff) effectively induced Complient to breach its contract with Plaintiff by executing the Asset Purchase Agreement on October 21, 2003.

Paramount among the several problems with this contention is its failure to incorporate the fact that several courts, including this one, have already concluded that the "7.5% exit payment" referenced in § 3.10 of the License Agreement was not triggered by the sale of Plaintiff's intellectual properties to Cardiac Science. See Hutchins v. Cardiac Science, Inc., 456 F. Supp. 2d 173, 185-89 (D. Mass. 2006). Given the groundless nature of the allegations set forth in Count Seven, summary judgment must be allowed on Plaintiff's tortious interference with

7

contract claim.[2]

    4. <u>Abuse of Process</u>.

Count Six is a different story. To succeed on an abuse of process claim, a litigant must show that "(1) process was used (2) for an ulterior or illegitimate purpose (3) resulting in damage." <u>Gutierrez v. Mass. Bay Transp. Authy.</u>, 437 Mass. 396, 407 (2002) (citations omitted).

In this case, the record reveals that a number of the allegations contained in Cardiac Science's counterclaim as filed on September 22, 2004 were predicated upon its status as the <u>current</u> licensee of Plaintiff's intellectual properties, despite the fact that Cardiac Science well knew that it had ceased being the licensee on August 11, 2004, when it sold Plaintiff's intellectual properties to Aristotle.

After Plaintiff asserted, in his amended complaint, that Cardiac Science's counterclaims constituted an abuse of process, Cardiac Science stated that it was entitled to judgment as a matter of law with respect to this claim since "[t]he record clearly shows that the only claims Cardiac Science filed against Plaintiff are Compulsory

---

[2] Because Plaintiff's tortious interference argument relies on the rejected claim to the "7.5% exit payment," it is not necessary to address Defendants' other arguments in support of summary judgment on Count Seven.

Counterclaims, pursuant to Fed. R. Civ. P. 13(a), which Cardiac Science filed to defend itself in response to those claims originally brought against Cardiac Science by Plaintiff." (Dkt. No. 56, Def.'s Mem. in Supp. of Mot. for Summ. J. 8.)

In its September 29, 2006 order vacating summary judgment in favor of Cardiac Science, this court took a different view. It held that:

> Evidence that Cardiac Science concealed the identity of the true Licensee would have . . . provided much needed ballast to Plaintiff's allegation that Cardiac Science's counterclaims, far from being compulsory, were filed for the ulterior purpose of "intimidat[ing Plaintiff], diminish[ing] his resources and destroy[ing] his will to defend his intellectual properties."

<u>Hutchins v. Cardiac Science, Inc.</u>, 456 F. Supp. 2d 196, 203-204 (D. Mass. 2006) (quoting Plaintiff's Amended Complaint ¶ 66).

Upon allowing Defendant's request to re-brief its motion for summary judgment, the court assumed that Cardiac Science would attempt to argue that its admitted misrepresentations were not made for "an ulterior or illegitimate purpose," as those terms have been defined by Massachusetts courts, or that they did not result in any damage to Plaintiff. Instead, Cardiac Science continues to maintain that "[t]he record clearly shows that the only claims Cardiac Science filed against Plaintiff are Compulsory Counterclaims,

9

pursuant to Fed. R. Civ. P. 13(a), which Cardiac Science filed to defend itself in response to those claims originally brought against Cardiac Science by Plaintiff." (Dkt. No. 253, Def.'s Mem. in Supp. of Mot. for Summ. J. 9-10.)

In other words, Cardiac Science not only continues to make the same argument in opposing Count Six, it continues to employ the <u>same</u> language in doing so.  In fact, a side-by-side comparison of the "abuse of process" portions of Cardiac Science's two briefs reveals that the latter is a perfect replica of the former with one minor exception: the latter contains one sentence stating that Cardiac Science voluntarily dismissed its counterclaims in July, 2006.

Based on the foregoing, the court must conclude that summary judgment remains improper with respect Plaintiff's abuse of process claim.  Plaintiff is entitled to present to the jury evidence that Cardiac Science filed its counterclaim in this case for the ulterior purpose of "intimidat[ing Plaintiff], diminish[ing] his resources and destroy[ing] his will to defend his intellectual properties."

B.    <u>Plaintiff's Motion to Compel Discovery</u>.

Among other things, this motion seeks an order from this court requiring Cardiac Science to turn over documents

related to its sale of Plaintiff's intellectual property to Aristotle.

In its opposition, Cardiac Science begins by noting that the written discovery deadline in this case expired on October 12, 2004. While both the Federal Rules of Civil Procedural and the Local Rules provide that a scheduling order can be modified "upon a showing of good cause," Fed. R. Civ. P. 16(b); Local Rule 16.1(g), Cardiac Science contends that "Plaintiff has failed to identify, or even attempt to identify, any good cause for his late request." (Dkt. No. 251, Def.'s Opp'n to Pl.'s Mot. to Compel Discovery 1.)

The unspoken predicate of this argument appears to be that Plaintiff should have requested documentation regarding a sale of his intellectual properties at a time when Cardiac Science was deliberately concealing that sale. Permitting Defendant to evade additional discovery on this ground would penalize one party for the other's deception.

Cardiac Science next points to Plaintiff's failure to comply with Fed. R. Civ. P. 37(a)(2)(B) and Local Rule 37.1(a), which require parties to confer in good faith prior to filing any discovery motion, and asks that the motion be denied on this basis. While the court could deny the motion without prejudice for this reason, this approach would only

11

result in delay.

Trial on Plaintiff's abuse of process claim is set to commence on September 10, 2007. The sooner both parties know the facts, the more time they will have to prepare.

In light of the foregoing, the court will allow Plaintiff's motion to compel discovery with respect to those documents relating to the sale of his intellectual property to Aristotle. Cardiac Science is hereby ordered to produce such documentation to Plaintiff by June 22, 2007.

Having determined that Plaintiff's tortious interference with contract claim lacks viability, the court will deny Plaintiff's motion with respect to documents on the indemnification issue and will also deny Plaintiff's request that Cardiac Science be ordered to produce an accounting of the indemnification.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. No. 252) is hereby ALLOWED with respect to Counts One, Two, Three, and Seven and DENIED with respect to Count Six. Plaintiff's Motion to Compel Discovery (Dkt. No. 249) is hereby ALLOWED with respect to documents that touch upon the sale of Plaintiff's intellectual properties to Aristotle and DENIED with respects to documents concerning the claim for

indemnification made upon Complient by Cardiac Science.

It may be helpful to emphasize that Plaintiff's case at trial will be limited to his claim of abuse of process based on Cardiac Science's concealment of its sale of Plaintiff's intellectual properties to Aristotle in its pleadings. Summary judgment has disposed of all of Plaintiff's other claims.

Plaintiff, proceeding <u>pro se</u> will be at a disadvantage at the upcoming trial. The court therefore again recommends that Plaintiff make every effort to retain trial counsel.

Representatives of the parties shall appear for a final pre-trial conference on July 25, 2007 at 2:00 p.m. A separate order will set forth the parties' responsibilities in preparing for this conference.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge